1  LATHAM & WATKINS LLP
   Elizabeth L. Deeley (CA Bar No. 230798)
2    *elizabeth.deeley@lw.com*
   Nicole C. Valco (CA Bar No. 258506)
3    *nicole.valco@lw.com*
   505 Montgomery Street, Suite 2000
4  San Francisco, CA  94111-6538
   Telephone:  +1.415.391.0600
5  Facsimile:  +1.415.395.8095

6  Susan E. Engel (*pro hac vice*)
     *susan.engel@lw.com*
7  Matthew J. Peters (*pro hac vice*)
     *matthew.peters@lw.com*
8  555 Eleventh Street, NW, Suite 1000
   Washington, DC  20004
9  Telephone: +1.202.637.3309
   Facsimile: +1.202.637.2201

10
   *Attorneys for Defendant Facebook, Inc.*
11

12            **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14               **SAN FRANCISCO DIVISION**

15

16  ANTHONY WILLIAMS, TYOKA              Case No. 3:18-cv-01881 RS
    BRUMFIELD, and WENDY BURNETT,
17  LAWRENCE OLIN, HAROLD NYANJOM;       **FACEBOOK, INC.'S NOTICE OF**
    SHERON SMITH-JACKSON and JANICE      **MOTION AND MOTION TO DISMISS**
18  VEGA-LATKER, individually and on behalf  **THE FIRST AMENDED**
    of all others similarly situated,    **CONSOLIDATED CLASS ACTION**
19                                        **COMPLAINT; MEMORANDUM OF**
                          Plaintiffs,     **POINTS AND AUTHORITIES IN**
20                                        **SUPPORT**

         v.                               Date:  December 6, 2018
21                                        Time: 1:30 p.m.
    FACEBOOK, INC.                        Court:  Courtroom 3, 17th Floor
22                                        Hon. Richard Seeborg
                          Defendant.

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMLAINT
CASE NO. 3:18-CV-01881 RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 6, 2018, at 1:30 p.m. in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Facebook, Inc. will and hereby does move for an order dismissing Plaintiffs' First Amended Consolidated Class Action Complaint (the "Complaint") with prejudice.

All claims in the Complaint should be dismissed under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6), on the grounds that (1) Plaintiffs lack standing to bring the Complaint; and (2) each of the causes of action in Plaintiffs' Complaint fails to state a claim as a matter of law.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Defendant's Request for Judicial Notice and the declaration of Nicole C. Valco enclosed therewith, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

**STATEMENT OF RELIEF SOUGHT**

Facebook seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing with prejudice Plaintiffs' Complaint for lack of standing and failure to state a claim upon which relief can be granted.

*///*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1

1   DATED:  September 25, 2018          Latham & Watkins LLP

2                                      By:   */s/ Elizabeth L. Deeley*
                                             Elizabeth L. Deeley (CA Bar No. 230798)
3                                            Nicole C. Valco (CA Bar No. 258506)
                                             505 Montgomery Street, Suite 2000
4                                            San Francisco, CA  94111-6538
                                             *elizabeth.deeley@lw.com*
5                                            *nicole.valco@l.w.com*

6                                            Susan E. Engel (*pro hac vice*)
                                             Matthew J. Peters (*pro hac vice*)
7                                            555 Eleventh Street, NW, Suite 1000
                                             Washington, DC  20004
8                                            *susan.engel@lw.com*
                                             *matthew.peters@lw.com*
9
                                             *Attorneys for Defendant Facebook, Inc.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

LATHAM & WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMLAINT
CASE NO. 3:18-CV-01881 RS

1

# TABLE OF CONTENTS

2

**Page**

3

I.      INTRODUCTION ........................................................................................................1

4

II.     BACKGROUND .........................................................................................................2

5

III.    LEGAL STANDARD...................................................................................................5

6

IV.     THE COMPLETE LANGUAGE OF FACEBOOK'S CONTACT UPLOAD
        PROMPT REQUIRES DISMISSAL.............................................................................7

7

8

V.      PLAINTIFFS' CONCLUSORY ALLEGATIONS OF DEPRIVATION OF
        INCOME AND INVASION OF PRIVACY DO NOT SATISFY ARTICLE III's
        INJURY-IN-FACT REQUIREMENT...........................................................................9

9

10

VI.     PLAINTIFFS' CLAIMS EACH HAVE FATAL CLAIM-SPECIFIC DEFECTS ..........13

11      A.      Plaintiffs Fail To Plead Statutory Standing To Bring Claims Under The
                UCL And CLRA.................................................................................................13

12      B.      Plaintiffs Also Fail To State A Claim Under The CLRA Because They
                Fail To Plead That They Are Consumers Who Purchased Or Leased
13              Goods..................................................................................................................14

14      C.      Plaintiffs Fail To State A Claim For "Unfair" Or "Unlawful" Conduct
                Under The UCL ..................................................................................................15

15      D.      Plaintiffs Fail To State A Claim For Violation Of CDAFA Because They
                Fail To Plead Unauthorized Access To A Computer That Caused Harm. ...........16

16      E.      Plaintiffs Fail To State A Claim For Trespass To Chattel Because They Do
                Not Adequately Plead That They Were Deprived Of The Use Of Their
17              Android Devices .................................................................................................17

18      F.      Plaintiffs Fail To State A Claim For Intrusion Upon Seclusion Because
                They Do Not Adequately Plead Conduct That Is Highly Offensive To A
19              Reasonable Person ..............................................................................................18

20      G.      Plaintiffs Fail To State A Privacy Claim Under The California
                Constitution Because They Do Not Adequately Plead A Legally Protected
                Privacy Interest Or Serious Invasion of Privacy.................................................19

21      H.      Plaintiffs' New York GBL Claim Fails Because California Law Applies
                And They Do Not Adequately Allege A Transaction That Took Place In
22              New York And Caused Them Harm......................................................................21

23      I.      Plaintiffs Cannot Bring A Standalone Claim For Unjust Enrichment...................22

24

VII.    CONCLUSION...........................................................................................................23

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMLAINT
CASE NO. 3:18-CV-01881 RS

1

## TABLE OF AUTHORITIES

2

Page(s)

3

### CASES

4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................5, 6, 7, 9

5

*Astiana v. Hain Celestial Grp., Inc.,*
6
  783 F.3d 753 (9th Cir. 2015) ............................................................................22

7

*Baba v. Hewlett-Packard, Co.,*
  No. C 09-05945 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ......................................15

8

*Backhaut v. Apple, Inc.,*
9
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) ...............................................................16

10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................5

11

*Bly-Magee v. California,*
12
  236 F.3d 1014 (9th Cir. 2001) .............................................................................6

13

*Camacho v. Auto. Club of S. Cal.,*
  142 Cal. App. 4th 1394 (2006) ...........................................................16

14

*Campbell v. Facebook, Inc.,*
15
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ...............................................................14

16

*Cel-Tech Commuc's, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) .............................................................15, 16

17

*Daniel v. Nat'l Park Serv.,*
18
  891 F.3d 762 (9th Cir. 2018) .............................................................................11

19

*eBay, Inc. v. Bidder's Edge, Inc.,*
  100 F. Supp. 2d 1058 (N.D. Cal. 2000) ...............................................8, 17

20

*Edwards v. Marin Park, Inc.,*
21
  356 F.3d 1058 (9th Cir. 2004) .............................................................................8

22

*Facebook, Inc. v. Power Ventures, Inc.,*
  No. C 08–05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)......................................17

23

*In re Facebook Internet Tracking Litig.,*
24
  140 F. Supp. 3d 922 (N.D. Cal. 2015) ...............................................2, 11, 17

25

*In re Facebook Internet Tracking Litig.,*
  263 F. Supp. 3d 836 (N.D. Cal. 2017) ...............................................................17

26

*In re Facebook Privacy Litig.,*
27
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ...............................................14, 15

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ....................................................................................20

