**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Interim Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WILLIAMS, TYOKA BRUMFIELD, WENDY BURNETT, LAWRENCE OLIN, HAROLD NYANJOM, SHERON SMITH-JACKSON, and JANICE VEGA-LATKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No.  3:18-cv-01881-RS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:        December 6, 2018<br>Time:        1:30 p.m.<br>Court:       Courtroom 3, 17th Floor<br><br>Hon. Richard Seeborg |

# **TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

ARGUMENT .........................................................................................................................5

I.      PLAINTIFFS ALLEGE ALL RELEVANT PROMPTS AND DISCLOSURES ..................................................................................................5

        A.     Plaintiffs Allege They Received A Standard Android Prompt Requesting Access To Their "Contact List" When They Installed The Facebook Apps At Issue .................................5

        B.     There Are No Further Relevant Prompts Or Disclosures .........................7

II.     PLAINTIFFS HAVE ARTICLE III STANDING TO ASSERT THEIR CLAIMS .......................................................................................................9

III.    PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE CDAFA ..........................14

IV.    PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION ....................16

V.     PLAINTIFFS STATE A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION .................................................19

VI.    PLAINTIFFS STATE A CLAIM FOR VIOLATION OF NEW YORK'S G.B.L. § 349 ....................................................................................................21

        A.     Facebook's Choice Of Law Clause Is Unenforceable.........................21

        B.     Plaintiffs Allege Every Element Of A G.B.L. § 349 Claim .................23

VII.   PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT...................................25

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Anonymous v. CVS Corp.*,
  728 N.Y.2d 333, 340 (N.Y.Sup.Ct.2001) ........................................................24

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ........................................................25

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ........................................................6

*Belluomini v. Citigroup Inc.*,
  2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) ........................................................19

*Bose v. Interclick, Inc.*,
  2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ........................................................22, 23, 24

*Bruton v. Gerber Prods. Co.*,
  703 Fed. Appx. 468 (9th Cir. 2017) ........................................................ Passim

*Capon v. Monopoly Game LLC*,
  193 Cal. App. 4th 344 (2011) ........................................................14

*Clapper v. Amnesty International*,
  133 S. Ct. 1138 (2013) ........................................................13

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ........................................................7

*Facebook, Inc. v. Power Ventures, Inc.*,
  2010 WL 3291750 (N.D. Cal. July 20, 2010) ........................................................14

*Gasser v. Kiss My Face, LLC*,
  2017 WL 4773426 (N.D. Cal. Oct. 23, 2017) ........................................................25

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........................................................16

*Goodman v. HTC Am., Inc.*,
  2012 WL 2412070 (W.D. Wash. June 26, 2012) ........................................................16, 20

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
  61 Cal. 4th 988, (2015) ........................................................25

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ..................................................................................16

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   865 P.2d 633 (Cal. 1994) ..............................................................................20

*In re Cellphone Fee Termination Cases*,
   193 Cal. App. 4th 298 (2011) .......................................................................14

*In re Facebook Biometric Info. Privacy Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) .............................................2, 22, 23

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015) ................................................................ Passim

*In re Google, Inc. Privacy Policy Litig.*,
   58 F.Supp.3d 968 (N.D. Cal. 2014) .........................................................18, 19

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. June 12, 2012)......................................18, 19

*In re Nickelodeon Consumer Privacy Litigation*,
   827 F.3d 262 (3d Cir. 2016) ..................................................1, 2, 12, 17

*In re Sony Gaming Networks and Customer Data Security Breach Litigation*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014)......................................................12, 13

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ........................................................................7, 8

*In re Vizio, Inc. Consumer Privacy Litigation*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................... Passim

*Keniston v. Roberts*,
   717 F.2d 1295 (9th Cir. 1983) ......................................................................25

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................20

*Meyerson v. Prime Realty Services, LLC*,
   7 Misc.3d 911, 796 N.Y.S.2d 848 (N.Y.Sup.Ct.2005) ................................24

*Monet v. Chase Home Finance, LLC*,
   2010 WL 2486376 (N.D. Cal. June 16, 2010)...............................................25

*National Union Fire Insurance Company of Pittsburgh, P.A. v. Resource Development Services, Inc.*,
   2012 WL 12920615 (N.D. Cal. Apr. 16, 2012)........................................2, 25

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962 (N.D. Cal. 2015) ...................................................................9, 13, 19, 21

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...........................................................................18, 19

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) .........................................................................................................25

*Pelletier v. Fed. Home Loan Bank of S.F.*,
   968 F.2d 865 (9th Cir. 1992) .........................................................................................................7

*Perez v. Monster Inc.*,
   2016 WL 234370 (N.D. Cal. Jan. 20, 2016) ...........................................................................14

*Peterson v. Cellco Partnership*,
   164 Cal. App. 4th 1583 (2008) ...................................................................................................13

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012) ...................................................................................................14

*Riley v. California*,
   573 U.S. __, 134 S.Ct. 2473 (2014) ...........................................................................................17

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) ...................................................................................21

*Shulman v. Group W Prods., Inc.*,
   18 Cal. 4th 200 (1998) ...................................................................................................................16

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................................................1, 11

*Stutman, v. Chemical Bank*,
   95 N.Y..2d 24, (N.Y. 2000) ...................................................................................................23, 24

*U.S. v. Jones*,
   132 S.Ct. 945 (2012) .......................................................................................................................20

*Van Patten v. Vertical Fitness Group, LLC*,
   847 F.3d 1037 (9th Cir. 2017) ...................................................................................................11

*Washington Mutual Bank, FA v. Superior Court*,
   15 P.3d 1071 (2001) .......................................................................................................................22

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................................................5

Cal. Civ. Code § 1750 .................................................................................................5

Cal. Penal Code § 502 ............................................................................................5, 15

New York's General Business Law § 349 .....................................................2, 5, 24, 25

**RULES**

Fed. R. Civ. P. 8(a) ................................................................................................1, 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Defendant Facebook, Inc. ("Facebook") argues that Plaintiffs have failed to meet the Rule 8(a) and 9(b) pleading standards because they purportedly "do not give Facebook notice of any … prompt containing any purported misrepresentation," and that Plaintiffs have failed to plead "an account of the time, place, and specific content of the false representations."  Def.'s Br. at 8 (internal citations omitted).  That is incorrect.  Initially, this is predominantly an "omissions" case, in that Plaintiffs allege Facebook failed to disclose its scraping practices.  *See*, *e.g.*, First Amended Consolidated Class Action Complaint ("FACC") ¶ 19.  ("Facebook Messenger and Facebook Lite apps for Android are programmed to surreptitiously scrape users' call logs and text data without their permission."); *id*. ¶¶ 2-8 ("Plaintiff[s] … did not consent to Facebook scraping [their] call and text logs.").  Regardless, Plaintiffs allege that "when users install the Facebook Messenger or Facebook Lite apps for Android, they are prompted to grant the Facebook Messenger and Facebook Lite apps access to the users' 'Contact List'" through a standardized Android prompt. *Id.* ¶ 20.  However, Facebook exploited a vulnerability in the Android operating system ("OS"), whereby granting access to the "Contact List" also granted access to users' call and text logs, which Facebook then collected and monetized for advertising purposes.  *Id.* ¶¶ 20-26.  Otherwise, there are no relevant prompts or disclosures at issue.  *See infra* § I.  Such allegations plainly meet the Rule 8 and 9 pleading standards.

