LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
  elizabeth.deeley@lw.com
Nicole C. Valco (CA Bar No. 258506)
  nicole.valco@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

Susan E. Engel (*pro hac vice*)
  susan.engel@lw.com
Matthew J. Peters (*pro hac vice*)
  matthew.peters@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone: +1.202.637.3309
Facsimile: +1.202.637.2201

*Attorneys for Defendant Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTHONY WILLIAMS, TYOKA BRUMFIELD, and WENDY BURNETT, LAWRENCE OLIN, HAROLD NYANJOM; SHERON SMITH-JACKSON and JANICE VEGA-LATKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.<br><br>Defendant. | Case No. 3:18-cv-01881 RS<br><br>**FACEBOOK, INC.'S REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:  December 6, 2018<br>Time: 1:30 p.m.<br>Court: Courtroom 3, 17th Floor<br>Hon. Richard Seeborg |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN FURTHER SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. PLAINTIFFS' ABANDONMENT OF THEIR ALLEGATIONS RELATING TO A FACEBOOK PROMPT REQUIRES DISMISSAL Of ALL OF THEIR REMAINING CLAIMS...........................................................................................................2

III. PLAINTIFFS DO NOT SATISFY ARTICLE III's INJURY-IN-FACT REQUIREMENT ...................................................................................................................4

IV. PLAINTIFFS' CLAIMS EACH HAVE FATAL CLAIM-SPECIFIC DEFECTS .............7

 A. Plaintiffs Consent To Dismissal Of Their UCL, CLRA, And Trespass Claims And There Is No Basis For Allowing Repleading.......................................7

 B. Plaintiffs' Section 349 Claim Fails Because California Law Applies And They Have Not Pleaded A Misrepresentation That Caused Them Actual Injury ...................................................................................................................7

 C. Plaintiffs Fail To State A Claim Under CDAFA Because They Do Not Adequately Allege Damage Or Loss As A Result Of Unauthorized Conduct ................................................................................................................9

 D. Plaintiffs Fail To State Either An Intrusion Upon Seclusion Claim Or A Violation Of California's Constitutional Right To Privacy ................................11

 E. Plaintiffs Fail To State A Standalone Claim for Unjust Enrichment....................14

V. CONCLUSION....................................................................................................................15

i

L<small>ATHAM</small>&W<small>ATKINS</small><sup>LLP</sup>
A<small>TTORNEYS</small> A<small>T</small> L<small>AW</small>
S<small>AN</small> F<small>RANCISCO</small>

REPLY IN FURTHER SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

# **TABLE OF AUTHORITIES**

Page(s)

### **CASES**

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ...................................................................................4

*Alvarez v. Chevron Corp.*,
  656 F. 3d 925 (9th Cir. 2011) .................................................................................................8

*Anonymous v. CVS Corp.*,
  728 N.Y.2d 333 (N.Y. Supp. Ct. 2005) ..................................................................................9

*Astiana v. Hain Celestial Group, Inc.*,
  783 F. 3d 753 (9th Cir. 2015) ...............................................................................................14

*Bassett v. ABM Parking Servs., Inc.*,
  883 F.3d 776 (9th Cir. 2018) ..................................................................................................5

*Bose v. Interclick, Inc.*,
  No. 10 Civ. 9183(DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ................................9

*Cabebe v. Nissan of N. Am., Inc.*,
  No. 18-cv-00144-WHO, 2018 WL 5617732 (N.D. Cal. Oct. 26, 2018) ................................7

*Cahen v. Toyota Motor Corp.*,
  147 F. Supp. 3d 955 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017) ................5, 13

*Cohen v. Casper Sleep Inc.*,
  2018 WL 3392877 (S.D.N.Y. July 12, 2018) .........................................................................9

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) ................................................................................................3

*In re Facebook Biometric Information Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..................................................................................8

*In re Facebook Internet Tracking Litig.*,
  263 F. Supp. 3d 836 (N.D. Cal. 2017) ....................................................................................9

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011) ...............................................................................................12

*Gonzales v. Uber Tech., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ................................................................................10

*Goodman v. HTC Am., Inc.*,
  No. C11-1793MJP, 2012 WL 2412070 (W.D. Wash. June 26, 2012) ............................11, 12

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  806 F.3d 125 (3d Cir. 2015) ......................................................................................5, 12, 13

ii

LATHAM & WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

*In re Google, Inc. Privacy Policy Litig.*,
  No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...................................... 4

*Heineke v. Santa Clara Univ.*,
  17-CV-05285-LHK, 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) ....................................... 10

*In re iPhone II Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................... 12

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................................... 13

*Meyerson v. Prime Realty Services, LLC*,
  796 N.Y. 2d 848 (N.Y. Supp. Ct. 2005) ................................................................................ 9

*Monet v. Chase Home Fin., LLC*,
  No. C 10-0135 RS, 2010 WL 2486376 (N.D. Cal. June 16, 2010) ...................................... 14

