1    LATHAM & WATKINS LLP
     Elizabeth L. Deeley (CA Bar No. 230798)
2        *elizabeth.deeley@lw.com*
     Nicole C. Valco (CA Bar No. 258506)
3        *nicole.valco@lw.com*
     505 Montgomery Street, Suite 2000
4    San Francisco, CA  94111-6538
     Telephone:  +1.415.391.0600
5    Facsimile:  +1.415.395.8095

6    Susan E. Engel (*pro hac vice*)
         *susan.engel@lw.com*
7    555 Eleventh Street, NW, Suite 1000
     Washington, DC  20004
8    Telephone: +1.202.637.2200
     Facsimile: +1.202.637.2201

9
     *Attorneys for Defendant Facebook, Inc.*
10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14

15   LAWRENCE OLIN, HAROLD NYANJOM,        Case No. 3:18-cv-01881 RS
     SHERON SMITH-JACKSON and JANICE
16   VEGA-LATKER, individually and on behalf   **FACEBOOK, INC.'S NOTICE OF**
     of all others similarly situated,          **MOTION AND MOTION TO DISMISS**
                                                 **THE SECOND AMENDED**
17                            Plaintiffs,       **CONSOLIDATED CLASS ACTION**
                                                 **COMPLAINT; MEMORANDUM OF**
18            v.                                 **POINTS AND AUTHORITIES IN**
                                                 **SUPPORT**
19   FACEBOOK, INC.,

20                            Defendant.        Date: May 23, 2019
                                                Time: 1:30 p.m.
21                                              Court: Courtroom 3, 17th Floor
                                                Hon. Richard Seeborg
22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE that on May 23, 2019, at 1:30 p.m. in Courtroom 3 of the United

4     States District Court for the Northern District of California, located at 450 Golden Gate Avenue,

5     San Francisco, California, Defendant Facebook, Inc. will and hereby does move for an order

6     dismissing Plaintiffs' Second Amended Consolidated Class Action Complaint ("Complaint" or

7     "SAC") with prejudice.

8          All claims in the Complaint should be dismissed under Federal Rules of Civil Procedure

9     8(a), 9(b), 12(b)(1), and 12(b)(6), on the grounds that (1) Plaintiffs lack standing to bring the

10    Complaint; and (2) each of the causes of action in Plaintiffs' Complaint fails to state a claim as a

11    matter of law.

12         This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

13    Authorities, the concurrently filed Defendant's Request for Judicial Notice, Declaration of Nicole

14    Valco, Declaration of Louis Boval, and Declaration of Konstantinos Papamiltiadis, the pleadings

15    and papers on file in this action, the arguments of counsel, and any other matter that the Court may

16    properly consider.

17

## STATEMENT OF RELIEF SOUGHT

18         Facebook seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and

19    12(b)(6) dismissing with prejudice Plaintiffs' Complaint for lack of standing and failure to state a

20    claim upon which relief can be granted.

21         ///

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1  DATED:  February 26, 2019

LATHAM & WATKINS LLP

2  By:  */s/ Elizabeth L. Deeley*

3  Elizabeth L. Deeley (CA Bar No. 230798)
Nicole C. Valco (CA Bar No. 258506)
505 Montgomery Street, Suite 2000

4  San Francisco, CA  94111-6538
*elizabeth.deeley@lw.com*

5  *nicole.valco@lw.com*

6  Susan E. Engel (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000

7  Washington, DC  20004
*susan.engel@lw.com*

8
*Attorneys for Defendant Facebook, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 2

       A.     Plaintiffs Allege Facebook Exploited A Vulnerability In Android
              Software To Collect Their Call and Text Logs Without Consent ..................... 2

       B.     Plaintiffs Did Not Install Facebook Lite And They Consented To
              Call And Text Log Uploading On Messenger ................................................... 3

       C.     The Android "Allow Access" Prompt Does Not Allow Collection
              of Call and Text Logs By Default ..................................................................... 4

       D.     Facebook Did Not Share Call and Text Logs With "61 Different
              Entities" Through Data-Sharing Agreements .................................................... 6

       E.     Plaintiffs Bring Five Claims In The SAC ......................................................... 6

III.   LEGAL STANDARDS .............................................................................................. 6

IV.    PLAINTIFFS DO NOT HAVE STANDING FOR ANY OF THEIR CLAIMS........... 8

       A.     Plaintiffs Lack Standing To Challenge Facebook's Alleged
              Unlawful Conduct Because They Have Not Suffered *Any* Injury ..................... 8

       B.     Plaintiffs Lack Standing Based On An Economic Injury .................................. 10

       C.     Plaintiffs Lack Standing Based On A Privacy Injury ........................................ 13

V.     PLAINTIFFS FAIL TO SATISFY RULE 9(B)'S REQUIREMENT THAT
       THEY PLEAD WITH PARTICULARITY THE CIRCUMSTANCES OF THE
       PROMPT .................................................................................................................. 15

VI.    PLAINTIFFS' CLAIMS EACH HAVE FATAL CLAIM-SPECIFIC DEFECTS........ 17

       A.     Plaintiffs Fail To Plead Any Element Of A Fraud Claim .................................. 17

       B.     Plaintiffs Fail To Plead Standing Or Other Elements Of A CDAFA
              Claim ................................................................................................................. 18

       C.     Plaintiffs' Contract With Facebook Defeats Their Unjust
              Enrichment Claim .............................................................................................. 21

       D.     Plaintiffs Fail To Plead Any Element Of An Intrusion Upon
              Seclusion Claim ................................................................................................ 22

       E.     Plaintiffs Fail To Plead Any Element Of A Constitutional Privacy
              Claim ................................................................................................................. 24

VII.   CONCLUSION......................................................................................................... 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014) ...................................................................16

*Arena Restaurant & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
   No. 17-CV-03805-LHK, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ...............17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................7

*Auer v. Trans Union, LLC*,
   902 F.3d 873 (8th Cir. 2018) .......................................................................10

*Augustine v. United States*,
   704 F.2d 1074 (9th Cir. 1983) ......................................................................7

*Becker v. Skype, Inc.*,
   No. 5:12-CV-06477-EJD, 2014 WL 556697 (N.D. Cal. Feb. 10, 2014)...............12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................7

*Belluomini v. Citigroup, Inc.*,
   No. CV 13–01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ...............23

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ...................................................................9, 20

*Block v. Tobin*,
   45 Cal. App. 3d 214 (1975) ..........................................................................18

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) (per curiam) ...........................................14, 15

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ........................................................................16

*Deteresa v. Am. Broad. Cos.*,
   121 F.3d 460 (9th Cir. 1997) ........................................................................23

*Ellis v. JPMorgan Chase & Co.*,
   No. 16-17005, 2018 WL 4090102 (9th Cir. Aug. 28, 2018) .............................22

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) ..................................................................19, 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015) ........................................1, 4, 11, 15, 16, 19

*In re Facebook Internet Tracking Litig.*,
   263 F. Supp. 3d 836 (N.D. Cal. 2017) .................................................................19

*Fernandez v. Leidos, Inc.*,
   127 F. Supp. 3d 1078 (E.D. Cal. 2015).................................................................11

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ..............................................................................25

*Foster v. Essex Prop., Inc.*,
   No. 5:14-cv-05531-EJD, 2017 WL 264390 (N.D. Cal. Jan. 20, 2017) ................7, 9

*In re Gilead Scis. Secs. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...............................................................................7

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) (en banc), *superseded by statute on other
   grounds as stated in Johnson v. Walmart Stores, Inc.*, 544 F. App'x 696 (9th
   Cir. 2013) ..........................................................................................................15

*Gonzales v. Comcast Corp.*,
   No. 10-cv-01010-LJO-BAM, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012), *R. &
   R. adopted by* 2012 WL 217708 (E.D. Cal. Jan. 23, 2012) ...................................12

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................................................20, 21, 25

*Goodman v. HTC Am., Inc.*,
   No. C11-1793MJP, 2012 WL 2412070 (W.D. Wash. June 26, 2012) ..............12, 13

*In re Google Android Consumer Privacy Litig.*,
   No. 11-md-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ......11, 13, 19, 25

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015)............................................................................24, 25

*In re Google Inc. Privacy Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................................................................24

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ....................................................................................23, 24

*Hernandez v. Path, Inc.*,
   No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012).............12, 13

*Hill v. NCAA*,
   7 Cal. 4th at 1, 66 (1994) ................................................................................24, 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

*Holt v. Facebook, Inc.*,
240 F. Supp. 3d 1021 (N.D. Cal. 2017), *appeal pending*, No. 17-80086 (9th
Cir. May 12, 2017) ................................................................................................... 13

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013) ................................................................. 9, 14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................. 25

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ......................................................................... 17, 18

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ............................................................................... 21

*LaCourt v. Specific Media, Inc.*,
No. SACV 10-1256 GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ............. 11, 12

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ............................................................................. 6, 7

*Letizia v. Facebook, Inc.*,
267 F. Supp. 3d 1235 (N.D. Cal. 2017) ................................................................. 22

*Lewis v. Casey*,
518 U.S. 343 (1996) .................................................................................................. 9

*Mazur v. eBay Inc.*,
No. C 07-03967 MHP, 2008 WL 618988 (N.D. Cal. Mar. 4, 2008) ......................... 18

