**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
       ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Interim Class Counsel*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE OLIN, HAROLD NYANJOM, SHERON SMITH-JACKSON, and JANICE VEGA-LATKER, individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>   v.<br><br>FACEBOOK, INC.,<br><br>                 Defendant. | Case No.  3:18-cv-01881-RS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:     May 23, 2019<br>Time:    1:30 p.m.<br>Court:   Courtroom 3, 17th Floor<br><br>Hon. Richard Seeborg |

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

INTRODUCTION ...................................................................................................................1

APPLICABLE LAW .............................................................................................................3

ARGUMENT .........................................................................................................................5

I.     PLAINTIFFS HAVE ARTICLE III STANDING ...................................................5

      A.    Defendant's Facial Attack On Standing Fails ............................................5

      B.    Defendant's Factual Attack On Standing Fails ..........................................6

      C.    Plaintiffs Adequately Allege An Invasion Of Privacy .............................8

      D.    Plaintiffs Adequately Allege Economic Injury .......................................10

II.    PLAINTIFFS PLEAD THEIR CLAIMS WITH PARTICULARITY .................................13

III.   PLAINTIFFS ADEQUATELY PLEAD THEIR SPECIFIC CLAIMS ...........................16

      A.    Plaintiffs Adequately Plead Fraud ..........................................................16

      B.    Plaintiffs Adequately Plead A Violation Of The CDAFA .....................17

      C.    Plaintiffs Adequately Plead Unjust Enrichment ......................................21

      D.    Plaintiffs Adequately Plead An Intrusion Upon Seclusion And A Constitutional Privacy Claim ..................................................................22

CONCLUSION ....................................................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Am. W. Airlines, Inc. v. GPA Grp., Ltd.*,
   877 F.2d 793 (9th Cir. 1989) ....................................................................................7

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..............................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................3

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ..........................................................................21, 22

*Augustine v. U.S.*,
   704 F.2d 1074 (9th Cir. 1983) ..............................................................................5, 6

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................3

*Bruton v. Gerber Prod. Co.*,
   703 F. App'x 468 (9th Cir. 2017) ..........................................................................21

*Bryde v. Gen. Motors, LLC*,
   2016 WL 6804584 (N.D. Cal. Nov. 17, 2016) ......................................................14

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ................................................................................3

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) ............................................................................9

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
   590 F.3d 806 (9th Cir. 2010) ..................................................................................4

*Chacanaca v. Quaker Oats Co.*,
   752 F.Supp.2d 1111 (N.D. Cal. 2010)..............................................................15, 16

*Cirulli v. Hyundai Motor*,
   Corp., 2009 WL 5788762 (C.D. Cal. June 12, 2009) ............................................14

*City of Lincoln v. United States*,
   283 F. Supp. 3d 891 (E.D. Cal. 2017) ....................................................................7

*Conservation Force v. Salazar*,
   646 F.3d 1240 (9th Cir. 2011) ................................................................................4

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ................................................................................14

*Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*,
   329 F. Supp. 3d 146 (D. Md. 2018).............................................................................................13

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F. Supp. 2d 1025 (N.D. Cal. 2012)...............................................................................18, 19

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016)..............................................................................................19

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007)...............................................................................14

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018)...............................................................................21

*Google Android Consumer Privacy Litig.*,
   2013 WL 1283236 (N.D. Cal. Mar. 26, 2013).....................................................................11

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
   2018 WL 6802818 (C.D. Cal. Oct. 1, 2018)........................................................................11

*In re Anthem, Inc. Data Breach Litigation*,
   2016 WL 3029783 (N.D. Cal. May 17, 2016)................................................................11, 14

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015)..........................................................................13, 18, 19

*In re Facebook Privacy Litig.*,
   572 F. App'x 494 (9th Cir. 2014)..........................................................................................11

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
   806 F.3d 125 (3d Cir. 2015)..................................................................................................23

*In re Google, Inc. Privacy Policy Litig.*,
   2013 WL 6248499 (N.D. Cal. Dec. 3, 2013).......................................................................12

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013)....................................................................................12

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016)..................................................................................................24

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017)................................................................................................4

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017)...............................................................................24

*In re Wilshire Courtyard*,
   729 F.3d 1279 (9th Cir. 2013)................................................................................................7

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).....................................................................11

*JWD Auto., Inc. v. DJM Advisory Group LLC*,
  218 F. Supp. 3d 1335 (M.D. Fla. 2016) ....................................................................... 13

*Katz v. Pershing, LLC*,
  672 F.3d 64 (1st Cir. 2012) ........................................................................................ 12

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*,
  773 F.3d 243 (11th Cir. 2014) .................................................................................... 12

*Keniston v. Roberts*,
  717 F.2d 1295 (9th Cir. 1983) .................................................................................... 24

*Klayman v. Obama*,
  142 F. Supp. 3d 172 (D.D.C. 2015) ............................................................................ 10

*Knutson v. Blue Light Sec., Inc.*,
  2018 WL 1172611 (S.D. Cal. Mar. 6, 2018) ............................................................... 11

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) .................................................................................. 5, 6

*Levitt v. Yelp! Inc.*,
  2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ................................................................ 7

*MacDonald v. Ford Motor Co.*,
  37 F. Supp. 3d 1087 (N.D. Cal. 2014) ........................................................................ 14

*Mace v. Van Ru Credit Corp.*,
  109 F.3d 338 (7th Cir. 1997) ...................................................................................... 12

*Mazur v. eBay Inc.*,
  2008 WL 618988 (N.D. Cal. Mar. 4, 2008) ................................................................. 17

*Muscarello v. Ogle Cnty. Bd. of Comm'rs*,
  610 F.3d 416 (7th Cir. 2010) ...................................................................................... 12

*New York Pub. Interest Research Grp. v. Whitman*,
  321 F.3d 316 (2d Cir. 2003) ....................................................................................... 12

*NovelPoster v. Javitch Canfield Group*,
  140 F. Supp. 3d 954 (N.D. Cal. 2014) ................................................................... 19, 20

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) .................................................................................. 16, 17

*Opperman v. Path, Inc.*,
  2014 WL 1973378 (N.D. Cal. May 14, 2014) ........................................................ 19, 23

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ............................................................ 9, 10, 24

*Patel v. Facebook Inc.*,
  290 F. Supp. 3d 948 (N.D. Cal. 2018) ...................................................................... 4, 8

*Perrin v. United States,*
  444 U.S. 37 (1979) ................................................................................................ 18

*Rutherford Holdings, LLC v. Plaza Del Rey,*
  223 Cal. App. 4th 221 (2014) ............................................................................... 21

*Safe Air for Everyone v. Meyer,*
  373 F.3d 1035 (9th Cir. 2004) ........................................................................ 4, 6, 8

*Shuckett v. DialAmerica Mktg. Inc.,*
  2019 WL 913174 (S.D. Cal. Feb. 22, 2019) ......................................................... 11

*Sloan v. Gen. Motors LLC,*
  287 F. Supp. 3d 840 (N.D. Cal. 2018) .................................................................. 14

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,*
  554 U.S. 269 (2008) .............................................................................................. 12

*Svenson v. Google Inc.,*
  2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ........................................................ 11

*Svenson v. Google Inc.,*
  2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ...................................................... 11

*Synopsys, Inc. v. ATopTech, Inc.,*
  2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ...................................................... 20

