1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE OLIN, HAROLD NYANJOM, SHERON SMITH-JACKSON, and JANICE VEGA-LATKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:18-cv-01881-RS (TSH)<br><br>**JOINT STATEMENT ON DISCOVERY DISPUTE REGARDING PLAINTIFFS' PROFFERED EXPERT WITNESSES**<br><br>Magistrate Judge Thomas S. Hixson |

## ATTESTATION

The Parties confirm that they met and conferred in good faith in person on April 26, 2019 to discuss the issues described herein, but were not able to resolve their dispute.

| | |
|---|---|
| **BURSOR & FISHER, P.A.** | **LATHAM & WATKINS LLP** |
| */s/ Neal J. Deckant*<br>Neal J. Deckant | */s/ Nicole C. Valco*<br>Nicole C. Valco |
| *For Plaintiffs* | *For Defendant* |

# PLAINTIFFS' POSITION

On April 3, 2019, Plaintiffs provided Defendant with a list of their proposed experts who should be permitted to view Defendant's source code: Dr. Atif Hashmi, Jason Frankovitz, Dr. Istvan Jonyer and Dr. Jae young Bang. This disclosure included all of the supporting documentation and details required under Section 7.5 of the Protective Order (ECF No. 91). On April 17, 2019, Defendant responded, objecting to Plaintiffs' designations of Dr. Jonyer and Dr. Bang as expert witnesses. For the reasons set out below, Defendant has failed to meet its burden of demonstrating that the risk of harm in disclosing its source code to Dr. Jonyer or Dr. Bang outweighs Plaintiffs' need to disclose the protected material.

## Applicable Law

"In determining whether confidential information should be disclosed to a party's chosen expert, 'the court must balance [the receiving party's] interest in electing the experts most beneficial to its case with [the disclosing party's] interest in protecting its trade secrets from disclosure to competitors.'" *Codexis, Inc. v. EnzymeWorks, Inc.*, 2017 WL 5992130, at *6 (N.D. Cal. Dec. 4, 2017) (quoting *Advanced Semiconductor Materials Am. Inc. v. Applied Materials Inc.*, 1996 WL 908654, at *3 (N.D. Cal. Oct. 28, 1996)). "An objection should not be sustained on the grounds that an expert 'will inevitably misuse [the confidential] information if he consults for [the disclosing party's] competitors in the future because the information will be in his head.'" *Id.* "This would effectively give a party 'the power of veto over its adversary's choice of experts.'" *Id.* "Where the parties have agreed to, and the court has entered, a protective order, 'the party opposing disclosure of confidential information has the burden of establishing that there is good cause to continue the protection of the discovery material.'" *Id.* (quoting *Isis Pharm., Inc. v. Santaris Pharma A/S Corp.*, 2013 WL 3367575, at *3 (S.D. Cal. July 5, 2013)).

Here, the parties have entered into a stipulated protective order, which requires that "the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert." Protective Order ¶ 7.

## Dr. Istvan Jonyer

Defendant argues that Dr. Jonyer "does not fit the definition of 'Expert' in the Protective Order," which defines an expert as someone who "is not a past or current employee of a Party or of a Party's competitor," because he "worked for Facebook competitor Google from August 2010 to February 2012." Ex. A at 1. This objection takes the concept of "competitor" and stretches it beyond all recognition. Dr. Jonyer worked for "Google TV," which was the predecessor for Chromecast, a technology used for streaming video from a phone or laptop to a television. Google TV, which does not even exist anymore, is not a competitor to Facebook in any sense of the word. It certainly has no resemblance to the Facebook Lite and Facebook Messenger apps at issue in this litigation. Unsurprisingly, when asked at the parties' meet and confer, Defendant could not identify any *specific* competitive harm or prejudice that would likely result if Dr. Jonyer were permitted to view the Facebook Lite and Facebook Messenger source code. Rather, Defendant's lawyer only provided vague generalities that the disclosure of source code to Dr. Jonyer could result in a loss of Facebook's proprietary trade secrets, which

Defendant opined may occur if Dr. Jonyer is "loyal" to Google or still has "contacts" with Google dating back eight years ago.

