**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
        ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail:  scott@bursor.com

*Interim Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE OLIN, HAROLD NYANJOM, SHERON SMITH-JACKSON, and JANICE VEGA-LATKER, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>FACEBOOK, INC.,<br><br>      Defendant. | Case No.  3:18-cv-01881-RS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S ADMINISTRATIVE MOTION FOR LEAVE TO SUBMIT RECENT AUTHORITY**<br><br>Hon. Richard Seeborg |

Plaintiffs Lawrence Olin, Harold Nyanjom, Sheron Smith-Jackson, and Janice Vega-Latker (collectively, "Plaintiffs") hereby oppose Defendant Facebook, Inc.'s ("Facebook") Administration Motion for Leave to Submit Recent Authority, regarding the matter captioned *Bass, et al. v. Facebook, Inc.*, 2019 WL 2568799 (N.D. Cal. June 21, 2019).  Facebook's motion is both procedurally improper and unhelpful to the facts at hand.

Procedurally, Local Rule 7-3(d)(2) provides that "[b]efore [a] noticed hearing date, counsel may bring to the Court's attention a relevant judicial opinion published after the date the opposition or reply was filed by filing and serving a Statement of Recent Decision, *containing a citation to and providing a copy of the new opinion – without argument*" (emphasis added).  Here, Facebook's motion contains two pages of argument, complete with a block quote.  Such arguments are improper. Accordingly, the Court should disregard and deny Plaintiffs' motion.[1]

Substantively, the facts of the *Bass* matter are unlike the present case – indeed, one of the plaintiffs in *Bass*, Stephen Adkins, was found to have standing under Rule 12(b)(1).  At issue in *Bass* were allegations that hackers stole so-called "access tokens" to 69,000 Facebook users.  *Bass*, 2019 WL 2568799, at *2.  These access tokens were "allegedly the key to a breathtaking amount of online access," including "connected web applications (like Skype and Uber)," whereby "anyone with access to the token can reset all other user data permissions and steal the tokens of all connection applications without alerting the original user."  *Id.*  Additionally, the hackers used the same technique to obtain, from 3.9 million Facebook users in the United States, information such as phone numbers, email addresses, genders, dates of birth, workplaces, education histories, relationship statuses, religious views, hometowns, and more.  *Id.*, at *3-4.

As for plaintiff Stephen Adkins in the *Bass* matter, Facebook had "notified [him] that he had been subject to the data breach."  *Id.*, at *5.  As such, the court found that "a reasonable inference can therefore be drawn which traces the plausibly alleged harms to the purported mishandling of plaintiff Adkin's personal information through the data breach," and he accordingly "has standing." *Id.*  Here, this is similar to the experiences of Plaintiffs, each of whom allege that Facebook "scraped

---

[1] Plaintiffs are cognizant of the irony that they are responding to Facebook's improper arguments with further arguments of their own. That said, *to the extent* the Court considers Facebook's arguments in its motion, Plaintiffs respectfully request that the Court *also* consider their responses.

[their] call and text logs, transferred them to Facebook, and monetized these data for advertising purposes." *Compare with* Second Amended Compl. ("Compl."), ¶¶ 6-9 (allegations of scraping by Plaintiffs, most of whom included screenshots of the precise data scraped by Facebook).

As for plaintiff William Bass, the court found that "none of the circumstantial evidence he provides plausibly connects [him] to the data breach." Specifically, plaintiff Bass alleged that "(i) he had been forcibly logged out of his Facebook account; (ii) he received phone calls from people purporting to be his family members; and (iii) he subsequently received fake Facebook friend requests, spam e-mails, and pornographic links on his Facebook messenger service." *Bass*, 2019 WL 2568799, at *7-8. But the court found that "[t]hese allegations do not suffice to connect the dots to the breach," as "[t]he first two facts do not trace to the data breach at all," and "spam e-mails and fake friend requests simply occur to most, if not all, e-mail and social media users." *Id.* Here, by contrast, Plaintiffs alleged that their call and texts records were scraped, and they provided screenshots of the exact data at issue. *See* Compl., ¶¶ 6-9. These allegations are totally unlike plaintiff Bass' experiences.

