UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE OLIN, HAROLD NYANJOM, SHERON SMITH-JACKSON, and JANICE VEGA-LATKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:18-cv-01881-RS (TSH)<br><br>**JOINT STATEMENT ON DISCOVERY DISPUTE REGARDING PLAINTIFFS' REQUESTS FOR INSPECTION**<br><br>Magistrate Judge Thomas S. Hixson |

ATTESTATION

The Parties confirm that they met and conferred in good faith by email and telephone, including by lead counsel, to discuss a review of Defendant Facebook, Inc.'s source code and its Responses and Objections to Plaintiffs' First Set of Requests for Inspection.  While the Parties initially discussed a review of Facebook's source code in person in October 2019, they were unable to confer in person about the issues raised in this Joint Statement because of the current Shelter in Place orders relating to the COVID-19 pandemic.

| | |
|---|---|
| **BURSOR & FISHER, P.A.** | **LATHAM & WATKINS LLP** |
| */s/ Neal J. Deckant*<br>Neal J. Deckant | */s/ Elizabeth L. Deeley*<br>Elizabeth L. Deeley |
| *For Plaintiffs* | *For Defendant* |

**PLAINTIFFS' POSITION**

This case is about Defendant Facebook, Inc.'s ("Defendant" or "Facebook") practice of scraping call and text logs from Android users' cellular phones via the Facebook Messenger app without users' consent.  Since October 2019, the parties have been negotiating an inspection of the Facebook Messenger source code at issue in this matter, and Plaintiffs served formal Requests for Inspection on February 5, 2020.  Facebook served its objections and responses on March 6, 2020, in which it refused to produce its source code and related materials in response to several of Plaintiffs' requests.  After dozens of emails and several lengthy meet and confer conference calls, the parties have now resolved many of the disputes related to Facebook's responses to Plaintiff's Requests for Inspection.  However, the Parties have been unable to resolve disputes related to Requests Nos. 1, 4, and 5.

**Request for Inspection No. 1:**

Plaintiffs request an inspection of the complete source code repository for the Facebook Messenger app.  Defendant has only agreed to provide snippets of code that it unilaterally deems relevant.  But this will not do.  Absent access to the full source code repository, Plaintiffs will not have access to the evidence necessary to prosecute this action.

Plaintiffs allege that Facebook scraped users' data without their consent.  Defendant responds that it only scraped data after first obtaining consent.  Accordingly, this case will turn on whether Facebook ever employed versions of the Facebook Messenger app that scraped users' data without first obtaining consent.  As Plaintiffs' programming expert Jason Frankovitz makes clear, any meaningful code review in this case will necessarily require access to the complete source code repository:

> By withholding portions of source code, the producing party can effectively dictate the contents of evidence to the court.  …
> Another reason why the source code must be produced in its entirety has to do with the interdependent nature of programming. A program rarely is comprised of a single file of source code, as described above.  There are a great many files of code, and the program's instructions require multiple files to be processed for the instructions to be properly executed.  For example, it is normal for a variable to be declared in one file, an interface declared in a second file, and a method using the variable and the interface together in a third file.  The only way the behavior of the code can be understood is for all three of these files to be present so the execution can be traced.  If any of the files are missing, the code cannot be analyzed fully, and the program's behavior will remain opaque to the court.

Decl. of Jason Frankovitz ¶ 10-11 (footnote omitted).[1]  Indeed, Facebook has produced full source code repositories in a number of other matters.  *See, e.g.*, *Gullen v. Facebook, Inc.*, No. 3:16-cv-00937, Provance Decl., ¶ 14 (N.D. Cal. Feb. 2, 2018) (Dkt. 135-1) ("[P]laintiffs' counsel and their retained experts were given access to a repository of Facebook's source code (including

---

[1] Jason Frankovitz, one of Plaintiffs' designated experts in this case, has prepared a written declaration setting out the reasons why a meaningful code review requires access to the complete code repository as well as supporting technical documentation and bug tickets.  Per this Court's Standing Order on Discovery, it is not attached hereto but it is available upon request.  Nevertheless, because Mr. Frankovitz's declaration is helpful for understanding the technical aspects of the issues before the Court, it has been provided to Defendant and is cited herein.

