1
2
3
4
    UNITED STATES DISTRICT COURT
5
    NORTHERN DISTRICT OF CALIFORNIA
6
7
LAWRENCE OLIN, et al.,      Case No.  18-cv-01881-RS   (TSH)
8
    Plaintiffs,
9
    v.       **PUBLIC VERSION OF DISCOVERY**
    **ORDER AT ECF NO. 177**
10
FACEBOOK, INC.,      Re: Dkt. Nos. 166, 172
11
    Defendant.
12
13
    The parties have a discovery dispute about some source code.  ECF Nos. 166, 172.  By

14 way of background, Plaintiffs are suing over Facebook's alleged exploitation of a vulnerability

15 setting for the Facebook Messenger smartphone app in previous versions of the Android operating

16 system.  ECF No. 88 (operative complaint) ¶ 1.[1]  When users installed the app, they were

17 prompted to grant Facebook access to their "contacts."  *Id*.  If they allowed that access, Facebook

18 Messenger allegedly scraped the users' call and text logs, which could include years' worth of call

19 and text data, including whether each call was "Incoming," "Outgoing," or "Missed," the date and

20 time of each call, the number dialed, the individual called, and the duration of each call.  Facebook

21 then allegedly incorporated these data into its profile on each user, which it monetized for

22 advertising purposes.  This vulnerability was patched in October 2017, at which time Facebook

23 ceased this alleged practice.  *Id*.

24     In a June 11, 2020 order, the Court ordered Facebook to make available for inspection the

25 source code that related to the call and text history uploading feature, rejecting Plaintiffs' request

26 for access to all of the Messenger source code.  ECF No. 161.  The Court's order concerned source

27

28 [1] The operative complaint also makes allegations about the Facebook Lite app, ECF No. 88, but
Judge Seeborg held that Plaintiffs lack standing with respect to those allegations.  ECF No. 128.

United States District Court
Northern District of California

1    code created on or between January 1, 2014 and March 27, 2018 because at the time the parties

2    agreed that was the relevant time period.  The Court's order did not preclude Plaintiffs from

3    asking for additional source code to inspect after they had the opportunity to inspect this source

4    code.  *Id.*

5         Having inspected that source code, Plaintiffs now seek access to additional code based on

6    what they have found to date.  There are three categories in dispute:  (1) implementations and

7    callers, (2) packages related to contacts, and (3) pre-2014 code.  The Court addresses each in turn.

8    **A.    Implementations and Callers**

9         As Plaintiffs explain, an implementation shows what happens when certain code is

10   executed.  A caller spells out the conditions that have to be met before the code is executed.

11   Plaintiffs state that some of the relevant callers and implementations are missing.

12        **1.    Callers for [Redacted]**

13        Plaintiffs say these [redacted].  Facebook does not disagree that these methods do that or

14   dispute their relevance.

15        In the letter briefs, Plaintiffs say the source code they have access to is missing the callers

16   for these methods, and Facebook says that it already provided or agreed to provide the code that

17   shows when this code ran for the call and text history uploading feature.

18        Facebook refined its position at the hearing, stating that it has provided all of the callers for

19   these methods that it is aware of after conducting a reasonably diligent investigation.  To make

20   Facebook's obligations clear, the Court does believe that all of the callers for these methods are

21   relevant and that Facebook must produce them.  However, the Court also believes that an order

22   compelling production necessarily contains within it a limitation of reasonable diligence in finding

23   the documents to produce.  Thus, Facebook must use reasonable diligence to find and produce all

24   of the callers for these methods, but reasonable diligence does not extend to reviewing every

25   single line of source code for the entire Messenger app.

26        A separate issue is that Plaintiffs say they cannot find the callers in the source code that

27   was made available.  That seems like a problem Facebook can solve simply by identifying the

28   callers to Plaintiffs.

United States District Court
Northern District of California

2

Accordingly, the Court orders Facebook to make available for inspection, to the extent it has not done so already, all of the callers for these methods. The Court also orders Facebook to identify these callers to Plaintiffs within 60 days.[2]

### 2. Implementations and Callers for *[redacted]*

There seem to be two factual disputes for this method. Plaintiffs say their expert has confirmed that this [redacted]. That sure makes it sound relevant, but Plaintiffs have not submitted a declaration from their expert, so the Court has nothing beyond an assertion in a letter brief with which to evaluate this argument. By contrast, Facebook says that this [redacted]. That makes it sound irrelevant (but see the discussion below about contacts), but also suggests Facebook is less than certain about that. The Court understands that investigation can be time-consuming, but it's not reassuring for Facebook to say it's not quite sure what its own code does.

The second dispute is whether, assuming Facebook is right, the uploading of contact information would nonetheless be relevant. We'll discuss that in more detail below.

The Court needs additional facts to determine if this method is relevant. Accordingly, the Court orders Plaintiffs to file an expert declaration by January 14, 2021 explaining what this method does, how he or she knows that, and why it is relevant. Facebook shall file a declaration in response within 30 days after Plaintiffs file their expert declaration.

