**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
       ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: 646-837-7150
Facsimile:  (212) 989-9163
E-Mail: jarisohn@bursor.com
      aleslie@bursor.com

*Interim Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE OLIN, HAROLD NYANJOM, SHERON SMITH-JACKSON, JANICE VEGA-LATKER, MARC BOEHM, and RAVEN WINHAM, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>FACEBOOK, INC.,<br><br>               Defendant. | Case No.  3:18-cv-01881-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      July 14, 2022<br>Time:     1:30 p.m.<br>Court:    Courtroom 3, 17th Floor<br><br>Hon. Richard Seeborg |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 14, 2022, at 1:30 p.m., or as soon thereafter as the parties may be heard, Plaintiffs Lawrence Olin, Harold Nyanjom, Sheron Smith-Jackson, Janice Vega-Latker, Marc Boehm, and Raven Winham ( "Plaintiffs") will move this Court at the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 3 – 17th Floor, before the Honorable Richard Seeborg, pursuant to Fed. R. Civ. P. 23, for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement Agreement ("Settlement"), (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Interim Class Counsel Bursor & Fisher, P.A. as Class Counsel, (iii) mandate procedures and deadlines for exclusion requests and objections, and (iv) set a date, time and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, and that the applicable requirements of Rule 23 have been met.  This motion is based on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the accompanying Declaration of Neal J. Deckant and exhibits thereto, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated: May 18, 2022

**BURSOR & FISHER, P.A.**

By:    _/s/ Neal J. Deckant_
Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

New York, NY  10019
Telephone: 646-837-7150
Facsimile:  (212) 989-9163
E-Mail: jarisohn@bursor.com
        aleslie@bursor.com

*Interim Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ........................................................................................................ 1

II.  OVERVIEW OF THE LITIGATION ...................................................................... 2

III.  THE PROPOSED SETTLEMENT TERMS ............................................................ 5

    1.  Class Definition ................................................................................... 5

    2.  Consideration and Injunctive Relief .................................................... 5

    3.  Release .................................................................................................. 6

    4.  Service Awards to Named Plaintiffs .................................................... 7

    5.  Attorneys' Fees and Expenses ............................................................. 7

IV.  CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE ....................................................................................................... 8

  A.  Rule 23(a) is Satisfied ................................................................................. 8

    1.  Numerosity ........................................................................................... 8

    2.  Commonality ........................................................................................ 8

    3.  Typicality ............................................................................................. 9

    4.  Adequacy .............................................................................................. 9

  B.  Rule 23(b)(2) is Satisfied .......................................................................... 11

  C.  Preliminary Approval of the Settlement is Appropriate .......................... 11

    1.  The Settlement Falls Within the Range of Reasonableness ........................ 12

    2.  The Settlement is the Product of Arm's-Length Negotiations After a Thorough Investigation, Without Any Indicia of Collusion ............................................................................................. 14

    3.  The Recommendation of Experienced Counsel Favors Approval ............................................................................................... 15

    4.  The Settlement Class Meets All Of The New Rule 23(e)(2) Factors .............................................................................................. 16

      a.  Rule 23(e)(2)(A) – The Class Representatives And Class Counsel Have Adequately Represented The Class ............................................................................................ 16

      b.  Rule 23(e)(2)(B) – The Proposal Was Negotiated At Arm's Length ................................................................... 16

c.    Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate.................................................................. 17

d.    Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other ................................... 18

V.    CONCLUSION ............................................................................................. 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001).........................................................................................9

*Arnott v. U.S. Citizenship & Immigration Servs.,*
   290 F.R.D. 579 (C.D. Cal. Oct. 22, 2012) ..................................................................8

*Churchill Village, L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004).......................................................................................11

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992).................................................................................11, 14

*G. F. v. Contra Costa County,*
   2015 WL 4606078 (N.D. Cal. July 30, 2015) .........................................................14, 17

*Garner v. State Farm Mut. Auto. Ins. Co.,*
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................17

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998).......................................................................10, 11, 12, 18

*Hefler v. Wells Fargo & Co.,*
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .........................................................16, 19

*Hendricks v. Starkist Co.,*
   2015 WL 4498083 (N.D. Cal. July 23, 2015) ............................................................12

*Hilsley v. Ocean Spray Cranberries, Inc.,*
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020).........................................................16, 17, 18

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011).......................................................................................18

*In re GSE Bonds Antitrust Litig.,*
   414 F. Supp. 3d 696 (S.D.N.Y. 2019)........................................................................18

*In re Heritage Bond Litig.,*
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ...........................................................14