*In re Gilead Scis. Secs. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...................................................................................6, 7

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) .....................................................................17

*In re Google Android Consumer Privacy Litig.*,
   No. 11–MD–02264, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ...........................18

*In re Google, Inc. Privacy Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) .........................................................................19

*In re Google, Inc. Privacy Policy Litig.*,
   No. 12-01382-PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ............................13

*In re Google, Inc. Privacy Policy Litig.*,
   No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ........................9, 11

*In re Google Phone Litig.*,
   No. 10-cv-1177-EJD, 2012 WL 3155571 (N.D. Cal. Aug. 2, 2012) ...........................8

*Goshen v. Mut. Life Ins. Co.*,
   774 N.E.2d 1190 (N.Y. 2002) .....................................................................................21

*Haskins v. Symantec Corp.*,
   654 F. App'x 338 (9th Cir. 2016) ..............................................................................8, 22

*Hill v. Nat'l Collegiate Athletic Assn.*,
   7 Cal. 4th 1 (1994) ..............................................................................................8, 19, 20

*Intel Corp. v. Hamidi*,
   30 Cal. 4th 1342 (2003) .............................................................................................18

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013) .......................................................................13, 14

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. June 12, 2012) ....................................................19, 20

*In re iPhone Application Litig.*,
   No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sep. 20, 2011) .....................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ....................................................................................7

*Khan v. K2 Pure Sols., LP*,
   12–cv–05526–WHO, 2013 WL 6235572 (N.D. Cal. Dec. 2, 2013) ...........................14

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ..............................................................................................13

iii

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMLAINT
CASE NO. 3:18-CV-01881 RS

*LaCourt v. Specific Media, Inc.*,
   No. SACV 10-1256 GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .............10, 11

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) ............................................................................................9

*Low v. LinkedIn Corp.*,
   No. 11-1468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ..................................11, 12

*Marich v. MGM/UA Telecomms., Inc.*,
   113 Cal. App. 4th 415 (2003) ............................................................................................19

*McLellan v. Fitbit, Inc.*,
   No. 3:16-cv-00036-JD, 2018 WL 2688781 (N.D. Cal. June 5, 2018) ...................................10

*Med. Lab. Mgmt. Consultants v. ABC, Inc.*,
   306 F.3d 806 (9th Cir. 2002) ............................................................................................18

*Miller v. Nat'l Broadcasting Co.*,
   187 Cal. App. 3d 1463 (1986) ............................................................................................19

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Res. Dev. Servs., Inc.*,
   No. 5:10-CV-01324-JF PVT, 2010 WL 4774929 (N.D. Cal. Nov. 16, 2010) ..........................8

*In re Nexus 6P Prod. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ..................................................................................21

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   879 F.3d 948 (9th Cir. 2018) ............................................................................................16

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015)................................................................................................21

*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*,
   85 N.Y.2d 20 (1995) ............................................................................................................22

*Palomino v. Facebook. Inc.*,
   16-cv-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ................................................21

*Parker Madison Partners v. Airbnb, Inc.*,
   283 F. Supp. 3d 174 (S.D.N.Y. 2017)................................................................................22

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..................................................................................8

*Rosado v. eBay Inc.*,
   53 F. Supp. 3d 1256 (N.D. Cal. 2014) ..................................................................................7

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) ................................................................................20

*Shostack v. Diller*,
   15-CV-2255 (GBD) (JLC), 2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015) ..........................22

iv

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMLAINT
CASE NO. 3:18-CV-01881 RS

*Shulman v. Group W Prods., Inc.,*
   18 Cal. 4th 200 (1998) ........................................................................................8, 18

*United States ex. rel. Silingo v. WellPoint, Inc.,*
   895 F.3d 619 (9th Cir. 2018) ............................................................................................6

*Siofele v. Duncan,*
   No. CV 09-2800 ODW, 2009 WL 10674359 (C.D. Cal. Sept. 14, 2009) .................................6

*Smith v. Chase Manhattan Bank,*
   293 A.D.2d 598 (N.Y. App. Div. 2002) ..............................................................................22

*In re Sony Gaming Networks & Customer Data Sec.,*
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ..............................................................................13

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
   72 Cal. App. 4th 861 (1999) .............................................................................................15

*Spokeo, Inc. v. Robins,*
   136 S.Ct. 1540 (2016) ...................................................................................................6, 9

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) .............................................................................................7

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) .............................................................................................8

*Thomas v. Facebook, Inc.,*
   1:18-cv-00856-LJO-BAM, 2018 WL 3915585 ..................................................................21

*Thrifty-Tel, Inc. v. Bezenek,*
   46 Cal. App. 4th 1559 (1996) ...........................................................................................17

*Ticketmaster Corp. v. Tickets.com,*
   No. 99-CV-7654, 2000 WL 1887522 (C.D. Cal. Aug. 10, 2000)........................................18

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.,*
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ............................................................................17

*Toohey v. Portfolio Recovery Assoc., LLC.,*
   No. 15-cv-8098 2017 U.S. Dist. LEXIS 111534 (S.D.N.Y. Aug. 22, 2016)..........................22

*United States v. Christensen,*
   828 F.3d 763 (9th Cir. 2015) ...........................................................................................16

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) .......................................................................................7, 9

*White v. Lee,*
   227 F.3d 1214 (9th Cir. 2000) ...........................................................................................6

*Williams v. Coca Cola Co.,*
   8:15-CV-1534, 2017 WL 1214503 (N.D.N.Y. Mar. 31, 2017)............................................8

v

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMLAINT
CASE NO. 3:18-CV-01881 RS

*Wright v. GMAC,*
    545 F. App'x 686 (9th Cir. 2013) .................................................................................13

*In re Yahoo Mail Litig.,*
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ......................................................................19, 20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
    No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)........................14, 15

*Yunker v. Pandora Media, Inc.,*
    No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................................13

*In re Zappos.com, Inc.,*
    108 F. Supp. 3d 949 (D. Nev. 2015) .................................................................................12

## STATUTES

Cal. Bus. & Prof. Code §§ 17200-17210 ....................................................................................5

Cal. Civ. Code
    §§ 1750, *et seq.* ....................................................................................................................5
    § 1761(d) .................................................................................................................14, 15
    § 17204 ............................................................................................................................14

Cal. Pen. Code
    § 502.............................................................................................................................5, 17
    § 502(c)(1)-(3) (7)……………………………………………………….......................16

New York General Business Law § 349 ............................................................................ *passim*

## RULES

Fed. R. Civ. P.
    8.......................................................................................................................................7
    8(a) ...................................................................................................................................1
    9(b) ...........................................................................................................................*passim*
    12(b)(1) .............................................................................................................................6

## CONSTITUTIONAL PROVISIONS

U.S. CONST., Art III ....................................................................................................... *passim*

vi

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMLAINT
CASE NO. 3:18-CV-01881 RS

## I.      INTRODUCTION

The crux of Plaintiffs' Complaint is that when they installed the Messenger and Facebook Lite mobile phone applications on their Android devices, Facebook misleadingly prompted them for permission to collect their "Contact List" and actually collected not only contacts, but also call and text logs (*not* call and text content).  Far from misleading users about the data to be collected, Facebook's prompt plainly informed users that, if they elected to proceed, Facebook would "continuously upload info about your contacts like phone numbers and nicknames, ***and your call and text history***."  Ex. A (March 24, 2018 *Ars Technica* article upon which Plaintiffs based the FAC ¶ 19[1]) (emphasis added).  That language fatally undermines Plaintiffs' conclusory allegation that Facebook misled them about collecting call and text logs.  Plaintiffs attempt to avoid the plain language of the prompt by simply ***omitting*** it from their allegations.  But their failure to address the language of the prompt is all the more puzzling since the prompt language appears in the *Ars Technica* article on which they based the FAC.  Dkt. No. 57 at 2 ("[T]he Williams and Tracy complaints are both based on the same March 24, 2018 news story from *Ars Technica*, a technology website"); *see also* FAC ¶¶ 19-23.  Plaintiffs nowhere allege (and cannot allege) they did not agree to that prompt or that the prompt they saw and relied upon had different language.  Plaintiffs thus fare no better by ignoring the prompt in the *Ars Technica* article, because without pleading the language of the prompt to which they admittedly agreed, they have not pleaded adequately that Facebook's prompt misrepresented the data Facebook would collect or that their agreeing to the prompt did not grant Facebook permission to collect call and text logs.  Their omission of those fundamental allegations precludes them from satisfying the basic requirements of notice pleading of Rule 8(a), let alone the heightened requirements of Rule 9(b).