Facebook next argues that Plaintiffs lack Article III standing, as they have purportedly failed to allege an "injury-in-fact."  That too is wrong.  *Every case* Facebook cites for a substantive point of law predates the U.S. Supreme Court's decision regarding standing in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Post-*Spokeo*, the improper collection and disclosure of user data can support Article III standing.  *See*, *e.g.*, *In re Vizio, Inc. Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1214-15 (C.D. Cal. 2017) (applying *Spokeo* and finding that plaintiffs had Article III standing where they alleged that defendant Vizio's televisions contained firmware that "collect and report consumers' content viewing histories"); *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 269 (3d Cir. 2016) (applying *Spokeo* and finding that plaintiffs –

including California plaintiffs sitting in diversity jurisdiction – had Article III standing where defendant Nickelodeon installed tracking "cookies" to monitor the web browsing and viewing habits of its website visitors).

The remainder of Facebook's arguments miss the mark.  As for Plaintiffs' claim for violation of California's Computer Data Access and Fraud Act ("CDAFA"), Plaintiffs have properly alleged that Facebook "alter[ed], damage[d], delete[d], destroy[ed], or otherwise use[d] any data, computer, computer system, or computer network" under Section 502(c)(1) of the Act. As for intrusion upon seclusion and invasion of privacy, Plaintiffs have established that Facebook's conduct would be "highly offensive to a reasonable person."  *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 151 (3d Cir. 2015); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267, 292.  As for violation of New York's General Business Law ("G.B.L.") § 349, the same choice of law clause that Facebook relies on here was recently found unenforceable in this District, and Plaintiffs otherwise allege every element of their claim.  *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1168-70 (N.D. Cal. 2016).  As for unjust enrichment, contrary to Facebook's assertions, this Court and the Ninth Circuit have already concluded that such a claim may be brought as a stand-alone cause of action.  *E.g.*, *National Union Fire Insurance Company of Pittsburgh, P.A. v. Resource Development Services, Inc.*, 2012 WL 12920615, at *4-5 (N.D. Cal. Apr. 16, 2012) (Seeborg, J.) (denying motion to dismiss as to a claim for unjust enrichment); *Bruton v. Gerber Prods. Co.*, 703 Fed. Appx. 468, 470 (9th Cir. 2017) (reversing dismissal of unjust enrichment claim).[1]

## FACTUAL BACKGROUND

Facebook is the world's leading social networking platform.  FACC ¶ 13.  Facebook users can add each other as online "friends," exchange messages, post status updates, read current events, share photos, videos, and links, and receive notifications of other users' activity.  *Id.* ¶ 13. Facebook may be accessed by a large range of devices with Internet connectivity, such as desktops, laptops and tablet computers, and smartphones.  *Id.* ¶ 14.  For example, users can access Facebook by visiting the website www.facebook.com using their web browser on their desktop computer,

---

[1] Plaintiffs do not oppose dismissal of the trespass to chattel, UCL and CLRA claims.

laptop, phone, or tablet.  *Id.*  Alternatively, users can access the Facebook platform by installing smartphone apps developed by Facebook.  *Id.*

At issue in this matter are the Facebook Messenger and Facebook Lite smartphone applications for Android, which is a standardized Linux-based mobile operating system developed primarily by Google and the Open Handset Alliance.  *Id.* ¶¶ 1-8, 26-27.  Here, Plaintiffs allege that Facebook "exploited a vulnerability in the permission settings for the Facebook Messenger and Facebook Lite smartphone applications ('apps') in prior versions of the Android operating system," which allowed Facebook to "scrape[] *years'* worth of call and text data, including whether each call was 'Incoming,' 'Outgoing,' or 'Missed,' the date and time of each call, the number dialed, the individual called, and the duration of each call."  *Id.* ¶ 1.

Specifically, on March 24, 2018, a leading technology news website called Ars Technica reported that Facebook was able to scrape call and text data by exploiting a vulnerability in prior versions of the Android permission settings.  *Id.* ¶¶ 20-21.  When installing Android apps – through the Google Play Store – users will receive an Android prompt asking them to grant the app various categories of permissions on their phone:  access to location data, photographs, music, etc.  *Id.*[2] Here, users of Facebook Messenger and Facebook Lite received an Android prompt during the initial installation requesting permission for the apps to access to their phone's "Contact List."  *See id.* ¶ 1 ("When users install these apps, they are prompted to grant Facebook access to their 'Contact List.'"); *see id.* ¶ 20 ("[W]hen users install the Facebook Messenger or Facebook Lite apps for Android, they are prompted to grant the Facebook Messenger and Facebook Lite apps access to the users' 'Contact List' on their Android devices.").

However, prior to Android version 4.1, granting Facebook Messenger and Facebook Lite access to users' "Contact List" also granted Facebook Messenger and Facebook Lite access to users' call and text logs by default.  *Id.* ¶ 21.  This vulnerability was patched in later versions of the Android OS, but Android applications (including Facebook Messenger and Facebook Lite) could

---

[2] If the Court is more familiar with Apple's iPhones, there is a substantially similar procedure in iOS where apps will request various categories of permissions during the initial installation. Likewise, the Google Play Store on Android functions substantially similar to Apple's App Store.

bypass this patch by specifying that they were using an older, pre-patched version of the Android Software Development Kit ("SDK"). *Id.* Ultimately, the Android OS fully deprecated this functionality in all versions of the Android SDK in October 2017. *Id.* This coincides with the date in which the Facebook Messenger and Facebook Lite apps stopped scraping call and text logs. *Id.*[3] Additionally, the Open Handset Alliance, the working group responsible for developing the Android OS, announced that it plans to change the permission settings in the next version of Android by creating a new "opt-in" permission group for call and text data, which would serve to prevent or curtail the exact data scraping practices at issue here. *Id.* ¶ 26.

Plaintiffs allege that Facebook failed to disclose its scraping practices. *Id.* ¶ 19. ("Facebook Messenger and Facebook Lite apps for Android are programmed to surreptitiously scrape users' call logs and text data without their permission."). A Facebook spokesperson also misrepresented the purpose of granting the Facebook Messenger and Facebook Lite apps access to the users' "Contact List." *Id.* ¶ 20 ("As explained by a Facebook spokesperson: 'The most important part of apps and services that help you make connections is to make it easy to find the people you want to connect with. So, the first time you sign in on your phone to a messaging or social app, it's a widely used practice to begin by uploading your phone contacts.' In plain English, Facebook purports to use contact data as a component of its friend recommendation algorithm.").

In turn, "Facebook then incorporates these data into its profile on each user, which it monetizes for advertising purposes." *Id.* ¶ 1. That is, Facebook utilizes its collected user data to "sell[] advertising space on its platforms and services," whereby "[a]dvertisers are enticed to place ads with Facebook due to its ability to target specific demographics and interest groups through each company's collection of User Data." *Id.* ¶ 18. Additionally, Facebook has "agreements in place to share its user data with 61 different entities," including Apple, UPS, Microsoft, Blackberry, and Samsung. *Id.* ¶ 25.

Plaintiffs are consumers from the states of California, New York, Kansas, Texas, and

---

[3] By comparison, apple's iOS has never allowed silent access to call and text logs. *Id.* ¶ 21.

Florida.  Plaintiffs allege as follows:

> Plaintiff[s] … installed the Facebook Messenger and Facebook Lite
> app[] on [their] Android smartphone[s] during the relevant time
> period, and prior to October 2017, for [their] personal and household
> use.  Plaintiff[s] … did not consent to Facebook scraping [their] call
> and text logs.  The Facebook Messenger and Facebook Lite apps
> scraped [their] call and text logs, transferred them to Facebook, and
> monetized these data for advertising purposes.  Plaintiff[s] … did not
> understand that Facebook Messenger and Facebook Lite would
> scrape [their] call and text logs.  Plaintiff[s] … would not have
> installed or used the Facebook Messenger and Facebook Lite apps
> had [they] known the truth about the apps' practice of scraping call
> and text logs.  Facebook's omissions concerning its practice of
> scraping call and text logs played a substantial part, and so had been
> a substantial factor, in [their] decision to install and use Facebook
> Messenger and Facebook Lite.