*Mosier v. Stonefield Josephson, Inc.*,
  815 F.3d 1161 (9th Cir. 2016) .............................................................................................. 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Resource Development Servs., Inc.*,
  No. C. 10-01324 RS, 2012 WL 12920615 (N.D. Cal. Apr. 16, 2012) ................................. 14

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal.4th 459 (1992) .............................................................................................................. 8

*In re Nickelodeon Consumer Privacy Litig.*,
  827 F.3d 262 (3d Cir. 2016) ..................................................................................... 5, 12, 13

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ................................................................................. 10

*Opperman v. Path, Inc.*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015) ........................................................................ 5, 6, 12, 13

*Or. Prescription Drug Monitoring Program v. DEA*,
  860 F.3d 1228 (9th Cir. 2017) ................................................................................................ 4

*Palomino v. Facebook, Inc.*,
  16-cv-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9 2017) ........................................... 8, 9

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................................................... 9

*Riley v. California*,
  134 S. Ct. 2473 (2014) .................................................................................................. 11, 13

*Robins v. Spokeo, Inc.*,
  867 F.3d 1108 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931, 200 L. Ed. 2d 204
  (2018) ..................................................................................................................................... 5

*Romero v. HP, Inc.*,
  No. 16-CV-05415-LHK, 2017 WL 386237 (N.D. Cal. Jan. 27, 2017) .................................. 2

iii

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

*Shostack v. Diller*,
  15-CV-2255 (GBD)(JLC), 2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015) ............................... 9

*Smith v. Chase Manhattan Bank, USA, N.A.*,
  741 N.Y.S.2d 100 (App. Div. 2002) ................................................................................... 9

*Solomon v. Bell Atl. Corp.*,
  777 N.Y.S. 2d 50 (App. Div. 2004) ................................................................................... 7

*In re Sony Gaming Networks & Customer Data Sec.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ............................................................................... 5

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .................................................................................................. 4, 6

*Stickrath v. Globalstar, Inc.*,
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ............................................................................. 4

*Ticketmaster L.L.C. v. Prestige Ent. West, Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) .................................................................... 10, 11

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) ......................................................................................... 5

*In re Vizio, Inc. Consumer Privacy Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................................................................... 5, 12

*Yunker v. Pandora Media, Inc.*,
  No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ......................... 12

*In re Zappos.com, Inc.*,
  108 F. Supp. 3d 949 (D. Nev. 2015) ................................................................................ 4

**RULES**

Fed. R. Civ. P. 9(b) .......................................................................................... 2, 3, 4, 7

iv

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

## I.     INTRODUCTION

Facebook explained in its opening brief that, when a user chooses to upload their contacts (which helps find friends and improves their experience on Facebook), Facebook expressly requests permission to upload call and text logs (not content) from the user's phone. Mot. 7-9. Facebook addressed its own prompt for permission because Plaintiffs alleged that *Facebook's* "Contacts List" prompt misrepresented the data Facebook sought permission to collect—and the *only* alleged representation that Plaintiffs identified was a Facebook Messenger prompt that appears in the *Ars Technica* article. Ex. A.[1] That prompt, according to Plaintiffs, misleadingly asks for permission to collect a user's "Contact List" but, in fact, Facebook also collects call and text logs. *See, e.g.*, FAC ¶¶ 1, 40 ("*Defendant* violated [CLRA] by *representing* that it was only collecting Plaintiffs' and Class members' 'Contact List' and by failing to represent that it was collecting their call logs and text data."); *id.* ¶ 84 ("*Defendant* committed unfair or deceptive acts and practices by collecting [the New York Plaintiffs'] call logs and text data without their permission and after *disclosing only* that it was collecting [their] 'contact information.'"); *id.* ¶ 86 (*Facebook's* acts and practices "fundamentally *misrepresented* the types of data that Defendant collected").[2]

Plaintiffs' opposition brief does a remarkable flip-flop. Plaintiffs *now* contend they were not referring to the *Facebook* prompt at all, but instead to an "*Android* prompt." Opp. 1. Effectively admitting their failure to identify a Facebook misrepresentation, Plaintiffs now abandon their California's Consumer Legal Remedies Act (CLRA), California's Unfair Competition Law (UCL), and trespass to property claims. They now say their Complaint is really about Facebook *omitting* information. Plaintiffs' new omission theory finds no basis in the Complaint, where they plainly alleged that *Facebook misrepresented* it was collecting only contacts. FAC ¶¶ 40, 84, 86.

Plaintiffs' abandonment of their allegations of a *Facebook* prompt requires dismissal of their remaining representation-based claim under Section 349 of New York's General Business

---

[1] Citations to "Ex." are to the exhibits to the Declaration of Nicole C. Valco (Dkt. No. 65-1).

[2] All emphasis added unless stated otherwise.

1

REPLY IN FURTHER SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Law. *Id.* ¶ 84. It also requires dismissal of Plaintiffs' remaining claims, which all require Plaintiffs to plead that Facebook lacked permission to access their call and text logs. Without a Facebook misrepresentation, Plaintiffs' conclusory assertion that Facebook acted "without permission" is entirely unsupported by any factual allegations in the Complaint and fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which Plaintiffs do not dispute applies to all of their claims.