*Miller v. Nat'l Broad. Co.*,
187 Cal. App. 3d 1463 (1986) ................................................................................ 24

*Nagy v. Nagy*,
210 Cal. App. 3d 1262 (1989) ................................................................................ 18

*Norkunas v. Wynn Las Vegas, LLC*,
343 F. App'x 269 (9th Cir. 2009) ............................................................................. 7

*Olmos v. Bank of Am., N.A.*,
No. 15-cv-2786-BAS-BGS, 2016 WL 3092194 (S.D. Cal. June 1, 2016) ............ 12, 13

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................................... 13, 20

*People v. Avery*,
27 Cal. 4th 49 (2002) .............................................................................................. 21

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

*Puri v. Khalsa*,
   674 F. App'x 679 (9th Cir. 2017) ........................................................................................21

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ........................................................................................2, 6

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ..............................................................................................7

*Santos v. TWC Admin. LLC*,
   No. CV 13-04799 MMM, 2014 WL 12558009 (C.D. Cal. Aug. 4, 2014) ...........................12

*Scott-Codiga v. Cty. of Monterey*,
   No. 10-cv-05450-LHK, 2011 WL 4434812 (N.D. Cal. Sept. 23, 2011) ...............................23

*Sierra Club v. Morton*,
   405 U.S. 727 (1972) ...........................................................................................................11

*United States ex rel. Silingo v. WellPoint, Inc.*,
   904 F.3d 667 (9th Cir. 2018) ................................................................................................7

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
   506 F.3d 832 (9th Cir. 2007) (per curiam)..........................................................................12

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..........................................................................................................8

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) ...........................................................................15, 23

*SVGRP LLC v. Sowell Fin. Servs., LLC*,
   No. 5:16-cv-7302-HRL, 2017 WL 1383735 (N.D. Cal. Apr. 18, 2017) ...............................17

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) .........................................................................20, 21

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
   252 F. App'x 123 (9th Cir. 2007) ........................................................................................22

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982)...............................................................................................................8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................................15, 16

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .........................................................................23, 24, 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

*Yates v. United States*,
    135 S. Ct. 1074 (2015)............................................................................................21

*Yunker v. Pandora Media, Inc.*,
    No. 11-cv-03113-JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ............................11, 25

## STATUTES

Cal. Penal Code § 502(c)(1)....................................................................................18, 21

Cal. Penal Code § 502(c)(2)............................................................................................18

Cal. Penal Code § 502(c)(3)............................................................................................18

Cal. Penal Code § 502(c)(7)............................................................................................18

Cal. Penal Code § 502(e)(1)............................................................................................10

## OTHER AUTHORITIES

Fed. R. Evid. 201(b)(2)....................................................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

## I.    INTRODUCTION

This Court dismissed Plaintiffs' First Amended Consolidated Class Action Complaint ("FAC") because it did not identify "the allegedly fraudulent contact upload prompt" that allegedly allowed Facebook to collect Plaintiffs' call and text logs by default without their consent.  Order Granting Mot. to Dismiss at 2, 18, Dkt. 85 ("MTD Order").  Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") attempts to cure that shortcoming by identifying the language of that prompt: Plaintiffs now allege that when they installed the Messenger and Facebook Lite apps for Android, they saw and agreed to a prompt requesting that they "Allow [the app] access to [their] contacts" (hereinafter "Allow Access prompt").  SAC ¶¶ 1, 6-9, Dkt. 88. That Allow Access prompt is fatal to their case, however, because the prompt appears *only* on versions of Android software that do *not* allow apps to collect call and text logs "by default" when a user grants access to "contacts"—the precise "vulnerability" that Plaintiffs allege was "exploit[ed]."  *Id.* ¶¶ 21-22; *see also* Decl. of Nicole Valco in Supp. of Mot. to Dismiss SAC ("Valco Decl.") Ex. B at 6-7.  Plaintiffs' new allegations thus conclusively show that Facebook did not engage in the alleged fraudulent collection of their call and text logs, and accordingly, their allegations are facially insufficient to establish their standing to bring this case.

That is not the only fatal flaw in Plaintiffs' Complaint.  Plaintiffs' allegations also cannot establish their standing as a matter of fact.  Contrary to the SAC, Facebook did not rely solely on an *Android* prompt to obtain consent to collect Plaintiffs' call and text logs, but also presented a *Facebook* consent screen.  That Facebook consent screen requested permission for the app to upload information "about your contacts like phone numbers and nicknames, *and your call and text history*"[1] in order to provide the user with a better app experience (such as helping her find friends).  Decl. of Louis Boval in Supp. of Mot. to Dismiss SAC ¶ 6 ("Boval Decl.").[2]  And *each* Plaintiff gave express permission through that consent screen or by later opting in through their

---

[1] All emphases added unless otherwise noted.

[2] In support of a factual attack on Plaintiffs' standing, Facebook is submitting a declaration from Louis Boval, a Facebook Software Engineering Manager with personal knowledge of the features of the Messenger for Android app, as well as the Android permissions system.  Boval Decl. ¶¶ 1, 3, 13-14, 30.  To be clear, Facebook is not relying on the facts in the Boval Declaration for purposes of its facial attack on Plaintiffs' standing or its Rule 12(b)(6) arguments.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2ⁿᵈ AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

app settings. *Id.* ¶¶ 7-8; *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (in a "factual attack, the challenger disputes the truth of the allegations" on which jurisdiction depends).

Beyond Plaintiffs' fundamental lack of any injury at all, the SAC should be dismissed with prejudice because (i) Plaintiffs still have not alleged an economic injury; (ii) Plaintiffs' allegation that Facebook disseminated call and text logs to third parties fails to establish a privacy injury and is also not true; (iii) Plaintiffs still have not alleged the circumstances of the allegedly fraudulent Allow Access prompt they saw as required by Rule 9(b); and (iv) each of Plaintiffs' causes of action, including the newly-added boilerplate fraud claim, suffer significant claim-specific defects.

## II.   BACKGROUND

### A.   Plaintiffs Allege Facebook Exploited A Vulnerability In Android Software To Collect Their Call and Text Logs Without Consent

Plaintiffs allege that at some point "prior to October 2017," Facebook collected call and text logs from Plaintiffs' Android smartphones when Plaintiffs installed Messenger and Facebook Lite software applications ("apps"). SAC ¶¶ 6-9. The collected call logs include "whether each call was 'Incoming,' 'Outgoing,' or 'Missed,' the date and time of each call, the number dialed, the individual called, and the duration of each call"; the text logs "contain similar data" (hereinafter "Call and Text Logs" or "Logs"). *Id.* ¶¶ 1, 24; *see also id.* ¶¶ 7-9, 23 (alleging collected Logs). Plaintiffs do not allege that the Logs include the content of any calls or texts.

Plaintiffs allege that Facebook collected this information without consent by "exploit[ing]" a "vulnerability" in older versions of the Android Operating System ("Android OS"). *Id.* ¶¶ 1, 21-22. Plaintiffs identify two circumstances in which this could have happened, although they do not allege which occurred in their cases. First, "prior to Android [OS] version 4.1," the Android OS was designed so that "granting [apps] access to users' 'Contacts' also granted [apps] access to users' call and text logs by default"—*i.e.*, without "an explicit message requesting access to phone call and SMS [text] data." *Id.* ¶¶ 22, 25 (third alteration in original). Second, after this issue was "patched" in later versions of the Android OS (versions 4.1 and higher), apps could still "bypass" the patch "by specifying that they were using an older, pre-patched version of the Android

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1    Software Development Kit." *Id.* ¶ 22.[3]  Plaintiffs allege neither the Android OS version that was

2    running on their smartphones at the time they allegedly installed Messenger and Facebook Lite,

3    nor the date they installed the apps.

4        Plaintiffs now plead the content of the allegedly misleading "prompt" they saw when they

5    installed the Messenger and Facebook Lite apps: "Allow Facebook [Messenger or Lite] access to

6    your contacts?" with choices to "Allow" or "Deny."  *Id.* ¶¶ 1, 6-9.  Each Plaintiff alleges that he

7    or she selected "Allow," and that Facebook thereby collected their Call and Text Logs allegedly

8    without their consent.  *Id.* ¶¶ 6-9; *see also id.* ¶ 1 (alleging that "upon" users' granting access to

9    their "contacts" through this prompt, Facebook collected Call and Text Logs).[4]

10       **B.    Plaintiffs Did Not Install Facebook Lite And They Consented To Call And
              Text Log Uploading On Messenger**

11

12       Contrary to their allegations, SAC ¶¶ 6-9, none of the named Plaintiffs installed the

13   Facebook Lite app for Android.  Boval Decl. ¶¶ 10, 50-51, 55-56.  Plaintiffs *did* install and use the

14   Messenger app for Android.  But when they did so, Facebook presented each Plaintiff with

15   Facebook's own in-app consent screen—distinct from the *Android* operating-system-level

16   ─────────────────────────

17   [3] App developers use an Android Software Development Kit ("SDK") to design their apps to run
18   on a particular OS version.  The Android OS is designed so that if a developer builds their app to
     run on an earlier OS version, later OS versions will recognize that and adjust so that the app can
     perform as the developer intended.  To do this, app developers set a "targetSdkVersion" for their
19   app telling the Android OS which OS version the app is designed to run on, and the OS adjusts
     accordingly.   Valco Decl. Ex. B at 22, 26 (Android Developer Guides), *also available at*
20   https://developer.android.com/guide/topics/manifest/uses-sdk-element; *see also* Def. Facebook's
     Req. for Judicial Notice in Supp. of Mot. to Dismiss SAC at 1, 3-6 ("RJN").  Plaintiffs refer to this
21   Android app design practice when they allege that Facebook had the ability to "bypass" Android's
     "patch" in later OS versions by "using" an "older, pre-patched version of the Android [SDK]."
22   SAC ¶ 22.