*Thomas v. Bible,*
  983 F.2d 152 (9th Cir. 1993) ................................................................................ 22

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.,*
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ................................................................ 20

*Tyacke v. First Tennessee Bank, N.A.,*
  2016 WL 9108892 (C.D. Cal. Apr. 28, 2016) ...................................................... 12

*U.S. ex rel. Lujan v. Hughes Aircraft Co.,*
  243 F.3d 1181 (9th Cir. 2001) ............................................................................ 4, 5

*U.S. v. Alexander,*
  106 F.3d 874 (9th Cir. 1997) ................................................................................ 22

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.,*
  146 F. Supp. 3d 1122 (N.D. Cal. 2015) ................................................................ 16

*United States v. Students Challenging Regulatory Agency Procedures,*
  412 U.S. 669 (1973) .............................................................................................. 12

*Van Patten v. Vertical Fitness Grp., LLC,*
  847 F.3d 1037 (9th Cir. 2017) .............................................................................. 11

*Vera v. Bureau of Indian Affairs,*
  738 F. App'x 431 (9th Cir. 2018) ........................................................................... 7

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................ 3, 4

*Waste Action Project v. Fruhling Sand & Topsoil Inc.*,
  737 F. App'x 344 (9th Cir. 2018) ................................................................................ 7

*Weingand v. Harland Financial Solutions, Inc.*,
  2012 WL 2327660 (N.D. Cal. June 19, 2012) ...................................................... 19, 20

*Young v. Crofts*,
  64 F. App'x 24 (9th Cir. 2003) .................................................................................... 7

*Yunker v. Pandora Media, Inc.*,
  2014 WL 988833 (N.D. Cal. Mar. 10, 2014) ............................................................ 12

**RULES**

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 3

Fed. R. Civ. P. 8(d)(2) .................................................................................................... 22

Fed. R. Civ. P. 9(b) ....................................................................................................... 3, 4

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 4, 7, 8

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 4, 5

Fed. R. Civ. P. 56(d) ........................................................................................................ 7

**OTHER AUTHORITIES**

55 Cal. Jur. 3d Restitution § 2 ...................................................................................... 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Following briefing and oral argument on Defendant Facebook, Inc.'s ("Facebook") motion to dismiss the First Amended Consolidated Complaint ("FACC"), the Court issued an Order Granting Motion Dismiss (ECF No. 85) ("Order"), holding that Plaintiffs "fail[ed] to state their fraud-based claims with sufficient particularity" because they did not identify the "specific misleading contact upload prompt" at issue.  Order at 2.  In addition, the Court held that the complaint lacked "factual averments supporting an injury in fact to establish standing for the CDAFA."  *Id.*  As such, the Court dismissed the FACC and gave Plaintiffs leave to amend.

On January 22, 2019, Plaintiffs filed a Second Amended Consolidated Complaint ("SACC") that addressed the issues the Court previously identified.  ECF No. 88.  Paragraph 1 of the SACC describes the exact Allow Access prompt that Plaintiffs were shown when they downloaded the Facebook apps:  "Allow Facebook Messenger access to your contacts?"  SACC ¶ 1.  Below the prompt were choices labeled "Allow" or "Deny."  *Id.*  The SACC specifies that each Plaintiff saw this same prompt, but that they were never asked whether they consented to Facebook scraping their call and text logs, and that they never granted Facebook permission to do so.  *Id.* ¶¶ 6-9.  The SACC also states that each of the Plaintiffs suffered an economic injury because the call and text logs that Facebook stole "are often sold for, and have an established market value of, approximately $0.05 per individual," but that the data "diminished in value" as a result of Facebook's theft.  *Id.*  Because Plaintiffs have now added the requisite specificity to their allegations, and included factual averments supporting an injury in fact, all of their claims should proceed.

Defendant now moves to dismiss once again, making both facial and factual attacks on Plaintiffs' standing.  The facial attacks, which require that Plaintiffs' allegations be accepted as true, necessarily fail.  Plaintiffs explain with sufficient specificity how Facebook scraped their call and text logs without consent.  Plaintiffs also support the plausibility of these allegations with excerpts from Facebook's internal emails showing that it was planning precisely the kind of improper data scraping that Plaintiffs allege.  Plaintiffs also attach excerpts of their scraped call and text logs, showing that Facebook followed through and actually stole the data at issue.

1   Facebook's factual attack on Plaintiffs' standing—questioning which version of the

2   Android OS they used, or the language of the prompt that they saw—fares no better.  Through this

3   argument, Defendant essentially asserts that Plaintiffs lack standing because their claims will fail

4   on the merits.  But the Ninth Circuit has repeatedly held that where, as here, standing arguments

5   are intertwined with the elements of the claims asserted, they are dependent on the resolution of

6   factual issues going to the merits and discovery is needed.  Resolution of such matters at the

7   pleadings stage is thus inappropriate.

8   Facebook also argues that Plaintiffs lack standing because they do not allege an injury in

9   fact.  But Plaintiffs allege an invasion of privacy and the Court has already ruled that such an

10   allegation raises an issue of fact that cannot be decided on the pleadings.  In addition, Plaintiffs

11   allege an economic injury based on the diminution in value of their call and text metadata and

12   through the unauthorized resource depletion that Facebook caused to their phones.  Numerous

13   courts have found both kinds of allegations sufficient to assert Article III standing.

14   Facebook's arguments aimed at Plaintiffs' specific claims are all likewise misplaced.

15   Plaintiffs adequately plead their fraud claims because they set forth the "who, what, where, when,

16   and why" of their allegations.  Plaintiffs also adequately allege state of mind, which can be pleaded

17   generally, by including excerpts from Facebook's internal emails showing that they planned to

18   steal users' phone and text metadata.  Plaintiffs plead reliance because they allege that they took

19   the Allow Access prompt at face value and "would not have installed or used the Facebook

20   Messenger or Facebook Lite apps had [they] known the truth about the apps' practice of scraping

21   call and text logs."  SACC ¶¶ 6-9.

22   Plaintiffs adequately plead claims under the CDAFA because Facebook acted "without

23   permission" in scraping the call and text logs.  Because Facebook hid the fact that it was scraping

24   call and text logs, Plaintiffs could not possibly have given Facebook permission to do so.

25   Plaintiffs adequately plead unjust enrichment because they now state their claim with

26   specificity and provide the language of the Allow Access prompt that they were shown.  In

27   addition, as the Court has already ruled, an unjust enrichment claim can be construed as a quasi-

28

contract claim, even when there may be an express agreement.

Finally, Plaintiffs adequately plead intrusion upon seclusion and constitutional privacy claims.  While Facebook argues that Plaintiffs do not allege conduct that is "highly offensive" or a "serious invasion" of privacy, the Court has already ruled that those are issues of fact that cannot be decided on the pleadings.  In any event, numerous courts have found such conduct sufficient.

For all of these reasons, and those set out below, Defendant's motion to dismiss the SACC should be denied in full.