Defendant also argues that designating Dr. Jonyer as an expert "would be inappropriate given his active consulting business working with a variety of technology companies, including Near-Me, NimbleVR, and startups coming out of Stanford and in the 'ex-Google network.'" Ex. A at 2. That argument is even more absurd. Near-Me is a peer-to-peer marketplace engine for entrepreneurs who want to set up their own branded marketplaces. NimbleVR is a virtual reality company. Neither of these companies, nor the "ex-Google network," is a competitor of Facebook. Indeed, interpreting "competitor" as broadly as Facebook suggests would essentially preclude Plaintiffs from hiring anyone who is sufficiently experienced to review its source code. In addition, because Dr. Jonyer stopped working for all of these companies years ago, has no ongoing relationship with any of them, and has no plans to return, his prior work for these companies does not pose any meaningful risk to Facebook.

During the parties' meet and confer, Defendant also argued that Dr. Jonyer's work with "pro bono mentoring" serves to disqualify him as an expert. *See* Ex. B at 1 (Dr. Jonyer's resume, which states: "Pro Bono Mentoring: Advising startups at Stanford University Innovation Farm, Stanford Venture Studio, ex-Google network, and other early stage startups"). However, this is not a germane argument, as the Court's Protective Order would only bar experts who were "past or current *employee[s]* of a Party or of a Party's competitor." Dkt. 91 (emphasis added). Here, Dr. Jonyer was not an "employee" of any of these entities, as he was only engaged in pro bono mentoring. Also, it is absurd to suggest that Dr. Jonyer would misappropriate Facebook's confidential source code to Stanford-affiliate entities to which he is engaged in a pro bono mentoring relationship.

On the other hand, precluding Dr. Jonyer from reviewing Facebook's source code would severely prejudice Plaintiffs. Plaintiffs have conducted an extensive search for experts for this case, and Dr. Jonyer stood out as particularly qualified. He holds three advanced degrees, including a Ph.D. in Computer Science from The University of Texas at Arlington, and has published 25 peer-reviewed articles. Dr. Jonyer has designed mobile communication systems, and he has deep technical expertise in mobile apps for the Android operating system and is uniquely adept at reviewing related code. He is also intimately familiar with the importance of maintaining confidentiality of proprietary code belonging to technology companies.

**Dr. Jae young Bang**

Defendant argues that Dr. Bang is not an appropriate expert in this case because he previously worked for Kakao Corporation, where he "designed and implemented the user identity platform used by over 100 million people who use Kakao services, including KakaoTalk, which is a messaging app available on Android devices." This objection is likewise improper. Dr. Bang's work at Kakao was limited to its user authentication platform, and he did not directly participate in the development of KakaoTalk. there appears to be little risk to Facebook of any competitive harm, given that Dr. Bang's employment at Kakao has ended, he has no ongoing relationship with Kakao, and he has no intention of returning.

On the other hand, Plaintiffs would be severely prejudiced if they were unable to hire Dr. Bang as an expert in this matter. Dr. Bang is uniquely qualified to work on this case. He has a Ph.D. in Computer Science from University of Southern California, and his areas of expertise include software design and architecture of Android apps and software version control technology, which is essential in analyzing how a software system has evolved and was developed in time. Dr. Bang also has several years of experience in software development practice focused on security and privacy-protection systems. As such, Dr. Bang will be able to provide Plaintiffs with insights that are central to their claims and which no other available experts may be able to bring to the table.