Moreover, Facebook notes that the *Bass* plaintiffs were required to "defend jurisdiction by 'furnish[ing] affidavits or other evidence necessary to satisfy [their] burden of establishing subject matter jurisdiction.'" *Bass*, 2019 WL 2568799, at 5 (quoting *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)). But that is exactly what Plaintiffs did in this matter. Namely, on June 12, 2019, Plaintiffs submitted the Declaration of Jason Frankovitz in order to rebut Facebook's factual attack on standing. *See* Dkt. 119. Mr. Frankovitz specifically found that Facebook's engineer, Louis Boval, "does not say whether Facebook surreptitiously scraped Plaintiffs' call and text logs prior to their supposed provisions of consent," and that "Mr. Boval could have easily stated that Facebook never scraped Plaintiffs' Call and Text Logs prior to their supposed provision of consent with the Facebook Messenger app, but he did not do so." *See id.* Here, while Plaintiffs submitted a declaration from an expert rather than from themselves, there is no language in the *Bass* decision to preclude expert testimony in response to a factual attack on standing. Indeed, Mr. Frankovitz's analysis included a review of source code contained in the Boval Declaration, and as such is most appropriate for expert testimony rather than lay testimony.

1  Lastly, Facebook contends that "the district court [in *Bass*] found that [plaintiff Adkins] did

2  not sufficiently allege an injury based on the lost value of his stolen information."  Facebook Mot. at

3  2.  That is misleading.  In fact, the *Bass* court noted that "plaintiff Adkins has provided no market for

4  the personal information or the impairment of the ability to participate in that market," which "is

5  fatal."  *Bass*, 2019 WL 2568799, at *11.  Additionally, the *Bass* court noted that "even if plaintiff

6  Adkins did intend to sell his own data – an intention he did not have – it is unclear whether or how

7  the data has been devalued from the breach."  *Id.*  Here, by contrast, Plaintiffs allege that "[t]he call

8  and text logs Facebook stole are often sold for, and have an established market value of,

9  approximately $0.05 per individual."  Compl. ¶¶ 6-9.  Further, Plaintiffs allege that Facebook

10  "shares or disseminates the scraped user data with [] 61 entities," meaning that the value of

11  Plaintiffs' personal data to these entities is materially less.  *Id.* ¶ 27.  Even so, Plaintiffs allege

12  additional bases for standing, namely that they suffered a violation of their privacy and Facebook's

13  actions caused the consumption of "phone[] resources, including battery, electricity, cellular data,

14  CPU processing power, RAM storage, and hard drive space."  *Id.* ¶¶ 6-9.

15  In sum, the Court should deny Facebook's motion.  In the alternative, similar to plaintiff

16  Adkins in the *Bass* matter, the Court should conclude that Plaintiffs sufficiently allege standing.

17

18  Dated:  July 1, 2019                                   Respectfully submitted,

19                                                                 **BURSOR & FISHER, P.A.**

20                                                                 By:  */s/ Neal J. Deckant*
21                                                                           Neal J. Deckant

22                                                                 L. Timothy Fisher (State Bar No. 191626)
                                                                    Neal J. Deckant (State Bar No. 322946)
23                                                                 1990 North California Blvd., Suite 940
                                                                    Walnut Creek, CA  94596
24                                                                 Telephone: (925) 300-4455
                                                                    Facsimile: (925) 407-2700
25                                                                 Email: ltfisher@bursor.com
26                                                                             ndeckant@bursor.com

27                                                                 **BURSOR & FISHER, P.A.**
                                                                    Scott A. Bursor (State Bar No. 276006)
28                                                                 2665 S. Bayshore Dr., Suite 220

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Interim Class Counsel*