JOINT STATEMENT ON DISCOVERY DISPUTE                                                                            1
CASE NO. 3:18-cv-01881-RS (TSH)

revision histories) ….”); *Tele-Publishing, Inc. v. Facebook, Inc.*, No. 1:09-cv-11686, Letter (D. Mass. Aug. 3, 2010) (Dkt. 135-1) ("Regarding the source code itself, Facebook has provided the source code repository …."); *Blackberry Ltd. v. Facebook, Inc.*, No. 2:18-cv-01844, Blackberry Opening Brief Re Discovery Dispute, at 5 (C.D. Cal. Sept. 3, 2019) (Dkt. 386) ("… BlackBerry continued to review Facebook's document productions and voluminous source code repository …."); *Campell v. Facebook, Inc.*, No. 4:13-cv-05996, Deposition Errata, at 13 (N.D. Cal. Mar. 28, 2016) (Dkt. 180-3) (deposition errata sheet referencing a "Facebook messenger repository").

Defendant has not articulated any specific privacy concerns or undue burden associated with Plaintiffs' request. Nor could it; the parties have entered into this District's heightened protective order for cases involving source code. Accordingly, Defendant presents no legitimate objection to Plaintiffs' request. *See Indacon, Inc. v. Facebook, Inc.*, 2012 WL 12862665, at *2-3 (W.D. Tex. May 7, 2012) ("Finally, although Facebook argues the confidentiality of these documents will be compromised if produced to Indacon, the PO would appear to more than adequately address Facebook's concerns."); *WeRide Corp. v. Kun Huang*, 2019 WL 5722620, at *7 (N.D. Cal. Nov. 5, 2019) (requiring production of the "complete source code repositories" and noting that protective order provided adequate protections); *eDirect Publ'g, Inc. v. LiveCareer, Ltd.*, 2014 WL 2527401, at *2 (N.D. Cal. June 4, 2014) (overruling objections to request to inspect source code where party presented "[n]o specific or concrete information" backing up their suggestion of an "undue burden," such as the costs involved); *In re Google Litig.*, 2011 WL 286173, at *6 (N.D. Cal. Jan. 27, 2011) (rejecting burden argument because defendant provided "no estimate of the number of hours, business distraction, or cost of production").

### Request for Inspection No. 4:

Plaintiffs also seek to inspect the internal manuals and technical documentation associated with Facebook's source code for the Messenger app. Defendant has refused to provide this material. But these technical documents are essential for conducting a meaningful source code review. As Plaintiffs' expert Jason Frankovitz notes, the code for the Facebook Messenger app is extremely complex. Frankovitz Decl. ¶ 21. As such, "[e]ven the world-class talent at Facebook would be unable to navigate and understand such a massive amount of source code without proper documentation and training." *Id.* And when new programmers join a programming team, these are the exact documents that they are given to understand the program. *Id.* ¶ 22. "Here, the presence of documentation is particularly important because of the size and sophistication of Facebook's messaging infrastructure." *Id.* ¶ 23. "Without documentation, it might be impossible to conduct a thorough code review." *Id.*

For these same reasons, it is well-established that technical documentation should be produced alongside source code. *See, e.g.*, *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 377 (D. Del. 2010) (noting that Facebook had provided "technical documents which would enable an expert to understand the source code [that] were produced"); *Kajeet, Inc. v. Qustodio, LLC*, 2019 WL 8060078, at *13 (C.D. Cal. Oct. 22, 2019) (requiring the production of "supporting technical documents" in addition to source code); *SpeedTrack, Inc. v. Amazon.com, Inc.*, 2018 WL 3328423, at *6 (N.D. Cal. July 6, 2018) ("[T]he Court expects Defendants to provide Plaintiff with the manuals and technical documents, as well as any third-party software or tools, which will enable Plaintiff to conduct an expeditious review of the complete source code production."); *Delphix Corp. v. Actifio, Inc.*, 2015 WL 5693722, at *5 (N.D. Cal. Sept. 29, 2015) (explaining that "Patent L.R. 3-4 is not limited to source code" but also "'specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant" and that the defendant there "had difficulty understanding the produced source code

without the technical documents that provided context.").