### B. Packages Related to Contacts

Plaintiffs would like to inspect [redacted] They say that [redacted] indicates that it [redacted]. In response to Facebook's assertion that this package includes unrelated projects, Plaintiffs request that they should at least be given the names of the sub-packages so they can identify any items that appear by name to be particularly relevant.

Plaintiffs have also identified [redacted] (because they are referenced in other parts of the source code) that they think are relevant. For [redacted], Facebook states that [redacted]. Plaintiffs do not disagree that is what this code does, but contend that it is relevant. For [redacted], Plaintiffs state that the available source code shows that [redacted]. More specifically,

---

[2] For all of the deadlines in this order, a party may seek an extension in advance of the deadline if it can show good cause to extend the deadline.

United States District Court
Northern District of California

Plaintiffs state that [redacted]  Plaintiffs argue that because this item references [redacted], it bears directly on their claims.

The major issue in dispute is whether accessing, using and uploading users' contacts information is relevant discovery.  From reading the operative complaint, the Court would tend to think the answer is no.  This case is not about the Messenger app's access to and use of users' contacts information.  It is about Facebook allegedly scraping call and text logs for users who thought they were merely allowing Facebook to access their contacts.  In other words, under Plaintiffs' theory of the case, the app's accessing and using users' contacts information is the *legitimate* conduct, and this lawsuit is about the surreptitious scraping of the call and text logs.

At the hearing, Plaintiffs seemed to be making a factual argument that accessing contacts information is somehow inseparable from scraping the call and text logs.  This is different from their letter brief, which just asserted that the two were related.  Accordingly, the Court will give Plaintiffs the opportunity to demonstrate, if they can, that there is some kind of factual basis to think that discovery into Facebook's access to and use of users' contacts information is relevant to this case.  Plaintiffs shall make this demonstration in their January expert declaration, and Facebook may respond in its expert declaration.

## C.     Pre-2014 Code

Plaintiffs initially limited their request for inspection to code used from 2014 onwards. However, they now say that available records demonstrate that Facebook was scraping call and text logs as early as 2013.  So, Plaintiffs request access to code from before 2014.

In the letter brief, Plaintiffs cited paragraph 33 of the June 11, 2019 Frankovitz Declaration at ECF No. 119-1 as the sole factual basis for their assertion that Messenger was scraping as early as 2013.  In that declaration, Frankovitz responded to a declaration provided by Louis Boval.  In paragraph 33, Frankovitz stated:  "Mr. Boval states that [] Plaintiff Smith-Jackson agreed to the Facebook prompt on June 19, 2016, but he does not say whether Facebook scraped her Call and Text logs prior to that date.  Notably, the Call and Text logs that Facebook collected for Ms. Smith-Jackson contain entries dating back to at least December 20, 2013."

As the Court explained at the hearing, this does not constitute evidence that Messenger was

United States District Court
Northern District of California

United States District Court
Northern District of California

1    scraping call and text logs as early as 2013.  Plaintiffs' own theory of the case is that "Facebook

2    scrapes *years'* worth of call and text data," ECF No. 88 ¶ 1 (emphasis original).  The whole idea is

3    that Facebook was grabbing the users' call and text *history*.  The fact that entries from 2013 were

4    in the scraped data is not competent evidence that the scraping occurred in 2013.

5         At the hearing, Plaintiffs shifted ground.  They now say that their expert has seen things in

6    the 2014 source code that give him reason to believe Facebook was scraping back in 2013.

7    Facebook denies this and says there is no evidence that it did any scraping before 2014 (or even in

8    2014).

9         This argument has a chicken-and-egg quality to it.  Of course there is no evidence that

10   Facebook did scraping before 2014 because Facebook has not produced source code from before

11   then, and that would be the evidence.  Facebook argues that the data concerning the named

12   Plaintiffs does not show that they were subject to scraping before 2014.  However, there are just a

13   handful of named Plaintiffs, so that doesn't prove anything.  It might seem tempting simply to

14   order Facebook to produce all source code relating to the uploading of call and text logs regardless

15   of time frame, and then if Facebook is right that this didn't happen before 2014, there will be

16   nothing to produce.  But that approach is only superficially appealing.  If the Court issued such an

17   order, Facebook would have to conduct a reasonably diligent effort to find any source code for the

18   Messenger app from before 2014 that performed such a function.  While that would not extend to

19   reviewing every line of code related to the Messenger app, neither would that obligation be

20   satisfied by just asking knowledgeable employees if they recalled Facebook doing any scraping

21   before 2014.  Facebook would have to perform a review of the code for those years that

22   represented a reasonable and diligent effort to find such a function.  This would undoubtedly be

23   burdensome, in particular because of how old that code is, so we need a good reason to think that

24   such a task is proportional to the needs of this case.

25        Accordingly, Plaintiffs' January expert declaration shall explain why there is reason to

26   think Facebook did scraping of call and text logs before 2014, and Facebook's declaration may

27   respond.

28        **IT IS SO ORDERED.**

5

Dated: December 10, 2020

_____
THOMAS S. HIXSON
United States Magistrate Judge