*In re Juniper Networks Sec. Litig.,*
   264 F.R.D. 584 (N.D. Cal. 2009).................................................................................9

*In re Mego Financial Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000).......................................................................................16

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015)................................................................9

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. May 26, 2015)...........................................................11

*In re Yahoo Mail Litig.*,
   2016 WL 8114216 (N.D. Cal. Mar. 15, 2016)......................................................14

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
   2020 WL 4212811 (N.D. Cal. July 22, 2020)....................................................8, 9

*Jordan v. Cnty. of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982)..........................................................................8, 9

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975)................................................................................18

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009)..........................................................16

*Kramer v. XPO Logistics, Inc.*,
   2020 WL 1643712 (N.D. Cal. Apr. 2, 2020) ..................................................14, 17

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997)........................................................16

*Martinelli v. Johnson & Johnson*,
   2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ......................................................9

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..............................................................................13

*Pederson v. Airport Terminal Servs.*,
   No. 15-cv-02400, 2018 WL 2138457 (C.D. Cal. April 5, 2018) ..............................12

*Pilkington v. Cardinal Health, Inc.*,
   516 F.3d 1095 (9th Cir. 2008)............................................................................11

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 963 (9th Cir. 2009)........................................................................13, 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)..............................................................................10

*Sueoka v. U.S.*,
   101 F. App'x 649 (9th Cir. 2004) ........................................................................8

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)......................................................10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)................................................................................18

*Wal–Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...........................................................................................8

**STATUTES**

Cal. Bus. and Prof. Code § 17200 ...........................................................................2

Cal. Civ. Code § 1750 ............................................................................................2

Cal. Pen. Code § 502 .............................................................................................3

Cal. Pen. Code § 631 .............................................................................................4

Cal. Pen. Code § 632 .............................................................................................4

Cal. Pen. Code § 635 .............................................................................................4

N.Y. Gen. Bus. Law § 349 ....................................................................................3, 4

**RULES**

Fed. R. Civ. P. 23 .................................................................................................1

Fed. R. Civ. P. 23(a)........................................................................................passim

Fed. R. Civ. P. 23(b) ........................................................................................11, 14

Fed. R. Civ. P. 23(e)........................................................................................passim

Fed. R. Civ. P. 41(a).............................................................................................4

**OTHER AUTHORITIES**

Newberg on Class Actions § 11.25 (4th ed. 2002) ...................................................12

Newberg on Class Actions § 11.41 (4th ed. 2002) ...................................................14

1

## I.     INTRODUCTION

Plaintiffs Lawrence Olin, Harold Nyanjom, Sheron Smith-Jackson, Janice Vega-Latker, Marc Boehm, and Raven Winham (collectively, "Plaintiffs") respectfully submit this Motion for the Court's preliminary approval of a proposed Class Action Settlement Agreement (hereinafter, the "Settlement") resolving the above-captioned action (the "Action"), which alleges that Defendant Facebook, Inc., now Meta Platforms, Inc., ("Defendant," "Facebook," or "Meta") scraped Android users' call and text logs without consent by exploiting a vulnerability in the permission settings for the Facebook Messenger application.  Third Amended Class Action Complaint ("TACC"), ¶ 1 (ECF No. 184).

Pursuant to the terms of the Settlement, Meta has agreed to substantial changes that achieve the precise relief Plaintiffs sought to accomplish with this litigation.  Specifically, pursuant to the terms of the Settlement, Meta had confirmed that the allegedly unlawful conduct challenged in the operative TACC has ceased—namely, Meta confirms that, after the filing of this lawsuit, it ceased uploading call and text log data through the Facebook Messenger application (or the Facebook Lite application).  In addition, Meta has agreed to the deletion of all call and text log data uploaded from persons in the United States using Android devices.  Pursuant to the Settlement, absent Settlement Class Members would release claims for declaratory, injunctive, and non-monetary equitable relief only—claims for monetary damages are specifically excluded from the proposed Settlement Class Members' Released Claims.  Service awards and attorneys' fees and costs that may be awarded will be paid by Meta.  As detailed herein, this Settlement remediates the challenged practices that are the subject of this litigation, achieves the goals of the litigation as set forth in the operative TACC, protects the interests of any Settlement Class Members that may not be remedied through injunctive relief, and falls well within the "range of reasonableness" applicable at the preliminary approval stage.