Even putting aside Plaintiffs' pleading failures, Plaintiffs' Complaint suffers two other fatal flaws.  First, they have not adequately alleged any Article III injury from Facebook uploading their

---

[1] Citations to "Ex." are to the exhibits to the declaration of Nicole C. Valco (the "Declaration"), filed concurrently with this Motion.  Exhibits to the Declaration, such as the *Ars Technica* article, are incorporated by reference by the Amended Complaint and/or are proper subjects for judicial notice, for the reasons set forth in the accompanying Request for Judicial Notice.  Additionally, citations to "FAC" and textual references to "Complaint" are to Plaintiffs' First Amended Consolidated Class Action Complaint (Dkt. No. 52).

call and text logs in addition to their contact lists.  Courts in this District have routinely found "insufficient for [Article III] standing purposes generalized assertions of economic harm based solely on the alleged value of personal information," *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015), and "Plaintiffs have not shown, for the purposes of Article III standing, that they personally lost the opportunity to sell their information or that the value of their information was somehow diminished after it was collected by Facebook." *Id.* at 931-32.   Second, each of Plaintiffs' causes of action suffers from claim-specific pleading deficiencies, including the failure to plead statutory standing for their claims under the California Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and Computer Data Access and Fraud Act ("CDAFA").

Facebook respectfully requests that the Court dismiss all of Plaintiffs' claims with prejudice.

## II.   BACKGROUND

Plaintiffs' Complaint arises out of Facebook's alleged collection of call and text logs from people who installed two mobile phone applications, Messenger and Facebook Lite, on their Android devices.  Facebook provides both applications to the public for free, FAC ¶ 17, and both applications allow users to access Facebook, *id.* ¶ 14.

The Complaint alleges that "[w]hen users install [Messenger and Facebook Lite], they are prompted to grant Facebook access to their 'Contact List.'"  *Id.* ¶ 1.  Plaintiffs admit that they granted Facebook permission to access their "Contact List," *id.* ¶¶ 20, 35, but assert in conclusory fashion that they did not consent to Facebook accessing and collecting their "call and text logs." *Id.* ¶¶ 2-8.  They conspicuously omit, however, the language of the prompt they followed in giving Facebook permission to access their contacts.  Instead, relying on a March 24, 2018 *Ars Technica* article (*id.* ¶ 19), Plaintiffs imply that the prompt did not expressly allow Facebook to access their "call and text logs," that Facebook "surreptitiously" "scraped [their] call and text logs" and that the prompt allowed access "by default."  *Id.* ¶¶ 19, 21, 35.  But the *Ars Technica* article on which

1 │ they rely includes a screenshot of the prompt:



17 │ Ex. A (March 24, 2018 *Ars Technica* article relied upon in FAC ¶ 19, also available at
18 │ https://arstechnica.com/information-technology/2018/03/facebook-scraped-call-text-message-
19 │ data-for-years-from-android-phones/).    As the prompt's plain language reveals, Facebook
20 │ prompted users of the Messenger application to "turn on" a feature "that would "continuously
21 │ upload info about your contacts like phone numbers and nicknames, ***and your call and text***
22 │ ***history***." *Id.* (emphasis added).   Users could also select "not now" to decline this feature.  *Id.*
23 │ Plaintiffs nowhere allege that Facebook gave them a prompt any different from the Messenger
24 │ prompt in the *Ars Technica* article, and each plaintiff admits that he or she downloaded the
25 │ Messenger application.  FAC ¶¶ 2-8.[2]

───────────────

27 │ [2] Neither Plaintiffs nor the *Ars Technica* article include the language of the prompt for Facebook
28 │ Lite.  That prompt similarly provided express consent for call and text logs, but the Court need not
    │ consider it because each Plaintiff alleges that he or she downloaded and followed the Messenger

The alleged collection of call and text logs falls squarely within the prompt in the *Ars Technica* article.  The logs include information about "whether each call was 'Incoming,' 'Outgoing,' or 'Missed,' the date and time of each call, the number dialed, the individual called, and the duration of each call."  FAC. ¶ 1.  Plaintiffs do not allege that the information collected included any information about the content of any call or text.  *Id.* ¶ 20.  And they admit that Facebook collected contact information, and thereby also collected the call and text logs, so that Facebook could incorporate that information into "its friend recommendation algorithm" and "help … make connections." *Id.*; *see also* Ex. A (disclosing in contacts prompt that "[t]his lets friends find each other on Facebook . . . ").  If, for example, a person called his mother frequently, it is reasonable to infer from these allegations that Facebook's algorithm would recommend making a Facebook friend connection with the person's mother (a recommendation the user could ignore, accept, or reject).

Plaintiffs do not allege (because they cannot allege) that Facebook actually sold call and text logs.  Instead, they speculate that Facebook used the call and text logs in other ways—namely, to somehow enable targeting of ads.  They claim that Facebook incorporated the call and text logs into each user profile, *id.* ¶ 1, which allegedly is "comprised of sets of information that may include an Internet user's name, country of origin, browsing habits, areas of interest and hobbies, age, gender, marital status, financial status, telephone number, email address, buying preferences, and IP address, among other categories."  *Id.* ¶ 15 (referring to "User Data").  And they contend that Facebook "monetize[d]" its user profiles "by selling advertising space on its platforms," and that the personal information in the user profile "enticed [advertisers] to place ads with Facebook due to its ability to target specific demographics and interest groups through each company's collection of User Data."  *Id.* ¶ 18.  But Plaintiffs do not allege that call and text logs have any value to advertisers or that call and text logs play any role in advertisers' placing ads or targeting specific groups.

---

prompt, which allowed uploading of call and text history.  The same call and text logs thus would have been uploaded by the Facebook Messenger application.

1    Plaintiffs also contend that Facebook must "share[] or disseminate[]" the "scraped user
2  data" because as of June 29, 2018, Facebook had arrangements with entities such as Apple and
3  UPS to share its "user data." *Id.* ¶ 25.  They do not allege, however, that Facebook shared
4  information with these entities prior to October 2017, the period at issue. *Id.* ¶ 1.  Nor do they
5  allege that the user data Facebook shared included any call and text logs, let alone their individual
6  call and text logs, or how that data would have any value to entities such as Apple or UPS.

7    Plaintiffs claim that they "suffered an invasion of their privacy as a result of Defendant
8  collecting their call logs and text data without authorization" and were "deprived of any income
9  that Defendant generated through their unauthorized use or sale of their call logs and text data."
10  *See, e.g., id.* ¶ 42.  They assert constitutional, statutory, and common law claims on behalf of a
11  class of "all persons in the United States who installed the Facebook Messenger and Facebook Lite
12  apps for Android, and granted Facebook permission to access their 'Contacts List,'" as well as
13  California and New York subclasses. FAC ¶¶ 38-92.  The statutory claims that Plaintiffs assert on
14  behalf of the California subclass are an alleged violation of the California CLRA, Civil Code
15  §§ 1750, *et seq.* (Count I); the California UCL, Cal. Bus. & Prof. Code §§ 17200-17210 (Count II);
16  the California CDAFA, Cal. Pen. Code § 502 (Count III); and a California constitutional right to
17  privacy (Count IV).  *See id.* ¶¶ 38-65.  On behalf of the New York subclass, the New York-based
18  plaintiffs assert a claim based on New York General Business Law ("GBL") Section 349 (Count
19  VII).  *Id.* ¶¶ 82-88.  On behalf of all class members, Plaintiffs bring common law claims of
20  intrusion upon seclusion (Count V), trespass to personal property (Count VI), and unjust
21  enrichment (Count VIII).  *Id.* ¶¶ 66-81, 89-92.  Plaintiffs seek damages and other equitable
22  monetary relief; they do not seek injunctive relief.  *See id.* Prayer for Relief.