*Id*. ¶¶ 2-8.  Plaintiffs bring claims for violations of California's Consumers Legal Remedies Act,

Cal. Civ. Code §§ 1750, *et seq*.; California's Unfair Competition Law, Cal. Bus. & Prof. Code

§§ 17200-10; California's Computer Data Access and Fraud Act, Cal. Penal Code § 502;

California's constitutional right to privacy; intrusion upon seclusion; trespass to personal property;

New York's General Business Law § 349; and unjust enrichment.

## ARGUMENT

## I.  PLAINTIFFS ALLEGE ALL RELEVANT PROMPTS AND DISCLOSURES

### A.  Plaintiffs Allege They Received A Standard Android Prompt Requesting Access To Their "Contact List" When They Installed The Facebook Apps At Issue

Facebook argues that Plaintiffs "do not give Facebook notice of any … prompt containing

any purported misrepresentation."  Def.'s Br. at 8.  Facebook also contends that Plaintiffs have

failed to plead "an account of the time, place, and specific content of the false representations."

Def.'s Br. at 8 (internal citations omitted).  Facebook then reasons that "without the language of the

prompt, Plaintiffs have failed to satisfy their Rule 8 pleading burden, … let alone the heightened

Rule 9 standard that is required for their averments of fraud."  Def.'s Br. at 8 (internal citations

omitted).  That is wrong.

This is predominantly an "omissions" case based on Facebook's failure to disclose its

scraping practices.  FACC ¶ 19.  ("Facebook Messenger and Facebook Lite apps for Android are programmed to surreptitiously scrape users' call logs and text data without their permission."); *see also id.* ¶¶ 2-8 ("Plaintiff[s] … did not consent to Facebook scraping [their] call and text logs."); *id.* ("Plaintiff[s] … did not understand that Facebook Messenger and Facebook Lite would scrape [their] call and text logs."); *id.* ("Plaintiff[s] … would not have installed or used the Facebook Messenger and Facebook Lite apps had [they] known the truth about the apps' practice of scraping call and text logs."); *id.* ("Facebook's omissions concerning its practice of scraping call and text logs played a substantial part, and so had been a substantial factor, in [Plaintiffs'] decision to install and use Facebook Messenger and Facebook Lite.").

Regardless, Plaintiffs have alleged that "when users install the Facebook Messenger or Facebook Lite apps for Android, they are prompted to grant the Facebook Messenger and Facebook Lite apps access to the users' 'Contact List'" through a standardized Android prompt. *Id.* ¶ 20.  Thus, Plaintiffs have alleged:  (i) the nature of the prompt (*i.e.*, a standard Android prompt), (ii) when the prompt occurs (*i.e.*, when users install the Facebook Messenger or Facebook Lite smartphone applications for Android), (iii) where the prompt appears (*i.e.*, on users' Android smartphones), and (iv) the purpose of the prompt (*i.e.*, requesting permission for Facebook Messenger and Facebook Lite to access the phone's "Contact List").  *Id.* ¶¶ 1-8, 19-26.  Moreover, Plaintiffs allege that a Facebook spokesperson misrepresented the purpose of granting the Facebook Messenger and Facebook Lite apps access to the users' "Contact List."  *Id.* ¶ 20.

Accordingly, Plaintiffs have met the notice pleading standard under Rule 8(a), which requires well-pled complaints "to contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Plaintiffs have also pled their fraud-based claims with sufficient particularity.  Rule 9(b) requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  In other words, allegations of fraud must be accompanied by "who, what, when, where, and how."  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

Cir. 1997).  On a motion to dismiss, the court must read the complaint generously, accepting all allegations as true, and draw all reasonable inferences in favor of the nonmoving party.  *See Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992).  In sum, the allegations in the Complaint provide "all of the essential factual background that would accompany the first paragraph of any newspaper story – that is the 'who, what, when, where and how' of the events at issue."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (citations omitted).

## B.    There Are No Further Relevant Prompts Or Disclosures

Facebook argues there is another prompt at issue that "is disclosed in the March 24, 2018 *Ars Technica* article."  Def.'s Br. at 7.  Facebook argues that this prompt, a screenshot of which appears on page 3 of its brief,[4] instructs users to "[c]ontinuously upload info about your contacts like phone numbers and nicknames, and your call and text history."  *Id.* at 3.  That is wrong.

Plaintiffs were aware of this prompt.  However, it is not alleged in Plaintiffs' complaint for a simple reason:  there is no evidence this prompt was displayed to any users during the class period.  In fact, there is evidence that the prompt was <u>not</u> in use during the class period.

First, in the March 24, 2018 Ars Technica article referenced in Plaintiffs' complaint, the prompt appears *directly above* text that reads:  "This screen in the Messenger application offers to conveniently track all your calls and messages.  <u>But Facebook was already doing this surreptitiously on some Android devices until October 2017</u>, exploiting the way an older Android API handled permissions."  Valco Decl., Ex. A (emphasis added).  This language would indicate that the prompt was a later addition to the app, after October 2017.  Similarly, the Ars Technica article further states that "in recent versions of the Messenger application for Android and Facebook Lite devices, <u>a more explicit request is made to users for access to call logs and SMS logs</u> on Android and Facebook Lite devices.  <u>But even if users didn't give that permission to Messenger, they may have given it inadvertently for years</u> through Facebook's mobile apps –

---

[4] To clear up any possible confusion, the prompt discussed at page 3 of Facebook's brief is <u>not the same prompt</u> as the Android prompt asking users to grant Facebook Messenger and Facebook Lite access to their "Contact List," discussed above.

because of the way Android has handled permission for accessing call logs in the past." *Id.*

Second, the Ars Technica article interviews several users, who reported receiving no disclosure that Facebook would scrape their call and text data: "Dylan McKay told Ars [Technica] that he installed Messenger in 2015, but [he] only allowed the app the permissions in the Android manifest that were required for installation.  He says he removed and reinstalled the app several times over the course of the next few years, but <u>never explicitly gave the app permission to read his SMS records and call history</u>." *Id.*  This experience was further corroborated by the Ars Technica reporter's own experiences:  "Facebook was installed on a Nexus tablet that I used and on the Blackphone 2 in 2015, and <u>there was never an explicit message requesting access to phone call and SMS data</u>.  Yet there is call data from the end of 2015 until late 2016 …."). *Id.*

Third, based on these sources of evidence, Ars Technica concludes that "[w]hile data collection was technically 'opt-in,' in both these cases the opt-in was the default installation mode for Facebook's application, not a separate notification of data collection.  <u>Facebook never explicitly revealed that the data was being collected</u>, and it was only discovered as part of a review of the data associated with the accounts." *Id.*

Fourth, Ars Technica further reported that "Facebook began explicitly asking permission from users of Messenger and Facebook Lite to access SMS and call data to 'help friends find each other' after being publicly shamed in 2016 over the way it handled the 'opt-in' for SMS services.  <u>That message mentioned nothing about retaining SMS and call data</u>, but instead it offered an 'OK' button to approve 'keeping all your SMS messages in one place.'" *Id.*

Fifth, the prompt that appears on page 3 of Facebook's brief is the prompt for Facebook Messenger – not Facebook Lite.  Facebook has not provided any prompts for Facebook Lite.  *See* Def.'s Br. n.2.  Nor has Facebook provided any information as to when the prompt was in effect.  *See generally* Def.'s Br.; Valco Decl.