Plaintiffs' claims also fail for additional reasons. Plaintiffs' generalized allegations of injury fail to show that Facebook's alleged collection of call and text logs caused them any concrete and particularized harm sufficient to establish Article III standing. In addition, Plaintiffs' remaining claims—CDAFA, California's constitutional right to privacy, intrusion upon seclusion, unjust enrichment—all fail for claim-specific reasons. Facebook respectfully requests that this Court dismiss with prejudice the Complaint.

## II. PLAINTIFFS' ABANDONMENT OF THEIR ALLEGATIONS RELATING TO A FACEBOOK PROMPT REQUIRES DISMISSAL OF ALL OF THEIR REMAINING CLAIMS

Plaintiffs abandon two of their misrepresentation-based claims (UCL and CLRA), Opp. 2 n.1, and now contend that Facebook did not make any misrepresentation at all. Plaintiffs' abandonment of allegations relating to a Facebook prompt about information that is collected requires dismissal of all of Plaintiffs' remaining claims.

To start, Plaintiffs' course reversal requires dismissal of their claim under Section 349, which is expressly premised on "*Defendant* … collecting [New York] Plaintiffs['] call logs and text data without their permission and after *disclosing* only that it was collecting [New York] Plaintiffs['] … 'contact information.'" FAC ¶ 84; *see also id.* ¶ 86. While Plaintiffs now contend this is "predominantly an 'omissions' case," Opp. 1, 5-6, they cannot through briefing change course. "[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Romero v. HP, Inc.*, No. 16-CV-05415-LHK, 2017 WL 386237, at *6 (N.D. Cal. Jan. 27, 2017) (citation omitted). Plaintiffs' Section 349 claim turns exclusively on Facebook's purported "misrepresent[ation] [of] the types of data" Facebook collected. FAC ¶ 86. They cannot bring a misrepresentation claim when they not only have failed to identify a

misrepresentation but now actually abandon their allegation of a Facebook misrepresentation. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (holding that Rule 9(b) requires pleading "specific contents" of allegedly fraudulent misrepresentation).

Plaintiffs' abandonment of their allegations related to a Facebook prompt also dooms their other remaining claims, each of which turns on the contention that Facebook requested permission to access their contact information without expressly requesting permission to upload their call and text logs. Mot. 8-9; FAC ¶ 21 ("granting Facebook Messenger and Facebook Lite access to users' 'Contact List' also granted Facebook Messenger and Facebook Lite access to users' call and text logs by default"). Indeed, even in their opposition brief, Plaintiffs still argue that "***Facebook*** asked for access to 'Contact Lists' but actually scraped entirely different user data without notification or permission." Opp. 17. Nowhere do Plaintiffs plead what that "ask[ing] for access" looked like. To the contrary, they attempt to run away from the Facebook prompt identified in the *Ars Technica* article cited in their Complaint, Mot. 7-9; Ex. A, by simply acknowledging that they "were aware of" it, Opp. 7. Without any particularized details of what they saw, where, and when and why any such representations or omissions were misleading, Plaintiffs' CDAFA, privacy, and unjust enrichment claims, fail under Rule 9(b), which Plaintiffs do not dispute applies to all of their claims. Mot. 7 & n.3.

Finally, Plaintiffs' newfound reliance on a purported "Android prompt" does not "clear up any possible confusion." Opp. 7 n.4. The *Ars Technica* article does not reference any Android prompt using the phrase "Contact List." *Id.* Indeed, it links to an Android permission that uses a different phrase, "READ_CONTACTS." Ex. A. The article further explains that different versions of the Android operating system have had different permissions.[3] Yet Plaintiffs fail to

---

[3] For example, before the Android "Jelly Bean" operating system version (4.1) was released in mid-2012, users who "granted permission to read contacts" while installing apps would provide access to their "call and message logs by default." Ex. A; *see also* https://arstechnica.com/gadgets/2012/06/android-4-1-jelly-bean-faster-smoother-more-delightful/ (release date). The Jelly Bean version of Android introduced a different permission scheme—"a single request from those applications would trigger two separate permission requests." Ex. A. The *Ars Technica* article explains that Android 4.1 (Jelly Bean) left it possible for apps to present all permissions at once, but that possibility ended when the "Marshmallow version of Android," *id.*, was released in late 2015. https://arstechnica.com/gadgets/2015/10/android-6-0-marshmallow-thoroughly-reviewed/5/#h1. (release date).

3

plead any specifics about an Android prompt, including when they saw it, what it said, where it appeared, or why it was misleading as required under Rule 9(b). *See Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) (claims based on affirmative misrepresentations failed to satisfy Rule 9(b) where plaintiffs did not plead with specificity time frame when representations appeared on website).

### III. PLAINTIFFS DO NOT SATISFY ARTICLE III'S INJURY-IN-FACT REQUIREMENT

The injury-in-fact requirement of Article III standing requires a plaintiff to show that he or she suffered the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). In addition, a "plaintiff must establish Article III standing for each of her claims and for each form of relief." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014). Plaintiffs' generalized and conclusory allegations of injury fall far short of satisfying this burden. *See Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) ("[S]tanding is not dispensed in gross," but instead "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.") (citation omitted).