23   [4] Plaintiffs also include in the SAC—without providing any context—excerpts from "emails" and
     "messages" of "Facebook employees" (some of which are undated) which Plaintiffs claim
24   demonstrate that Facebook "decided" to collect Call and Text Logs "without subjecting [Facebook
     users] to an Android permissions dialog at all."  SAC ¶¶ 2-3 (alteration in original).  Suffice it to
25   say, the excerpted material demonstrates nothing of the sort.  But in any case, Plaintiffs' assertion
     at SAC paragraph 3 that Facebook collected Logs "without . . . an Android permissions dialog at
26   all" is flatly inconsistent with the rest of the SAC's allegations and Plaintiffs' representations
     throughout this litigation that Facebook collected that information through a prompt requesting
27   permission to access "contacts."  SAC ¶¶ 1, 6-9, 21-22; First Am. Consol. Class Action Compl. ¶¶
     1, 20-21, Dkt. 52 ("FAC"); Dkt. 74 at 1, 3, 6, 7 & n.4 (Pls.' Opp. to Mot. to Dismiss) (Plaintiffs
28   referring repeatedly in prior briefing to an "Android prompt" asking users' permission to access
     their "Contact List").

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

3

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

permission they allegedly saw—and each Plaintiff consented to Facebook's collection of their Call and Text Logs.   Plaintiffs entirely ignore this *Facebook* prompt and only disclose in their Complaint the *Android* prompt.

Starting on May 21, 2015, Facebook introduced a new Messenger feature for Android that allowed the app to upload users' Call and Text Logs if users chose to turn on that setting.   Boval Decl. ¶¶ 3, 5-7, 11-12, 19-20.   When users installed Messenger and signed in to the app, they would see an in-app consent screen (*i.e.*, provided by the app itself) as part of the "New User Experience" that asked them if they wanted to "[c]ontinuously upload info about your contacts like phone numbers and nicknames, and your call and text history"; users could select "Turn On" or "Not Now."   *Id.* ¶¶ 6-7, 12.[5]   Here, each Plaintiff installed Messenger, and each Plaintiff turned on this setting—either initially through that "New User Experience" consent screen, or later by opting in through their app settings after already having seen that consent screen.   *Id.* ¶¶ 8, 12, 18-20, 22, 54.

### C.   The Android "Allow Access" Prompt Does Not Allow Collection of Call and Text Logs By Default

In addition to the in-app Messenger consent screen, the Android OS has its own system of operating-system-level permission prompts.   The publicly available Android Developer Guides ("Guides") describe the permission prompts that appear on various versions of the Android OS—including the Allow Access prompt that Plaintiffs allegedly saw.   Valco Decl. Ex. B at 6-7 & fig.1 (Guides) (showing the Android "[r]untime request[]" permission, which asks, "Allow Awesome Notes to access your contacts?" with choices to "Deny" or "Allow"), *also available at* https://developer.android.com/guide/topics/permissions/overview.   And critically, the Guides disclose that the Allow Access prompt appears *only* on versions of the Android OS that Plaintiffs themselves allege would *not* have allowed the allegedly wrongful conduct at issue.   More specifically, the Allow Access prompt appears *only* if the user's device is running Android OS

---

[5] Indeed, Plaintiffs' own allegations appear to reference a Facebook in-app consent screen.   The SAC purports to excerpt a Facebook email that references a plan to "provide an in-app opt-in NUX for a feature" that allows users to upload their "SMS and call log history."   SAC ¶ 2.   "NUX" is a shorthand for "New User Experience."   Boval Decl. ¶ 12.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1    version 6.0 and above *and* the app also is designed to run on Android OS version 6.0 and above.

2    *Id.* at 6-7 (explaining that the "[r]untime request[]" permission appears "[i]f the device is running

3    Android 6.0 (API level 23) or higher, *and* the app's targetSdkVersion is 23 or higher"(emphasis

4    in original)).[6]   Yet Plaintiffs allege that Android OS versions 6.0 and above do not have the

5    "vulnerability" that could be exploited.   SAC ¶¶ 21-22.   Plaintiffs' allegations are thus

6    fundamentally impossible to reconcile: if they saw the Allow Access prompt, Facebook simply

7    could not have engaged in the conduct alleged.

8            This impossibility is clear from comparing Plaintiffs' allegations to the Android Developer

9    Guides.  It is also clear from the Boval Declaration, which confirms that the Allow Access prompt

10   is an *Android* operating-system-level permission prompt—not the Facebook in-app consent screen

11   described in Section II.B above—and that Plaintiffs could only have seen that prompt if their

12   Android devices were using OS version 6.0 or higher *and* the Facebook apps were designed to run

13   on version 6.0 or higher.  Boval Decl. ¶¶ 26-27, 29-31, 36-40, 45-49.  Moreover, the Allow Access

14   prompt could only have allowed apps access to Plaintiffs' contacts—not to their Call and Text

15   Logs—because the Android OS versions 6.0 and above would have presented separate operating-

16   system-level permissions for call logs and for SMS (text) logs.  *Id.* ¶¶ 9, 28, 46-48.[7]

17   ───────────────────────────

18   [6] As explained in Facebook's contemporaneously filed Request for Judicial Notice, this Court may
     take judicial notice of the fact that the Allow Access prompt appears only on Android OS versions
19   6.0 (API 23) and above *and* if the app has a targetSdkVersion of 23 or above.  That fact "can be
     accurately and readily determined from" the Permissions Overview page of the Android Developer
20   Guides, a publicly available webpage "whose accuracy cannot reasonably be questioned."  Fed. R.
     Evid. 201(b)(2); *see also* RJN at 1, 3-6.  Plaintiffs cannot dispute the relevance of this fact.  *Cf.*
21   MTD Order at 9-10 (declining to take judicial notice of Facebook prompt in the *Ars Technica*
     article in part because Plaintiffs disputed its relevance).  Plaintiffs allege that *only* pre-4.1 Android
22   OS versions had the alleged software vulnerability and that Facebook apps could also "specify[]"
     an "older, pre-patched version" to get around Android's later patch.  SAC ¶¶ 21-22.  The fact that
23   the prompt they saw appears in *neither* of those circumstances is highly relevant to Plaintiffs'
     allegations.   This fact also reveals Plaintiffs' continued failure to satisfy Rule 9(b): if it is
24   impossible for them to have seen the Allow Access prompt at the time Facebook allegedly
     collected their Logs by exploiting a vulnerability in the Android OS, then they still have not alleged
25   the relevant prompt that allowed Facebook to do so.  MTD Order at 11 ("As pleaded, the complaint
     appears to be based on selective information from the [*Ars Technica*] article without any
26   suggestion plaintiffs know what the specific prompt or prompts were at the time they installed the
     apps.  More needs to be averred to satisfy the applicable rules of pleading.").

27   [7] Mr. Boval explains that in pre-4.1 OS versions, Android did not offer separate operating-system-
     level permissions for an app to access a device's contacts and call logs; instead, the Android
28   permissions system was designed so that a user granting an app access to "contacts" would also
     have granted access to call logs by default.  Boval Decl. ¶¶ 32-33, 42.  The same was not true for

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1

### D.     Facebook Did Not Share Call and Text Logs With "61 Different Entities" Through Data-Sharing Agreements

2

3       In addition—and contrary to Plaintiffs' vague allegation that Facebook has agreements to

4   share user data (which purportedly includes Call and Text Logs) "with 61 different entities," SAC

5   ¶ 27—Facebook in fact does *not* share any Call or Text Logs as part of any agreement with either

6   its 52 "integration partners" (a group that includes Apple, Microsoft, Blackberry, Samsung, and

7   Huawei), or the "61 companies" with apps on the Facebook platform who received an extension

8   for a compliance deadline (a group that includes UPS).  Decl. of Konstantinos Papamiltiadis in

9   Supp. of Mot. to Dismiss SAC ¶¶ 6-10 ("Papamiltiadis Decl.").[8]  Thus, regardless of which group

10  Plaintiffs meant to reference, Facebook did not share user Call and Text Logs with either of them.

11  *Id.* ¶¶ 8, 10.

12

### E.     Plaintiffs Bring Five Claims In The SAC

13      Following this Court's dismissal of the FAC, Plaintiffs filed the SAC, which alleges a

14  California Computer Data Access and Fraud Act ("CDAFA") claim, an unjust enrichment claim,

15  and two state-law privacy claims, along with a new fraud claim, on behalf of "all persons in the

16  United States who installed the Facebook Messenger and Facebook Lite apps for Android, and

17  granted Facebook permission to access their 'Contacts.'"  SAC ¶¶ 30, 36-65.