## APPLICABLE LAW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

Additionally, fraud claims are subject to a higher standard and the circumstances constituting fraud must be pleaded with particularity.  Fed. R. Civ. P. 9(b).  The same is true of state law claims that are grounded in fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).  "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks omitted). When an entire complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint. *Vess*, 317 F.3d at 1107. Dismissals under Rule 9(b) and Rule 12(b)(6) are treated in the same manner. *Id.* When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction over the asserted claims. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Accordingly, when considering this type of challenge, the Court is required to "accept as true the allegations of the complaint." *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001). In a factual challenge, the Court "may review evidence beyond the complaint . . . ." *Safe Air*, 373 F.3d at 1039. But, "[t]his discretion should be used with caution so that it does not usurp a merits determination." *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 952 (N.D. Cal. 2018). A "jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air*, 373 F.3d at 1039 (internal quotations and citations omitted); *Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014) ("[A] court must leave the resolution

of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim.").  The issues are intertwined when "the question of jurisdiction is dependent on the resolution of factual issues going to the merits."  *See Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983).

**ARGUMENT**

**I.       PLAINTIFFS HAVE ARTICLE III STANDING**

      **A.       Defendant's Facial Attack On Standing Fails**

      Defendant argues that "Plaintiffs lack Article III standing" because, as "a facial . . . matter, Plaintiffs themselves were not subjected to the alleged unlawful conduct, and thus could not have been injured by it . . . ."  MTD at 8.  This is incorrect.  The SACC contains a plain and concise explanation of how Facebook scraped Plaintiffs' call and text logs without their consent.

      The SACC makes clear that, "[u]pon initially downloading and installing the Facebook Messenger and Facebook Lite apps," each Plaintiff was presented with prompts that read: "Allow Facebook Messenger access to your contacts?" and "Allow Facebook Lite access to your contacts?"  SACC ¶¶ 6-9.  None of the Plaintiffs were ever asked whether he or she "consented to Facebook scraping" his or her "call and text logs, and [they] never granted Facebook permission to do so."  *Id.*  Despite this, "[t]he Facebook Messenger and/or Facebook Lite apps scraped [their] call and text logs, transferred them to Facebook, and monetized these data for advertising purposes."  *Id.*

      For purposes of Defendant's facial attack, these allegations must be accepted as true. *Lujan*, 243 F.3d at 1189; *Leite*, 749 F.3d at 1121 ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor.").  These allegations are also entirely plausible given both press accounts describing these events and the fact that Plaintiffs have attached excerpts of the stolen data from Facebook's own files.  SACC ¶¶ 7-9, 20.

      In addition, Facebook's internal emails, excerpted in the SACC, show that it planned exactly what Plaintiffs allege.  Michael LeBeau, then a project manager at Facebook, wrote a

February 4, 2015 email stating that Facebook was going to push a new version of its applications "that lets you continuously upload your SMS and call log history to Facebook," but he warned that doing so was "a pretty high-risk thing to do from a PR perspective." *Id.* ¶ 2.  Facebook's "privacy Sherpa," Yul Kwon, responded that the bad PR could be avoided altogether because, thanks to poor Android permission design at the time, there was a way to update the Facebook app to get a "Read Call Log" permission without actually asking for it:  "Based on their initial testing," Kwon wrote, referring to Facebook's "Growth Team" in charge of expanding the company's user base, "it seems that this would allow us to upgrade users **without subjecting them to an Android permissions dialog at all**." *Id.* ¶ 3 (emphasis added).  Of course, this is the precise scheme that Plaintiffs alleged, long before these communications were ever made public.  To the extent that Defendant questions which version of the Android OS Plaintiffs were using or the exact language of the Allow Access prompt that they saw, those are factual disputes which are not appropriate on a facial attack.

### B.    Defendant's Factual Attack On Standing Fails

Defendant also makes a factual attack on Plaintiffs' standing based on its argument that Plaintiffs purportedly consented to the scraping of their call and text data through both an Android permissions prompt and Facebook's own prompt.  MTD at 9-10.  In other words, Defendant argues that Plaintiffs lack standing because their claims will fail on the merits.  As such, Defendant's factual attack on Plaintiffs' standing is wholly intertwined with the elements of Plaintiffs' claims. *Safe Air for Everyone*, 373 F.3d at 1039 ("The question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.' "); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (the issues are intertwined when "the question of jurisdiction is dependent on the resolution of factual issues going to the merits").  Accordingly, resolution of Defendant's fact-based standing argument, which amounts to a motion for summary judgment, is not appropriate at the pleadings stage.  *Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014) ("[A] court must leave the resolution of material factual disputes to the trier of fact when the issue

of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim."); *Waste Action Project v. Fruhling Sand & Topsoil Inc.*, 737 F. App'x 344, 345 (9th Cir. 2018) (where plaintiff's claim and subject matter jurisdiction were intertwined, "the district court erred in weighing the evidence to resolve this dispute by making a Rule 12(b)(1) jurisdictional finding"); *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 n.4 (9th Cir. 2013) ("[T]he general rule applies that when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper.") (quotation marks and citation omitted).

Ruling on Defendant's 12(b)(1) factual attack without giving Plaintiffs an opportunity to conduct discovery into the issues raised in Defendant's motion and accompanying declarations would also be reversible error. *Vera v. Bureau of Indian Affairs*, 738 F. App'x 431, 432 (9th Cir. 2018) ("Because we conclude that this jurisdictional motion should have been treated as a motion for summary judgment and that some discovery must be conducted before summary judgment can be granted, we vacate and remand for further proceedings."); *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) ("where pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed"); *Young v. Crofts*, 64 F. App'x 24, 26 (9th Cir. 2003) (plaintiffs "faced with a 12(b)(1) motion, should have been allowed reasonable discovery to determine the facts that went to the issue of their standing under Article III"); *City of Lincoln v. United States*, 283 F. Supp. 3d 891, 897 (E.D. Cal. 2017) ("Where the intertwined factual issues are disputed, discovery should be allowed, and the court should leave the resolution of the jurisdictional issues to the trier of fact.") (internal citations omitted); *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *3 (N.D. Cal. Oct. 26, 2011) ("The Court also notes that Plaintiffs have not been afforded an opportunity to conduct discovery.  Thus, permitting a Rule 12(b)(1) challenge based on facts asserted by Yelp would be inappropriate.  *Cf.* Fed. R. Civ. P. 56(d).").  Here, before Plaintiffs will be able to address Defendant's fact-based arguments, they will need fact and expert discovery into the code and related documentation for the numerous versions of Facebook applications at issue, as well as discovery from Google regarding the various versions of the Android OS, among other items.

One recent case involving Facebook illustrates how these rules are applied in practice.  In *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948 (N.D. Cal. 2018), plaintiffs brought suit under the Illinois Biometric Information Privacy Act ("BIPA"), alleging that Facebook unlawfully collected and stored biometric data derived from their faces.  Facebook moved to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that the BIPA claims must fail because Facebook complied with the law's consent and notice requirements, and that plaintiffs therefore lacked standing.  Judge Donato disagreed:

> In addition to its legal arguments, Facebook has submitted its user agreement and data policy, deposition excerpts and other extrinsic evidence to contend that BIPA's notice and consent requirements were actually satisfied.  While that may or may not prove true in the end, the salient point for present purposes is that notice and consent are inextricably intertwined with the merits of plaintiffs' claims . . . . These dispositive disputes on the merits should be decided on summary judgment or at trial, and not in the Rule 12(b)(1) jurisdictional context.  *Safe Air*, 373 F.3d at 1039.