**Plaintiffs' Final Proposed Compromise**

Because Defendant has made no showing that it will likely suffer any competitive harm if Dr. Jonyer and Dr. Bang are permitted to view its source code, and Plaintiffs will be prejudiced if they are not permitted to use these witnesses because they are uniquely qualified to work on this case, Plaintiffs' should be permitted to disclose documents designated "HIGHLY CONFIDENTIAL – SOURCE CODE" to them. *See, e.g.*, *Verigy US, Inc. v. Mayder*, 2008 WL 4183493, at *1 (N.D. Cal. Sept. 8, 2008) (granting plaintiff's motion for leave to disclose confidential documents to experts who had retired from competitor two years earlier, did not have "an ongoing relationship with that company," and there was no showing that either expert was "likely to make unauthorized disclosure of defendants' claimed proprietary information"); *Codexis*, 2017 WL 5992130, at *8 (plaintiff was permitted to use expert of its choosing where defendants failed to demonstrate that proposed expert worked for a competitor, the technology at issue in the litigation was "clearly different than the subjects of 'competition' identified by defendants," and the expert presented "unique fitness" for the case). In addition, because Dr. Jonyer and Dr. Bang will sign the Acknowledgment And Agreement To Be Bound, which subjects signers to "sanctions and punishment in the nature of contempt" if they fail to comply, Defendant will be adequately protected.

## DEFENDANT'S POSITION

Plaintiffs' seek to rewrite the stipulated protective order so that they can share highly confidential, competitively sensitive Facebook source code with former employees of Facebook competitors—something they explicitly agreed they could not do. Facebook produced this source code relying on Plaintiffs' advance agreement—backed by Court order—to these terms. Plaintiffs' motion should be denied for two reasons. First, Drs. Jonyer and Bang are former employees of Facebook competitors. Plaintiffs knew full well when they agreed to the protective order they would be precluded from engaging former Google employees—like Dr. Jonyer—to review Facebook's source code because they admit that Google is a Facebook competitor. *See* Second Am. Compl. (Dkt. No. 88) at ¶ 17. Plaintiffs have also prevented Facebook from evaluating the additional risk posed by Dr. Jonyer's ongoing consulting efforts by refusing to disclose information about the startup companies he advises, including companies in what he terms the "ex-Google network." Their second expert, Dr. Bang, was recently employed by Kakao, which makes a messaging app that competes with Facebook's Messenger app. Plaintiffs do not even attempt to argue (because they cannot) that Kakao is not a Facebook competitor. Second, the competitive harm to Facebook outweighs any need for disclosure. To compromise, Facebook has agreed that Plaintiffs could share its highly confidential code with two other computer software experts, who have even more experience analyzing code than Drs. Joyner or

Bang: Mr. Frankovitz (25+ years of experience as a software engineer and programmer who has reviewed code for 60+ cases) and Dr. Hashmi (Ph.D in Electrical Engineering with 10+ years of experience who has worked on at least 13 cases involving source code).

**Applicable Law**

The parties agreed in the stipulated protective order that a receiving party can only share information designated Highly Confidential—including source code—with a limited set of people, including "Experts" as defined in the order. Dkt. No. 91 at §§ 2.6, 7.3(b), 7.4(b). Any person currently or previously employed by a party's competitor does not qualify as an "Expert" under the protective order. *Id.*. These provisions, which come from the Northern District of California model, are designed to protect against the "unnecessary risk of competitive harm if the court permitted Plaintiffs to hire the former employees of [Defendant's] competitors as experts." *Corley v. Google, Inc.*, 16-cv-00473-LHK (HRL), 2016 WL 3421402, at *1-2 (N.D. Cal. June 22, 2016); *see also TVIIM, LLC v. McAfee, Inc.*, 13-cv-04545-VC (KAW), 2014 WL 2768641, at *2 (N.D. Cal. June 18, 2014) ("This district clearly requires that an 'expert' under the Protective Order may not be 'a past or current employee of a Party or of a Party's competitor' . . . ."). Plaintiffs have the burden to show that these individuals qualify as "Experts" under the protective order (*see* Dkt. No. 91 § 7.5(a)); only if they do would Facebook need to show that the risk of harm outweighs the need. *See TVIIM, LLC,* 2014 WL 2768641, at *2 (disqualifying the expert under the protective order because he was employed by a competitor of the defendant; no burden shift to the party opposing disclosure); *see also* Dkt. No. 91 at § 7.5(c) (shifting burden for party opposing disclosure to an "Expert"); *cf. Isis Pharms., Inc. v. Santaris Pharma A/S. Corp.*, 11-cv-2214–GPC (KSC), 2013 WL 3367575, at *3 (S.D. Cal. July 5, 2013) (analyzing protective order based on S.D. Cal. model, which did not define "Expert" and thus did not automatically disqualify the expert).