**Request for Inspection No. 5:**

Plaintiffs also seek to inspect the "bug tickets" for the Messenger app. Even though this case does not concern "bugs" in Facebook Messenger, the associated bug tracking and ticketing system is likely to contain contemporaneous comments and discussions by Facebook's engineers as to changes made to the code, and why those changes were made. It would be extremely helpful to Plaintiffs' experts if they were given access to these comments and discussions in order to understand the functionality of Facebook Messenger during the relevant time period, and the nature of any changes made. *See, e.g.*, *Leader Techs., Inc.*, 719 F. Supp. 2d at 377; *Kajeet, Inc.*, 2019 WL 8060078, at *13; *SpeedTrack, Inc.*, 2018 WL 3328423, at *6. Bug tickets are also useful "because they can prove if the observed behavior of the program after the fact matches the desired behavior of the program at the time of creation" and thereby provide important state of mind evidence. Frankovitz Decl. ⁋ 25.

**Plaintiffs' Final Proposed Compromise**

For Request No. 1, Plaintiffs propose that Facebook produce the entirety of the Facebook Messenger source code repository. For Request Nos. 4 and 5, Plaintiffs propose that Facebook produce the associated technical manuals and bug tracking/ticketing systems associated with Facebook Messenger.

**FACEBOOK'S POSITION**

Each Plaintiff consented to Facebook uploading their call and text histories when they clicked to "turn on" that feature in the Messenger app on their Android devices. Faced with ample evidence Facebook provided showing that consent, and in response to discovery requests and a factual attack on their standing (*see* Dkts. 93, 95, 128), Plaintiffs have not presented one document or shred of evidence—even their own declarations—to refute it. Yet they seek a burdensome and disproportionate exploration through all source code, technical documentation, and bug tickets for *all features* on all Android versions of the Messenger app. Plaintiffs' motion should be denied because (1) Facebook agreed to provide the source code for the call and text history uploading feature at issue here and (2) highly confidential code and technical documents related to thousands of Messenger app features and functions are neither relevant nor proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6883929, at *1 (N.D. Cal. Oct. 19, 2017) (requiring evidence of misappropriated source code in employee's files before allowing that "as an excuse for pawing through Uber's source code without limitation").

In October 2019, ***Facebook*** offered to make available the Messenger app source code for the call and text history uploading feature on Android devices—the sole feature at issue in this case. Far from "snippets"—as Plaintiffs inaccurately contend—these comprehensive code files and their revision history show the business logic for call and text history uploading on the Messenger app for Android, including tracking consents and managing collection and uploading of that data; the user interface used to obtain consent to turn on call and text history uploading; and the settings used to turn it on or off. Seven months later, Plaintiffs refuse to review any of this code unless Facebook agrees to include ***all*** source code, technical documentation, and bug tickets for all features and versions of the Android Messenger app. This includes massive amounts of irrelevant code for thousands of features and functions—*e.g.*, video calling or sending images or payments—having nothing to do with the call and text history uploading feature or consents at issue here. *See* www.messenger.com/features. Such a fishing expedition through source code and technical documentation is not remotely proportional to the needs of this case, which is solely about the call and text history uploading feature. Plaintiffs' requests therefore should be denied.

**Request No. 1:** Facebook already offered to make available for inspection all source

**code for the call and text history uploading feature of the Android Messenger app created on or between January 1, 2014 and March 27, 2018**. Facebook agreed to compile this code into a repository for inspection with revision history. As explained above, Plaintiffs' request for "the entirety of the Facebook Messenger source code repository" seeks highly confidential information about functions and features that are entirely irrelevant to any issue in this case. Indeed, the overwhelming majority of Messenger code is unrelated to call and text history uploading.