The Settlement is the product of extensive arm's-length negotiations between the parties and their experienced and informed counsel.  Settlement negotiations spanned over eight months

and included a mediation session before the highly respected and skilled mediator, Hon. Wayne Andersen (Ret.) of JAMS, who ultimately made a mediator's proposal in February 2022 that both sides accepted.  Prior to reaching a resolution, and through four years of hard-fought litigation, Class Counsel thoroughly examined both the facts and law involved in this case, reviewed and analyzed several rounds of documents produced by Meta, and spent significant time and efforts on expert discovery whereby Plaintiffs' experts reviewed the source code for the Facebook Messenger application at the heart of this dispute.  Class Counsel possess a firm understanding of both the strengths and weaknesses of Plaintiffs' allegations and Meta's potential defenses.  Both prior to and during the negotiations, Class Counsel faced formidable opposition from Meta's counsel who zealously defended their client's position.  Both sides were well-represented by seasoned and informed counsel who vigorously pursued their respective clients' interests.

In sum, the Settlement achieves significant business practice changes, and benefits the Settlement Class now, without the inherent risks of continued litigation and without requiring Settlement Class Members to release any claims they may have for monetary relief.  The Settlement was only reached after years of discovery and months of arm's-length negotiations and enjoys the support of a neutral mediator who had an integral part in the settlement negotiations. Consequently, the Settlement satisfies the criteria for preliminary approval.

## II.       OVERVIEW OF THE LITIGATION

On March 27, 2017, Plaintiffs Anthony Williams, Tyoka Brumfield, and Wendy Burnett filed a class action complaint in the United States District Court for the Northern District of California asserting claims against Meta on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger and Facebook Lite apps for Android, and granted Facebook permission to access their 'Contact List'" under the California Consumers Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750, *et seq.*), California Unfair Competition Law ("UCL," Cal. Bus. and Prof. Code § 17200, *et seq.*), California Computer Data Access and Fraud Act ("CDAFA," Cal. Pen. Code § 502), California Constitutional Right to

Privacy, Intrusion Upon Seclusion, Trespass to Personal Property, New York's Deceptive Acts or Practices Law (N.Y. Gen. Bus. Law § 349), and unjust enrichment.  The complaint alleged that, *inter alia*, when users installed the Facebook Messenger and Facebook Lite applications on their Android devices, they were prompted to grant Facebook access to the their "Contact Lists," and that upon doing so, these apps uploaded users' call and text logs.  *See*, *e.g.*, ECF No. 1.

Shortly thereafter, four other complaints were filed in the United States District Court for the Northern District of California alleging similar facts and asserting similar classwide claims against Meta, including *Renken, et al. v. Facebook, Inc.*, Case No. 5:18-cv-01896 (filed Mar. 27, 2018), *Tracy v. Facebook, Inc.*, Case No. 3:18-cv-02128 (filed Apr. 9, 2018), *Sternemann, et al. v. Facebook, Inc.*, Case No. 3:18-cv-02677 (filed May 7, 2018), and *Condelles v. Facebook, Inc.*, Case No. 3:18-cv-02727 (filed May 9, 2018).  The Court then related the *Renken*, *Tracy*, *Sternemann*, and *Condelles* complaints to the instant case.  *See* ECF Nos. 18, 27, 42, and 44.  On June 26, 2018, the Court consolidated all of the aforementioned actions and appointed Bursor & Fisher, P.A. as interim lead counsel.  *See* ECF No. 51.

On July 13, 2018, Plaintiffs filed a First Amended Consolidated Class Action Complaint asserting CLRA, UCL, CDAFA, California Constitutional Right to Privacy, Intrusion Upon Seclusion, Trespass to Personal Property, GBL § 349, and unjust enrichment claims on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger and Facebook Lite apps for Android, and granted Facebook permission to access their 'Contact List.'"  *See* ECF No. 52.

On September 25, 2018, Meta moved to dismiss the First Amended Consolidated Class Action Complaint, and Plaintiffs opposed Meta's motion on October 30, 2018.  On December 6, 2018, the Court held oral argument on Meta's motion, and on December 18, 2018 (*see* ECF No. 79), the Court issued an order granting Meta's motion to dismiss the First Amended Consolidated Class Action Complaint, dismissing the claims under Trespass to Personal Property, UCL, CLRA, and GBL § 349 without leave to amend, and dismissing all other claims with leave to amend.  *See* ECF No. 85.

On January 22, 2019, Settlement Class Representatives Lawrence Olin, Harold Nyanjom, Sheron Smith-Jackson, and Janice Vega-Latker filed a Second Amended Consolidated Class Action Complaint asserting claims under the CDAFA, California Constitutional Right to Privacy, Intrusion Upon Seclusion, unjust enrichment, and fraud on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger and Facebook Lite apps for Android, and granted Facebook permission to access their 'Contacts.'"  *See* ECF No. 88.