23  **III.    LEGAL STANDARD**

24    A complaint must be dismissed where the plaintiff fails to allege "enough facts to state a
25  claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
26  In determining if a claim has been stated, a court accepts as true only the complaint's well-pleaded
27  factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A court begins its analysis
28  of a complaint by "identifying pleadings that, because they are no more than conclusions, are not

5

entitled to the presumption of truth." *Id.* The court also "need not . . . accept as true allegations [in a complaint] that contradict matters properly subject to judicial notice or by exhibit," or that are "unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

Taking only "well-pleaded factual allegations" as true, a court then "determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Claims based on allegations of fraud are subject to a heightened pleading requirement under Federal Rule of Civil Procedure 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this requirement, a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex. rel. Silingo v. WellPoint, Inc.*, 895 F.3d 619, 628 (9th Cir. 2018) (citation omitted) (alteration in original). The allegations "must be specific enough . . . so that [Defendants] can defend against the charge and not just deny that they have done anything wrong." *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quotation marks and citation omitted)).

Under Rule 12(b)(1), a court must dismiss claims where a plaintiff has failed to establish standing under Article III of the U.S. Constitution. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, where the attack is facial, the court confines its inquiry to allegations in the complaint and construes those allegations in favor of the non-moving party. *Siofele v. Duncan*, No. CV 09-2800 ODW (PJWx), 2009 WL 10674359, at *1-2 (C.D. Cal. Sept. 14, 2009) (granting motion to dismiss for lack of standing when plaintiff had not allege concrete, particularized injury). However, the "plaintiff, as the party invoking federal jurisdiction, bears the burden" of establishing Article III standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## IV.     THE COMPLETE LANGUAGE OF FACEBOOK'S CONTACT UPLOAD PROMPT REQUIRES DISMISSAL.

All of Plaintiffs' claims against Facebook are rooted in the contention that Facebook misleadingly prompted Plaintiffs to grant access to their contact lists without telling them that it was also collecting their call and text logs.  FAC ¶¶ 2-8.  The flaw in Plaintiffs' pleading, however, is that they conspicuously omit the actual language of the prompt at the heart of this case.  The complete language of that prompt is disclosed in the March 24, 2018 *Ars Technica* article, on which Plaintiffs base their claim.  *See* Decl. of L. Timothy Fisher in Opp. to Plaintiff Tracy's Mot. to Sever his Compl. (Dkt. No. 57-1) at ¶ 2 (describing *Ars Technica* article as the "cornerstone of the Williams … complaint[]").  That prompt identified in the *Ars Technica* article makes clear that Facebook expressly sought permission to upload information about contacts *like contact names and numbers, as well as call and text history*.  Ex. A.  The prompt thus allowed Facebook to upload *both* types of information, and it contradicts Plaintiffs' conclusory allegations that Facebook misrepresented the information it collected and that Plaintiffs did not consent to uploading call and text logs.  The complete language of the prompt is thus fatal to the FAC because this Court "need not . . . accept as true allegations that contradict" statements that the Complaint incorporates by reference.  *In re Gilead Scis*, 536 F.3d 1049 at 1055 (citation omitted); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (same).

Plaintiffs attempt to avoid the complete language of the prompt by artful pleading.  But without the language of the prompt, Plaintiffs have failed to satisfy their Rule 8 pleading burden, *see Iqbal*, 556 U.S. at 678 (explaining that Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"), let alone the heightened Rule 9 standard that is required for their "averments of fraud."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remain to determine whether they state a claim.").[3]

---

[3] Plaintiffs' UCL, CLRA, and CDAFA claims are based entirely on "a unified course of fraudulent conduct" and thus are "said to be 'grounded in fraud' or to 'sound in fraud.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also Rosado v. eBay Inc.*, 53 F. Supp. 3d

7

1   Three of Plaintiffs' claims affirmatively require that Plaintiffs allege a specific

2   misrepresentation.  *See, e.g.*, *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016)

3   (UCL and CLRA); *Williams v. Coca Cola Co.*, 8:15-CV-1534 (LEK/CFH), 2017 WL 1214503, at

4   *4 (N.D.N.Y. Mar. 31, 2017) (Section 349).  And in each of those three claims, Plaintiffs allege

5   generally that Facebook misrepresented the type of information it was collecting.  FAC ¶¶ 40-42

6   (CLRA); *id.* ¶¶ 48-50 (UCL); *id.* ¶¶ 84-86 (Section 349).  But other than the prompt identified in

7   the *Ars Technica* article, they do not give Facebook notice of any other prompt containing any

8   purported misrepresentation.  This is insufficient.  Not only must Plaintiffs allege the "specific

9   misrepresentation," *Haskins*, 654 F. App'x at 339 (dismissing plaintiff's UCL claim where she

10  "did not allege that she read and relied on a specific misrepresentation"), but they also must plead

11  an "account of the 'time, place, and specific content of the false representations.'"  *Swartz v.*

12  *KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (affirming dismissal based on Rule 9(b))

13  (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  Plaintiffs fail to do

14  any of that.  Their bare allegations that a "Contact List" prompt "omit[ted] … call and text logs,"

15  *id.* ¶¶ 2-8, 40, is insufficient.

16  Plaintiffs' remaining claims require them to plead that they have a privacy interest in their

17  call and text logs or that their agreement to the prompt did not give permission to Facebook to

18  access that data.  *See, e.g.*, *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 36 (1994) (California

19  constitutional right to privacy); *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998)

20  (intrusion upon seclusion); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217-18 (N.D. Cal.

21  2014) (CDAFA); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal.

22  2000) (trespass to personal property).  And in those claims, Plaintiffs allege in conclusory fashion

23

24  1256, 1265 (N.D. Cal. 2014) ("Rule 9(b)'s particularity requirement applies to each of the three prongs of the UCL ('unlawful,' 'unfair,' and 'fraudulent') where . . . the claims are based on a

25  unified course of fraudulent conduct.'"); *In re Google Phone Litig.*, No. 10-cv-1177-EJD, 2012 WL 3155571, at *9 (N.D. Cal. Aug. 2, 2012) (holding that to the extent "UCL claims are predicated

26  on misrepresentations and omissions they aver fraud and those claims are subject to the heightened pleading requirements of Rule 9(b)").  Indeed, *all of Plaintiffs' claims* are based on the same core

27  allegations of fraudulent conduct—namely, that Facebook "surreptitiously" (FAC ¶ 70), or "intentional[ly]"  (*id.* ¶¶ 74, 80), collected Plaintiffs' call and text logs—and are subject to Rule

28  9(b).  *See Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Res. Dev. Servs., Inc.*, No. 5:10-CV-01324-JF PVT, 2010 WL 4774929, at *6-7 (N.D. Cal. Nov. 16, 2010).

8

that Facebook took their call and text logs "without permission" or "without consent," *see* FAC ¶ 59 (CDAFA), *id.* ¶ 74 (intrusion upon seclusion), *id.* ¶ 76 (trespass to personal property), and that they still have a privacy interest in the data because Facebook "did not disclose that it was collecting [that information]," *id.* ¶ 69 (California constitutional right to privacy), *id.* ¶ 73 (intrusion upon seclusion).  They also base their unjust enrichment claim on their purported "unwitting[]" disclosure of the call and text logs.  *Id.* ¶ 91.  But these allegations are inconsistent with not only the prompt in the *Ars Technica* article, but also their admission that through the Facebook prompt, they allowed collection of contact lists and "by default" collection of call and text logs.  *Id.* ¶ 21.  Without pleading the language of any other prompt, Plaintiffs offer nothing but a conclusory assertion of a privacy interest and lack of consent.