In sum, there is every indication that the prompt appearing on page 3 of Facebook's brief was not in use during the class period (nor is any such prompt provided for Facebook Lite).  Accordingly, it is not relevant, and Plaintiffs have properly omitted it from their Complaint.

## II. PLAINTIFFS HAVE ARTICLE III STANDING TO ASSERT THEIR CLAIMS

Facebook argues that "Plaintiffs' generalized allegations do not allege any injury in fact to *themselves*." Def.'s Br. at 10 (internal quotations omitted). Stated otherwise, Facebook contends that "[w]hile Plaintiffs alleged generally that Facebook shares user data with third parties, FAC ¶ 25, Plaintiffs do not allege that such data sharing included call and text logs, nor do they allege that any of *their own* data was shared with third parties." *Id.* (emphasis in original). That is wrong.

Here, Plaintiffs allege that Facebook had a uniform practice of "exploit[ing] a vulnerability in the permission settings for the Facebook Messenger and Facebook Lite smartphone applications ('apps') in prior versions of the Android operating system" to scrape call and text data from its users. *Id.* ¶ 1. Stated otherwise, Plaintiffs alleged that Facebook engaged in a consistent, systematic endeavor to collect call and text data from users of the smartphone applications at issue. *Id.* Accordingly, Plaintiffs plausibly allege that their data, too, was subject to Facebook's collection. *See id.* ¶¶ 2-8; *see also*, *e.g.*, *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 134 (3d Cir. 2015) (finding that plaintiffs had standing to assert claims based on defendants' uniform and systematic practice of "exploiting[] loopholes in both the Safari cookie blocker and the Internet Explorer cookie blocker" to install tracking cookies); *In re Vizio, Inc. Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1214-15 (C.D. Cal. 2017) (finding that plaintiffs had Article III standing involving allegations that defendants' televisions "collect and report consumers' content viewing histories"); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 991 (N.D. Cal. 2015) (finding that plaintiffs had Article III standing involving allegations that defendants' portable electronics collected user data).

Next, Facebook argues that Plaintiffs lack Article III standing because "[t]here is not a single allegation that the call and text logs have any value to advertisers." Def.'s Br. at 11. Facebook also contends that "Plaintiffs make no allegation that the call and text logs had any value to begin with." *Id.* at 12. Facebook further argues that Plaintiffs "do not plead that Facebook disseminated any call and text logs, let alone their individual call and text logs." *Id.* at 12. Facebook also argues that "Plaintiffs do not plead that the frequency and duration of their calls are particularly sensitive private information," and that "Plaintiffs also admit that they allowed

Facebook to upload their <u>contact lists</u>, which means they agreed to disclose to Facebook their relationship with the second person on the call or text log." *Id.* at 12-13.  Each of these arguments are based on a plain misreading of the Complaint.

Contrary to Facebook's bald assertions, the Complaint plainly alleges that:  (i) "Facebook scrapes *years'* worth of call and text data, including whether each call was 'Incoming,' 'Outgoing,' or 'Missed,' the date and time of each call, the number dialed, the individual called, and the duration of each call," FACC ¶ 1; (ii) "Facebook then incorporates these data into its profile on each user, which it monetizes for advertising purposes," *id.*; (iii) "[t]he Facebook Messenger app scraped [each Plaintiffs'] call and text logs, transferred them to Facebook, and monetized these data for advertising purposes," *id.* ¶¶ 2-8; (iv) "Plaintiff[s] did not understand that Facebook Messenger and Facebook Lite would scrape [their] call and text logs," *id.*; (v) "Plaintiff[s] would not have installed or used the Facebook Messenger and Facebook Lite apps had [they] known the truth about the apps' practice of scraping call and text logs," *id.*; (vi) "[a]s a core component of its business, Facebook collects and compiles User Data" by "offering free services to Internet users, in exchange for the collection of User Data," *id.* ¶ 17; (vi) the online advertising industry is "a duopoly between Facebook and Google," who collectively "comprise more than 60% of online advertising in the United States," *id.* ¶ 16; (vii) Facebook is "a leading social media website with over 214 million users in the United States, and over $10 billion of annual advertising sales," *id.* ¶ 17; (viii) Facebook "monetizes User Data by selling advertising space on its platforms and services," and "[a]dvertisers are enticed to place ads with Facebook due to its ability to target specific demographics and interest groups through [its] collection of User Data," *id.* ¶ 18; (ix) Facebook "shares or disseminates the scarped user data with … 61 entities," including "Apple, UPS, Microsoft, Blackberry, and Samsung," *id.* ¶ 25; and (x) "[f]or all intents and purposes, Facebook's dominance over online advertising is maintained and perpetuated by its treasure trove of User Data," *id.* ¶ 18.  Accordingly, it is absurd for Facebook to argue that Plaintiffs have failed to allege that their user data carries value, or that Facebook disclosed and sold it to third parties.

In recent cases that post-date the U.S. Supreme Court's ruling in *Spokeo, Inc. v. Robins*,

136 S. Ct. 1540, 1547 (2016), courts overwhelmingly conclude that plaintiffs have Article III standing in the context of privacy class actions.  For example, in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017), the Ninth Circuit, applying *Spokeo*, noted that "[a]ctions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts," and further found that plaintiffs had Article III standing to assert their privacy claims.

In *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 134 (3d Cir. 2015) ("*In re Google*"), plaintiffs were consumers from California and other states sitting in diversity jurisdiction bringing claims based on the privacy rights conferred under the California constitution and applicable California privacy torts, who alleged that defendants had placed tracking cookies in users' browsers, in violation of browser settings to the contrary.  *See id.* ("Google and the other defendants had discovered, and were surreptitiously exploiting, loopholes in both the Safari cookie blocker and the Internet Explorer cookie blocker.").  In its ruling, the Third Circuit concluded that plaintiffs had standing, and that "defendants' emphasis on economic loss is misplaced:"

> For purposes of injury in fact, the defendants' emphasis on economic loss is misplaced.  In assessing injury in fact, we look for an "invasion ... which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  Though the "injury must affect the plaintiff in a personal and individual way," this standard does not demand that a plaintiff suffer any particular type of harm to have standing.  Consequently, and contrary to the contentions of the defendants, a plaintiff need not show actual monetary loss for purposes of injury in fact.  Rather, "the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."  Sure enough, the Supreme Court itself has permitted a plaintiff to bring suit for violations of federal privacy law absent any indication of pecuniary harm.
>
> The Plaintiffs here base their claims on highly specific allegations that the defendants, in the course of serving advertisements to their personal web browsers, implanted tracking cookies on their personal computers.  Irrespective of whether these allegations state a claim, the events that the complaint describes are concrete, particularized, and actual as to the plaintiffs.  To the extent that the defendants believe that the alleged conduct implicates interests that are not

1

legally protected, this is an issue of the merits rather than of
standing.

2

*Id.* at 134 (footnotes and internal citations omitted).

3

In *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 269 (3d Cir. 2016) ("*In re*

4

*Nickelodeon*"), *cert. denied sub nom. C.A.F. v. Viacom Inc.*, 137 S. Ct. 624, 196 L. Ed. 2d 516

5

(2017), plaintiffs alleged that defendant Nickelodeon installed tracking "cookies" to monitor the

6

web browsing and viewing habits of its website visitors, which are predominantly minors.  In its

7

ruling, the Third Circuit considered an argument that "the disclosure of information about the

8

plaintiffs' online activities does not qualify as an injury-in-fact."  *Id.* at 273.  Applying *Spokeo*, the

9

Third Circuit explained that such facts confer Article III standing:

10

Intangible harms that may give rise to standing also include harms
that "may be difficult to prove or measure," such as unlawful denial

11

of access to information subject to disclosure.  What a plaintiff
cannot do, according to the Court, is treat a "bare procedural

12

violation … [that] may result in no harm" as an Article III
injury-in-fact.  The Court provided two examples, including a

13

defendant's failure to comply with a statutory notice requirement
and, in the context of the Fair Credit Reporting Act, the

14

dissemination of inaccurate information about a plaintiff, such as an
incorrect zip code, that does not "cause harm or present any material

15

risk of harm."