First, Plaintiffs barely defend their alleged deprivation of income injury. They merely reiterate their allegations about Facebook collecting call and text logs, which they claim were part of the user profiles that Facebook "monetize[d]" and "share[d]." FAC ¶¶ 18, 25; Opp. 10. But this case is not about the value of *user profiles*, and Plaintiffs have failed to "allege any facts explaining how their personal information became less valuable as a result of [Facebook's collection] or that they attempted to sell their information and were rebuffed because of a lower price-point attributable to the [collection]." *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 954 (D. Nev. 2015); *see also In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("a plaintiff must allege how the defendant's use of the information deprived the plaintiff of the information's economic value.").

Second, Plaintiffs fare no better with their conclusory assertion of an invasion of privacy. Courts in this circuit have *granted* motions to dismiss where a plaintiff alleges "that his personal information was collected without his consent," but fails to allege that "his *personal* information was collected *and then wrongfully disclosed*." *In re Sony Gaming Networks & Customer Data Sec.*, 996 F. Supp. 2d 942, 961-62 (S.D. Cal. 2014) (citing cases); *see also Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113-15 (9th Cir. 2017) (finding standing to bring claim under Fair Credit Reporting Act for unauthorized publication on the Internet of inaccurate credit report, and recognizing common law protections for a person's right to prevent the *dissemination* of private information), *cert. denied*, 138 S. Ct. 931, 200 L. Ed. 2d 204 (2018); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 958, 971-73 (N.D. Cal. 2015) (allegation of "a legally protected privacy interest in their personal data" insufficient to show injury in fact for constitutional privacy claim based on alleged collection and tracking of information about vehicle performance and geographical location), *aff'd*, 717 F. App'x 720 (9th Cir. 2017).

As the Ninth Circuit recently recognized, "[w]ithout disclosure of private information to a third party, it hardly matters that '[a]ctions to remedy . . . invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states.'" *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 780 (9th Cir. 2018) (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).

The cases Plaintiffs rely upon are inapposite. They involved specific allegations about sensitive personal information that was disclosed to third parties, in breach of defendants' express promises to protect it. Thus, in *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134-35, 150 (3d Cir. 2015), and *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 269, 273-74, 294 (3d Cir. 2016), plaintiffs made "highly specific allegations" that defendants implanted third-party cookies on their personal computers and tracked their website or video viewing, even though defendants expressly promised not to collect the information. *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1232-33 (C.D. Cal. 2017), involved collecting and selling "detailed data about what video content" plaintiffs watched, even after a user had affirmatively turned off Vizio's permission to collect such information. And *Opperman v. Path,*

5

1  *Inc.*, 84 F. Supp. 3d 962, 971-72, 991 (N.D. Cal. 2015), involved allegations that Apple allowed mobile application developers to access and upload contact information from plaintiffs' mobile devices, despite alleged representations about the security of user data and the permissions required to access or transmit user data.

There are no such similar allegations here. Plaintiffs now have abandoned their allegation of any Facebook representation at all, and just point to an Android prompt. And they do not allege with any specificity that Facebook wrongfully disclosed any information to third parties, let alone that Facebook disclosed Plaintiffs' own call and text logs. The Complaint's only allegation regarding disclosure of the call and text logs to third parties, FAC ¶ 25, states that in June 2018 Facebook disclosed documents which show "that Facebook has agreements in place to share its user data with 61 different entities." Plaintiffs provide no factual allegations about what specific user data was shared, let alone that the user data included any call and text log histories, nor do they allege when, with whom or how it was shared. Without any of these specific factual allegations, Plaintiffs' conclusory assertion that "Facebook shares or disseminates the scraped user data with these 61 entities," *id.*, is insufficient. Moreover, Plaintiffs still do not explain why the information in their call and text logs, distinct from the information in their contact lists—which they admit they allowed Facebook to upload—is sensitive, despite Facebook making this point. Mot. 12.

Finally, Plaintiffs offer no real response to Defendants' argument that the Complaint does not plausibly allege that Plaintiffs themselves suffered any *personal* injury. *See Spokeo*, 136 S. Ct. at 1548 ("For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'") (citation omitted). Plaintiffs do not contest that three of the seven Plaintiffs admit that they have not even reviewed the call and text logs that Facebook purportedly scraped, Mot. 10; FAC ¶¶ 2-4, and thus have not alleged any factual basis for their conclusory assertion that Facebook actually collected any call and text logs from *them*. Nor do Plaintiffs contest that a fourth Plaintiff does not identify the scraped call and text logs that he allegedly reviewed, Mot. 10; FAC ¶ 5. Plaintiffs also do not allege that any of them actually sold their collected call and text logs, Mot. 10, or tried to do so—and they do not allege that Facebook *removed* the logs from the

phone, and so they still have them to use if they want to. Plaintiffs' generalized and conclusory allegations are insufficient to plead an Article III injury, let alone a particularized one.