18  ## III.   LEGAL STANDARDS

19      **Rule 12(b)(1) Standard.**  A defendant may challenge a plaintiff's Article III standing

20  under Rule 12(b)(1) in two distinct ways.  "A 'facial' attack accepts the truth of the plaintiff's

21  allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Leite*

22  *v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air*, 373 F.3d at 1039).  By

23

24  SMS logs: Android had a separate permission for an app to access SMS data, and the Android
    contacts permission accordingly never granted access to SMS data by default.  *Id.* ¶ 35.  Android

25  later separated contacts and call logs into two different operating-system-level permissions in OS
    versions 4.1 and above.  *Id.* ¶¶ 34, 42-43.

26  [8] Also in support of Facebook's factual attack on Plaintiffs' standing, Facebook is submitting a
    declaration from Konstantinos Papamiltiadis, the Director of Developer Platforms and Programs

27  of Facebook, who has personal knowledge of agreements referenced in Facebook's June 29, 2018
    submission to Congress as well as Facebook's partnerships generally.  Papamiltiadis Decl. ¶¶ 1-3.

28  As with the Boval Declaration, Facebook is not relying on the facts in the Papamiltiadis
    Declaration for purposes of its facial standing attack or its Rule 12(b)(6) arguments.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

contrast, a "factual" attack "contests the truth of the plaintiff's factual allegations" by "introducing evidence outside the pleadings." *Id.* "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual issues itself." *Id.* at 1121-22. Courts should defer the resolution of "material factual disputes" if an issue of jurisdiction is "intertwined with an element of the merits of the plaintiff's claim," *id.* at 1121-22 & n.3, but only where the plaintiff comes forward with competent evidence creating a genuine "dispute," *see Foster v. Essex Prop., Inc.*, No. 5:14-cv-05531-EJD, 2017 WL 264390, at *4 (N.D. Cal. Jan. 20, 2017) (where "the material facts" concerning an element of standing were "undisputed" due to plaintiffs' failure to produce evidence, "any factual overlap between Plaintiffs' standing and the merits is not an impediment to granting [the] Rule 12(b)(1) motion"); *see also Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269, 270-71 (9th Cir. 2009).

**Rule 12(b)(6) Standard.**  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court begins its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Nor is the court required to accept as true allegations that are . . . unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Dismissal without leave to amend is proper where the complaint cannot be saved by amendment, and the court's discretion to deny leave is "particularly broad" where the plaintiff previously amended. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). This is especially true when a plaintiff does not comply with the Court's "specific instructions on how to amend the complaint." *Id.*

**Rule 9(b) Standard.**  As the Court previously found, Plaintiffs' claims are all based on their allegation that Facebook misrepresented the nature of the information it was uploading, and all claims are subject to Rule 9(b). MTD Order at 10, 12, 13, 15, 18. The SAC restates the same claims with the addition of a fraud claim. SAC ¶¶ 36-65. To satisfy Rule 9(b), the SAC "must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (alteration in original) (citation omitted).

## IV.   PLAINTIFFS DO NOT HAVE STANDING FOR ANY OF THEIR CLAIMS

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Here, Plaintiffs have not made the necessary showing of an injury in fact that is both "particularized" and "concrete." *Id.* at 1548. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks and citation omitted). That is, each Plaintiff must show that he or she "personally has suffered" some harm because of Facebook's conduct. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). And that harm must rise to the level of a "concrete" injury— one that "actually exist[s]," is "real," and is "not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548 (citation omitted).

Based on several independent facial and factual grounds, Plaintiffs lack Article III standing: (i) as both a facial and factual matter, Plaintiffs themselves were not subjected to the alleged unlawful conduct, and thus could not have been injured by it; (ii) Plaintiffs' allegations of economic harm fail to state an injury on their face; and (iii) Plaintiffs' allegations of a privacy injury based on third-party dissemination are inaccurate as a factual matter because Facebook did not share any Call and Text Logs with third parties, and additionally fail to state an injury on their face.

### A.   Plaintiffs Lack Standing To Challenge Facebook's Alleged Unlawful Conduct Because They Have Not Suffered *Any* Injury

Plaintiffs' entire action against Facebook is built on a single premise: that Facebook "programmed" the Messenger and Facebook Lite apps to collect users' Call and Text Logs "without their permission" by taking advantage of an alleged "vulnerability" in earlier versions of the Android OS.  SAC ¶¶ 20, 22.  But both their allegations (*i.e.*, a facial attack on standing) and

LATHAM&WATKINS\
ATTORNEYS AT LAW\
SAN FRANCISCO

8

FACEBOOK'S NOTICE OF MOT. AND\
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT\
CASE NO. 3:18-CV-01881 RS

the accompanying declarations (*i.e.*, a factual attack on standing) make clear that Plaintiffs lack standing to challenge this alleged practice.  The Allow Access prompt Plaintiffs saw did not allow it, and each Plaintiff consented to Facebook's collection of their Call and Text Logs.  Plaintiffs therefore cannot establish any injury *to themselves* based on the alleged wrongdoing.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (citations omitted)); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) (plaintiffs who had never used their iPods in the manner they contended was unsafe lacked any concrete or particularized injury from that alleged safety defect).

*First*, on their face, Plaintiffs' allegations regarding the Allow Access prompt defeat their standing.  If Plaintiffs saw the Allow Access prompt, then they were using a version of the Android OS that did not permit apps to access Call and Text Logs if users clicked "Allow."  Plaintiffs themselves allege this vulnerability existed only on *earlier* versions of the Android software *or* when apps were designed to use those versions, SAC ¶¶ 21-22, and the Android Developer Guides reveal that the Allow Access prompt Plaintiffs saw does *not* appear in either circumstance, Valco Decl. Ex. B at 6-7 & fig.1; *see also supra* Section II.C.  Plaintiffs have therefore failed to allege their standing to challenge the conduct described in the SAC.  *See In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1009 n.2 (N.D. Cal. 2013) (plaintiff lacked standing to bring claim based on Apple's alleged "geotagging" practice when evidence demonstrated that her iPhone never ran iOS version capable of geotagging).

*Second*, and independently as a factual matter, the Boval Declaration makes clear that if Plaintiffs were presented with the Allow Access prompt at the time they installed Messenger, then Plaintiffs' devices must have been running a later Android OS version that did not permit apps to access Call and Text Logs without separate, explicit Android permission prompts.  Boval Decl. ¶¶ 9, 28, 39-40, 45-47.  The Boval Declaration also establishes that none of the Plaintiffs ever installed Facebook Lite on their Android devices.  *Id.* ¶ 55.  As an indisputable factual matter, therefore, Plaintiffs were not subjected to the practice they are challenging and lack standing.  *See*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

*Foster*, 2017 WL 264390, at *4 (granting Rule 12(b)(1) factual attack on standing in data breach case where defendant produced evidence showing plaintiffs' information was not on breached system).

**Third**, and also independently as a factual matter, Facebook did not rely solely on Android permissions but also presented each Plaintiff with Facebook's *own* prompt. As Mr. Boval explains, separate and apart from the Android permissions, each Plaintiff affirmatively consented to Facebook collecting their Call and Text Logs (either through the initial consent screen or through the Messenger settings). Boval Decl. ¶¶ 6-8, 18-20, 22, 24-25, 51-54; *see also supra* Section II.B. Given Plaintiffs' express consent, they naturally could not have suffered any injury—of any kind—from that collection of their Logs. *See, e.g.*, *Auer v. Trans Union, LLC*, 902 F.3d 873, 877-78, 879 (8th Cir. 2018) (no injury-in-fact based on a privacy violation where plaintiff consented to defendants' actions).

In sum, none of the Plaintiffs has standing to challenge any alleged Facebook practice of "exploiting" an Android software vulnerability to collect Call and Text Logs without consent—because the Allow Access prompt they allegedly saw did not appear on software with that vulnerability and regardless, each Plaintiff saw Facebook's specific in-app prompt and opted in.

**B.      Plaintiffs Lack Standing Based On An Economic Injury**

Next, and as a purely facial matter, the SAC still lacks sufficient allegations of a particularized and concrete economic injury to support Plaintiffs' standing. Neither theory of economic harm that they allege—a diminution-in-value theory and a new theory that Facebook's collection of their Logs consumed the resources of their Android smartphones—is well pled.[9]

**1.      Plaintiffs' Diminution-In-Value Injury Is Not Particularized or Concrete**

This Court previously found that Plaintiffs failed to allege "a particularized or concrete harm related to the individual plaintiffs' deprivation of any income." MTD Order at 5. In response, Plaintiffs newly allege that their Call and Text Logs have "diminished in value now that

---

[9] In addition, because Plaintiffs must plead actual economic damage or loss in order to state their CDAFA claim, *see* Cal. Penal Code § 502(e)(1), that claim must be dismissed even if this Court were to find that Plaintiffs have Article III standing based on a privacy injury.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1    Facebook has already stolen and monetized [them]." SAC ¶¶ 6-9. To support that conclusion,

2    Plaintiffs offer only the additional allegation that "[t]he call and text logs Facebook stole are often

3    sold for, and have an established market value of, approximately $0.05 per individual." *Id.* These

4    generalized allegations do not cure the prior deficiencies in their pleading of economic harm.