290 F. Supp. 3d at 956.  Here too, where Defendant's factual Rule 12(b)(1) argument is intertwined with the elements of Plaintiffs' claims, Plaintiffs should be permitted to conduct discovery first.

**C.      Plaintiffs Adequately Allege An Invasion Of Privacy**

Defendant argues that Plaintiffs lack standing based on an invasion of privacy under both a facial and factual attack.  MTD at 13.  But this argument is a rehash of the Defendant's standing argument that the Court has already rejected.

Defendant argues that, "[a]s a factual matter," Plaintiffs' do not adequately allege an invasion of privacy because "Facebook did not share Call or Text Logs" with any third-parties. MTD at 14.  But Facebook does not address the fact that its theft of Plaintiffs' personal call and text logs alone was an invasion of privacy, wholly apart from whether it shared that data with other entities.  Plaintiffs had a right to keep this data private and to keep it from others, including from Facebook.  While Facebook's disclosure of that data to third-parties certainly compounded Plaintiffs' injury, its initial theft of this inherently sensitive data was itself an invasion of privacy. *See* Order at 13  ("The theft of a person's call and text logs, without the user's consent or knowledge as alleged in the FACC, may or may not be highly offensive to current privacy norms.

1    It is indeed a factual question 'best left for a jury.'" (internal citation omitted)).  In addition, like

2    the questions of which version of the Android OS Plaintiffs used or the language in the prompt that

3    they saw, the issue of whether Facebook disclosed its users' call and text logs to third parties is

4    entirely intertwined with the elements of Plaintiffs' claims and thus requires discovery for it to be

5    resolved.

6         Defendant argues that Plaintiffs' privacy-based injuries premised on the disclosure of their

7    private information does not confer standing.  MTD at 14.  But the Court has already rejected this

8    argument.  Order at 8 (ruling that "[w]hether someone has a reasonable expectation of privacy in

9    their call and text logs" is "a question of fact under California law").  In addition, *Cahen v. Toyota*

10   *Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017), the case that Defendant cites on this point, is

11   distinguishable.  *Cahen* involved "the aggregate collection and storage of non-individually

12   identifiable driving history and vehicle performance data."  Here, on the other hand, Plaintiffs

13   allege that Defendant secretly obtained metadata about their private communications.  SACC ¶¶ 6-

14   9.  The logs include <u>years</u> of data from users' phones, including:  Plaintiffs' names, the names and

15   phone numbers of everyone they were communicating with, whether calls were "Incoming,"

16   "Outgoing" or "Missed," the date and time of each call/text message and the duration of each call.

17   *Id.*  In other words, the data collected by Facebook in this case are undoubtedly of a more sensitive

18   nature than those at issue in *Cahen*.  Indeed, courts regularly find that this kind of surreptitious

19   collection of metadata constitutes an invasion of privacy.

20        In *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064 (N.D. Cal. 2016), for instance, the

21   plaintiffs alleged that "Yelp and other app developers improperly uploaded address book data from

22   their phones without their consent."  *Id.* at 1067.  Defendants moved for summary judgment,

23   arguing that such data collection was not highly offensive.  Judge Tigar held that the issue was not

24   "a question that can be decided as a matter of law" or one on which there was no triable issue of

25   fact:

26              Fundamentally, this case is about whether Apple's conduct and that
             of application developers violated community norms of privacy.  "A
27           'reasonable' expectation of privacy is an objective entitlement
             founded on broadly based and widely accepted community norms."

28

> The "community norms" aspect of the "reasonable expectation of privacy" element means that "[t]he protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens."
>
> Those customs and habits are very much in flux. The technology underlying the allegations in this case is still developing. The iPhone was introduced less than ten years ago, and the prospect of an application developer taking advantage of a user's contacts data is even newer still.  When applying community standards, it is possible that a jury of persons selected from that community might conclude, as Yelp suggests, that Yelp's conduct was "far from "highly offensive."  In the alternative, a jury might also find the intrusion highly offensive based on both the degree of intrusion (uploading the email addresses of a user's contacts to the Defendants' servers) and the setting in which the invasion took place (users' personal cellular phones).  Perhaps a democratically elected legislature will embody the community standards in a statute.  In any of those events, a jury or legislature will have performed an important function in reflecting the community's standards as they relate to the privacy of information stored on a user's smartphone.  A judge should be cautious before substituting his or her judgment for that of the community.

*Opperman*, 205 F. Supp. 3d at 1079-80 (citations omitted); *Klayman v. Obama*, 142 F. Supp. 3d 172, 190 (D.D.C. 2015) ("plaintiffs have a very significant expectation of privacy in an aggregated collection of their telephony metadata"); *id.* ("When a person's metadata is aggregated over time, in this case five years, it can be analyzed to reveal embedded patterns and relationships, including personal details, habits, and behaviors.").  Here, as demonstrated by the outrage in the extensive press coverage of Facebook's data scraping, there can be little doubt that the collection of metadata about years of personal communications involves sensitive information.  At the very least, as this Court has already found, this issue involves a question of fact that cannot be decided at the pleadings stage.

### D.    Plaintiffs Adequately Allege Economic Injury

Defendant argues that Plaintiffs do not adequately allege that they sustained a diminution of value in their call and text metadata because they never tried to actually sell that data.  MTD at 11. That is incorrect.  Most recent decisions have found that personally identifiable information ("PII") is a "valuable commodity" and that theft of this information results in loss of its sales value.  *See, e.g.*, *In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) (allegation that Facebook

disseminated plaintiffs' PII, and that plaintiffs were harmed "by losing the sales value of that information," adequately stated claim for damages); *In re Anthem, Inc. Data Breach Litigation*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (same); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2017 WL 3727318, at *13-14, 49 (N.D. Cal. Aug. 30, 2017) (finding that "loss of value of PII" is "sufficient to plausibly allege injury" for the purposes of Article III standing); *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *5 (C.D. Cal. Oct. 1, 2018) ("In recent data breach cases, however, courts have found that the allegations that one's PII is a 'valuable commodity' and that theft of this information results in loss of its sales value are sufficient to plead damages . . . .").

More recent decisions also squarely reject Defendant's assertion that Plaintiffs must allege that they actually attempted to sell their data but were unable to do so.  *See, e.g.*, *Svenson v. Google Inc.*, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015) ("In light of the Ninth Circuit's ruling [in *In re Facebook Privacy Litig.*], this Court concludes that Svenson's allegations of diminution in value of her personal information are sufficient"); *id.* (noting that "district court decisions requiring factual specificity as to how the defendant's use of the information deprived the plaintiff of the information's economic value," including *Google Android Consumer Privacy Litig.*, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013), were decided before *In re Facebook Privacy Litig.*); *Svenson v. Google Inc.*, 2016 WL 8943301, at *7 (N.D. Cal. Dec. 21, 2016) (accepting expert opinion that "unauthorized disclosure of Buyers' PII in the present case diminished the value of that PII in an amount between $0.08 and $0.17 per Buyer.").