**The Protective Order Bars Disclosure of Highly Confidential Source Code to Drs. Jonyer and Bang Because They Are Former Employees of Facebook Competitors**

Plaintiffs agreed in the stipulated protective order they would not share source code with former employees of Facebook competitors, which they knew would include Google—a company they admit is a Facebook competitor. *See* Second Am. Compl. (Dkt. No. 88) at ¶ 17 ("[T]he online advertising industry has formed into a duopoly between Facebook and Google . . . ."). Plaintiffs seek to circumvent that provision by sharing source code with Dr. Jonyer, a Google employee from August 2010 to February 2012 who continues to advise startups from the "ex-Google network." Deckant Decl. Ex. B. Google competes with Facebook on a number of fronts, but most importantly it offers a variety of messaging and/or calling apps that compete with the Facebook Messenger app at issue in this case. Valco Decl. ¶¶ 7-9. Four such Google apps are available to Android users (Messages, Hangouts, Duo, and Google Voice).

Plaintiffs contend that Dr. Jonyer did not work for a Facebook "competitor" because he worked on the Google TV product, which was an online platform used for streaming video to television and has since been succeeded by Google Chromecast. The specific product on which Dr. Jonyer worked at Google makes no difference under the language of the protective order, which defines "Expert" to exclude *any* past or current employee of a competitor of the producing party. Plaintiffs' reliance on *Codexis, Inc. v. EnzymeWorks, Inc.*, 3:16-cv-00826-WHO, 2017 WL 5992130 (N.D. Cal. Dec. 4, 2017) is inapposite. In *Codexis*, the party objecting to

disclosure had not identified facts demonstrating that the companies with which the expert consulted were its competitors at all. *Id.* Here, even Plaintiffs admit that Google is a competitor of Facebook. Dkt. No. 88 at ¶ 17. Plaintiffs reliance on *Verigy US, Inc. v. Mayder*, C07-04330 RMW (HRL), 2008 WL 4183493 (N.D. Cal. Sept. 8, 2008), a case designated "NOT FOR CITATION", is similarly unavailing because the defendant objecting to disclosure in that case made no showing that the expert's prior company was defendant's competitor.

Plaintiffs do not dispute that until just three months ago, Dr. Bang worked for Facebook competitor Kakao Corporation, which offers the messaging app KakaoTalk. Deckant Decl. Ex. C. KakaoTalk has similar features to Facebook Messenger, allowing users to send messages, photos, videos, and play games. Valco Decl. ¶¶ 10-11. In fact, KakaoTalk is the primary competitor in South Korea of Facebook's Messenger app, and is also available in the U.S. *Id.* Plaintiffs instead argue that Dr. Bang is not a *current* Kakao employee and that he did not "directly participate in the development of KakaoTalk." The protective order, however, explicitly protects against disclosure of source code to *former* employees of competitors. And Dr. Bang's CV discloses that he worked on a feature used by KakaoTalk. Deckant Decl. Ex. C.