A party should not get broad access to source code when only a narrower slice is relevant. If all code for a product or company were always needed to evaluate issues relating to a single feature, it would be ordered in every case. It is not. Seeking access to *all* code rather than *relevant* code is like asking a party to "produce every email it has ever sent or received, on whatever topic, no matter how unrelated to the case." *Uniloc USA Inc. v. Apple Inc.*, 2018 WL 2002979, at *3 (N.D. Cal. Apr. 30, 2018) (explaining "case law contradicts the premise" that "the inspecting party's code expert may 'look at whatever he thinks relevant'"). In *Uniloc*, like here, the source code involved thousands of unrelated features and functions, and there was "no plausible argument that" they were "relevant to [plaintiff's] claims." *Id.* at *2. Similarly, in *Waymo*, the court affirmed denial of a request to inspect all source code untethered to the trade secrets at issue because a party should not get "*carte blanche* to fish around in … source code." 2017 WL 6883929, at *1-2; *see also Nazomi Comm'ns, Inc. v. Samsung Telecomm'ns*, 2012 WL 1980807, at *3 (N.D. Cal. Jun. 1, 2012) (declining broad disclosure of source code when plaintiff's rationale was to fully understand the product's operation); *Blue Spike, LLC v. Vizio, Inc.*, 2018 WL 8646476, at *5 (C.D. Cal. Jul. 3, 2018) (narrowing request for source code to just at-issue functions of the accused product).

Plaintiffs' cited cases support that a party seeking source code inspection must demonstrate its relevance. *See Campbell v. Facebook, Inc.*, 2016 WL 7888026, at *2 (N.D. Cal. Oct. 4, 2019) (denying motion to compel source code inspection, explaining "Plaintiffs are not automatically entitled to review the entirety of Facebook's source code during the entire class period based on their allegations"); *eDirect Publ'g*, 2014 WL 2527401, at *2 (compelling production of only relevant source code, denying remainder of code request); *In re Google Litig.*, 2011 WL 286173, at *5 (compelling production of only certain relevant source code). The other cases Plaintiffs cite do not address the appropriate scope of source code inspection. *See WeRide*, 2019 WL 5722620, at *7 (ordering inspection of complete source code repositories because defendants failed to comply with preliminary injunction that required production of only the "relevant" source code; original injunction "had declined to order [defendants] to produce the entirety of their source code as that request was 'overly broad'"); *Indacon*, 2012 WL 12862665, at *2-3 (denying protective order to prevent *printing* code from secure computer because printing rights were governed by the existing protective order). And their cited filings regarding source code in other Facebook matters, which involved different allegations with different products and features at issue, do not establish entitlement to broad inspection rights here. *See Gullen*, Dkt. 135-1 at ¶ 14 (inspection included, "among other things, the source code related to how Facebook's website interacts with its facial-recognition technology, and the technology itself"); *Tele-Publishing*, Dkt. 135-1 (no indication of the scope of source code included in the inspection repository); *Blackberry*, Dkt. 386 (same).

**Facebook's source code is a protected trade secret**. Facebook's confidential and proprietary source code is a protected trade secret subject to statutory protection. *See* Cal. Evid. Code §§ 1060-63; *see also* Fed. R. Evid. 501. To obtain disclosure, Plaintiffs must establish the trade secret code at issue is "relevant and necessary" to the proof of the case. *In re Apple & AT & TM Antitrust Litig.*, 2010 WL 1240295, at *2-3 (N.D. Cal. Mar. 26, 2010) (citing *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d 324, 328 (9th Cir. 1961)) (denying motion to compel additional source code because plaintiffs only speculated about its relevance); *see also Bridgestone/Firestone, Inc. v. Super. Ct.*, 7 Cal. App. 4th 1384, 1393 (1992). As explained above, Plaintiffs have not met that

burden here. *Id.*; *see also Nazomi*, 2012 WL 1980807 at *3 ("Given the sensitivity of source code, the court is not inclined to order broad disclosure absent a more specific showing."); *In re Google Litig.*, 2011 WL 286173, at *5 ("The court … appreciates the potential harm from the disclosure of a firm's proprietary source code, even with the safeguards offered by a protective order.").