On February 26, 2019, Meta moved to dismiss the Second Amended Consolidated Class Action Complaint, and Plaintiffs filed their opposition on March 19, 2019.  On May 23, 2019, the Court held oral argument on Meta's motion (*see* ECF No. 113).  On August 29, 2019, the Court issued an order granting in part and denying in part Meta's motion to dismiss the Second Amended Consolidated Class Action Complaint, dismissing the allegations relating to the Facebook Lite application without prejudice and otherwise denying the motion.  *See* ECF No. 128.  On September 13, 2019, Plaintiffs Williams, Brumfield, and Burnett voluntarily dismissed their claims pursuant to Federal Rule of Civil Procedure 41(a), which action was unopposed by Meta.  *See* ECF No. 137.

On December 18, 2020, Settlement Class Representatives Lawrence Olin, Harold Nyanjom, Sheron Smith-Jackson, Janice Vega-Latker, Blake Carlyle, Marc Boehm, and Raven Winham filed a Third Amended Consolidated Class Action Complaint ("TACC") asserting claims under the CDAFA, California Constitutional Right to Privacy, Intrusion Upon Seclusion, unjust enrichment, fraud, and the California Invasion of Privacy Act ("CIPA") (Cal. Pen. Code §§ 631, 632, 635) on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger app for Android, and granted Facebook permission to access their 'Contacts.'"  *See* ECF No. 184.  Meta moved to dismiss the TACC on January 28, 2021, and Plaintiffs filed their opposition on February 18, 2021.  On May 14, 2021, the Court issued an order granting Meta's motion to dismiss the TACC, dismissing the newly-added CIPA claims.

Throughout this litigation, the Parties engaged in extensive written and ESI discovery, including inspection by Settlement Class Representatives' software expert of the source code relating to uploading of call and text logs through the Facebook Messenger for Android

application, including full revision history of the code; the production of documents reflecting Settlement Class Representatives' call and text history uploading and settings; and other internal documents regarding the in-app consent screen and functionality of the feature at issue.  The parties also engaged in extensive discovery motion practice and exchanged voluminous written discovery requests and responses.  The Parties agreed to mediate the case on June 15, 2021, with the Honorable Wayne Andersen (Ret.) of JAMS, who served for nearly 20 years on the U.S. District Court for the Northern District of Illinois.  The mediation lasted a full day but was unsuccessful. Thereafter, however, the parties continued to engage in arm's length negotiations facilitated by Judge Andersen over the next eight months, which culminated in a mediator's proposal in February 2022 that both sides accepted.  The Parties have since negotiated, finalized, and executed the Class Action Settlement Agreement, submitted herewith.

## III.   THE PROPOSED SETTLEMENT TERMS

The Settlement achieves and memorializes significant changes to Meta's practices related to uploading call and text history data from users of Facebook Messenger and Facebook Lite mobile applications for Android.  Key aspects of the proposed Settlement are outlined below:

### 1.   Class Definition

For the purposes of the provisional certification, the parties propose that the Settlement Class be defined as follows: "All persons in the United States who installed the Facebook Messenger and Facebook Lite apps for Android, and granted Meta permission to access their contacts."  Settlement ¶ 45.

### 2.   Consideration and Injunctive Relief

"After the filing of this lawsuit, Meta ceased uploading Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android. Meta confirms that it has not uploaded Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android since March 2019." Settlement ¶ 49.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In addition, "Meta shall delete all Call and Text History Data uploaded from persons in the United States though the Facebook Messenger or Facebook Lite apps for Android devices that Meta is not otherwise legally obligated to preserve by jurisdictions outside of the United States within 45 days of the effective date (which shall be seven (7) days after the final settlement approval order and final judgment have been entered and become Final).  Any data retained because of continuing legal obligations will be quarantined in access-controlled data warehouse tables that are segregated from any systems used or accessed in the ordinary course of Meta's business, and access to this data is limited to Meta's Legal team.  Any such data will be preserved and used solely in connection with any legal obligations and not for any business use, and Meta will delete all such data within 45 days of the expiration of any legal obligation to preserve it."  *Id.*

### 3.    <u>Release</u>

"Upon the Effective Date, Settlement Class Representatives' Releasing Parties will be deemed to have, and by operation of the Final Approval Order and Final Judgment will have fully, finally, and forever released, relinquished, and discharged any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, recognized now or hereafter, existing or preexisting, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation), against the Released Parties, from the Settlement Class Representatives' first interaction with Meta up until and including the Effective Date, that result from, arise out of, are based on, or relate in any way to the practices and claims that were alleged in the Action, for any type of relief that can be released as a matter of law, including, without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief ("Settlement Class Representatives' Released Claims").  Settlement Class Representatives' Releasing Parties are forever enjoined from taking any action seeking any relief against the Released Parties based on any of Settlement Class Representatives' Released