At bottom, Plaintiffs' Complaint must be dismissed with or without consideration of the prompt in the *Ars Technica* article that Plaintiffs incorporate by reference.  Considering it, Plaintiffs' claims fail because they expressly allowed Facebook to collect their call and text logs.  Without considering it, Plaintiffs' conclusory allegations fail to meet both the notice pleading standard, *Iqbal*, 556 U.S. at 678, that is grounded on basic notions of fairness, and the heightened pleading standard required for "averments of fraud."  *Vess*, 317 F.3d at 1103-04.

## V.    PLAINTIFFS' CONCLUSORY ALLEGATIONS OF DEPRIVATION OF INCOME AND INVASION OF PRIVACY DO NOT SATISFY ARTICLE III'S INJURY-IN-FACT REQUIREMENT.

Plaintiffs' Complaint suffers another fatal flaw.  A threshold question in any case is whether the named plaintiffs have suffered an injury-in-fact that is concrete and particularized as well as actual and imminent.  *See Spokeo*, 136 S.Ct. at 1548; *see also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003) (vacating class certification and ordering dismissal where named plaintiff lacked standing**)**.  Another court in this District described the injury-in-fact requirement as a "significant barrier to entry"—even if not "Mount Everest," "the doctrine might still reasonably be described as Kilimanjaro" in data privacy cases.  *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *4 (N.D. Cal. Dec. 3, 2013).  Here, Plaintiffs allege that Facebook collected their call and text logs without their consent and "monetized these data for advertising purposes," FAC ¶¶ 2-8, because Facebook allegedly

9

"incorporate[d] these data into its profile on each user," *id.* ¶ 1, and the user data allegedly attracted advertisers to place ads on Facebook, *id.* ¶18.  Despite injury-in-fact being an issue in almost every data privacy case, the Complaint lacks any overarching discussion of how this conduct caused a concrete, particularized injury; instead, within each cause of action, Plaintiffs allege in conclusory fashion that Facebook's conduct (i) deprived them of income and/or (ii) invaded their privacy.[4] These allegations fall far short of the summit and require dismissal of all of Plaintiffs' claims.[5]

Plaintiffs' generalized allegations do not allege any "injury in fact to *themselves*."  *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *4 (N.D. Cal. Sep. 20, 2011) (emphasis added); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW(JCGx), 2011 WL 1661532, at *4 (C.D. Cal. Apr. 28, 2011) (holding that plaintiffs who accused an online third-party advertising network of installing cookies on their computers to circumvent user privacy controls and to track Internet use without user knowledge or consent had not alleged any "particularized" harm, but instead offered only abstract concepts, such as "opportunity costs" and "value-for-value exchanges").  Three of the six Plaintiffs admit that they have not even reviewed the call and text logs that Facebook purportedly scraped, FAC ¶¶ 2-4, let alone "use[d] or s[old]" it, *id.* ¶ 41.  A fourth does not identify the scraped call and text logs he allegedly reviewed.  *Id.* ¶ 5. None of the six Plaintiffs "identif[ies] what harm (if any) resulted from the . . . tracking of their personal information."  *In re iPhone Application Litig.*, 2011 WL 4403963, at *4.  Nor do any of them allege that Facebook actually used or sold their collected call and text logs.  While Plaintiffs allege generally that Facebook shares user data with third parties, FAC ¶ 25, Plaintiffs do not allege that such data sharing included call and text logs, nor do they allege that any of *their own* data was shared with third parties.

---

[4] Plaintiffs do not appear to allege any injury at all in their unjust enrichment count, which is perhaps not surprising, as unjust enrichment is not an independent cause of action.  *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2018 WL 2688781, at *4 (N.D. Cal. June 5, 2018) ("The unjust enrichment claim is dismissed with prejudice, since unjust enrichment is a remedy and not an independent claim.").

[5] Plaintiffs allege harm based on both deprivation of income and invasion of privacy in support of the following claims:  (a) CLRA (Count 1); (b) UCL (Count II); (c) intrusion upon seclusion (Count V); (d) trespass (Count VI); and (e) NY GBL § 349 (Count VII).  With regard to the following claims, Plaintiffs allege harm based only on an invasion of privacy:  (a) CDAFA (Count III) and (b) California constitutional right to privacy (Count IV).

10

1    Rather, Plaintiffs speculate that Facebook generated income by "us[ing] or s[elling]" the
2    call and text logs, *e.g.*, *id.* ¶ 42, and in so doing somehow deprived *Plaintiffs* of that income.
3    Plaintiffs offer no factual allegations supporting their speculation that Facebook generated any
4    income from *call and text logs*.  The Complaint makes clear that Plaintiffs are not alleging that
5    Facebook sells call and text logs, but that Facebook adds call and text logs to *user profiles*, and the
6    *user profiles* entice advertisers to buy ads on Facebook "due to [their] ability to target specific
7    demographics and interest groups through" the user profiles.  *Id.* ¶ 18.  There is not a single
8    allegation that the call and text logs have any value to advertisers.  Certainly any conclusory
9    assertion that the frequency and duration of phone calls to random contacts has value to advertisers
10   (or anyone other than Facebook to facilitate connections to friends, *i.e.*, presumably the contacts
11   who users called frequently, *see* Ex. A; FAC ¶ 20) is not entitled to an assumption of truth.  *See*
12   *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (eliminating from consideration
13   during Article III inquiry conclusory allegations that were not entitled to the presumption of truth).
14   Even if Plaintiffs adequately alleged use or sale of the information, which they do not,
15   courts in this District have repeatedly made clear that "a plaintiff must do more than point to the
16   dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of
17   his own."  *In re Google, Inc. Priv. Policy Litig.*, No. C-12-01382 PSG, 2013 WL 6248499, at *5
18   (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must allege how the defendant's use of the information
19   deprived the plaintiff of the information's economic value.").  Plaintiffs must allege that "they
20   personally lost the opportunity to sell their information or that the value of their information was
21   somehow diminished after it was collected."  *In re Facebook Internet Tracking Litig.*, 140 F. Supp.
22   3d at 931-32; *see also Low v. LinkedIn Corp.*, No. 11-1468-LHK, 2011 WL 5509848, at *3-4
23   (N.D. Cal. Nov. 11, 2011) (dismissing claims for lack of standing that relied on general allegations
24   that consumer information is valuable and failed to allege what information of plaintiff's, aside
25   from his user identification number, had actually been transmitted to third parties, nor how
26   disclosure of his anonymous user ID could be linked to his personal identity); *LaCourt*, 2011 WL
27   1661532, at *5 (dismissing claims for lack of standing when plaintiffs alleged harm was based on
28   collection of browsing histories, but had not cited "a single individual who was foreclosed from

11

1   entering into a 'value-for-value' exchange as a result of [defendant's] alleged conduct' or

2   explained how they were deprived of the information's value simply because it was collected by a

3   third party").

4        There is no such allegation in the Complaint.  Plaintiffs make no allegation that the call

5   and text logs had any value to begin with.  And they do not attempt to explain how the call and

6   text logs would have any value standing alone, without other users' information and without the

7   other information in the user profile.  *See In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 954 (D.

8   Nev. 2015) (holding that plaintiffs' allegations that the value of their personal information had

9   decreased did not confer standing where plaintiffs did not "allege any facts explaining how their

10   personal information became less valuable").