16

None of these pronouncements calls into question whether the

17

plaintiffs in this case have Article III standing.  The purported injury
here is clearly particularized, as each plaintiff complains about the

18

disclosure of information relating to his or her online behavior.
While perhaps "intangible," the harm is also concrete in the sense

19

that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of
legally protected information.

20

21

*Id.* at 273-74 (footnotes and internal citations omitted).

22

In *In re Sony Gaming Networks and Customer Data Security Breach Litigation*, 996 F.

23

Supp. 2d 942, 954-56 (S.D. Cal. 2014), plaintiffs were consumers who subscribed to the popular

24

Sony PlayStation Network gaming service, and whose personal data were then stolen in a well-

25

publicized hacking incident.  In denying defendant's motion to dismiss, the court concluded that

26

"courts in this circuit have routinely denied motions to dismiss based on Article III standing where

27

a plaintiff alleges that his personal information was collected and then wrongfully disclosed:"

28

> Courts in this circuit have routinely denied motions to dismiss based on Article III standing where a plaintiff alleges that his personal information was collected and then wrongfully disclosed, as opposed to alleging that his personal information was collected without his consent. …
>
> Therefore, the Court finds Plaintiffs' allegations that their Personal Information was collected by Sony and then wrongfully disclosed as a result of the intrusion sufficient to establish Article III standing at this stage in the proceedings.  Although Sony argues that Plaintiffs' allegations are insufficient because none of the named Plaintiffs have alleged that their Personal Information was actually accessed by a third party, neither *Krottner* nor *Clapper* [*v. Amnesty International*, 133 S. Ct. 1138 (2013)] require such allegations.  Instead, Plaintiffs have plausibly alleged a "credible threat" of impending harm based on the disclosure of their Personal Information following the intrusion.

*Id.* at 962; *see also In re Vizio, Inc. Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1214-15 (C.D. Cal. 2017) (applying *Spokeo* and finding that plaintiffs had Article III standing where they alleged that defendant Vizio's televisions contained firmware that "collect and report consumers' content viewing histories"); *Opperman*, 84 F. Supp. 3d at 991 (finding that plaintiffs had Article III standing to bring a claim for intrusion upon seclusion based on portable smartphones, tablets, and music players that collected personal data); *see also id.* at 1060 ("The menu prompts notified users that the app would scan their address books. Although the prompts required Plaintiffs to consent, Plaintiffs' expectation of privacy in that circumstance was still reasonable.  Plaintiffs allege that they would not have consented had they known that their apps would not only scan their address books to determine whether their friends were using the same app, but then upload the address books to the app developer for other purposes.").

Lastly, Facebook contends that "Plaintiffs do not appear to allege any injury at all in their unjust enrichment count."  Def.'s Br. at 10 n.4.  However, allegations of unjust retention of monies are also sufficient to constitute economic harm.  *See Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008) ("The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another.") (internal quotation marks omitted); *Capon v. Monopoly Game LLC*, 193 Cal. App. 4th 344 (2011); *In re Cellphone Fee Termination Cases*, 193 Cal. App. 4th 298, 308 (2011); *see also Perez v. Monster Inc.*, 2016 WL

234370, at *8 (N.D. Cal. Jan. 20, 2016) ("The Ninth Circuit, in *Astiana*, allowed a court to construe an unjust enrichment cause of action as a quasi-contract cause of action, even if the plaintiff did not so identify."); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (finding unjust enrichment where plaintiff alleged she did not receive paid-for data security protections).

Facebook's cases regarding standing are inapposite, because *every case* Facebook cites for a substantive point of law pre-dates *Spokeo*. Accordingly, Plaintiffs' citations are more current and better reflect the state of Article III standing in the context of privacy class actions.

## III.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE CDAFA

Facebook argues that "the complete language of Facebook's prompt makes clear that when Plaintiffs agreed to upload their contact lists, the same prompt asked for their agreement to upload their call and text logs." Def.'s Br. at 16. Facebook also argues that "Plaintiffs fail to allege economic injury, and thus have failed to plead the requisite standing under the CDAFA." *Id.* at 17. That is wrong. Both of these arguments are discussed above, at §§ I-II. *See supra.*

Next, Facebook argues that "Plaintiffs do not explain how Facebook allegedly altered, deleted, damaged, or destroyed any data, computer, computer system, or computer network" under the CDAFA. Def.'s Br. at 17. That too is wrong.

As an initial matter, Plaintiffs bring claims under Section 502(c)(1)-(3) and (7) of the CDAFA. *See* FACC ¶¶ 58-61. However, only Section 502(c)(1) requires Plaintiffs to allege that Facebook "alter[ed], damage[d], delete[d], destroy[ed], or otherwise use[d] any data, computer, computer system, or computer network." Sections 502(c)(2), (3), and (7) have no such requirement. *See* Cal. Penal Code § 502 (c)(1)-(3), (7); *see also Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *6 (N.D. Cal. July 20, 2010) ("Here, Facebook does not allege that Power has altered, deleted, damaged, or destroyed any data, computer, computer system, or computer network, so the subsections that require that type of action are not applicable. However, the Court finds that the following subsections of Section 502 do not require destruction of data, and thus may apply here:  Section 502(c)(2) … Section 502(c)(3) … [and] Section 502(c)(7)") (emphasis added). Thus, Plaintiffs' claims under Section 502(c)(2), (3), and (7) should proceed.

Even so, Plaintiffs allege a violation of Section 502(c)(1).  Section 502(c)(1) makes it unlawful to "[k]nowingly access[] and without permission alter[], damage[], delete[], destroy[], <u>or otherwise use[]</u> any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data."  Cal. Penal Code § 502 (c)(1).  Here, Plaintiffs allege that Facebook "used" "data" "without permission" in order to "deceive" and "wrongfully control or obtain money, property, or data."  *See* FACC ¶ 1 (alleging that Facebook "exploited a vulnerability in the permission settings for the Facebook Messenger and Facebook Lite smartphone applications ('apps') in prior versions of the Android operating system," which allowed Facebook to 'scrape[] *years'* worth of call and text data"); *id.* ¶ 24 ("Facebook never explicitly revealed that the data was being collected," and that "there was never an explicit message requesting access to phone call and SMS [text] data."); *id.* ¶ 91 ("Plaintiff and Class members conferred a benefit upon Defendant by providing it, unwittingly, with call logs and text data.  Defendant profited from this collection of data by incorporating it into its profile on each user, which it monetized for advertising purposes.").  Nothing more is required.  *See* Cal. Penal Code § 502 (c)(1).

Finally, Facebook argues that Plaintiffs do not "explain how Facebook used their 'computer services' within the meaning of the CDAFA."  Def.'s Br. at 17.  That is false.  Under the CDAFA, "'[c]omputer services' includes, but is not limited to, computer time, data processing, or storage functions, Internet services, electronic mail services, electronic message services, or other uses of a computer, computer system, or computer network."  *See* Section 502(b)(4).  Here, Plaintiffs' allegations plainly concern Facebook's use of "storage functions" and "Internet services" on their smartphones, which <u>necessarily</u> include (i) computing resources to scan and collect the data (*i.e.*, CPU and RAM), (ii) storage space, and (iii) Internet resources (*i.e.*, Wi-Fi and 4G) to transmit the data to Facebook.  *See*, *e.g.*, FACC ¶ 1 (alleging that Facebook accessed and made use of phone storage, including that "Facebook scrapes years' worth of call and text data" stored on Android

1    users' cell phones).[5]

2    **IV.    PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION**

3          Facebook argues that Plaintiffs fail to state a claim for intrusion upon seclusion because

4    Plaintiffs "offer no factual allegations from which any inference could be drawn that Facebook

5    uploading the non-content-based call and text logs would be 'highly offensive to a reasonable

6    person.'" Def.'s Br. at 19.  That is wrong.