## IV. PLAINTIFFS' CLAIMS EACH HAVE FATAL CLAIM-SPECIFIC DEFECTS

### A. Plaintiffs Consent To Dismissal Of Their UCL, CLRA, And Trespass Claims And There Is No Basis For Allowing Repleading.

Plaintiffs do not oppose dismissal of their UCL, CLRA, and trespass claims. Opp. 2 n.1. Oddly, however, in defending their claim brought under Section 349 on behalf of the three named New York Plaintiffs, Plaintiffs request in a footnote leave to file an amended complaint in order to assert unspecified "California-only claims" on behalf of the nationwide class, if the Court dismisses the Section 349 claim. *Id.* 23 n.9. But the UCL and CLRA claims were already brought on behalf of a California subclass. FAC ¶¶ 38-55. For all of the reasons Facebook identified in its opening brief, the UCL and CLRA claims, as well as the trespass claim, are legally deficient, Mot. 13-16, and there is no basis to allow Plaintiffs to replead the UCL and CLRA claims when they have failed even to respond to Facebook's motion.

### B. Plaintiffs' Section 349 Claim Fails Because California Law Applies And They Have Not Pleaded A Misrepresentation That Caused Them Actual Injury

As noted *supra* Section I, Plaintiffs' Section 349 allegations belie their contention that this is "predominantly an omissions case." Opp. 1. They allege that Facebook "disclos[ed] only that it was collecting Plaintiffs['] 'contact information,'" and "fundamentally *misrepresented* the types of data that Defendant [Facebook] collected." FAC ¶¶ 84, 87. But what *Facebook* allegedly misrepresented remains a mystery. This is inadequate to state a representation-based Section 349 claim. *See Cabebe v. Nissan of N. Am., Inc.*, No. 18-cv-00144-WHO, 2018 WL 5617732, at *8 (N.D. Cal. Oct. 26, 2018) (dismissing Section 349 claim where "plaintiffs generally allege the existence of these 'false and misleading' communications" but do not "specifically allege that he saw them or that his actions were driven by such communications" and thus failed to comply with Rule 9(b)); *see also Solomon v. Bell Atl. Corp.*, 777 N.Y.S. 2d 50, 52 (App. Div. 2004) ("[T]o prevail in a cause of action under GBL §§ 349 and 350, the plaintiff must prove that the defendant made misrepresentations or omissions that were likely to mislead a reasonable consumer in

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN FURTHER SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

plaintiff's circumstances, that the plaintiff was deceived by those misrepresentations or omissions and that as a result the plaintiff suffered injury.").

Plaintiffs' Section 349 claim suffers from another flaw: it is barred by Facebook's California choice of law provision. Plaintiffs do not dispute that they agreed to Facebook's Statement of Rights and Responsibilities, including its California choice of law provision. Mot. 21; Opp. 21-25. That provision therefore governs Plaintiffs' claims. *See, e.g.*, *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464-65, 470 (1992) (explaining California's "strong policy favoring enforcement of [choice-of-law] provisions" and that broadly-worded choice-of-law clauses apply to contract and tort claims).

Plaintiffs argue that this Court should not apply the choice of law provision, because the court did not do so in *In re Facebook Biometric Information Privacy Litigation*, 185 F. Supp. 3d 1155, 1169-1170 (N.D. Cal. 2016). The *Biometric* case involved a claim brought under the Illinois Biometric Information Privacy Act (BIPA), and the court found that "California has no law or policy equivalent to BIPA." *Id.* at 1169. No court has ever relied on the *Biometric* decision in refusing to enforce a California choice of law clause where the plaintiff sought to bring a *consumer protection claim* under a different state's law. *See, e.g., Palomino v. Facebook, Inc.*, 16-cv-04230-HSG, 2017 WL 76901, at *4 (N.D. Cal. Jan. 9 2017) (holding *Biometric* inapposite and denying a claim under New Jersey's consumer protection law based on a finding that New Jersey's consumer protection law and "California consumer protection law aim to accomplish the same end, and thus California law is not contrary to fundamental New Jersey policy.").

The notion that "California has no law or policy equivalent" to Section 349 is squarely at odds with case law in this District. *Id.* As the court recognized in finding *Biometric* inapposite, "California . . . has its own robust body of consumer protection law that strives to prevent consumer deception." *Id.* ("California's consumer protection laws have been recognized as 'among the strongest in the country.'") (citation omitted); *see also Alvarez v. Chevron Corp.*, 656 F. 3d 925, 931 (9th Cir. 2011) (describing the CLRA and UCL as "broad consumer protection statutes"). Any "argument that California law is contrary" to another state's policy "because it affords different rights and remedies . . . misses the point." *See Palomino*, 2017 WL 76901, at *4 ("Courts should

8

not 'refrain from applying the chosen law merely because this would lead to a different result than would be obtained under' [another state's] law").