5        ***First***, Plaintiffs' alleged diminution-in-value injury fails for lack of particularization. As

6    in the FAC, they do not allege that they actually *attempted* to sell their Logs in this "established

7    market" and were unable to do so at their desired price. Indeed, Plaintiffs do not even allege that

8    they *want* to sell their Call and Text Logs in this market, and any such inference is implausible

9    given their concurrent allegation that Facebook's possession of that information violates their

10   privacy. *E.g.*, SAC ¶¶ 42, 48, 52. Plaintiffs cannot establish standing on the allegation that such

11   sales could have or may have occurred as a general matter; they must "specifically tie those

12   allegations to them[selves]." *In re Google Android Consumer Privacy Litig.*, No. 11-md-02264

13   JSW, 2013 WL 1283236, at *4 (N.D. Cal. Mar. 26, 2013). Thus, in *In re Google Android*, the

14   court held that plaintiffs lacked standing on a diminution-of-value theory to challenge Google's

15   collection of their personal data despite their allegation of "a market" for that data; the court found

16   it determinative that the plaintiffs "d[id] not allege they attempted to sell their personal

17   information, that they would do so in the future, or that they were foreclosed from entering into a

18   value for value transaction." *Id.*[10] So too here.

19       ***Second***, Plaintiffs' alleged deprivation of income does not qualify as a "palpable economic

20   injury" sufficient to invoke the jurisdiction of the federal courts. *Sierra Club v. Morton*, 405 U.S.

21   727, 733 (1972). Even if this Court were to draw the highly implausible inference that Plaintiffs

22   otherwise would have sold their Logs in some market for their full worth (and as discussed above,

23

24   ───────────────

[10] *See also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930-32 (N.D. Cal. 2015)
25   (no standing where plaintiffs alleged that collected information had "economic value" because
     plaintiffs did not "show[]" "that they personally lost the opportunity to sell their information");
26   *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW(JCGx), 2011 WL 1661532, at *4-5 (C.D.
     Cal. Apr. 28, 2011) (plaintiffs lacked standing when they failed to "identify a single individual
27   who was foreclosed from entering into a value-for-value exchange" as a result of defendant's
     collection); *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1088-89 (E.D. Cal. 2015) (same);
28   *Yunker v. Pandora Media, Inc.*, No. 11-cv-03113-JSW, 2013 WL 1282980, *4 (N.D. Cal. Mar.
     26, 2013) (same).

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

it should not), they have at most alleged that Facebook deprived each of them of a nickel. But "[t]he ancient maxims of *de minimis non curat lex* and *lex non curat de minimis* teach that the law cares not about trifles," and it is well-established that some injuries are "too trifling . . . to support constitutional standing." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40, 851 (9th Cir. 2007) (per curiam) (citation omitted). Courts in this circuit have regularly found that to be the case where the plaintiff could only allege that she lost pennies at most.[11] Plaintiffs' generalized and speculative allegations that Facebook's conduct deprived them each of five cents are likewise too "trifling" to state a concrete injury.

### 2. Plaintiffs' Device Resources Injury Is Not Concrete

Plaintiffs also allege that Facebook's collection of their Logs "caused [each Plaintiff] to consume his phone's resources, including battery, electricity, cellular data, CPU processing power, RAM storage, and hard drive space." SAC ¶¶ 6-9. But a bare assertion about such purported resource depletion is insufficient to show a concrete injury. Instead, the "plaintiff must 'allege facts *showing that this is true*.'" *Goodman v. HTC Am., Inc.*, No. C11-1793MJP, 2012 WL 2412070, at *6 (W.D. Wash. June 26, 2012) (quoting *LaCourt*, 2011 WL 1661532, at *5). Plaintiffs fail to do so here.

Courts in this circuit have consistently rejected such injury allegations where plaintiffs either fail to provide details regarding the extent of the alleged resource consumption, or when the alleged facts revealed that any effect on a device's resources could only be negligible. For instance, in *Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012), the court found that any impact upon a phone's "storage, battery life, and bandwidth" caused by an app's uploading a user's contacts and installing tracking software—which might cause the "depletion of 'two to three seconds of battery capacity'"—was *de minimis* and therefore

---

[11] *See Becker v. Skype, Inc.*, No. 5:12-CV-06477-EJD, 2014 WL 556697, at *3 (N.D. Cal. Feb. 10, 2014) (loss between 1.5 and 3.55 cents is *de minimis* and insufficient to confer Article III standing); *Santos v. TWC Admin. LLC*, No. CV 13-04799 MMM (CWx), 2014 WL 12558009, at *18-19 (C.D. Cal. Aug. 4, 2014) (deprivation of "less than one cent" is "the type of *de minimis* injury that does not suffice" under Article III); *Gonzales v. Comcast Corp.*, No. 10-cv-01010-LJO-BAM, 2012 WL 10621, at *7 (E.D. Cal. Jan. 3, 2012) (damages in range of $0.05 to $1.64 are a "*de minimis* amount" and finding no injury), *R. & R. adopted by* 2012 WL 217708 (E.D. Cal. Jan. 23, 2012).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-cv-01881 RS

not enough to establish a concrete injury. *Id.* at *1-2 (quoting complaint); *see also Olmos v. Bank of Am., N.A.*, No. 15-cv-2786-BAS-BGS, 2016 WL 3092194, at *4 (S.D. Cal. June 1, 2016) (finding "loss of battery life and bandwidth" caused by defendant's sending two text messages to plaintiff "*de minimis*" because the activity was "episodic").  And in *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014), the district court dismissed plaintiffs' allegation that the defendant apps' "transmissions and operations" used "resources, battery life, energy and cellular time," because the plaintiffs "ha[d] not quantified or otherwise articulated the alleged resource usage." *Id.* at 1056 (citation omitted); *see also Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1036 (N.D. Cal. 2017) (dismissing claim for lack of a concrete economic injury where the plaintiff made "conclusory allegations" about resource depletion but did not "quantify the extent of the diminishment"), *appeal pending*, No. 17-80086 (9th Cir. May 12, 2017).[12]

Here, Plaintiffs do not allege that Facebook uploaded their Call and Text Logs frequently rather than episodically.  Rather—as in *Hernandez* and *Olmos*—the alleged intermittent, discrete acts of transmission by the Facebook apps could have had only a *de minimis* effect upon the resources of any Plaintiff's device.  And—as in *Opperman* and *Holt*—Plaintiffs fail to plead *any* specifics about the relative amount of "battery," "electricity," "cellular data," "CPU processing power," "RAM storage," and "hard drive space" that Facebook's acts of collection supposedly consumed.  These deficiencies foreclose Plaintiffs' attempt to state an injury on this ground.

### C.    Plaintiffs Lack Standing Based On A Privacy Injury

Plaintiffs' attempt to state an injury in fact based on an "invasion of privacy" fares no better, under *either* a factual attack *or* a facial attack.

---

[12] Conversely, courts at the pleadings stage have found an injury in fact on this basis where the defendant's wrongful activity is so constant or "systematic" as to plausibly cause a significant impact on the plaintiff's device, or when the plaintiff otherwise includes specific facts demonstrating the significant extent of the depletion or damage.  *See, e.g.*, *Goodman*, 2012 WL 2412070, at *6-7 (detailed allegations about how defendants' collection of "fine location data" from their phones "every three hours or whenever the device's screen [wa]s refreshed" drained their batteries and caused "chemical changes in the active battery material," further diminishing the batteries' capacities (citation omitted)); *In re Google Android*, 2013 WL 1283236, at *5 (allegations that Google's collection of location data caused "chemical changes to the[ir] battery material," more quickly discharged batteries, and "interrupted" services).

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

13

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1          1.      Facebook Did Not Share Plaintiffs' Call or Text Logs with "61 Entities"

2          As this Court previously held, Plaintiffs' alleged privacy injury "*depends* on the sufficiency

3   of the averred disclosure of sensitive private information to third parties."  MTD Order at 7-8.

4   This Court found sufficient the allegation that Facebook has agreements "to share its user data,"

5   including Call and Text Logs, "with 61 different entities."  *Id.* at 8 (citing First Am. Compl. ¶ 25,

6   Dkt. 37 ("FAC")).  As a factual matter, that allegation is false and provides no basis for Plaintiffs'

7   alleged privacy-based injury because Facebook did not share Call or Text Logs as part of any

8   agreement referenced in the June 29, 2018 production to Congress.  Papamiltiadis Decl. ¶¶ 8, 10;

9   *see also supra* Section II.D.  And in fact, Facebook has not provided third parties with access to

10  users' Call and Text Logs through *any* data-sharing mechanism.   Papamiltiadis Decl. ¶ 11.

11  Plaintiffs thus cannot establish a "privacy-based injury premised on the disclosure of their private

12  information."  MTD Order at 8.

13         2.      Plaintiffs Do Not Allege a Particularized or Concrete Injury Even Accepting
14                 Their Allegation That Logs Were Shared With Third Parties

15         Even on their face, Plaintiffs' allegations do not state a particularized or concrete injury

16  based on an invasion of privacy.  This Court previously found that Facebook's arguments about

17  Plaintiffs' failure to properly allege the "sensitiv[ity]" of any disseminated information were

18  premature because such a determination could involve "a question of fact under California law."