Defendant also argues that the diminution in value to Plaintiffs' PII cannot confer Article III standing because Plaintiffs allege only a *de minimis* injury.  MTD at 11-12.  This too is incorrect:  "even *de minimis* harm confers standing." *Shuckett v. DialAmerica Mktg. Inc.*, 2019 WL 913174, at *2 (S.D. Cal. Feb. 22, 2019) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017)); *Knutson v. Blue Light Sec., Inc.*, 2018 WL 1172611, at *2 (S.D. Cal. Mar. 6, 2018) (argument that "*de minimis* injury . . . does not give rise to standing . . . does not appear to be good law after *Van Patten*"); *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554

U.S. 269, 289 (2008) (noting that an injury worth "only a dollar or two" would be sufficient to support Article III standing); *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973) ("identifiable trifle" of injury is sufficient to confer standing); *Katz v. Pershing, LLC*, 672 F.3d 64, 76 (1st Cir. 2012) ("[A] relatively small economic loss—even an 'identifiable trifle'—is enough to confer standing."); *New York Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 326 (2d Cir. 2003) ("the injury-in-fact necessary for standing need not be large, an identifiable trifle will suffice") (citations omitted); *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010) ("Standing exists when the plaintiff suffers an actual or impending injury, no matter how small . . . ."); *Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d 243, 250 (11th Cir. 2014) ("Monetary loss—no matter how small—has been recognized as a cognizable injury for standing purposes.").[1]

Defendant also argues that the "resource depletion" to Plaintiffs' phones that Facebook caused through its data theft is insufficient to confer Article III standing. This is false as well. Numerous cases have conferred standing based on an "unauthorized depletion of resources" theory. *See, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *7 (N.D. Cal. Dec. 3, 2013) (standing established where plaintiffs "specifically allege[d] a greater discharge of battery power as a result of unauthorized conduct"); *Yunker v. Pandora Media, Inc.*, 2014 WL 988833, at *3 (N.D. Cal. Mar. 10, 2014) (finding excessive consumption of data by smartphone application to be sufficient injury to property); *Tyacke v. First Tennessee Bank, N.A.*, 2016 WL 9108892, at *3 (C.D. Cal. Apr. 28, 2016) (plaintiff had standing where he alleged that defendant's "illegal calls have impaired the use of these phones through general wear and tear and the consumption of battery life and cellular minutes"); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013) (triable issue of material fact whether iPhone applications "drained" plaintiffs' batteries

---

[1] It should also be noted that Plaintiffs bring this case as a putative class action on behalf of the hundreds of millions of Facebook users in the United States. The diminution in value to the class's PII as a whole is not a "mere trifle," but rather millions of dollars. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617, 117 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

and used up storage space and bandwidth); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1066-67 (N.D. Cal. 2015); *JWD Auto., Inc. v. DJM Advisory Group LLC*, 218 F. Supp. 3d 1335, 1340 (M.D. Fla. 2016) ("At least some of the particularized harm alleged in Plaintiff's Complaint—loss of toner and paper and the unwanted temporary occupation of Plaintiff's fax machine and telephone line—is tangible in nature.  Such tangible harm . . . is sufficient for standing purposes, even if *de minimis*."); *Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*, 329 F. Supp. 3d 146, 152 (D. Md. 2018) (same).  In addition, although not required, Plaintiffs allege that the resource depletion that Facebook caused through its data scraping was systematic.  As set out in the SACC, through that data scraping, "Facebook caused Plaintiffs to use up their phones' resources, including battery, electricity, cellular data, CPU processing power, RAM storage, and hard drive space." SACC ¶¶ 6-9, 42.  Plaintiffs do not allege a one-time use of resources.  Rather, the SACC notes that "Facebook scrapes *years'* worth of call and text data."  *Id.* ¶ 1 (original emphasis).  In other words, *every time* Plaintiffs sent or received a phone call or text message, Facebook used their phones' resources to scrape metadata.

## II.    PLAINTIFFS PLEAD THEIR CLAIMS WITH PARTICULARITY

Facebook argues that Plaintiffs' SACC fails to satisfy Rule 9(b) because Plaintiffs "still fail to allege the 'who,' 'when,' 'where,' 'how,' or 'why,' of the alleged fraud."  MTD at 15.  That is incorrect.  As set forth below, Plaintiffs' allegations meet the requirements of Rule 9(b) because they contain sufficient specificity for Facebook to form a responsive pleading.

Facebook's first argument is that "Plaintiffs do not allege that the Allow Access prompt is a Facebook statement."  MTD at 15.  Facebook argues further that "Plaintiffs offer no explanation, let alone a specific one, for how Facebook is the speaker of the Android Allow Access prompt. MTD at 16.  That is false.  The SACC clearly identifies that Facebook is responsible for the misleading statements and fraudulent omissions.  Specifically, Plaintiffs allege that within Facebook's own applications— Facebook Messenger and Facebook Lite— Facebook asked its users to grant Facebook permission to their respective "contacts," and in turn, Facebook scraped years' worth of call and text logs:

1

2

3

4

5

6

> Facebook exploited a vulnerability in the permission settings for the Facebook Messenger and Facebook Lite smartphone applications ("apps") in prior versions of the Android operating system ("OS"). When users install these apps, they are prompted to grant Facebook access to the their "contacts" with the following text: "Allow Facebook Messenger access to your contacts?" Below the prompt were choices labeled "Allow" or "Deny." But upon doing so, the Facebook Messenger and Facebook Lite apps for Android scrape users' call and text logs. That is, Facebook scrapes *years'* worth of call and text data, including whether each call was 'Incoming,' "Outgoing," or "Missed," the date and time of each call, the number dialed, the individual called, and the duration of each call.

7   SACC ¶ 1. Against this backdrop, Facebook's argument makes no sense. The misleading

8   statements and fraudulent omissions emanated from Facebook's applications. Facebook is

9   responsible. Nor does Facebook's argument affect Plaintiffs' allegation that it scraped the logs

10  without Plaintiffs' consent.

11       Next, Facebook argues that Plaintiffs "do not plead particularized facts showing the 'when,'

12  'where,' and 'how' of the alleged fraud—namely, when they were presented with the Allow

13  Access prompt and what OS version was running on their device at the time." MTD at 16.

14  However, Facebook neglects the fact that "[c]laims based on an omission "can succeed without the

15  same level of specificity required by a normal fraud claim." *Cooper v. Pickett*, 137 F.3d 616, 627

16  (9th Cir. 1997). As Judge Tigar has observed, "[t]his is because a plaintiff alleging an omission-

17  based fraud will not be able to specify the time, place, and specific content of an omission as would

18  a plaintiff in a false representation claim." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087,

19  1096 (N.D. Cal. 2014); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007)

20  ("fraud by omission claim can succeed without the same level of specificity required by a normal

21  fraud claim"); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 877 (N.D. Cal. 2018) (same);

22  *Bryde v. Gen. Motors, LLC*, 2016 WL 6804584, at *13 (N.D. Cal. Nov. 17, 2016) (same); *In re*

23  *Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *35 (N.D. Cal. May 27, 2016) (same);

24  *Cirulli v. Hyundai Motor Corp.*, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (Rule 9(b)

25  standard is "relaxed" for claims of fraudulent omission).

26       Regardless, here, Plaintiffs' allegations easily meet Rule 9(b)'s heightened standard:

27  **Who:**        "Facebook owns and operates the website www.facebook.com, and has developed

28

and distributed smartphone apps for Android and iOS, including the Facebook Messenger and Facebook Lite apps."  SACC ¶ 10.