### Although Facebook Has No Burden To Prove It, The Potential Harm From Disclosure Outweighs Any Need

Plaintiffs' argument that Facebook has the burden to prove that the risk of harm from disclosure outweighs Plaintiffs' purported need is wrong. Because they do not qualify as "Experts" as defined by the protective order, the burden shifting in Section 7.5(c) is inapplicable. *See TVIIM, LLC,* 2014 WL 2768641, at *2 (disqualifying expert as competitor with no burden shift). Nevertheless, there is a well-recognized risk that a former employee of a Facebook competitor would make improper use of its source code, which Facebook could not "realistically discover or guard against." *See Corley*, 2016 WL 3421402, at *2. The code already produced, which relates to the development of Facebook's Messenger app and includes revision history, is proprietary and highly confidential to Facebook and its release would cause Facebook serious competitive harm. *See* Dkt. No. 95 at ¶ 15. Google or Kakao could use the code and revision history to improve their messaging apps and reduce their software development costs. *See id.*

In addition, Dr. Jonyer's ongoing advisory roles heighten the risk of disclosure that the protective order seeks to prevent. Dr. Jonyer actively consults with Stanford's Office of Technology Licensing on marketing its patent portfolio, and advises any number of "ex-Google network" and Stanford-affiliated startup companies that could compete with Facebook. Deckant Decl. Ex. B. To make matters worse, Plaintiffs refuse to identify these companies. *See* Dkt. No. 91 at § 7.5(a)(5) (requiring a complete list of "each person or entity . . . to whom the expert has provided professional services . . . at any time during the preceding five years").

Plaintiffs, on the other hand, have hired two other experts with a combined 35+ years of experience analyzing source code and significant testifying experience. *See* Valco Decl. ¶¶ 3-4. These experts have the experience and expertise that Plaintiffs say they need.

### Facebook's Final Proposed Compromise

Plaintiffs propose no compromise. Facebook's position is that its source code should not be shared with individuals who were employed by its competitors under any circumstances, but it does not object to providing its code to the two other software experts Plaintiffs engaged.

| | | |
|---|---|---|
| 1 | Dated: May 10, 2019 | **BURSOR & FISHER, P.A.** |
| 2 | | By: */s/ Neal J. Deckant* |
| 3 | | Neal J. Deckant |
| 4 | | L. Timothy Fisher (State Bar No. 191626) |
| | | Neal J. Deckant (State Bar No. 322946) |
| 5 | | 1990 North California Boulevard, Suite 940 |
| | | Walnut Creek, CA 94596 |
| 6 | | Telephone: (925) 300-4455 |
| | | Facsimile: (925) 407-2700 |
| 7 | | E-Mail: ltfisher@bursor.com |
| | | ndeckant@bursor.com |
| 8 | | |
| | | **BURSOR & FISHER, P.A.** |
| 9 | | Scott A. Bursor (State Bar No. 276006) |
| | | 888 Seventh Avenue |
| 10 | | New York, NY 10019 |
| | | Telephone: (212) 989-9113 |
| 11 | | Facsimile: (212) 989-9163 |
| | | E-Mail: scott@bursor.com |
| 12 | | |
| | | *Interim Lead Counsel* |
| 13 | | |
| 14 | Dated: May 10, 2019 | **LATHAM & WATKINS LLP** |
| 15 | | By: */s/ Nicole C. Valco* |
| | | Nicole C. Valco |
| 16 | | |
| 17 | | Elizabeth L. Deeley (CA Bar No. 230798) |
| | | Nicole C. Valco (CA Bar No. 258506) |
| 18 | | 505 Montgomery Street, Suite 2000 |
| | | San Francisco, CA 94111-6538 |
| 19 | | Telephone: (415) 391-0600 |
| | | Facsimile: (415) 395-8095 |
| 20 | | E-Mail: elizabeth.deeley@lw.com |
| | | nicole.valco@lw.com |
| 21 | | |
| 22 | | **LATHAM & WATKINS LLP** |
| | | Susan E. Engel (*pro hac vice*) |
| 23 | | 555 Eleventh Street, NW, Suite 1000 |
| | | Washington, DC 20004 |
| 24 | | Telephone: (202) 637-2200 |
| | | Facsimile: (202) 637-2201 |
| 25 | | E-Mail: susan.engel@lw.com |
| 26 | | |
| | | *Attorneys for Defendant* |
| 27 | | |
| 28 | | |