**Making available all Messenger code would be burdensome and disproportionate**. As explained to Plaintiffs, there is no single existing "repository" that contains all source code for the Messenger app. Facebook engineers who worked on the call and text history uploading feature on the Android Messenger app have performed a reasonable and thorough good faith search to identify that feature's code files for inspection. Messenger involves thousands of other unrelated features and functions, and identifying all code for them across different repositories would require consulting the different teams that support those features (sometimes across products). Moreover, the Messenger code is contained within repositories that also contain code for many of Facebook's other products and infrastructure that have nothing to do with this case. Facebook has explained the large and significant effort required to identify all code relating to Messenger to isolate it in a repository for Plaintiffs, which would cause considerable disruption to Facebook's product teams. Facebook can provide an evidentiary submission related to this burden if requested by the Court.

**The Court should ignore Plaintiffs' expert declaration**. Plaintiffs bypass the Court's Standing Order by extensively quoting a declaration from Jason Frankovitz. Critically, Plaintiffs' initial version of the declaration was based in part on his analysis of highly confidential code in another case involving facial recognition software for the Facebook website, accessed under a protective order. His unauthorized disclosure of that information to Plaintiffs' counsel for use here violates that protective order. This raises serious concerns about his compliance with protective orders and further undermines Plaintiffs' assertion that this Protective Order eliminates Facebook's concerns with providing broad access to irrelevant, highly confidential source code.

**Request No. 4:** Plaintiffs' request for technical documentation associated with all Android Messenger code is also not limited to the call and text history uploading feature relevant to this case. Facebook is producing database schemas relating to this feature, and already produced "diffs" for relevant code files. Diffs are the main technical documents associated with code changes; they show the code changes and engineers' comments, among other information. *See* Dkts. 95 at ¶ 14; 95-1; 95-2. As Facebook has explained, there is no Messenger code training manual as Plaintiffs speculate. Nevertheless, Plaintiffs want Facebook to undergo a burdensome effort of trying to locate manuals and documents relating to Messenger app code for all features. The reasonable and proportionate approach is for Plaintiffs to inspect the code actually relating to this case, and then raise any issues with understanding it *See Leader Techs.*, 719 F. Supp. 2d at 377 (affirming denial of majority of request for technical documentation, in part because plaintiff had "a reasonable degree of technical information, namely access to Facebook's source code").

**Request No. 5:** To use Plaintiffs' words: "this case does not concern 'bugs' in Facebook Messenger." Bugs are irrelevant when Plaintiffs will have the code and allege the app worked as intended to upload call and text histories. Seeking bug tickets for an app with thousands of features and functions like Messenger is an effort to cast a wide net and see what turns up; the Court should deny this disproportionate request. *See Kajeet*, 2019 WL 8060078, at *2 (denying request regarding "related" patents not at-issue as "a fishing expedition into documents with little to no apparent probative value" and a "burden that is not proportional to the needs of the case").

**Facebook's Final Proposed Compromise:** Facebook will (a) make available the source code relating to consent to the upload of call and text histories for the relevant time frame and (b) meet and confer with Plaintiffs about documentation that might pertain to specific questions their expert has about the code (if any). If issues arise, the two experts that will conduct the code review live in the Bay Area and will be able to return for further review without any travel burden.

Dated:  May 20, 2020            **BURSOR & FISHER, P.A.**

                                          By:   */s/ Neal J. Deckant*
                                                           Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
           ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Interim Lead Counsel*


Dated:  May 20, 2020            **LATHAM & WATKINS LLP**

                                          By:   */s/ Elizabeth L. Deeley*
                                                        Elizabeth L. Deeley

Elizabeth L. Deeley (CA Bar No. 230798)
Nicole C. Valco (CA Bar No. 258506)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-Mail: elizabeth.deeley@lw.com
           nicole.valco@lw.com

**LATHAM & WATKINS LLP**
Susan E. Engel (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
E-Mail:  susan.engel@lw.com

*Attorneys for Defendant*

---

JOINT STATEMENT ON DISCOVERY DISPUTE                                              6
CASE NO. 3:18-cv-01881-RS (TSH)