Claims."  Settlement ¶ 53.  " Upon the Effective Date, the Releasing Parties will be deemed to have, and by operation of the Final Approval Order and Final Judgment will have fully, finally, and forever released, relinquished, and discharged any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, and rights or liabilities for injunctive and/or declaratory relief, of any nature and description whatsoever, known or unknown, existing or preexisting, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation) against the Released Parties, from the Releasing Parties' first interaction with Meta up until and including the Effective Date, that result from, arise out of, are based on, or relate in any way to the practices and claims that were alleged in the Action ("Settlement Class Members' Released Claims"), except that, notwithstanding the foregoing, the Releasing Parties do not release claims for monetary relief or damages.  The Releasing Parties are forever enjoined from taking any action seeking injunctive and/or declaratory relief against the Released Parties based on any Settlement Class Members' Released Claims."  *Id.* ¶ 54.

### 4.      Service Awards to Named Plaintiffs

Subject to the Court's approval, Meta has agreed to pay incentive awards to each Plaintiff in an amount not to exceed $1,500.  Settlement ¶ 64.  The named Plaintiffs have spent substantial time on this action, have assisted with the investigation of this action and the drafting of the multiple Complaints, have participated in significant written and ESI discovery, have been in frequent contact with counsel, and have stayed informed of the status of the action, through settlement.

### 5.      Attorneys' Fees and Expenses

Interim Class Counsel will make an application to the Court for an award of attorneys' fees, costs, and expenses not to exceed $1,080,000.  Interim Class Counsel provided Meta a copy of summaries of Class Counsel's time records while the parties were negotiating a potential settlement, and as a result of that review, Meta will take no position on Class Counsel's

application and agrees to pay the amount of fees and costs determined by the Court.  Notably, all terms regarding fees and costs were negotiated and agreed to by the parties only after full agreement was reached as to all other material terms.  Deckant Decl., ¶ 9; Settlement ¶ 61.

## IV.   CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE

### A.   Rule 23(a) is Satisfied

#### 1.   <u>Numerosity</u>

A case may be certified as a class action only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  While there is no fixed rule, numerosity is generally presumed when the potential number of class members reaches forty (40).  *See Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).  In addition, "[b]ecause plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed []class ... is sufficient to make joinder impracticable." *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 586 (C.D. Cal. Oct. 22, 2012) (quoting *Sueoka v. U.S.*, 101 F. App'x 649, 653 (9th Cir. 2004)).

Here, numerosity is readily satisfied.  The total number of Settlement Class Members is estimated to be in the millions.  Accordingly, the numerosity requirement is easily met for the purposes of preliminary approval.

#### 2.   <u>Commonality</u>

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).  "This requirement has been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (internal quotations omitted).  "Indeed, "for purposes of Rule 23(a)(2), even a single common question will do." *Id.*

Here, Plaintiffs allege that Defendant scraped call and text metadata from Android users of Facebook Messenger and Facebook Lite mobile applications.  Resolution of this common claim depends on a critical, common question of fact:  whether Defendant's collection of this data is violative of California's constitutional right to privacy, intrusion upon seclusion, unjust enrichment, and common law fraud.  Thus, commonality is satisfied.  *See*, *e.g.*, *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *6 (E.D. Cal. Mar. 29, 2019); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1096-97 (C.D. Cal. 2015).

### 3.    Typicality

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality does not require total identity between representative plaintiffs and class members.  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  Rather, typicality is satisfied so long as the plaintiffs' claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory." *Jordan*, 669 F.2d at 1322; *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

Here, Settlement Class Representatives' claims stem from the same common course of conduct as the claims of the Settlement Class Members.  Namely, Settlement Class Representatives contend that they did not consent to Meta's collection of their call and text metadata—the conduct that forms the basis of this lawsuit.  Just as with Settlement Class Representatives themselves, Meta's conduct is common to all Settlement Class Members and represents a common thread of conduct resulting in injury to all Settlement Class Members.  The injunctive and declaratory relief achieved by the Settlement would apply to Settlement Class Representatives and Settlement Class Members equally.  Accordingly, the typicality requirement is met.

### 4.    Adequacy

Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect the interests of the class. The two-prong test for determining adequacy is: "(1) Do the

representative plaintiffs and their counsel have any conflicts of interest with other class members?; and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020. Both prongs are satisfied here.