11        Plaintiffs' conclusory allegation that Facebook's collection of call and text logs was an

12   "invasion of privacy" does not establish Article III standing either.  Plaintiffs do not explain how

13   their call and text logs are even *private* information, given that these logs concern calls or texts

14   that are by definition between themselves and a second person.  Plaintiffs also admit that they

15   allowed Facebook to upload their contact lists, which means they agreed to disclose to Facebook

16   their relationship with the second person on the call or text log.  But even if the frequency or

17   duration of the calls and texts were private information—a conclusion Plaintiffs do not allege, let

18   alone support with any facts—Plaintiffs still do not plead a concrete injury.  They do not plead that

19   the frequency and duration of their calls are particularly sensitive private information, especially

20   given the already-disclosed contact lists.  They also do not plead that Facebook disseminated any

21   call and text logs, let alone their individual call and text logs.  While they allege in conclusory

22   fashion that Facebook had agreements to share "user data with 61 different entities," FAC ¶ 25,

23   they do not allege that the agreements included sharing call and text logs.  Nor do they offer any

24   explanation for how call and text logs would have any value to entities such as Apple or UPS, *id.*,

25   or that otherwise would make such an inference plausible.  On top of that, there is no allegation in

26   the Complaint that any dissemination of the call and text logs caused them actual harm.  *See Low*,

27   2011 WL 5509848, at *6.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MPA ISO MOTION TO DISMISS FAC
CASE NO. 3:18-CV-01881 RS

1   Plaintiffs' privacy claims are thus based solely on Facebook collecting, allegedly without

2   consent, non-content logs of calls and texts with people whose contact information Plaintiffs admit

3   they agreed to disclose to Facebook.   Such allegations about collecting information without

4   consent fall far short of the concrete harm necessary to confer standing.  *See In re Google, Inc.*

5   *Privacy Policy Litig.*, No. 12-01382-PSG, 2012 WL 6738343, at *5 (N.D. Cal. Dec. 28, 2012)

6   ("[N]othing in the precedent of the Ninth Circuit or other appellate courts confers standing on a

7   party that has brought statutory or common law claims based on nothing more than the

8   unauthorized disclosure of personal information"); *see also In re Sony Gaming Networks &*

9   *Customer Data Sec.*, 996 F. Supp. 2d 942, 962 (S.D. Cal. 2014) (recognizing that courts have

10  dismissed claims where a plaintiff seeks to establish standing merely by "alleging that his personal

11  information was collected without his consent"); *Yunker v. Pandora Media, Inc.*, No. 11-CV-

12  03113 JSW, 2013 WL 1282980, at *5 (N.D. Cal. Mar. 26, 2013) (holding no Article III standing

13  where plaintiff did not allege Pandora collected sensitive financial information or anyone breached

14  Pandora's servers, and at best plaintiff alleged a possible future risk of identity theft).

15  **VI.     PLAINTIFFS' CLAIMS EACH HAVE FATAL CLAIM-SPECIFIC DEFECTS**

16  Setting aside the fact that the prompt shown in the *Ars Technica* article requested Plaintiffs'

17  consent to uploading the call and text logs, and setting aside the lack of any Article III injury, each

18  of Plaintiffs' claims also suffers from claim-specific pleading deficiencies.

19  **A.     Plaintiffs Fail To Plead Statutory Standing To Bring Claims Under The UCL**
20  **And CLRA.**

21  The UCL and CLRA require Plaintiffs to demonstrate, in addition to Article III standing,

22  an "economic injury" that was "*caused by*" an allegedly unfair business practice. *Wright v. GMAC*,

23  545 F. App'x 686, 688 (9th Cir. 2013) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322

24  (2011)).  "[A] plaintiff must have actually relied on the misrepresentation, and suffered economic

25  injury as a result of that reliance, in order to have standing to sue" under the UCL and CLRA.  *In*

26  *re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1012-15 (N.D. Cal. 2013).  Plaintiffs fail to plead

27  both economic injury and actual reliance.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    For all the reasons discussed above, their allegations of "deprivation of income" fail to

2 satisfy the lower bar of Article III standing. *See supra* Section V. They surely do not satisfy the

3 UCL and CLRA statutory requirement of economic harm. *See Khan v. K2 Pure Sols., LP*, 12–cv–

4 05526–WHO, 2013 WL 6235572, at *4 (N.D. Cal. Dec. 2, 2013) (describing the statutory standing

5 requirement of economic harm as "narrower than Article III's broader requirement of injury-in-

6 fact"). The UCL sets the bar even higher, requiring a showing of "lost money or property" to have

7 standing to sue. Cal. Civ. Code § 17204. It is well established that "[a] plaintiff's 'personal

8 information' does not constitute property under the UCL." *In re Facebook Privacy Litig.*, 791 F.

9 Supp. 2d 705, 714 (N.D. Cal. 2011); *see also Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849

10 (N.D. Cal. 2014) (dismissing UCL claims where plaintiffs alleged Facebook scanned content of

11 private messages and incorporated it into user profiles to deliver targeted advertising and holding

12 that "courts have consistently rejected" that personal information, including the content of

13 messages, is "money or property" under the UCL).

14    Plaintiffs also have failed to plead that they "actually relied" on an alleged

15 misrepresentation. *See In re iPhone Application Litig.*, 6 F. Supp. 3d at 1013-15. As discussed

16 *supra* Section IV, Plaintiffs do not allege the complete language of the prompt that they

17 purportedly accepted, and thus cannot possibly have alleged a specific misrepresentation, let

18 alone that they actually relied upon that language in granting Facebook access to their contact

19 lists but not their call and text logs. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

20 No. 16-MD-02752-LHK, 2017 WL 3727318 at *27-28 (N.D. Cal. Aug. 30, 2017) (dismissing

21 UCL claim even where Plaintiffs included screenshots of the alleged misrepresentations because

22 plaintiffs had failed to "establish that any of the Plaintiffs actually read or relied on the

23 misrepresentations").

24    **B.    Plaintiffs Also Fail To State A Claim Under The CLRA Because They Fail
         To Plead That They Are Consumers Who Purchased Or Leased Goods.**

25

26    Only consumers who purchased or leased goods or services have standing to allege

27 violations of the CLRA. Cal. Civ. Code § 1761(d); *In re Facebook Privacy Litig.*, 791 F. Supp.

28 at 717 ("A violation of the CLRA may only be alleged by a consumer."). The CLRA defines

14

"consumer" to mean "an individual who seeks or acquires, *by purchase or lease*, any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761(d) (emphasis added).  Plaintiffs do not allege that they purchased or leased goods or services from Facebook.  Nor can they.  As the Complaint acknowledges, Facebook offers free services to its users.  *See* FAC ¶ 17.  Accordingly, Plaintiffs are not consumers for purposes of the CLRA and cannot assert a claim under that statute.  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 716–17 (holding that "it is not possible for Plaintiffs to state a claim pursuant to CLRA" where they alleged Facebook "allows anyone . . . to register for its services free of charge"); *In re Yahoo!*, 2017 WL 3727318, at *32-33 (dismissing plaintiffs' CLRA claim because "[t]he mere fact that Yahoo gained some profit from Plaintiffs' use of Yahoo's free email services does not by itself show that Plaintiffs 'purchased' those services from Defendants").

### C.   Plaintiffs Fail To State A Claim For "Unfair" Or "Unlawful" Conduct Under The UCL

Plaintiffs allege a UCL claim under the "fraud," "unfair," and "unlawful" prongs.  FAC ¶¶ 45-55.  Plaintiffs' UCL claim must be dismissed in its entirety because they fail to plead it with sufficient particularity under Rule 9(b).  *See supra* Section IV.  Plaintiffs also have not pleaded "unfair" or "unlawful" conduct under the UCL for the additional reasons discussed below.

#### 1.   Plaintiffs Do Not Plead Facts Showing "Unfair" Conduct

Plaintiffs must satisfy either the "balancing" test set forth in *South Bay Chevrolet v. Gen Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-887 (1999), or the "tethering" test articulated in *Cel-Tech Commuc's, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185-187 (1999).  *See also Baba v. Hewlett-Packard, Co.*, No. C 09-05945 RS, 2010 WL 2486353, at *7 (N.D. Cal. June 16, 2010) (explaining that "the appropriate test to determine whether a practice is 'unfair' in a consumer case under California law remains uncertain" and applying both the balancing and tethering tests).  The Complaint does not satisfy either test.