7          "A privacy violation based on the common law tort of intrusion has two elements."

8    *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285 97 (2009).  "First, the defendant must

9    intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable

10    expectation of privacy." *Id.*  This means "the defendant must have 'penetrated some zone of

11    physical or sensory privacy … or obtained unwanted access to data' by electronic or other covert

12    means, in violation of the law or social norms." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200,

13    231 (1998)).  Second, "the intrusion must occur in a manner highly offensive to a reasonable

14    person." *Id.*  "California tort law provides no bright line on ['offensiveness']; each case must be

15    taken on its facts." *Hernandez*, 47 Cal. 4th at 287 (quoting *Shulman,* 18 Cal. 4th at 237).

16    Collection of intimate or sensitive personally identifiable information may amount to a highly

17    offensive intrusion.  *See*, *e.g.*, *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *14-15 (W.D.

18    Wash. June 26, 2012); *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D.

19    Cal. 2017) (same).  And here, the U.S. Supreme Court recently confirmed that persons' mobile

20    devices and the data thereon is subject to a clear, comprehensive, and heightened expectation of

21    privacy.  *See*, *e.g.*, Riley *v. California*, 573 U.S. __, 134 S.Ct. 2473, 2488-89 (2014).

22

23

24    [5] The authority relied upon by Facebook, *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078
      (N.D. Cal. 2018) is inapposite because there, the plaintiffs' allegations were truly "boilerplate," as

25    they merely recited various subsections of the CDAFA without any further elaboration.  *See id.* at
      1090 ("[D]id Uber use data, a computer or a computer system to wrongfully obtain money?  …

26    What was it that it did without permission?  Neither Uber nor the Court should have to guess how
      Plaintiff contends these subsections were violated.").  Here, Plaintiffs' allegations are not

27    "boilerplate" because they describe, in detail, how Facebook exploited a software vulnerability to
      wrongfully access data that was stored on Facebook users' Android phones in order to, among

28    other things, "deceive" and "wrongfully obtain money."

*In re Google*, 806 F.3d at 125 is instructive.  There, the plaintiffs alleged that "defendants, who run internet advertising businesses, placed tracking cookies on the plaintiffs' web browsers in contravention of their browsers' cookie blockers and defendant Google's own public statements." 806 F.3d at 130.  In analyzing whether Google's conduct was "highly offensive," the Third Circuit focused on the fact that Google's conduct was "characterized by deceit and disregard," that Google "held itself out as respecting the cookie blockers" despite its actual behavior to the opposite, and that "Google's alleged conduct was broad, touching untold millions of internet users; it was surreptitious, surfacing only because of the independent research of Mayer and the Wall Street Journal." *Id.* at 151.

Here, similarly, Plaintiffs allege that their data was surreptitiously obtained through deceit. Facebook asked for to access to "Contact Lists" but actually scraped entirely different user data without notification or permission.  *See, e.g.*, FACC ¶¶ 1, 19-20.  As in *In re Google*, Plaintiffs are "entitled to rely on the public promises of the companies they deal with."  806 F.3d at 151.  Yet here, users were given no meaningful opportunity to deny consent, and *nowhere* did Facebook inform its users that by granting Facebook access to their "Contact Lists," users would also grant Facebook unfettered access to *years*' worth of call land text data, which Facebook would monetize for advertising purposes.  FACC ¶ 25; *see also id.* ¶¶ 2-8 (alleging that plaintiffs "did not consent to Facebook scraping [their] call and text logs," that they "did not understand that Facebook Messenger would scrape [their] call and text logs," and that they "would not have installed or used the Facebook Messenger App had [they] known the truth about the app's practice of scraping call and text logs.").  Based on these well-pled facts, "a reasonable factfinder could indeed deem [Facebook's] conduct 'highly offensive' or 'an egregious breach of social norms.'"  *In re Google*, 806 F.3d at 151; *see also In re Nickelodeon*, 827 F.3d at 267, 292 (holding that "[j]ust as *Google* concluded that a company may commit intrusion upon seclusion by collecting information using duplicitous tactics, we think that a reasonable jury could reach a similar conclusion with respect to Viacom," where plaintiffs alleged that Viacom "unlawfully collected personal information about [plaintiffs] on the internet, including what webpages they visited and what videos they watched on

Viacom's websites."); *Opperman v. Path, Inc.,* 205 F. Supp. 3d 1064, 1080 (N.D. Cal. 2016) (holding that "there is a triable issue of fact regarding whether Yelp's upload of the Plaintiffs' address book data was highly offensive to a reasonable person"); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("Considering the quantum and nature of the information collected, the purported failure to respect consumers' privacy choices, and the divergence from the standard industry practice, Plaintiffs plausibly allege Vizio's collection practices amount to a highly offensive intrusion.").

Facebook's reliance on *In re Google, Inc. Privacy Policy Litig.*, 58 F.Supp.3d 968 (N.D. Cal. 2014)[6] and *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. June 12, 2012) is misplaced, as these decisions have since been outright rejected within this District:

> Yelp's reliance on *Folgelstrom* is not persuasive. The offensiveness inquiry is fact-specific, and this Court has already distinguished *Folgelstrom* because the data at issue here is "more private than a person's mailing address" and this kind of intrusion is not "routine commercial behavior." For the same reason, the Court is not persuaded by cases that have mechanically applied *Folgelstrom* to invasion of privacy claims. *See, e.g., In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014).

> *In re iPhone Application Litig.* involved the disclosure to third parties of an iDevice user's unique device identifier number, personal data, and geolocation information. 844 F. Supp. 2d at 1063. That court held without explanation that "[e]ven assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed by Defendants, such disclosure does not constitute an egregious breach of social norms," citing *Folgelstrom*. *Id.* As noted above, however, *Folgelstrom* addressed different facts than those in *iPhone Application Litigation*, and the latter court did not explain how expansion of *Folgelstrom's* holding, counter to the privacy interests of iDevice users, was consistent with California's community privacy norms.

---

[6] *In re Google, Inc. Privacy Policy Litig.*, 58 F.Supp.3d 968 (N.D. Cal. 2014) is further inapposite because there, the district court held that the plaintiffs' expectation of privacy was not "plausible in light of Google's earlier disclosure that it would commingle PII across products to support its advertising model." (emphasis added). Facebook made no such disclosure here.

1

2

3

4

5

6

7

8

9

10

> The reasoning in *In re Google, Inc. Privacy Policy Litig.* is also unhelpful.  In that case, plaintiffs challenged a Google privacy policy that allowed Google to comingle user data across accounts and disclose it to third-parties for advertising purposes.  *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d at 974.  Noting that "[t]his district 'set[s] a high bar' for the requisite 'intrusion [that is] highly offensive to a reasonable person,'" the court held that "*In re iPhone Application Litig.'s* analogous facts...teach here that Plaintiffs' allegations do not plausibly rise to the level of intrusion necessary to establish an intrusion claim." *Id.* at 988 (quoting *Belluomini v. Citigroup Inc.*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013)).  Again, however, the court in *Google* made no effort to explain why Google's practices were consistent with community notions of privacy as they existed at the time of the decision.  Because *In re iPhone Application Litig.* relied on an overreading of Folgelstrom, as set forth above, and Google in turn rests entirely *In re Phone Application Litig.*, it too is unhelpful here.