In any event, Plaintiffs' pleading deficiencies also doom their claim. Not only do Plaintiffs fail to plead with any specificity a material misrepresentation, but they also fail to satisfy Section 349's "actual injury" requirement. FAC ¶ 87. The only injury Plaintiffs allege under Section 349 is that Facebook "invad[ed] their privacy." *Id.* Contrary to Plaintiffs' argument, "general invasion[s] of privacy through the exposure of personal and private information" are not sufficient to establish actual injury under Section 349. *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *7-8 (S.D.N.Y. July 12, 2018) (dismissing Section 349 claims for lack of statutory injury where defendant surreptitiously tracked plaintiffs' browsing history, including keystrokes, mouse clicks, page visits and information provided on data forms) (internal citations omitted).[4]

### C. Plaintiffs Fail To State A Claim Under CDAFA Because They Do Not Adequately Allege Damage Or Loss As A Result Of Unauthorized Conduct

Plaintiffs fail to plead that they suffered any "economic harm or loss," as required for statutory standing under CDAFA. *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 842-43 (N.D. Cal. 2017); *see also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014) (dismissing CDAFA claims where plaintiffs failed to allege they "suffered any tangible harm from the alleged Section 502 violations"). Plaintiffs' allegation of "invading their privacy,"

---

[4] Plaintiffs assert that *Bose v. Interclick, Inc.*, No. 10 Civ. 9183(DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011), establishes that their allegation that Facebook "invad[ed] their privacy" is sufficient to plead a violation of Section 349. Opp. 23-24. But *Bose* dedicated a single sentence to Section 349's injury requirement and is not supported by precedent, as courts have subsequently concluded. *See Cohen*, 2018 WL 3392877, at *7-8. *Bose's* perfunctory analysis is inconsistent with New York law, which requires actual harm apart from the invasion itself to establish actual injury based on invasion of privacy. *See, e.g., Shostack v. Diller*, 15-CV-2255 (GBD)(JLC), 2015 WL 5535808, at *9 (S.D.N.Y. Sept. 16, 2015) ("An unquantifiable injury to a privacy interest generally does not suffice" for a NY GBL claim); *Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102 (App. Div. 2002) (denying allegation that defendant's sale of plaintiffs' personal information, including "plaintiffs' names, addresses, telephone numbers, account or loan numbers, credit card usage, and other financial data," in violation of a confidentiality commitment constituted "any actual harm" for purposes of Section 349). Nor do the cases cited within Plaintiffs' block quotation of *Bose* support their position. Unlike here, each of those cases involved disclosure of private, personal information to which independent privileges attached, and the courts held that those invasions were actionable because they inflicted separate injuries beyond the invasions themselves. *See Anonymous v. CVS Corp.*, 728 N.Y.2d 333, 335-36, 340 (N.Y. Supp. Ct. 2005) (disclosure of customers' statutorily-protected medical and prescription information); *see also Meyerson v. Prime Realty Services, LLC*, 796 N.Y. 2d 848, 855 (N.Y. Supp. Ct. 2005) (disclosure of tenants' legally-protected social security numbers).

9

Latham & Watkins LLP
Attorneys At Law
San Francisco

REPLY IN FURTHER SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

1   FAC ¶ 63, is thus irrelevant, and their conclusory allegation of "suffer[ing] damage" insufficient,
2   *id.* ¶ 62.  *See, e.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949 (N.D. Cal.
3   2014).

4       Plaintiffs argue that their allegations are sufficiently particular because they "describe, in
5   detail, how Facebook exploited a software vulnerability to wrongfully access data that was stored
6   on Facebook users' Android phones in order to, among other things 'deceive' and "wrongfully
7   obtain money.'" Opp. 16 n.5.  A cursory glance at the Complaint reveals no such particularity at
8   all.  FAC ¶¶ 57-62.  Plaintiffs' CDAFA allegations "merely track the language of the statute itself,
9   without providing facts to substantiate the claimed legal conclusions."  *Ticketmaster L.L.C. v.*
10  *Prestige Ent. West, Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018) (dismissing a claim under
11  503(c)(1) where plaintiffs' failed to allege facts supporting its claim that defendant's conduct
12  "actually alter[ed], damage[d], delete[d], or destroy[ed] data on [plaintiff's] systems").

13      Tacitly acknowledging their failure, Plaintiffs assert new arguments in their opposition
14  brief.  Opp. 15-16 (arguing that Facebook's collection of call and text logs purportedly used
15  Plaintiffs' "storage functions" and "Internet services").  These new arguments are not only
16  nonsensical, but also improper.  *Heineke v. Santa Clara Univ.*, 17-CV-05285-LHK, 2017 WL
17  6026248, at *16 (N.D. Cal. Dec. 5, 2017) ("[T]he complaint may not be amended by briefs in
18  opposition to a motion to dismiss.") (citation omitted).  Plaintiffs fail to explain what these new
19  allegations even entail, and there is nothing in the Complaint about "Facebook's use of 'storage
20  functions' and 'Internet services' on [Plaintiffs'] smartphones." Opp. 15.