19  MTD Order at 8.  But to the contrary, the Ninth Circuit has held that "to sufficiently allege an

20  injury due to invasion of their privacy," plaintiffs must include "specific allegations as to *why* th[e]

21  [disseminated] data is sensitive."  *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir.

22  2017) (per curiam).  It is thus appropriate for this Court to inquire into the sufficiency of Plaintiffs'

23  allegations regarding the "sensitiv[ity]" of the information in their own Call and Text Logs to

24  determine whether Plaintiffs have satisfied their Article III burden of showing a concrete privacy

25  inquiry.  *See id.* (affirming the dismissal of plaintiffs' complaint where they had not provided such

26  allegations); *cf. In re iPhone Application Litig.*, 6 F. Supp. 3d at 1014 n.5 (finding no injury in fact,

27  notwithstanding plaintiffs' claim that their personal information was transmitted to third parties,

28  when plaintiffs did not "explain how the mere transmission of data caused them concrete harm").

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

14

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1        Plaintiffs *use* words like "personal" and "sensitive" to describe their Call and Text Logs,

2  and they allege—without further elaboration—that they have a "reasonable expectation of

3  privacy" in those Logs.  *E.g.*, SAC ¶¶ 6, 48, 52.  But the *Cahen* plaintiffs had done the same thing

4  in their complaint, to no avail.[13]  Like the *Cahen* plaintiffs, Plaintiffs here fail to include any

5  allegations *supporting* those labels.  And the need for Plaintiffs to include such allegations is

6  especially great given the nature of the information at issue: the collected Logs contain information

7  about the *existence* of call or text communications, but they do not reveal anything at all about the

8  communication's *contents*.  *Cf. Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1035 (N.D.

9  Cal. 2014) (finding, in the context of an intrusion upon seclusion claim, that "a privacy interest

10  can exist, if at all, only with respect to the *content* of [electronic] communications").

11
12
## V. PLAINTIFFS FAIL TO SATISFY RULE 9(B)'S REQUIREMENT THAT THEY PLEAD WITH PARTICULARITY THE CIRCUMSTANCES OF THE PROMPT

13        The SAC fares no better than the FAC in satisfying Rule 9(b).  Plaintiffs now identify the

14  language of the Allow Access prompt—but they still fail to allege the "who," "when," "where,"

15  "how," or "why" of the alleged fraud.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

16  (9th Cir. 2003).

17        ***First***, Plaintiffs do not allege that the Allow Access prompt is a *Facebook* statement.  *See*

18  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc) (when pleading

19  fraud, a complaint must "identify those responsible for the statements" alleged to be false or

20  misleading), *superseded by statute on other grounds as stated in Johnson v. Walmart Stores, Inc.*,

21  544 F. App'x 696 (9th Cir. 2013).  Indeed, while Plaintiffs are conspicuously silent on this point

22  in the SAC, they repeatedly represented in prior briefing that the prompt they saw was "a

23  standardized Android prompt."  Dkt. 74 at 1 (Pls.' Opp. to Mot. to Dismiss) (discussing "Android

24  prompt" seeking access to users' "Contact List" and stating that there "are no further relevant

---

[13] *See* Am. Compl., *Cahen v. Toyota Motor Corp.*, No. 15-cv-01104-WHO (N.D. Cal. July 1, 2015), Dkt. 37.  The *Cahen* plaintiffs alleged that "drivers have a reasonable expectation of privacy as to [the disseminated] data," *id.* ¶ 7, the information was "sensitive," *id.* ¶ 49, they "maintain[ed] a legally protected privacy interest in their [transmitted] personal data," *id.* ¶ 135, and car manufacturers knew plaintiffs had a "reasonable expectation of privacy in their personal data," *id.* ¶ 136.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

prompts or disclosures at issue"); *see also id.* at 3, 6, 7 n.4.  Plaintiffs are bound by that admission. *See Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014).  Plaintiffs offer no explanation, let alone a specific one, for how Facebook is the speaker of the *Android* Allow Access prompt.  The SAC thus provides no specific factual basis for Plaintiffs' conclusory assertions that *Facebook* made "false and misleading representations and omissions."  SAC ¶¶ 6-9, 63-64.[14]

**Second**, Plaintiffs do not plead particularized facts showing the "when," "where," and "how" of the alleged fraud—namely, when they were presented with the Allow Access prompt and what OS version was running on their device at the time.  This matters because, as discussed above, Plaintiffs allege that there were two different circumstances in which Facebook allegedly could "exploit" a vulnerability in the Android OS to collect Logs—but they never allege which happened in their cases.  These omissions are even more glaring in light of the disclosures in the Android Developer Guides that different Android permissions are presented on different OS versions and that the Allow Access prompt appears only on "patched" OS versions and when the app is designed to run on such a version.  *See supra* Sections II.A, II.C.

**Third**, Plaintiffs do not allege the "why" of the alleged fraud, because they offer no specific explanation of why they believed an Android permission request to access "contacts" did not encompass a request to access the information in Call and Text Logs.

Plaintiffs' omissions defeat their claims, because once again, Facebook is left guessing as to the circumstances of the alleged misrepresentation underlying all of their causes of action.  MTD Order at 10 (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Vess*, 317 F.3d at 1106 (Rule 9(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity so that defendants "can defend against the charge and not just deny that they have done anything wrong" (citation omitted)).

---

[14] Plaintiffs vaguely allude to an "expla[nation]" by a "Facebook spokesperson" regarding contacts requests.  SAC ¶ 21.  But Plaintiffs never allege *when* a Facebook spokesperson made that statement, nor the context in which it was made, and they certainly do not allege that they actually relied on this "explanation" in installing the Facebook apps or granting access to their contacts.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

## VI.    PLAINTIFFS' CLAIMS EACH HAVE FATAL CLAIM-SPECIFIC DEFECTS

Setting aside Plaintiffs' lack of any Article III injury and their continued failure to plead allegations of fraud with specificity—a requirement for each of their claims, MTD Order 10, 11, 13, 15, 18—the SAC should still be dismissed in its entirety because: (i) Plaintiffs' attempt to state a common-law fraud claim is wholly lacking in the necessary specifics; (ii) Plaintiffs do not have the requisite economic injury to bring a CDAFA claim, and additionally fail to allege how Facebook acted "without permission" in collecting their Logs; (iii) Plaintiffs cannot bring an unjust enrichment claim because a valid contract—the Facebook Statement of Rights and Responsibilities—governs the subject matter of this action; and (iv) Plaintiffs do not state a claim for intrusion upon seclusion *or* (v) for an invasion of privacy under the California Constitution, because both claims require allegations that Plaintiffs had a reasonable expectation of privacy in the specific information in their collected Logs, as well as a showing of highly offensive and egregious conduct, and Plaintiffs have not alleged either as a matter of law.

### A.    Plaintiffs Fail To Plead Any Element Of A Fraud Claim

The new claim in the SAC—a common-law fraud claim—is the barest of them all.  The four meager paragraphs that Plaintiffs devote to the claim (SAC ¶¶ 62-65) fall far short of the specific pleading required for each of its five elements.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (reciting "elements of a cause of action for fraud in California" and applying Rule 9(b) to fraud claim); *Arena Restaurant & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at \*7-8 & n.3 (N.D. Cal. Apr. 16, 2018) (recognizing that even apart from Rule 9(b), California law requires that "fraud must be pled specifically" and "general and conclusory allegations do not suffice" (citation omitted)).

***First***, Plaintiffs' allegations of the "misrepresentation" element fall short for all of the reasons already discussed above in Section V.  *See See Arena Restaurant*, 2018 WL 1805516, at \*8 (dismissing fraud claim under Rule 9(b) where, *inter alia*, plaintiffs failed to plead the specifics of the alleged misrepresentation); *see also SVGRP LLC v. Sowell Fin. Servs., LLC*, No. 5:16-cv-7302-HRL, 2017 WL 1383735, at \*4 (N.D. Cal. Apr. 18, 2017).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

***Second***, the mere recitation of the phrases "with knowledge of their falsehood" and "intended to induce" do not satisfy the "scienter" and "intent to defraud" elements of a fraud claim. *See Kearns*, 567 F.3d at 1127 (holding that "general pleadings alleging Ford's intent to conceal from customers that CPO vehicles were essentially the same as ordinary used vehicles . . . do not satisfy the heightened pleading requirements of Rule 9(b)").

***Third***, Plaintiffs' conclusory allegations that they "would not have installed or used" Messenger if they had known about the app's collection of their Logs (SAC ¶¶ 6-9) are not sufficient to plead justifiable reliance. *See Mazur v. eBay Inc.*, No. C 07-03967 MHP, 2008 WL 618988, at *13 (N.D. Cal. Mar. 4, 2008) (reliance element must be pled with specificity). Plaintiffs acknowledge that the Allow Access prompt gave them the option to "deny" access to their contacts, SAC ¶¶ 6-9, and they nowhere allege that they were required to grant Messenger access to their contacts in order to install or use the app. It is thus entirely unclear—because Plaintiffs do not say—why any misrepresentation or omission regarding the scope of what would be collected through *a contacts request* had any bearing at all on Plaintiffs' decision to install or use Messenger.