**What:**  "Defendant failed to disclose to class members that by installing and downloading the Facebook Messenger and Facebook Lite apps, Facebook would steal Plaintiffs' and class members' call and text logs without permission."  *Id.* ¶ 62.  Plaintiffs attached sample screenshots of the data that Facebook scraped.  *Id.* ¶¶ 7-9.

**Where:**  Plaintiffs allege that the fraudulent conduct took place on their respective smartphones, within the Facebook Messenger and Facebook Lite applications.  *Id.* ¶¶ 6-9.

**When:**  Plaintiffs allege that they "installed the Facebook Messenger [and/or Facebook Lite] on [his/her] Android smartphone during the relevant time period, and prior to October 2017, for [his/her] personal and household use."  *Id.* ¶¶ 6-9.  Defendant is in exclusive possession of the exact dates of installation.

**How:**  "Facebook exploited a vulnerability in the permission settings for the Facebook Messenger and Facebook Lite smartphone applications ('apps') in prior versions of the Android operating system ('OS').  When users install these apps, they are prompted to grant Facebook access to the their 'contacts' with the following text: 'Allow Facebook Messenger access to your contacts?' Below the prompt were choices labeled 'Allow' or 'Deny.'  But upon doing so, the Facebook Messenger and Facebook Lite apps for Android scrape users' call and text logs. That is, Facebook scrapes *years'* worth of call and text data, including whether each call was 'Incoming,' 'Outgoing,' or 'Missed,' the date and time of each call, the number dialed, the individual called, and the duration of each call."  *Id.* ¶ 1; *see also id.* ¶¶ 6-9 ("The Facebook Messenger and/or Facebook Lite apps scraped [their] call and text logs, transferred them to Facebook, and monetized these data for advertising purposes.").  Plaintiffs also allege, through publicly released emails from Facebook employees in early 2015, that Facebook knew it could exploit a vulnerability in Android OS to scrape call and text logs without permission, and that it would "charge ahead and do it anyway."  *Id.* ¶ 2.

That is sufficient.  Facebook's claim that it is "left guessing as to the circumstances of the alleged misrepresentation" is laughable.  *See Chacanaca v. Quaker Oats Co.,* 752 F.Supp.2d 1111, 1126 (N.D. Cal. 2010) (finding Rule 9(b) satisfied where "plaintiffs have identified the particular statements they allege are misleading, the basis for that contention, where those statements appear . . . , and the relevant time period in which the statements were used").

### III.    PLAINTIFFS ADEQUATELY PLEAD THEIR SPECIFIC CLAIMS

####     A.    Plaintiffs Adequately Plead Fraud

Facebook's argues that "Plaintiffs' allegations of the 'misrepresentation' element for fraud fall short . . . . "  MTD at 17.  But Plaintiffs' allegations clearly set forth the "who, what, where, when, and why" of the alleged fraud.  *See supra* Section II.  Nothing more is required.

Next, Facebook argues that "the mere recitation of phrases 'with knowledge of their falsehood' and 'intended to induce' " do not satisfy scienter.  MTD at 18.  To the contrary, Plaintiffs' allegations show that Facebook knew exactly what it was doing—scraping call and text logs without permission—was deliberately discussed among Facebook employees, including that doing so without permission would be "a pretty high-risk thing to do from a PR perspective." SACC ¶ 2; *see also id.* ("[W]e didn't realize it was going to be something this risky.  We think the risk of PR fallout here is high . . . ."); *id.* ¶ 3 ("Based on their initial testing, it seems that this would allow us to upgrade users <u>without subjecting them to an Android permissions dialog at all</u>. . . .  It would still be a breaking change, so users would have to click upgrade, <u>but no permission dialog screen</u>") (emphasis added).  Accordingly, Plaintiffs' allegations are far from a "mere recitation" of the scienter element.  In addition, "[w]hile the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally."  *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1138 (N.D. Cal. 2015) (Seeborg, J.) (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc)).

Facebook then argues that Plaintiffs fail to plead reliance because Plaintiffs "do not say . . . why any misrepresentation or omission regarding the scope of what would be collected through *a contacts request* had any bearing at all on Plaintiffs' decision to install or use Messenger."  MTD at 18.  That is false.  Facebook ignores Plaintiffs' allegations that they "did not understand that Facebook Messenger or Facebook Lite would scrape [their] call and text logs," and that "Plaintiff[s] would not have installed or used the Facebook Messenger or Facebook Lite apps had [they] known the truth about the apps' practice of scraping call and text logs."  SACC ¶¶ 6-9. "Facebook's omissions concerning its practice of scraping call and text logs played a substantial

part, and so had been a substantial factor, in [their] decision to install and use Facebook Messenger and/or Facebook Lite." *Id.*[2]

Finally, Facebook argues that "Plaintiffs have not alleged any damages with the requisite particularity and certainty." MTD at 18. Here too, Defendant ignores Plaintiffs' allegations that they were "damaged from the unauthorized theft of [their] personal, sensitive information because by scraping [their] call and text logs, Facebook cause [them] to consumer her phone's resources, including battery, electricity, cellular data, CPU processing power, RAM storage, and hard drive space. Moreover, this information has diminished in value now that Facebook has already stolen and monetized it. The call and text logs Facebook stole are often sold for, and have an established market value of, approximately $0.05 per individual." SACC ¶¶ 6-9. That is sufficient. *See also supra* Section I.D (Plaintiffs Adequately Allege Economic Injury).

## B.    Plaintiffs Adequately Plead A Violation Of The CDAFA

Defendant argues that "Plaintiffs' CDAFA claim should be dismissed . . . because they still fail to satisfy Rule 9(b), . . . and they still fail to adequately allege standing based on an economic injury . . . ." MTD at 19. In making this point, Facebook fails to provide any new arguments and instead simply cites to prior sections of its briefing. *See id.* In any event, Defendant's argument is incorrect, for the same reasons discussed above regarding Article III standing and the Rule 9(b) pleading standards. *See supra* Sections I-II.

Next, Facebook contends that Plaintiffs have failed to properly allege Facebook acted "without permission" under the CDAFA, because "Plaintiffs' boilerplate CDAFA allegations do not show that Facebook was put on express notice that it lacked permission to upload Plaintiffs' Call and Text Logs, and also fall far short of showing that Facebook could not have 'reasonably thought' it had permission to upload Plaintiffs' Logs when Plaintiffs allegedly granted access

---

[2] Tellingly, the *only* case Facebook relies upon in support of its reliance argument is *Mazur v. eBay, Inc.*, where the court held that the "Plaintiff pleads reliance in a conclusory manner and merely regurgitates the statements that allegedly induced reliance." 2008 WL 618988 at *8 (N.D. Cal. Mar. 4, 2008). But here, as set forth above, Plaintiffs' allegations go well beyond conclusory. To the extent Facebook needs more clarification on why Plaintiffs would not have installed or used Facebook's apps had they known Facebook would steal years' worth of their call and text logs— without permission and without notice to its users—then Facebook can seek this information in discovery.

1    through the Allow Access prompt."  MTD at 19.  This is because, Facebook reasons, it follows that

2    the presence of the "Allow Access prompt" would serve to make Facebook believe it "reasonably

3    thought" it had permission to scrape Plaintiffs' call and text logs:  "[If Plaintiffs] had later OS

4    versions running on their phones but the Facebook apps 'bypass[ed]' the Android patch . . . there

5    still is no plausible basis for inferring that *Android* had withdrawn permission to access Logs

6    through a contacts request *until* Android 'fully deprecated this functionality' in October 2017."