First, the Settlement Class Representatives' interests are aligned with, and not antagonistic to, the interests of the Settlement Class Members.  Indeed, the Settlement Class Representatives and the Settlement Class Members are equally interested in ensuring that Meta's practices regarding the upload of call and text history data were conducted with consent.  *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each…plaintiff has the same problem").  Accordingly, the Settlement Class Representatives will fairly and adequately protect the interests of all Settlement Class Members.

Second, Settlement Class Representatives and Interim Class Counsel have vigorously and competently pursued the Settlement Class Members' claims.  Interim Class Counsel has engaged in significant, arm's-length negotiations over the course of many months, including with the assistance of a certified mediator.  Deckant Decl., ¶¶ 3-4; *see also Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (use of mediator "tends to support the conclusion that the settlement process was not collusive").  The Settlement acknowledges the cessation of Meta's uploading of call and text log data through the Facebook Messenger or Facebook Lite apps for Android, and requires the deletion of said metadata – the exact relief that Settlement Class Representatives sought on behalf of themselves and the Settlement Class Members.  Further, Interim Class Counsel have extensive experience and expertise in prosecuting complex class actions.  Class Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation.  *See* Deckant Decl., Ex. 2 (firm resume of Bursor & Fisher, P.A.).

Thus, in pursing this litigation, Interim Class Counsel, as well as Settlement Class Representatives, have advanced and will continue to advance and fully protect the common interests of all members of the Settlement Class.  Accordingly, Rule 23(a)(4) is satisfied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.      Rule 23(b)(2) is Satisfied

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied.  Here, the proposed Settlement Class satisfies Rule 23(b)(2), which permits a class action if the Court finds that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Where, as here, a plaintiff seeks "uniform relief" addressing commonly and consistently-applied data collection practices, the requirements of Rule 23(b)(2) are satisfied.  *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 600 (N.D. Cal. May 26, 2015) (holding that the requirements of Rule 23(b)(2) were satisfied where "all emails sent from and to [an electronic communication service provider's] subscribers are subject to the same interception and scanning processes"); *see also Campbell v. Facebook, Inc.*, Case No. 4:13-cv-05996-PJH, ECF No. 235 (N.D. Cal. Apr. 26, 2017) (granting preliminary approval of settlement based on alleged conduct of uniformly intercepting content of private Facebook messages without user consent).

### C.      Preliminary Approval of the Settlement is Appropriate

Public policy "strong[ly] … favors settlements, particularly where complex class action litigation is concerned."  *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof."  *Hanlon*, 150 F.3d at 1026.  In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties … [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027; *see also* Fed. R. Civ. P. 23(e)(2).  "The involvement of a neutral or court-affiliated mediator or facilitator in [the

parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."  Rule 23(e)(2)(B) Advisory Committee's Note; *accord Pederson v. Airport Terminal Servs.*, No. 15-cv-02400, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (the oversight "of an experienced mediator" reflected non-collusive negotiations).

The proposed Settlement here satisfies the standard for preliminary approval because: **(a)** it is within the range of reasonableness; **(b)** there is no reason to doubt its fairness because it is the product of hard-fought, arm's-length negotiations between the parties and was only reached after a thorough investigation by Interim Class Counsel of the facts and the law; and **(c)** Plaintiffs and Interim Class Counsel believe it is in the best interest of the Settlement Class.

### 1.     The Settlement Falls Within the Range of Reasonableness

To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness."  Alba Conte et al., *Newberg on Class Actions* § 11.25, at 11-91 (4th ed. 2002).  The *Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties.  *Manual* § 21.632.  Evaluating where a proposed settlement falls within this spectrum entails focus "on substantive fairness and adequacy," and weighing "Plaintiffs' expected recovery … against the value of the settlement offer."  *Hendricks v. Starkist Co.*, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015) (quotation omitted).

Here, Plaintiffs sought classwide declaratory and injunctive relief related to Meta's practices of uploading call and text history data from Facebook Messenger and Facebook Lite users' Android phones without consent.  While Meta has vigorously contested its liability, the terms of the Settlement provide meaningful, targeted relief that addresses the exact conduct that forms the basis for this lawsuit.