Plaintiffs do not satisfy the balancing test because they do not allege facts establishing: (1) a substantial consumer injury; (2) that the injury is not outweighed by countervailing benefits to consumers; and (3) that the injury is one that consumers could not reasonably have avoided.

15

1   *See Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).  As discussed above,

2   Plaintiffs' inability to provide facts supporting a substantial (or any) consumer injury scuttles their

3   UCL "unfairness" claim.  *See supra* Section V (discussing lack of any injury).  Nor do Plaintiffs

4   offer any factual allegations that comport with Rule 9(b) describing how the benefits of uploading

5   call and text history—including improved friend recommendations and a better user experience on

6   apps provided at no cost to Plaintiffs—are outweighed by the alleged theoretical harm that

7   Plaintiffs assert.  *See Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1051 (N.D. Cal. 2014)

8   (applying Rule 9(b) and concluding Plaintiffs failed to satisfy the UCL's balancing test).

9   Plaintiffs also do not satisfy the tethering test, which requires that the public policy which

10  is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must

11  be "tethered to specific constitutional or statutory provision … or a regulation carrying out

12  statutory policy."  *Cel-Tech*, 20 Cal. 4th at 184.  The Complaint does not articulate any requisite

13  "tether" to a statutory policy.

14          **2.      Plaintiffs Do Not Plead Facts Showing "Unlawful" Conduct**

15  Because violations of the UCL's unlawful prong are predicated on the underlying causes

16  of action, Plaintiffs' failure adequately to plead violations of CLRA or CDAFA are fatal to their

17  claim of unlawful conduct under UCL.

18      **D.     Plaintiffs Fail To State A Claim For Violation Of CDAFA Because They Fail
            To Plead Unauthorized Access To A Computer That Caused Harm.**

19

20  Plaintiffs allege violations of Sections 502(c)(1)-(3) and (7) of CDAFA.  CDAFA prohibits

21  a person from knowingly accessing and without permission using any data, computer, computer

22  system, or computer network in a variety of ways.  *See United States v. Christensen*, 828 F.3d 763,

23  789 (9th Cir. 2015).  As discussed *supra* Section IV, the complete language of Facebook's prompt

24  makes clear that when Plaintiffs agreed to upload their contact lists, the same prompt asked for

25  their agreement to upload their call and text logs.  They could not have allowed one without the

26  other, and their claim of an absence of permission is not adequately pleaded.  *See Oracle USA,*

27  *Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 962 (9th Cir. 2018) (holding that plaintiffs cannot state a

28  claim under CDAFA where the defendant had authorization to take and use the information upon

16

which the CDAFA claim is based).  As also discussed *supra* Section V, Plaintiffs fail to allege economic injury, and thus have failed to plead the requisite statutory standing under CDAFA, which requires an allegation of "damage or loss by reason of a violation" of the statute.  *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 843 (N.D. Cal. 2017); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 933 (N.D. Cal. 2015) ("[T]he statutory standing analysis for [Section 502] coincides with the Article III analysis.").

Even apart from these flaws, Plaintiffs' allegations are insufficient because they merely track the statutory provisions.  Plaintiffs do not explain how Facebook allegedly "altered, deleted, damaged, or destroyed any data, computer, computer system, or computer network," *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08–05780 JW, 2010 WL 3291750, at *6 (N.D. Cal. July 20, 2010), nor do they explain how Facebook used their "computer services" within the meaning of CDAFA, *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018).  Plaintiffs' "boilerplate allegations" leave Facebook "to guess how Plaintiff[s] contend[] these subsections were violated" and thus fail to state a claim.  *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018), *on recons.*, No. 17-CV-02264-JSC, 2018 WL 3068248 (N.D. Cal. June 21, 2018) (dismissing CDAFA claim where boilerplate allegations failed to explain how "Uber use[d] data, a computer or a computer system to wrongfully obtain money," or "how Uber disrupt[ed] or den[ied] the use of computer services").

### E.   Plaintiffs Fail To State A Claim For Trespass To Chattel Because They Do Not Adequately Plead That They Were Deprived Of The Use Of Their Android Devices

To state a claim for trespass to personal property based on accessing a computer system, Plaintiffs must plead that the purported trespass (1) interfered with Plaintiffs' possessory interest in the computer system, and (2) Facebook's unauthorized use proximately resulted in damage to Plaintiffs.  *See eBay, Inc.*, 100 F. Supp. 2d at 1069-70; *see also Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 (1996).  In addition to their failure to adequately plead an "unauthorized use," *see supra* Section IV, that caused them damage, *see supra* Section V, Plaintiffs have failed to plead that Facebook interfered with any possessory interest.  *See eBay, Inc.*, 100 F. Supp. 2d at 1069-70.  Plaintiffs have not alleged (and cannot allege) that uploading contact information and

17

call and text logs obstructed the functioning of their Android devices.  *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1347 (2003) ("After reviewing the decisions analyzing unauthorized electronic contact with computer systems as potential trespasses to chattels, we conclude that under California law the tort does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning"); *see also In re Google Android Consumer Privacy Litig.,* No. 11–MD–02264, 2013 WL 1283236, *13 (N.D. Cal. Mar. 26, 2013) (dismissing trespass claim where plaintiff failed to plead "a significant reduction in service with the intended functioning of the system, which is necessary to establish a cause of action for trespass") (internal quotation omitted); *Ticketmaster Corp. v. Tickets.com*, No. 99-CV-7654, 2000 WL 1887522, at *4 (C.D. Cal. Aug. 10, 2000) ("A basic element of trespass to chattels must be physical harm to the chattel (not present here) or some obstruction of its basic function").

### F.     Plaintiffs Fail To State A Claim For Intrusion Upon Seclusion Because They Do Not Adequately Plead Conduct That Is Highly Offensive To A Reasonable Person

To state a common law claim for intrusion upon seclusion, Plaintiffs must allege: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person."  *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).  As discussed *supra* Section IV, the complete language of Facebook's prompt makes clear that Plaintiffs' claim of a reasonable expectation of privacy is not adequately pleaded.  *See Shulman*, 18 Cal. 4th at 232 (1998) (holding that a claim for intrusion upon seclusion is not viable unless the plaintiff had an "objectively reasonable expectation of seclusion or solitude in the place, conversation or data source").  Plaintiffs' conclusory allegations are otherwise insufficient to state a claim.

To determine what is "highly offensive to a reasonable person," courts generally consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."  *Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 306 F.3d 806, 819 (9th Cir. 2002).  "While what is 'highly offensive to a reasonable person' suggests a standard upon which a jury would properly be instructed, there is a preliminary determination of

18

'offensiveness' which must be made by the court in discerning the existence of a cause of action for intrusion." *Miller v. Nat'l Broadcasting Co.*, 187 Cal. App. 3d 1463, 1483 (1986); *see also Marich v. MGM/UA Telecomms., Inc.*, 113 Cal. App. 4th 415, 432 (2003) (finding that trial court did not err in concluding as a matter of law that conduct was not "highly offensive to a reasonable person"). Plaintiffs acknowledge that they agreed to upload their contact lists. They offer no factual allegations from which any inference could be drawn that Facebook uploading the non-content-based call and text logs would be "highly offensive to a reasonable person."

Courts have routinely dismissed even allegations based on the disclosure of *content*-based data that does not overcome the high bar for intrusion. *See, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014) (dismissing intrusion claim based on disclosure of users' data, including their name and identity, private contact list, and contents of communications, to third-party developers contrary to Google's policies, which did not overcome the "'high bar' for the requisite 'intrusion [that is] highly offensive to a reasonable person); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, at 1063 (N.D. Cal. June 12, 2012) (disclosure of personal data, including the person's age, gender, and geolocation information without one's knowledge and consent "does not constitute an egregious breach of social norms").