11

12

13

14

15

16

17

18

19

*See Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078-79 (N.D. Cal. 2016); *see also Opperman*, 87 F. Supp. 3d at 1061 ("Here, Plaintiffs allege the theft of the information in their personal contact lists, which is more private than a person's mailing address. And while the Court recognizes that attitudes toward privacy are evolving in the age of the Internet, smartphones, and social networks, the Court does not believe that the surreptitious theft of personal contact information – which is what the CAC alleges – has come to be qualified as 'routine commercial behavior.'  Indeed, Plaintiffs allege that consumers, the media, the Federal Trade Commission, and Congress have closely scrutinized the practices at issue in this case because of concerns that the practices were inappropriate.") (emphasis added).[7]

20

21

22

## V. PLAINTIFFS STATE A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION

Facebook argues that "Plaintiffs do not explain how the non-content-based call and text

23

24

25

26

27

28

---

[7] *See Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1079-80 (N.D. Cal. 2016) ("When applying community standards, it is possible that a jury of persons selected from that community might conclude, as Yelp suggests, that Yelp's conduct was 'far from highly offensive.'  In the alternative, a jury might also find the intrusion highly offensive based on both the degree of intrusion (uploading the email addresses of a user's contacts to the Defendants' servers) and the setting in which the invasion took place (users' personal cellular phones).  Perhaps a democratically elected legislature will embody the community standards in a statute.  In any of those events, a jury or legislature will have performed an important function in reflecting the community's standards as they relate to the privacy of information stored on a user's smartphone.  A judge should be cautious before substituting his or her judgment for that of the community.").

1  logs would be the type of 'sensitive' and 'confidential' personally identifiable information that is

2  protected under the California constitution." Def.'s Br. at 19. That is false.

3       In California, the right to privacy is recognized both in the state constitution and common

4  law. The elements of a claim under the California Constitution are: "(1) a legally protected privacy

5  interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the

6  defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn*

7  *Corp*., 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) (citing *Hill v. Nat'l Collegiate Athletic Ass'n*,

8  865 P.2d 633, 654-56 (Cal. 1994)). The California Supreme Court recognized two general types of

9  privacy interests that fall within the first prong: "(1) interests in precluding the dissemination or

10  misuse of sensitive and confidential information ('informational privacy'); and (2) interests in

11  making intimate personal decisions or conducting personal activities without observation,

12  intrusion, or interference ('autonomy privacy')." *Hill v. Nat'l Collegiate Athletic Assn.,* 865 P.2d

13  633, 654 (Cal. 1994).

14       Whether the first element is met is a question of law, but whether the second and third

15  elements are met are mixed questions of law and fact. *See Hill*, 865 P.2d at 657. Therefore, claims

16  of invasion under the California Constitution may only be disposed as a matter of law if the

17  plaintiff has not identified a legally protected privacy interest, or the undisputed material facts

18  show no reasonable expectation of privacy or an insubstantial impact on privacy interests. *See id*.

19       Here, the data Facebook scraped reveals a "'wealth of detail about [Facebook users']

20  familial, personal, professional, … associations.'" *See Goodman*, 2012 WL 2412070, at *15

21  (quoting *U.S. v. Jones*, 132 S.Ct. 945, 955 (2012) (Sotomayor, J., concurring)). The facts of

22  *Goodman* are similar in many respects to this case; the defendant there used location data to create

23  compilations of the data to "analyze [the users'] behavior and build profiles about them," while

24  also transmitting user data to a third party. *Id*. at *14; *compare with* FACC ¶¶ 1, 25 ("Facebook

25  then incorporates these data into its profile on each user, which it monetizes for advertising

26  purposes" . . . "Facebook produced 747 pages of documents to Congress, which show that

27  Facebook has agreements in place to share its user data with 61 different entities."). Critically,

28

"the California Constitution protects an interest in 'conducting personal activities without observation,' with the reasonableness of any given expectation 'resting on an examination of customs … as well as the opportunity to be notified in advance and consent to the intrusion. *In re Google*, 806 F.3d at 151 (citation omitted).  The same interests are applicable here, and they are infringed because Facebook scraped the user data surreptitiously and without consent, and no Facebook user could have been expected to know that Facebook was taking such data without consent. *See also id. at* 152 (concluding that allegations that providers placed tracking cookies on users' browsers in contravention of browsers' cookie blockers stated common-law and constitutional privacy-intrusion claims under California law, explaining that the alleged conduct "implicated a protected privacy interest" because "California tort law treats as actionable an 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'").

Finally, relying on the same arguments and case law as it did against Plaintiffs' claims for intrusion upon seclusion, Facebook argues that "Plaintiffs also offer no factual basis for establishing a serious invasion of privacy." Def.'s Br. at 20.  That is wrong for the reasons set forth above, in the context of intrusion upon seclusion. *See supra* § IV.[8]

## VI.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF NEW YORK'S G.B.L. § 349

### A.   Facebook's Choice Of Law Clause Is Unenforceable

Facebook argues that "Plaintiffs cannot … bring a claim under Section 349" due to a choice

---

[8] The only new authority offered by Facebook for this argument is *In re Yahoo Mail Litig.*, 7. F. Supp. 3d 1016 (N.D. Cal. 2014) and *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008), neither of which alter the analysis here.  For example, in *Yahoo Mail*, "Yahoo's Additional Terms of Service expressly informed users that, 'by scanning and analyzing such communications content, Yahoo collects and stores the data.' …  Yahoo's consent page also told users that Yahoo would scan their e-mails for a variety of purposes, including to provide 'targeted advertising.'  No equivalently explicit consent is present here." *See Opperman*, 84 F. Supp. 3d at 992.  Similarly, the facts of *Ruiz* are inapplicable because there, "two laptop computers were stolen from a vendor with whom Gap had contracted for recruiting purposes.  The laptops contained the personal information, including social security numbers, of approximately 800,000 Gap job applicants." *Ruiz*, 540 F. Supp. 2d at 1124-25.  The court dismissed the plaintiff's claim for invasion of privacy in large part because "the manner" in which the data was compromised "d[id] not constitute an egregious breach." *Id*. at 1128.  Thus, the facts of *Ruiz* stand in stark contrast to the instant case.

---

of law clause in its Statement of Rights and Responsibilities, which provides "[t]he laws of the State of California will govern." Def.'s Br. at 21. That is wrong.

In *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1168-70 (N.D. Cal. 2016), Judge James Donato held that the <u>exact same choice of law clause was unenforceable</u> as to Illinois plaintiffs sitting in diversity jurisdiction, who brought claims for violation of Illinois' Biometric Information Privacy Act ("BIPA"), a law that carries statutory damages for certain privacy violations. The Court began by reviewing the choice of law rules promulgated in *Washington Mutual Bank, FA v. Superior Court*, 15 P.3d 1071 (2001), which tracks Section 187 of the Restatement (Second) of Conflict of Laws, where it held that "[t]he parties' choice [of law clause] generally will be enforced unless the other side can establish both that [(i)] the chosen law is contrary to a fundamental policy of the state law alternative to the contractual choice, and that [(ii)] the other state has a materially greater interest in the determination of the matter." *Id.*