21      In any event Plaintiffs still fail to plead a claim under CDAFA.  To plead a claim under
22  any section of CDAFA, Plaintiffs must establish that Facebook acted "without permission,"
23  *Gonzales v. Uber Tech., Inc.*, 305 F. Supp. 3d 1078, 1090-1091 (N.D. Cal. 2018), which as noted
24  *supra* Section I, they have failed to do with any particularity.  Plaintiffs also concede that they
25  have not alleged that Facebook "altered, damaged, deleted, or destroyed the data in some way," as
26  required under Section 501(c)(1).  Opp. 14-15.  Instead, Plaintiffs argue that the bare allegation
27  that Facebook "used" data is sufficient for a violation of Section 501(c)(1).  Not so.  Courts in this
28  district have declined to "read the phrase 'or otherwise uses' in section 502(c)(1) as prohibiting

10

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN FURTHER SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

anything other than use that is similar to alteration, damage, deletion, or destruction." *Ticketmaster*, 315 F. Supp. 3d at 1175 n.5 (dismissing claims under Section 503(c)(1) where plaintiff's "systems continued to function as intended, without damage or alteration.").

### D. Plaintiffs Fail To State Either An Intrusion Upon Seclusion Claim Or A Violation Of California's Constitutional Right To Privacy

Plaintiffs defend their privacy claims on the ground that Facebook collected "intimate or sensitive personally identifiable information," Opp. 16 (citing *Riley v. California*, 134 S. Ct. 2473, 2488-89 (2014)), that "reveals a 'wealth of detail about [Facebook users'] familial, personal, professional, associations," Opp. 20 (citing *Goodman v. HTC Am., Inc.*, No. C11-1793MJP, 2012 WL 2412070, at *15 (W.D. Wash. June 26, 2012)). But Plaintiffs do no identify any allegations to support their contention, nor do they identify any protected privacy interest. Their Complaint thus fails to state a claim under California's constitutional right to privacy or for intrusion upon seclusion.

To begin with, the Complaint makes clear that call and text logs reveal only the names of contacts, as well as the time and duration of outgoing, missed, or incoming calls. FAC ¶¶ 6-8. The logs do not reveal the content of the call or text. Plaintiffs themselves disclosed their call and text logs in the Complaint. *Id.* ¶¶ 6-8. The only redactions are to some names and phone numbers, which is information that appears in Plaintiffs' contact lists. Plaintiffs also admit that Facebook had permission to collect their contact lists, *id.* ¶ 21, which include not just names and phone numbers, but also home and email addresses. *Id.* ¶ 84. Plaintiffs do not identify any basis for finding that non-content-based call and text logs are particularly sensitive information especially since Plaintiffs admit that they allowed the collection of their contact information.

Plaintiffs rely on several district court cases from within the Ninth Circuit in arguing the collection of call and text logs is a "highly offensive intrusion," Opp. 16-19, and "serious invasion, *id.* at 21, but none of the cases involved the collection of information like call and text logs, and all of them involved selling the information or express promises not to take it. *See, e.g.*, *Goodman*, 2012 WL 2412070, at *14-15 (alleging the "continuous tracking of [plaintiffs'] location and movements," as well as the creation, disclosure, and sale of individualized profiles that contained

that "fine location data"); *In re Vizio*, 238 F. Supp. 3d at 1232-33 (alleging the collecting and selling of "detailed data about what video content" plaintiffs watched after the user turned off permission to share such information); *Opperman*, 84 F. Supp. 3d at 971-72 (alleged "theft" of personal contact information in mobile address books, despite representations that permission was required for mobile application developers to access data).

Plaintiffs assert that "[t]he facts of *Goodman* are similar in many respects to this case," relying on their single conclusory allegation that Facebook has data sharing agreements in place with various entities. The comparison does not withstand scrutiny. Not only is there no specific allegation that Facebook shared Plaintiffs' call and text logs with anyone, but also *Goodman* involved allegations of particularly sensitive information—"a continually updated log of precisely where [plaintiffs] live, work, park, dine, pick up children from school, worship, vote, and assemble, and what time they are ordinarily at these locations.'" *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *14 (N.D. Cal. Mar. 26, 2013) (discussing *Goodman*). *Yunker* dismissed a constitutional privacy claim where it found the allegations before it—collecting personal identifying information, including age, gender, location and a universally unique device identifier, and providing it "to advertising libraries for marketing purposes, in violation of the terms of Pandora's Privacy Policy"—more akin to the allegations found *insufficient* in *In re iPhone II Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure to third parties of unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices), and *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 991-92 (2011) (obtaining home address).[5] Plaintiffs make no effort to explain how Facebook uploading call and text logs—in addition to the allowed contacts list—falls on the more sensitive side of the line.