***Finally***, fraud that "work[s] no damage cannot give rise to an action at law," *Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1268 (1989), and as addressed above, Plaintiffs have not alleged any damages with the requisite particularity and certainty. *See supra* Section IV; *see also Block v. Tobin*, 45 Cal. App. 3d 214, 219-20 (1975) (finding plaintiff failed to allege lost profits where it alleged no facts showing it would have made a profit absent the fraud).

### B.   Plaintiffs Fail To Plead Standing Or Other Elements Of A CDAFA Claim

Plaintiffs renew their allegations that Facebook's conduct violated four subsections of the CDAFA, Cal. Penal Code § 502(c)(1)-(3) and (7). SAC ¶¶ 38-41. Those subsections prohibit different kinds of computer crimes involving, among other things: knowingly accessing data and damaging it "without permission" (§ 502(c)(1)); knowingly accessing data and taking it "without permission" (§ 502(c)(2)); knowingly and "without permission" using computer services (§ 502(c)(3)); and knowingly and "without permission" accessing a computer (§ 502(c)(7)).

This Court previously held that Rule 9(b) applied to Plaintiffs' CDAFA claim, MTD Order at 10, 12, and that "[s]tanding to bring a CDAFA claim requires 'a showing of economic harm or

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

18

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1    loss,'" *id.* at 6 (citing *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 842 (N.D. Cal.

2    2017), and *In re Google Android Consumer Privacy*, 2013 WL 1283236, at *6).   Accordingly,

3    Plaintiffs' CDAFA claim should be dismissed, this time with prejudice, because they still fail to

4    satisfy Rule 9(b), *see supra* Section V, and they still fail to adequately allege standing based on an

5    economic injury, *see supra* Section IV.B.

6          In addition, Plaintiffs' allegation that Facebook "exploit[ed] a software vulnerability in the

7    permission settings of older versions of the Android OS *through the Allow Access prompt* (SAC

8    ¶¶ 1, 21) fatally undermines their conclusory assertions that Facebook acted "without permission."

9    A defendant acts "without permission" under CDAFA if it has been put on express notice that it

10   lacks permission for its activities, or if it could not "reasonably . . . have thought" it had permission.

11   *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067-69 (9th Cir. 2016) (applying

12   "reasonably could have thought" analysis to CDAFA's "without permission" element).   Here,

13   Plaintiffs' boilerplate CDAFA allegations do not show that Facebook was put on express notice

14   that it lacked permission to upload Plaintiffs' Call and Text Logs, and also fall far short of showing

15   that Facebook could not have "reasonably thought" it had permission to upload Plaintiffs' Logs

16   when Plaintiffs allegedly granted access through the Allow Access prompt.

17         As noted, Plaintiffs allege that apps could collect an Android user's Call and Text Logs in

18   two circumstances: (1) "prior to Android version 4.1," a user's granting access to "[c]ontacts" also

19   granted apps access to Call and Text Logs "by default"; or (2) after Android "patched" this feature

20   in later OS versions, apps "could bypass" the patch if the app specified that it was designed to run

21   on an "older, pre-patched version."  SAC ¶ 22.  But the alleged Allow Access prompt does not

22   appear in either of those circumstances.  *See supra* Section II.C.  Nor do Plaintiffs allege *which*

23   circumstance happened in their case—which underscores their failure to satisfy Rule 9(b).

24         In any case, if Plaintiffs had adequately alleged that their Logs were collected through the

25   Allow Access prompt in circumstance (1)—*i.e.*, that Facebook's apps collected their Logs "by

26   default" because their phones had a pre-4.1 OS version and Plaintiffs granted permission to upload

27   contacts—then that hardly shows that *Facebook* acted "without permission."  Facebook would

28   have accessed the Logs by virtue of a default function of the *Android* contacts permission, and

LATHAM&WATKINS␣␣␣
ATTORNEYS AT LAW
SAN FRANCISCO
                                                19

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

Facebook thus "reasonably could have thought" it had permission from *Android* and Plaintiffs' contacts permission to access the Logs. *Power Ventures*, 844 F.3d at 1067; *cf. Opperman*, 87 F. Supp. 3d at 1054 & n.19, 1062 (dismissing claims under CDAFA sections 502(c)(1)-(2) and (6)-(8) against app developers where plaintiffs alleged *Apple* had provided the apps with open access to plaintiffs' address books).

If, instead, Plaintiffs had alleged circumstance (2)—*i.e.*, that they had later OS versions running on their phones but the Facebook apps "bypass[ed]" the Android patch[15]—there still is no plausible basis for inferring that *Android* had withdrawn permission to access Logs through a contacts request *until* Android "fully deprecated this functionality" in October 2017 for apps designed to run on pre-4.1 versions.  SAC ¶ 22; *see also Power Ventures*, 844 F.3d at 1067; *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175-76 (C.D. Cal. 2018) (relying on *Power Ventures* to find plaintiff sufficiently stated CDAFA claim by sending a cease-and-desist letter revoking permission).

In the end, Plaintiffs' CDAFA allegations "merely track the language of the statute itself, without providing facts to substantiate the claimed legal conclusions." *Ticketmaster*, 315 F. Supp. 3d at 1175 (dismissing claim under section 502(c)(1) where plaintiff failed to allege facts supporting its claim that defendant's conduct "actually alter[ed], damage[d], delete[d], or destroy[ed] data on [plaintiff's] systems"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (dismissing CDAFA claim where plaintiff merely "parrot[ed] the language of the subsections" with "boilerplate[] allegations").  Again, it is not even clear whether Plaintiffs are claiming that Facebook violated CDAFA by gaining access to their Call and Text Logs "by default" on smartphones running earlier, pre-patched Android OS versions, or whether Plaintiffs are instead alleging that Facebook violated CDAFA by "bypassing" that patch, or both.  The boilerplate allegations in the CDAFA section provide no illumination at all in this regard, and

---

[15] As discussed, Plaintiffs do not allege what OS version was running on their smartphones at the time Facebook collected their Logs.  Thus, there is no basis to plausibly conclude that Facebook bypassed the Android patch in their cases, and Plaintiffs lack standing to state a CDAFA claim based on circumstance (2).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1    "[n]either [Facebook] nor the Court should have to guess how Plaintiff[s] contend[] these

2    subsections were violated." *Gonzales*, 305 F. Supp. 3d at 1090.

3          Plaintiffs' allegation that Facebook violated section 502(c)(1) is especially deficient. *See*

4    Cal. Penal Code § 502(c)(1) (criminalizing one who knowingly accesses and "alters, damages,

5    deletes, destroys, or otherwise uses any data" without permission).  Plaintiffs merely allege that

6    Facebook "used" their data, without offering facts suggesting that Facebook altered or damaged

7    the data in any way.  But "the phrase 'or otherwise uses' in section 502(c)(1)" cannot be read "as

8    prohibiting anything other than use that is similar to alteration, damage, deletion, or destruction."

9    *Ticketmaster*, 315 F. Supp. 3d at 1175 n.5.  That reading follows from the commonsense *noscitur*

10   *a sociis* principle—"a word is known by the company it keeps"—which courts employ to "avoid

11   ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus

12   giving unintended breadth" to legislative enactments.  *Yates v. United States*, 135 S. Ct. 1074,

13   1085 (2015) (citation omitted); *see also Ticketmaster*, 315 F. Supp. 3d at 1175 n.5 (invoking

14   related principle of *ejusdem generis*).  Because CDAFA is a criminal statute, that narrow reading

15   is also compelled by the rule of lenity.  *See People v. Avery*, 27 Cal. 4th 49, 58 (2002).

16        **C.     Plaintiffs' Contract With Facebook Defeats Their Unjust Enrichment Claim**

17         This Court previously dismissed Plaintiffs' unjust enrichment claim on the ground that

18   Plaintiffs failed to satisfy the requirements of Rule 9(b), MTD Order at 17-18, and it should do so

19   again because Plaintiffs still fail to allege with particularity the misrepresentation at the crux of

20   the claim.  *See supra* Section V; *see also Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017)

21   (dismissing unjust enrichment claim for failure to satisfy Rule 9(b)'s pleading requirements).  In

22   addition, the claim cannot proceed as a quasi-contract claim seeking restitution.

23         The Court previously held that the superfluous nature of a quasi-contract claim "is no

24   longer a ground for dismissal."  MTD Order at 17.  But Facebook is not arguing the claim cannot

25   be pleaded in the alternative.  Rather, the claim is not properly pleaded at all because Plaintiffs

26   have an enforceable agreement with Facebook: the Statement of Rights and Responsibilities

27   ("SRR") to which Plaintiffs agreed as a condition of using a Facebook app.  *See Klein v. Chevron*

28   *U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) (holding that while plaintiffs may plead

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

21

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

inconsistent claims, plaintiffs could not "pursue or recover on a quasi-contract claim if the parties have an enforceable agreement" regarding the particular subject matter); *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 125-27 (9th Cir. 2007) (plaintiff "cannot plead alternative theories that necessarily fail where an express contract defines the rights of the parties," and where "there is no dispute about the existence or validity of the express contract").