7    MTD at 20 (italics in original).  That is wrong.

8        This case is similar to *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), where

9    the plaintiffs alleged they purchased cellular phones containing a pre-installed program called

10   Carrier IQ, which was represented to be a "network diagnostic tool."  However, the Carrier IQ

11   software actually "collects, and transfers, sensitive personal data off of a user's mobile device,"

12   which include "(1) URLs . . . ; (2) GPS-location information; (3) SMS text messages; (4) telephone

13   numbers dialed and received; (5) the user's keypad presses/keystrokes; and (6) application

14   purchases and uses."  *Id.* at 1061-62.  As such, the court found that the plaintiffs had adequately

15   alleged that the access was "without permission" in the context of plaintiffs' CDAFA claim.  *Id.* at

16   1098-1101.  Citing to Blacks Law Dictionary, the *Carrier IQ* court held that " '[p]ermission' is

17   defined as the 'act of permitting' or 'a license or liberty to do something; authorization.' "  *Id.* at

18   1100; *see also id.* ("It is a fundamental canon of statutory construction that unless a term is

19   specifically defined by statute, words will be interpreted as taking their 'ordinary, contemporary,

20   common meaning.'") (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  Accordingly, the

21   court found that the "without permission" requirement was satisfied, inasmuch as "Plaintiffs have

22   alleged that the Carrier IQ Software, and its operation, was 'deeply hidden;' that they had no notice

23   was operating, and they had no way to remove the software or to opt-out of its functionality."  *Id.*

24   at 1101.

25       In reaching its opinion, the *Carrier IQ* court noted that "in *Facebook, Inc. v. Power*

26   *Ventures, Inc.*, 844 F. Supp. 2d 1025 (N.D. Cal. 2012), a court in this District held that when a

27   defendant accesses [a] network in a manner that circumvents technical or code-based barriers in

28

place to restrict or bar a user's access, then the access does qualify as being 'without permission.' " *Id.* at 1099. However, "[h]olding that a defendant acts with 'permission' for purposes of the [CDAFA] any time it does not need to overcome 'technical or code based barriers in place to restrict or bar a user's access' leads to results which strain the plain and ordinary meaning of the term 'permission.' " *Id.* at 1100. Moreover, "[n]othing in the *Power Ventures* decision held that overcoming 'technical or code-based barriers' designed to prevent access was the *only* way to establish that the Defendant acted without permission." *Id.* at 1099 (italics in original; underlining added).[3] It is on this same basis that the *Carrier IQ* court distinguished *Opperman v. Path, Inc.*, 2014 WL 1973378 (N.D. Cal. May 14, 2014), a case cited by Facebook, because it cannot "truly be said, in an ordinary sense of the word permission, that the plaintiff gave 'permission' to the app developer defendant to access their information in question." *Id.* at 1101. "In fact, . . . the offending app was alleged to have acted surreptitiously and, in the case of *Opperman*, the court acknowledged that plaintiffs had affirmatively alleged that they had never given the app permission to access the information in their devices' address books. That the plaintiffs had unquestionably downloaded the offending apps in question does not answer the question of whether the plaintiffs gave 'permission' to the defendants to access and transmit their personal data." *Id.* Thus, the *Carrier IQ* court further noted that it "does not believe such a reading of the phrase 'without permission' should be so broadly construed so as to defeat Plaintiffs' claims in this case." *Id.* (citing *Weingand v. Harland Financial Solutions, Inc.*, 2012 WL 2327660 (N.D. Cal. June 19, 2012) (noting that the *Power Ventures* court had not "base[d] its construction of § 502 on any California state authority or on the statutory language").

Similarly, in *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 954, 966 (N.D. Cal. 2014), the defendants contracted with NovelPoster, an online retailer, to "assume responsibility for

---

[3] This analysis is not changed by the Ninth Circuit's subsequent opinion in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016), where it held that "a violation of the terms of use of a website—without more—cannot establish liability under the CFAA [(*i.e.*, the federal Computer Fraud and Abuse Act)]." Here, Facebook's conduct goes far beyond a mere "violation of the terms of use." Moreover, the Ninth Circuit devoted only two paragraphs to the CDAFA, noting that "[t]his statute . . . is 'different' than the CFAA," and ultimately affirmed the district court's holding that the defendant violated the CDAFA. *Id.* at 1069.

1   running NovelPoster until it could be sold." *Id.* at 956 (internal citation omitted).  However, the

2   defendants then "changed the passwords" for a number of NovelPoster's online accounts and

3   subsequently "accessed the individual email accounts [of NovelPoster employees] and read emails

4   therein without authorization." *Id.* at 957.  Subsequently, after NovelPoster attempted to terminate

5   the relationship, the defendants retained control of the online accounts, "deleted [certain] email

6   accounts," and "shut down NovelPoster's website." *Id.* at 958.  In its opinion denying defendants'

7   motion for judgment on the pleadings, the court found that plaintiffs had properly asserted a

8   CDAFA claim because "NovelPoster's allegations that defendants without authorization changed

9   the passwords to NovelPoster's online accounts, thereby preventing NovelPoster from accessing

10  those accounts and eliminating the very technical access barriers that NovelPoster had set up to

11  protect them . . . ." *Id.* at 967.  *See also Weingand v. Harland Fin. Solutions, Inc.*, 2012 WL

12  2327660 (N.D. Cal. June 19, 2012) (granting the defendant leave to assert a CDAFA counterclaim

13  against the plaintiff, who, after being terminated from the defendant's employ, had allegedly used

14  his still-operable log-in information to access data on the defendant's computer system which he

15  was not permitted to access); *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542 (N.D. Cal. Oct.

16  24, 2013) (concluding that the court could not find, "as a matter of law, that plaintiff does not state

17  a claim under the CDAFA solely because plaintiff relies on the alleged breach of a license

18  agreement instead of a technical breach").

19      Here, Plaintiffs' allegations plainly establish that "Facebook scrapes users' call logs and

20  text data by exploiting a software vulnerability in the permission settings of older versions of the

21  Android OS."  SACC ¶ 20.  More specifically, "prior to Android version 4.1, granting Facebook

22  Messenger and Facebook Lite access to users' 'Contact List' also granted Facebook Messenger and

23  Facebook Lite access to users' call and text logs by default." *Id.* ¶ 21.  While this vulnerability

24  "was patched in later versions of the Android OS," Plaintiffs allege that Facebook "bypass[ed] this

25  patch by specifying that [it was] using an older, pre-patched version of the Android Software

26  Development Kit." *Id.*  Such allegations are plainly sufficient to bring a CDAFA claim.  It is on

27  this basis that Plaintiffs' allegations are distinguishable by the cases cited by Defendants, whereby

28

the plaintiffs only made "boilerplate" allegations of a CDAFA violation.  *Cf. Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018) (dismissing claim under section 502(c)(1) where plaintiff failed to allege facts supporting its claim that defendant's conduct "actually alter[ed], damage[d], delete[d], or destroy[ed] data on [plaintiff's systems]"); *see also cf. Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (dismissing CDAFA claim where the plaintiff merely "parrot[ed] the language of the subsections" with "boilerplate[] allegations").