In contrast to the tangible, immediate benefits of the Settlement, the outcome of continued litigation, class certification, summary judgment, trial, and potential appeals is uncertain and could add years to this litigation.  Meta has vigorously denied any wrongdoing and has asserted that it

obtained all required consents from Settlement Class Representatives and the Settlement Class, and, absent settlement, Plaintiffs anticipate Meta would continue to defend this action aggressively up to and through trial, including a motion for summary judgment and exhausting all possible avenues for appeals.  While Plaintiffs strongly believe in the merits of their case, they recognize the uncertainty that continued litigation brings, and the hurdles they would have to overcome at many, critical junctures throughout the case.  And even with victory for Plaintiffs at class certification, summary judgment, or trial brings the possibility of Ninth Circuit reversal on appeal.

Thus, despite Plaintiffs' firm belief in the strength of their claims, there is at least some risk that, absent a settlement, Meta might prevail in motion practice, at trial, or on appeal, resulting in no relief at all to the Class.  This weighs in favor of preliminary approval.  *See, e.g.*, *Rodriguez v. West Publishing Corp.*, 563 F.3d 963, 966 (9th Cir. 2009) (noting that the elimination of "[r]isk, expense, complexity, and likely duration of further litigation," including, *inter alia*, an "anticipated motion for summary judgment, and … [i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years," which facts militated in favor of approval of settlement); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.").

Ultimately, Meta has agreed to provide the relief sought on behalf of the Settlement Class—namely, it has implemented and confirmed substantial changes to its business practices resulting in the cessation of call and text log data uploading from users of Facebook Messenger and Facebook Lite applications for Android, and the deletion of any uploaded data collected as a result of these practices.  Similarly, the release obtained by Meta only extends to Settlement Class Members' claims for injunctive and declaratory relief.  Importantly, no Settlement Class Member, with the exception of Plaintiffs, will release any claim for damages.  *See, e.g.*, *In re Yahoo Mail Litig.*, 2016 WL 8114216 (N.D. Cal. Mar. 15, 2016) (N.D. Cal. Mar. 15, 2016) (holding that a similar result obtained on behalf of a class of email users and settled under Rule 23(b)(2) was

within the range of possible approval); *Campbell v. Facebook, Inc.*, Case No. 4:13-cv-05996-PJH, ECF No. 235 (N.D. Cal. Apr. 26, 2017) (same).

In sum, the Settlement provides substantial, meaningful relief to all Settlement Class Members based on the strengths of their claims without delay and is within the range of possible approval, particularly in light of the above risks that Settlement Class Members would face in further litigation.

**2.     The Settlement is the Product of Arm's-Length Negotiations After a Thorough Investigation, Without Any Indicia of Collusion**

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290.  Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.  *See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005); *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted).

Here, the Settlement was reached after informed, extensive arm's-length negotiations.  First, the Settlement was reached after a thorough investigation into and discovery of the legal and factual issues in the Action.  In particular, Interim Class Counsel conducted an extensive pre-suit investigation into the factual underpinnings of the practices challenged in the Action, as well as the applicable law.  In addition to their pre-filing efforts, Interim Class Counsel engaged in extensive motion practice and the exchange of written discovery requests and responses, including discovery motion practice.  Interim Class Counsel also engaged in the review of several rounds of production of electronic documents, as well as expert discovery into Meta's source code regarding the complained-of conduct.  The source code review spanned many months and encompassed highly

technical documentation relevant to the alleged data upload functions and the inner working of Meta's mobile applications.

Second, the Settlement was reached only after the parties participated in a mediation session before Hon. Wayne Andersen (Ret.), an experienced mediator with JAMS and retired district court judge.  Although the initial mediation was not successful, it was held only after the exchange of confidential mediation statements, which discussed the strengths and weaknesses of both Plaintiffs' allegations and Meta's potential defenses and relevant documents related thereto. Throughout the mediation session, counsel vigorously advocated for their respective clients' positions.  Only after more than eight months of subsequent negotiations—with the continued assistance of Judge Andersen—including numerous phone calls and email exchanges, were counsel able to reach an agreement through acceptance of a mediator's proposal.

In sum, the Settlement was reached only after Interim Class Counsel conducted an extensive factual investigation and discovery into the Meta's alleged misconduct and thoroughly researched the law pertinent to Plaintiffs' and Class Members' claims and Meta's defenses thereto. Consequently, Interim Class Counsel had a wealth of information at their disposal before entering into settlement negotiations, which allowed Class Counsel to adequately assess the strengths and weaknesses of the case and to balance the benefits of settlement against the risks of further litigation.  Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt the Settlement's fairness.

### 3.    The Recommendation of Experienced Counsel Favors Approval

In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997).  Here, Interim Class Counsel endorses the Settlement as fair, adequate, and reasonable.  Deckant Decl., ¶¶ 7-8.