**G.    Plaintiffs Fail To State A Privacy Claim Under The California Constitution Because They Do Not Adequately Plead A Legally Protected Privacy Interest Or Serious Invasion of Privacy.**

A "plaintiff alleging an invasion of privacy in violation of the [California] constitutional right to privacy must establish . . . (1) a legally protected privacy interest; (2) a reasonable expectation of privacy . . . ; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill*, 7 Cal. 4th at 39-40. In addition to their failure to plead a reasonable expectation of privacy, *see supra* Section IV, Plaintiffs have not alleged facts supporting the other two elements of their claim.

Plaintiffs do not explain how the non-content-based call and text logs would be the type of "sensitive" and "confidential" personally identifiable information that is protected under the California constitution. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1039-40 (N.D. Cal. 2014) (explaining that no California or federal court had ever found that individuals have a legally

19

protected privacy interest or reasonable expectation of privacy in emails generally, as opposed to instances in which plaintiffs alleged the specific content of emails).  Plaintiffs assert in conclusory fashion that call and text logs are protected by the CDAFA, FAC ¶ 68, but that statute provides no protection for the frequency and duration type of information at issue here, particularly where Plaintiffs admit that they agreed to disclose their contacts, which include contact identities and phone numbers.  Indeed, Plaintiffs themselves disclosed their call and text logs in the publicly-filed Complaint.

Plaintiffs also offer no factual basis for establishing a serious invasion of privacy.  FAC ¶ 70.  "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."  *Hill*, 7 Cal. 4th at 37.  "[E]ven disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy."  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038; *see also Hill*, 7 Cal. 4th at 40 (observation of athletes urinating for purposes of drug testing did not violate California's constitutional right of privacy); *see also In re iPhone Application Litig.,* 844 F. Supp. 2d at 1063 (holding that the disclosure to third parties of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy sufficient to prove a serious invasion of a privacy interest); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (holding that allegations that plaintiff's social security number had been disclosed and created an increased risk of identity theft did "not approach th[e] standard" required under the California Constitution).  Moreover, when a company collects and uses personal information as part of a "routine commercial behavior," courts have held that conduct does not rise to the level of a serious invasion of privacy.  *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011).  Plaintiffs do not allege that Facebook's collection of call and text logs along with contact lists—which they alleged the Android operating system allowed *by default*—and incorporation of that data into users' profiles was any more invasive than routine commercial behavior.  FAC ¶¶ 1, 19-21.

LATHAM&WATKINS⸤⸤ᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

**H.**   **Plaintiffs' New York GBL Claim Fails Because California Law Applies And They Do Not Adequately Allege A Transaction That Took Place In New York And Caused Them Harm.**

Three of the Plaintiffs bring a claim under New York GBL Section 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. § 349(a). But all three admit that they installed the Facebook applications at issue, FAC ¶¶ 2, 3, 5, and therefore all three agreed to Facebook's Statement of Rights and Responsibilities. Ex. B, Statement of Rights and Responsibilities at 1, 7 (explaining that the Statement governs Facebook's relationship with "users and others who interact with Facebook" or "Facebook Services," which includes, but is not limited to "other media, brands, products, services, software …, devices, or networks now existing or later developed")); *cf. Thomas v. Facebook, Inc.*, 1:18-cv-00856-LJO-BAM, 2018 WL 3915585, at *1, 4 ("As a condition of signing up to use Facebook, Plaintiff agreed to the Facebook terms of use, known as the 'Statement of Rights and Responsibilities'"). That Statement provides that "[t]he laws of the State of California will govern … any claim that might arise between you and us, without regard to conflict of law provisions." Ex. B at 6. Plaintiffs cannot therefore bring a claim under Section 349. *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 934–35 (N.D. Cal. 2018) (dismissing deceptive practices claims brought by out-of-state plaintiffs under the laws of six other states because plaintiffs had agreed to a choice of law provision in Google's Terms of Sale, California has a substantial relationship to defendant Google, and the other states had not declined to apply California consumer law for public policy reasons); *Palomino v. Facebook. Inc.*, 16-cv-04230-HSG, 2017 WL 76901, at *3-4 (N.D. Cal. Jan. 9, 2017) (dismissing New Jersey consumer statutory claim based on Facebook choice of law clause).

In any event, to successfully assert a claim under this section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Plaintiffs also must plead that the alleged deceptive act or practice occurred in New York, *see Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195

21

1    (N.Y. 2002), which they do not.  FAC ¶¶ 2-3, 5 (failing to allege when and where the alleged

2    deception occurred).  Nor have they satisfied any of the other requirements of Section 349.

3         Plaintiffs fail to plead injury for all the reasons discussed *supra* Section V—their

4    allegations of "deprivation of income" and invasion of privacy fail even to satisfy the lower bar of

5    Article III standing.  *See also Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 176

6    (S.D.N.Y. 2017) (dismissing GBL § 349 claim for lack of Article III standing); *Toohey v. Portfolio*

7    *Recovery Assoc., LLC.,* No. 15-cv-8098 2017 U.S. Dist. LEXIS 111534*,* at *10, n. 17 (S.D.N.Y.

8    Aug. 22, 2016) (noting that the "GBL § 349 'actual injury' element requires something more than

9    the 'injury-in-fact' required to establish constitutional standing").  In addition, Plaintiffs' Section

10   349 claim requires a showing that Facebook's allegedly "material deceptive act[s] or practice[s]

11   . . . *caused actual . . . harm*."  *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,*

12   85 N.Y.2d 20, 26 (1995)  (emphasis added).  "An unquantifiable injury to a privacy interest

13   generally does not suffice.  *See, e.g.*, *Shostack v. Diller*, 15-CV-2255 (GBD) (JLC), 2015 WL

14   5535808, at *9 (S.D.N.Y. Sept. 16, 2015); *Smith v. Chase Manhattan Bank*, 293 A.D.2d 598, 598-

15   99 (N.Y. App. Div. 2002) (holding that plaintiffs who alleged defendant had  "without their

16   consent and without giving the plaintiffs an opportunity to opt-out . . . sold information to non-

17   affiliated third-party vendors, including the plaintiffs' names, addresses, telephone numbers,

18   account or loan numbers, credit card usage, and other financial data" had failed to allege an actual

19   injury under Section 349).  And as also discussed *supra* Section IV*,* Plaintiffs' failure to allege the

20   complete prompt precludes a finding that they adequately pleaded a "materially deceptive act or

21   practice."  *Haskins*, 654 F. App'x at 339.

22        **I.      Plaintiffs Cannot Bring A Standalone Claim For Unjust Enrichment**

23        Plaintiffs' unjust enrichment claim fails because there is no such independent cause of

24   action in California.  *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir.

25   2015).

26

27

28

1
## VII.    CONCLUSION

2    For these reasons, the Court should grant Facebook's motion to dismiss with prejudice.

3

4   DATED: September 25, 2018              LATHAM & WATKINS LLP

5                                          By:     /s/ Elizabeth L. Deeley
                                           Elizabeth L. Deeley (CA Bar No. 230798)
6                                          Nicole C. Valco (CA Bar No. 258506)
                                           505 Montgomery Street, Suite 2000
7                                          San Francisco, CA  94111-6538
                                           elizabeth.deeley@lw.com
8                                          nicole.valco@lw.com

9                                          Susan E. Engel (*pro hac vice*)
                                           Matthew J. Peters (*pro hac vice*)
10                                         555 Eleventh Street, NW, Suite 1000
                                           Washington, DC  20004
11                                         susan.engel@lw.com
                                           matthew.peters@lw.com

12
                                           *Attorneys for Defendant Facebook, Inc.*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MPA ISO MOTION TO DISMISS FAC
CASE NO. 3:18-CV-01881 RS