Then, the *In re Facebook Biometric Info. Privacy Litig.* court concluded that "the Illinois [BIPA] embodies a fundamental policy of the state of Illinois," in that the law "manifests Illinois' substantial policy of protecting its citizens' right to privacy in their personal biometric data," by providing a provide right of action with statutory damages. *Id.* Accordingly, the court held that applying California law "would be contrary to this policy in the starkest way possible," as holding otherwise would deprive Illinois citizens of their statutory remedy, which is "all the more pronounced because California has no law or policy equivalent to BIPA." *Id.* Thus, "Illinois' greater interest in the outcome of this BIPA dispute is … readily apparent." *Id.* The court then held that the choice of law clause is unenforceable, as "Illinois will suffer a complete negation of its biometric privacy protections for its citizens if California law is applied." *Id.*

Here, the exact same considerations are at issue. Numerous courts have found that "Section 349 was originally intended enacted as a <u>broad consumer protection measure</u>," carrying $50 statutory damages, which has repeatedly been applied to the context of consumer privacy violations. *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *1-2 (S.D.N.Y. Aug. 17, 2011) (*citing Stutman, v. Chemical Bank*, 95 N.Y..2d 24, 28, (N.Y. 2000)); *see also infra* § VI.B (discussion of

the applicability of G.B.L. § 349 to privacy class actions).  Nor does California law have a similar provision.  Just like in *In re Facebook Biometric Info Privacy Litig.*, the Court here should not apply Facebook's choice of law clause because doing so would serve to nullify an important statutory remedy for New York citizens.  *Id.*[9]

### B.    Plaintiffs Allege Every Element Of A G.B.L. § 349 Claim

Facebook argues that "Plaintiffs' Section 349 claim requires a showing that Facebook's allegedly material deceptive acts or practices caused actual harm," but that "[a]n unquantifiable injury to a privacy interest generally does not suffice."  Def.'s Br. at 22.  That is wrong.

In *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *1-2 (S.D.N.Y. Aug. 17, 2011), plaintiffs alleged that defendant Interclick, an online advertiser, "used 'flash cookies'" and "'history sniffing' code invisible to the computer user" to "determine whether the computer had previously visited" certain websites.  Defendant Interclick would then use the data to help it "select particular advertisements to display on that computer" when a user visits an affiliated website.  In denying Interclick's motion to dismiss plaintiffs' G.B.L. § 349 claim, the court noted that a plaintiff need not allege "pecuniary injury," and that numerous New York courts have upheld such claims in the context of "privacy violations:"

> Plaintiff alleges that Defendants' information collecting activities constitute a deceptive business act or practice under Section 349 of the New York General Business law.  Section 349 was originally enacted as a broad consumer protection measure.  *See Stutman v. Chemical Bank*, 95 N.Y.2d 24, 28, 709 N.Y.S.2d 892, 731 N.E.2d 608 (N.Y.2000); N.Y. Gen. Bus. Law. § 349 (McKinney 2011).
>
> …
>
> Plaintiff alleges that Defendant Interclick used LSOs and browser history sniffing code to circumvent consumers' ordinary browser privacy and security settings on their computers.  This conduct misled consumers into believing their digital information was private when in reality it was being tracked without their knowledge.  Plaintiff alleges that consumers were harmed in that they suffered "the loss of privacy through the exposure of the [sic] personal and private information and evasion of privacy controls on their

---

[9] If the Court disagrees and decides to enforce the choice of law clause, Plaintiffs respectfully intend to promptly move for leave to file an amended complaint, such that the California-only claims can be asserted on behalf of the nationwide class.

computers."  (Am.Compl.¶ 160.)

…

Interclick next claims that Plaintiff has failed to allege any injury as a result of any misleading act or omission.  To state a claim under Section 349, a plaintiff must allege "actual" injury, though not necessarily pecuniary injury.  *Stutman*, 95 N.Y.2d at 29, 709 N.Y.S.2d 892, 731 N.E.2d 608.  Although collection of personal information does not constitute "economic" injury for purposes of the CFAA, courts have recognized similar privacy violations as injuries for purposes of Section 349.  *See Meyerson v. Prime Realty Services, LLC*, 7 Misc.3d 911, 920, 796 N.Y.S.2d 848 (N.Y.Sup.Ct.2005) ("[I]t cannot be doubted that a privacy invasion claim – and an accompanying request for attorney's fees-may be stated under [Section] 349 based on nonpecuniary injury …"); *Anonymous v. CVS Corp.*, 728 N.Y.2d 333, 340 (N.Y.Sup.Ct.2001) (allowing Section 349 claim for violation of privacy when local pharmacy transferred prescription records to a national chain without advance notice to consumers).

*Id.* at *8-9 (some internal citations omitted).

Here, similar to *Bose*, Plaintiffs allege that Facebook "exploited a vulnerability in the permissions setting for the Facebook Messenger and Facebook Lite smartphone applications," so that Facebook could "scrape[] *years'* worth of call and text data."  FACC ¶ 1.  Likewise, Plaintiffs allege that Facebook "incorporates these data into its profile on each user, which it monetizes for advertising purposes."  *Id.*  Such allegations are sufficient.  *See Bose*, 2011 WL 4343517, at *8-9.

Next, Facebook contends that "Plaintiffs also must plead that the alleged deceptive act or practice occurred in New York, … which they do not."  Def.'s Br. at 21-22.  That is wrong.  Rather, the three Plaintiffs from New York who assert G.B.L. § 349 claims (*i.e.*, Plaintiffs Williams, Brumfield, and Olin) each allege that he or she was a resident and citizen of New York during all relevant time periods.  FACC ¶¶ 2-5.

Lastly, Facebook argues in a single sentence – without any citations or authority – that Plaintiffs have not "satisfied any of the other requirements of Section 349."  Def.'s Br. at 22.  While Facebook's argument is not clear, Plaintiffs have nonetheless met every element of the *prima facie* case for a New York G.B.L. § 349 claim:  "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff

suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Each of these three elements are plainly alleged at ¶¶ 85-87 of the FACC. Nowhere does Facebook dispute that its conduct is "consumer-oriented." *See generally* Def.'s Br. Nor has Facebook explained why Plaintiffs' allegations purportedly fail to amount "materially misleading" conduct. *See id.*

## VII.   PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT

Facebook argues that "there is no … independent cause of action in California" for unjust enrichment. Def.'s Br. at 22. That is not correct. In *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 764 (9th Cir. 2015), and *Bruton v. Gerber Prods. Co.*, 703 Fed. Appx. 468, 470 (9th Cir. 2017), the Ninth Circuit followed the California Supreme Court's decision in *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000, (2015), to hold that in California, unjust enrichment is an "independent, standalone cause of action," and should not be dismissed for being "duplicative or superfluous" to other claims. *See also Gasser v. Kiss My Face, LLC*, 2017 WL 4773426, at *8-9 (N.D. Cal. Oct. 23, 2017) (following *Astiana* and *Bruton* and denying dismissal of unjust enrichment claim). The rule in *Astiana* and *Bruton* is consistent with this Court's earlier decisions denying dismissal of unjust enrichment claims. *National Union Fire Insurance Company of Pittsburgh, P.A. v. Resource Development Services, Inc.*, 2012 WL 12920615, at *4-5 (N.D. Cal. Apr. 16, 2012) (Seeborg, J.) (denying motion to dismiss as to a claim for unjust enrichment); *Monet v. Chase Home Finance, LLC*, 2010 WL 2486376, at *5 (N.D. Cal. June 16, 2010) (Seeborg, J.) (same). Under *Astiana* and *Bruton*, dismissal would be reversible error.

## CONCLUSION

For the foregoing reasons, Facebook's motion to dismiss should be denied. Alternatively, if the motion is granted in any respect, Plaintiffs should be given leave to amend. *See, e.g., Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) ("Ordinarily, leave to amend should be freely given in the absence of prejudice to the opposing party").

Dated: October 30, 2018

**BURSOR & FISHER, P.A.**

By: ___*/s/ L. Timothy Fisher*___
         L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Interim Class Counsel*