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d at 130-31, and *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 269-70, on which Plaintiffs rely, also

---

[5] Likewise, *Goodman*, *In re Vizio* and *Opperman* all expressly distinguished cases involving "the routine collection of personally identifiable information," where "[c]ourts have been hesitant to extend the tort of invasion of privacy," from the "collection of intimate or sensitive personally identifiable information." *In re Vizio*, 238 F. Supp. 3d at 1233; *see also Goodman,* 2012 WL 2412070, at *15 (distinguishing the collection of "someone's address or telephone number, which

12

underscore that Plaintiffs have *not* alleged either a "highly offensive intrusion" or "serious invasion," Opp. 17, or a reasonable expectation of privacy, *id.* at 21,[6] for several reasons: (i) Plaintiffs offer no explanation for how call and text logs are akin to the information collected in those cases; (ii) *In re Google* and *In re Nickelodeon* expressly recognized that collection of online information is not "sufficiently offensive," *In re Nickelodeon*, 827 F.3d at 294; *see also In re Google*, 806 F.3d at 150 (recognizing this district court's holding in *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), that "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim"); and (iii) these cases turned on defendant's *express promise* to *not* collect information, *see In re Nickelodeon*, 827 F.3d at 294 (dismissing privacy claim against Google but not against Viacom, because Viacom included on Nickelodeon website a message that read, "We don't collect ANY personal information about your kids"); *In re Google*, 806 F.3d at 150 (explaining that "[w]hat is notable about this case is how Google accomplished its tracking," namely, "by overriding the plaintiffs' cookie blockers, while concurrently announcing in its Privacy Policy that internet users could 'reset your browser to refuse all cookies'") (emphasis in original).

Plaintiffs claim their case is similar because "their data was surreptitiously obtained through deceit." Opp. 17. But despite some waffling in their briefing, *id.* (referring to "Facebook ask[ing] for to [sic] access to 'Contact Lists'"), Plaintiffs now admit that there is no *Facebook* representation at issue at all, Opp. 5-7, let alone a promise *not* to upload call and text logs.

Finally, Plaintiffs' constitutional claim also fails because they allege no "legally protected privacy interest" in their call and text logs. *See Cahen*, 147 F. Supp. 3d at 971-73 (dismissing constitutional privacy claim because "defendants' tracking of a vehicle's driving history,

---

courts have called 'routine commercial behavior'"); *Opperman*, 205 F. Supp. 3d at 1078 (distinguishing *Folgelstrom* as involving the collection of "a person's mailing address").

[6] Plaintiffs also point to *Riley v. California*, 134 S. Ct. 2473 (2014), as supporting a "heightened expectation of privacy" in "persons' mobile devices and the data thereon." Opp. 16. *Riley*, which held that police must get a warrant to search the contents of a cell phone because "a cell phone search would typically expose to the government far more than the most exhaustive search of a house," 134 S. Ct. at 2491, is inapposite.

13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN FURTHER SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS

performance, or location' 'at various times,' is not categorically the type of sensitive and confidential information the constitution aims to protect"), *aff'd*, 717 F. App'x 720 (9th Cir. 2017).

### E. Plaintiffs Fail To State A Standalone Claim for Unjust Enrichment

Contrary to Plaintiffs' argument, Opp. 25, the Ninth Circuit has expressly held that "in California, there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F. 3d 753, 762 (9th Cir. 2015). *Astiana* recognizes that "a court may 'construe the [alleged unjust enrichment] cause of action as a quasi-contract claim seeking restitution." *Id.* (citation omitted). And this district court has recognized previously that "there are a handful of factual scenarios where a theory of unjust enrichment has historically supported a restitutionary remedy." *Monet v. Chase Home Fin., LLC*, No. C 10-0135 RS, 2010 WL 2486376, at *3 (N.D. Cal. June 16, 2010).[7] But Plaintiffs do not even attempt to set forth a basis for doing so here. The parties have an "express binding agreement[], which define[s] the parties' rights," *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights."). *See also* Ex. B (Facebook's SRR containing a California choice-of-law provision, which Plaintiffs do not contest). And Plaintiffs offer no allegation that the agreement was procured by fraud or that they incurred an "expense" in connection with Facebook's collection of call and text logs. *See Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Resource Development Servs., Inc.*, No. C. 10-01324 RS, 2012 WL 12920615, at *4 & n.1 (N.D. Cal. Apr. 16, 2012) ("The elements of unjust enrichment are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'") (citation omitted).

---

[7] Those include circumstances not at issue here, like (i) "when the parties have a contract that was procured by fraud or is for some reason unenforceable," (ii) "where the plaintiff cannot assert title or right to possession of particular property, but nevertheless can show just grounds for recovering money to pay for some benefit the defendant received from him," *i.e.*, an "action derived from the common-law writ of assumpsit," or (iii) "where money or property 'identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession,' "a plaintiff may seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien." *Monet*, 2010 WL 2486376, at *3 (citations omitted).

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant Facebook's motion to dismiss with prejudice.

DATED: November 20, 2018

LATHAM & WATKINS LLP

By:  */s/ Elizabeth L. Deeley*
Elizabeth L. Deeley (CA Bar No. 230798)
Nicole C. Valco (CA Bar No. 258506)
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
*elizabeth.deeley@lw.com*
*nicole.valco@lw.com*

Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
*susan.engel@lw.com*
*matthew.peters@lw.com*

*Attorneys for Defendant Facebook, Inc.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

REPLY IN FURTHER SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT
CASE NO. 3:18-CV-01881 RS