As Plaintiffs cannot reasonably dispute, and did not previously dispute, Dkt. 74 at 21-23, the SRR governs their use of Facebook and Facebook apps. *See* Valco Decl. Ex. A at 1, 3 (SRR) (explaining that the SRR "governs" Facebook's "relationship with users and others who interact with Facebook" or "Facebook Services," which include "other media, brands, products, services, software . . . devices, or networks"). And this Court likewise relied on the choice-of-law provision in the SRR to dismiss Plaintiffs' New York General Business Law § 349 claim. MTD Order at 15; *see also* RJN at 1-3. The SRR specifically covers Facebook's "collect[ion] and use" of "content and information." Valco Decl. Ex. A at 3. The existence of this contract governing the subject matter of Plaintiffs' action defeats their quasi-contract claim. *See Letizia v. Facebook, Inc.*, 267 F. Supp. 3d 1235, 1253-54 (N.D. Cal. 2017) (dismissing quasi-contract claim because Facebook's contract with advertisers governed ad services even though the contract did not mention the specific metrics at issue); *Ellis v. JPMorgan Chase & Co.*, No. 16-17005, 2018 WL 4090102, at *3 (9th Cir. Aug. 28, 2018) (quasi-contract claim "not available when a contract defines the rights of the parties").

### D.   Plaintiffs Fail To Plead Any Element Of An Intrusion Upon Seclusion Claim

As addressed *supra* in Section IV, Plaintiffs lack standing to assert an invasion of privacy claim. And they have not satisfied Rule 9(b). MTD Order 10, 13; *see also supra* Section V. In addition, Plaintiffs have failed to allege adequately either of the two elements of a common-law intrusion upon seclusion claim: (1) "the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) "the intrusion must occur in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1        This Court previously found Facebook's arguments on the reasonable expectation of

2   privacy element "premature without the contact upload prompt," and it found the "highly

3   offensive" element to amount to "a factual question best left for a jury."  MTD Order at 12-13

4   (citation omitted).  Plaintiffs have now alleged that they saw the Allow Access prompt but without

5   the requisite particularity, *see supra* Section V, and they thus have not alleged that Facebook

6   "intentionally intrude[d] [on Call and Text Logs] as to which the plaintiff has a reasonable

7   expectation of privacy."  *Hernandez*, 47 Cal. 4th at 286.  Moreover, while the Court did not

8   specifically reach the point previously, courts have repeatedly found blanket assertions of privacy

9   like Plaintiffs' insufficient to state a California privacy claim as a matter of law.  *See In re Yahoo*

10   *Mail Litig.*, 7 F. Supp. 3d 1016, 1040-41 (N.D. Cal. 2014) (no reasonable expectation of privacy

11   in email contents "generally," and requiring allegations "that the email intercepted" included

12   "content that qualifies under California law as 'confidential' or 'sensitive'"); *Sunbelt Rentals*, 43

13   F. Supp. 3d at 1035 (no reasonable expectation of privacy "with respect to [plaintiff's] text

14   messages, in general," and dismissing privacy claim where pleadings did "not identify the contents

15   of any particular text messages"); *Scott-Codiga v. Cty. of Monterey*, No. 10-cv-05450-LHK, 2011

16   WL 4434812, at *6-7 (N.D. Cal. Sept. 23, 2011) (dismissing privacy claim where plaintiff did not

17   "itemize[] the specific private facts that were disclosed to the public").

18        Here, Plaintiffs still do not allege any specific facts regarding how any particular Log was

19   sensitive, and they admit they consented to share their contacts.  SAC ¶¶ 6-9.  Their allegation that

20   the Logs as a whole are "sensitive" are "fatally conclusory."  *In re Yahoo Mail Litig.*, 7 F. Supp.

21   3d at 1041.

22        The California common law "set[s] a high bar" for an intrusion claim, *Belluomini v.*

23   *Citigroup, Inc.*, No. CV 13–01743 CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013), and

24   courts routinely weed out claims well before trial including on a motion to dismiss.  *See, e.g.*,

25   *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 466 (9th Cir. 1997) ("While what is 'highly offensive

26   to a reasonable person' suggests a standard upon which a jury would properly be instructed, there

27   is a preliminary determination of 'offensiveness' which must be made by the court in discerning

28   the existence of a cause of action for intrusion.'" (quoting *Miller v. Nat'l Broad. Co.*, 187 Cal.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

23

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1   App. 3d 1463, 1483 (1986))); *In re Google Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987-88

2   & nn.133-34 (N.D. Cal. 2014) (finding Google's collection and dissemination of significant

3   amounts of user data not "highly offensive" as a matter of law and citing cases (citation omitted));

4   *Hillsides*, 47 Cal. 4th at 288-300 (reviewing whether lower court was correct in finding that

5   plaintiff had established a prima facie case on each element to survive summary judgment, and

6   reversing in defendant's favor on the second element).

7       **E.       Plaintiffs Fail To Plead Any Element Of A Constitutional Privacy Claim**

8           Plaintiffs' second privacy claim should likewise be dismissed either for lack of standing,

9   *see supra* Section IV, or due to Plaintiffs' failure to allege any misleading Facebook prompt, MTD

10  Order at 10, 15; *see also supra* Section V.  In addition, Plaintiffs' constitutional claim fails for

11  largely the same reasons as the common-law claim.

12          To state the constitutional claim, a plaintiff must show: "(1) a legally protected privacy

13  interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant

14  constituting a serious invasion of privacy."  *Hill v. NCAA*, 7 Cal. 4th at 1, 66 (1994).  As with their

15  common-law claim, the first two elements are not met because Plaintiffs continue to assert a

16  privacy interest in Call and Text Logs "generally"—yet courts require specific allegations as to

17  why the disclosure of any particular Log is sensitive.  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at

18  1040 (rejecting, as a matter of law," plaintiffs' allegation of "legally protected privacy interest and

19  reasonable expectation of privacy in email *generally*").[16]

20          This Court previously relied on *In re Google Inc. Cookie Placement Consumer Privacy*

21  *Litigation*, 806 F.3d 125 (3d Cir. 2015), to find that Plaintiffs stated a reasonable expectation of

22  privacy in their Logs by alleging that Facebook "fraudulent[ly] omi[tted] [its] intent to collect

23  more than what its users consented to."  MTD Order at 14.  Facebook respectfully submits that

24  there is a meaningful difference between the conduct Plaintiffs allege here—a supposed lack of

25  notice of the specific information that would be collected—and the statements *creating* privacy

26  expectations at issue in *In re Google Cookie*.  In that case, Google was alleged to have

---

27  [16] Plaintiffs alleges in conclusory fashion that their "legally protected privacy interest in their call

28  logs and text data" is "codified" in the CDAFA.  SAC ¶ 47.  But as addressed *supra* Section VI.B, the facts alleged do not state a CDAFA claim, and moreover, nothing in CDAFA mentions Logs.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

1   "overrid[en]" Internet users' cookie blockers "while concurrently announcing" that users could

2   prevent the very tracking practice Google carried out; Google "further assured" users (falsely) that

3   their prevention measures would succeed.  *In re Google Cookie*, 806 F.3d at 150.  Here, by

4   contrast, Plaintiffs do not allege *any* Facebook statement as the basis of their privacy expectation.

5   They certainly do not allege Facebook ever promised not to collect Logs, nor that they themselves

6   ever expressed a preference that Facebook did not respect.

7       Finally, Plaintiffs still have not alleged facts showing that Facebook's conduct constituted

8   a "serious invasion" as a matter of law.  "Actionable invasions of privacy must be sufficiently

9   serious in their nature, scope, and actual or potential impact to constitute an *egregious* breach of

10   the social norms underlying the privacy right."  *Hill*, 7 Cal. 4th at 37.  Again, this is a "high bar."

11   *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038.  As such, in case after case at the motion-to-dismiss

12   stage, courts have found that a company's alleged collection or disclosure of personal information

13   does not rise to the level of "egregious" behavior—even when the user purportedly did not consent

14   to the intrusion beforehand and thus lacked "advance notice or opportunity to consent," MTD

15   Order at 15.  *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 988, 992-93 (2011); *In*

16   *re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *Yunker*, 2013 WL

17   1282980, at *1, *14-15; *In re Google Android*, 2013 WL 1283236, at *10-11; *Gonzales*, 305 F.

18   Supp. 3d at 1092; *cf. In re Google Cookie*, 806 F.3d at 151 ("reasonable factfinder" could deem

19   Google's conduct egregious because Google "contravened" users' cookie blockers while

20   "h[olding] itself out as respecting" those preferences).  As in those cases, Plaintiffs have not

21   alleged this element as a matter of law.

22   **VII.    CONCLUSION**

23       For these reasons, the Court should grant Facebook's motion to dismiss with prejudice.

24   DATED: February 26, 2019               LATHAM & WATKINS LLP

25                                          By:    */s/ Elizabeth L. Deeley*
                                               Elizabeth L. Deeley (CA Bar No. 230798)
26                                             Nicole C. Valco (CA Bar No. 258506)
                                               505 Montgomery Street, Suite 2000
27                                             San Francisco, CA  94111-6538
                                               *elizabeth.deeley@lw.com*
28                                             *nicole.valco@lw.com*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS

Susan E. Engel (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
*susan.engel@lw.com*

*Attorneys for Defendant Facebook, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS 2nd AM. CONS. COMPLAINT
CASE NO. 3:18-CV-01881 RS