### C.    Plaintiffs Adequately Plead Unjust Enrichment

Facebook contends that "[t]his Court previously dismissed Plaintiffs' unjust enrichment claim on the ground that Plaintiffs failed to satisfy the requirements of Rule 9(b), . . . and it should do so again because Plaintiffs still fail to allege with particularity the misrepresentation at the crux of the claim."  MTD at 21.  Again, in making this argument, Facebook merely cites to prior sections of its briefing.  *See id.*  Regardless, this argument is wrong for the same reasons discussed above regarding Article III standing and the Rule 9(b) pleading standards.  *See supra* Sections I-II.

Next, Facebook argues that "the [unjust enrichment] claim cannot proceed as a quasi-contract claim seeking restitution."  MTD at 21.  Specifically, Facebook argues that "the claim is not properly pleaded at all because Plaintiffs have an enforceable agreement with Facebook: the Statement of Rights and Responsibilities ('SRR') to which Plaintiffs agreed as a condition of using a Facebook app."  *Id.*  But the Court has already rejected this argument:

> The Ninth Circuit has attempted to clarify a longstanding inconsistency in California law, now "allowing an independent claim for unjust enrichment to proceed."  *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017).  California courts typically consider unjust enrichment a principle of quasi-contract which gives rise to restitution.  *See Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014).  Courts can "construe the cause of action as a quasi-contract claim seeking restitution" to avoid an unjust benefit conferred to the defendant "through mistake, fraud, coercion, or request."  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d Restitution § 2).
>
> Facebook argues in its reply that an unjust enrichment claim is not viable where there is an express agreement.  Whether the quasi-

<u>contract claim is "nonsensical because it was duplicative of or superfluous" to other claims or legal remedies, however, is no longer a ground for dismissal.</u>  *Id.* at 762–63 (citing Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.")).

Order at 17 (underlining added).  The logic of this ruling applies just as strongly today.  In addition, Facebook never moved for reconsideration, makes no effort to distinguish this Court's prior ruling, and provides no reason for the Court to depart from it.  As such, the "law of the case doctrine" applies.  *See U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.") (quotations omitted); *see also Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993) ("[T]he district court's failure to apply the doctrine of law of the case constitutes an abuse of discretion.").[4]

### D.    Plaintiffs Adequately Plead An Intrusion Upon Seclusion And A Constitutional Privacy Claim

Facebook contends that "Plaintiffs lack standing to assert an invasion of privacy claim," and "they have not satisfied Rule 9(b)."  MTD at 22.  Facebook makes the same argument in the context of Plaintiffs' constitutional privacy claim.  *See* MTD at 24 ("Plaintiffs' second privacy claim should likewise be dismissed either for lack of standing . . . due to Plaintiffs' failure to allege any misleading Facebook prompt.").  Yet again, Facebook fails to raise any new arguments and merely cites to prior sections of its briefing.  Such arguments are wrong for the same reasons discussed above regarding Article III standing and the Rule 9(b) pleading standards.  *See supra* Sections I-II.

In connection with Plaintiffs' claim for intrusion upon seclusion, Facebook argues that Plaintiffs have failed to allege an intrusion that contravenes a reasonable expectation of privacy or an intrusion that would be highly offensive to a reasonable person.  MTD at 22.  Similarly, Facebook makes the same argument regarding Plaintiffs' claim for a constitutional violation

---

[4] Plaintiffs also disagree that their unjust enrichment claim is necessarily "duplicative" or "superfluous."  This case is at its infancy, in the pleadings stage.  Facebook still has the opportunity to file dispositive motions, including a motion for summary judgment, which may curtail several of Plaintiffs' claims.

privacy claim.  *See id.* at 25 ("Plaintiffs still have not alleged facts showing that Facebook's conduct constituted a 'serious invasion' as a matter of law.").  These arguments are incorrect and misplaced.

For the reasons stated *supra* at Sections I-II, Facebook's argument that Plaintiffs' claims lack specificity and they allege only a "blanket assertion of privacy" is incorrect.  Plaintiffs allege the specific language of the Allow Access prompt at issue and they specify the types of data that Facebook stole:  Plaintiffs' names, the names and phone numbers of everyone they were communicating with, whether calls were "Incoming," "Outgoing" or "Missed," the date and time of each call/text message and the duration of each call.  SACC ¶¶ 6-9.  In addition, the Court has already decided that whether Facebook's conduct was "highly offensive" is a question of fact that cannot be decided at the pleadings stage.

> The theft of a person's call and text logs, without the user's consent or knowledge as alleged in the FACC, may or may not be highly offensive to current privacy norms.  It is indeed a factual question "best left for a jury."  *Opperman*, 87 F. Supp. 3d at 1061.  Accordingly, plaintiffs' intrusion upon seclusion claim could survive dismissal assuming Rule 9(b) is satisfied . . . .  [W]hether dissemination of private information is egregious or merely routine behavior remains a question of fact given plaintiffs averred lack of any advance notice or opportunity to consent to the data scraping.  Considering Facebook's alleged conduct, if fraud is sufficiently averred, a jury could plausibly find a serious invasion of privacy.

Order at 12-13.  Facebook provides no justification for the Court to now depart from this ruling, which is the law of the case.

Furthermore, it is plainly abundant from case law that consumers <u>do</u> have a reasonable expectation of privacy in their call and text logs, and intruding upon them would be considered "highly offensive" or a "serious invasion" to a reasonable person.  *See In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 130 (3d Cir. 2015) (finding that plaintiffs stated a claims for intrusion of privacy and violation of California's constitutional right to privacy, where "defendants, who run internet advertising businesses, placed tracking cookies on the plaintiffs' web browsers in contravention of their browsers' cookie blockers and defendant

Google's own public statements," and finding that Google's conduct was "characterized by deceit and disregard, . . . Google's alleged conduct was broad, touching untold millions of internet users; it was surreptitious, surfacing only because of the independent research of Mayer and the Wall Street Journal."); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267, 292 (3d Cir. 2016) (holding that "[j]ust as *Google* concluded that a company may commit intrusion upon seclusion by collecting information using duplicitous tactics, we think that a reasonable jury could reach a similar conclusion with respect to Viacom," where plaintiffs alleged that Viacom "unlawfully collected personal information about [plaintiffs] on the internet, including what webpages they visited and what videos they watched on Viacom's websites."); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1080 (N.D. Cal. 2016) (holding that "there is a triable issue of fact regarding whether Yelp's upload of the Plaintiffs' address book data was highly offensive to a reasonable person"); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("Considering the quantum and nature of the information collected, the purported failure to respect consumers' privacy choices, and the divergence from the standard industry practice, Plaintiffs plausibly allege Vizio's collection practices amount to a highly offensive intrusion.").  Additionally, the extensive press coverage of Facebook's data scraping – and the multitude of resulting lawsuits – can also establish that the alleged invasion of privacy was "highly offensive" to a reasonable person.

## CONCLUSION

For the foregoing reasons, Facebook's motion to dismiss should be denied.  Alternatively, if the motion is granted in any respect, Plaintiffs should be given leave to amend.  *See, e.g., Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) ("Ordinarily, leave to amend should be freely given in the absence of prejudice to the opposing party.").


Dated: March 19, 2019                         **BURSOR & FISHER, P.A.**

                                              By:   */s/ L. Timothy Fisher*
                                                    L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
      ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Interim Class Counsel*