As demonstrated herein and in Interim Class Counsel's Firm Resume, Interim Class Counsel have extensive experience litigating and settling consumer class actions and other complex

matters, and have conducted an extensive investigation into the factual and legal issues raised in this lawsuit.  *Id.* ¶¶ 6-7.  Using their experience and knowledge, Interim Class Counsel have weighed the benefits of the Settlement against the inherent risks and expense of continued litigation, and they strongly believe that the proposed Settlement is fair, reasonable, and adequate. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs in favor of preliminarily approving the Settlement.

### 4. The Settlement Class Meets All Of The New Rule 23(e)(2) Factors

#### a. *Rule 23(e)(2)(A) – The Class Representatives And Class Counsel Have Adequately Represented The Class*

"The Ninth Circuit has explained that 'adequacy of representation ... requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d at 462).  Here, this prong is met for the very same reasons that Plaintiffs and Interim Class Counsel have shown in meeting the adequacy prong under Fed. R. Civ. P. 23(a)(4).  *See* Argument § V.A.4, *supra*; *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

#### b. *Rule 23(e)(2)(B) – The Proposal Was Negotiated At Arm's Length*

A court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner*, 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).  Here, both Interim Class Counsel and counsel for Defendant are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides."  *Hilsley*, 2020 WL 520616, at *5.  Further, "the Settlement was reached as a result of informed and non-collusive arms-length

negotiations [over a number of months] facilitated by a neutral mediator." *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted); *see also* Deckant Decl., ¶¶ 3-4.  Thus, this prong is met.

c.   <u>Rule 23(e)(2)(C) – The Relief Provided For<br>The Class Is Adequate</u>

Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6.  Each prong is met.

**"The Costs, Risks, And Delay Of Trial And Appeal":**  Plaintiffs established above that this factor is met. *See* Argument §§ IV.C.1, *supra*.

**"The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class":**  Because the Settlement Agreement provides for automatic injunctive and declaratory relief without the need for a claims process, and because Class Members' claims for monetary damages are not being released by the Settlement Agreement, Plaintiffs respectfully submit this factor is inapplicable to the Court's analysis.

**"The Terms Of Any Proposed Award Of Attorney's Fees":**  Class Counsel will petition this Court for an award of no more than $1,080,000 in attorneys' fees, inclusive of any costs and expenses.  Settlement ¶ 61.[1]  Under Ninth Circuit standards, a District Court may award the requested attorneys' fees under the lodestar method. *Hanlon*, 150 F.3d at 1029.  The lodestar

---

[1] The Court need not "determine attorney's fees at the preliminary approval stage" and Class Counsel will "fully address the reasonableness of their requested fee award in their forthcoming Motion for Attorneys' Fees, Costs, and Incentive Awards." *Hilsley*, 2020 WL 520616, at *7.

figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). As of May 16, 2022, Interim Class Counsel has billed a total of 1712.1 hours at a blended rate of $548 per hour. Deckant Decl., ¶ 11. Accordingly, Interim Class Counsel's lodestar to date is $1,108,875.00. *Id*. Should the Court award the requested attorneys' fees, Interim Class Counsel would receive a negative multiplier based on their current lodestar. *Id*. However, Interim Class Counsel anticipates spending 100 additional hours before final approval, thus lowering the lodestar multiplier even further. *Id*.

**"Any Agreement Required To Be Identified By Rule 23(e)(3)":** This prong asks whether there was "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696. Here, other than the Settlement, no such agreement exists. Deckant Decl., ¶ 10.

In light of the foregoing, the Settlement provides adequate relief to the Settlement Class under Rule 23(e)(2)(C).

> d.     *Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other*

Under this factor, courts consider whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hefler*, 2018 WL 6619983, at *8. Here, each Settlement Class Member enjoys the same injunctive and declaratory relief, without being subject to a claims process of any kind. Thus, this Rule 23(e)(2) factor is also met.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:

a) Grant preliminary approval of the proposed Class Action Settlement Agreement ("Settlement") entered into between the parties;

b) Certify the Settlement Class as defined in the Settlement;

c) Appoint Plaintiffs as Settlement Class Representatives of the proposed Settlement Class;

d) Appoint Bursor & Fisher, P.A. as Class Counsel for the proposed Settlement Class;

e) Stay all non-Settlement related proceedings in this matter pending final approval of the Settlement; and

f) Set a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

Dated: May 18, 2022

**BURSOR & FISHER, P.A.**

By:     */s/ Neal J. Deckant*
                Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: 646-837-7150
Facsimile:  (212) 989-9163
E-Mail: jarisohn@bursor.com
          aleslie@bursor.com

*Interim Class Counsel*