**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
           ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: jarisohn@bursor.com
           aleslie@bursor.com

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE OLIN, HAROLD NYANJOM, SHERON SMITH-JACKSON, JANICE VEGA-LATKER, MARC BOEHM, and RAVEN WINHAM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No.  3:18-cv-01881-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        October 20, 2022<br>Time:       1:30 p.m.<br>Court:      Courtroom 3, 17th Floor<br><br>Hon. Richard Seeborg |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on October 20, 2022, at 1:30 p.m., or as soon thereafter as

3  the parties may be heard, Plaintiffs will move this Court at the United States Courthouse located at

4  450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Richard Seeborg,

5  for an Order granting final approval of the Class Action Settlement Agreement ("Settlement")

6  entered into in this action.  This Motion is based on this Notice of Motion and Motion, the

7  supporting memorandum of law, the Declaration of Neal J. Deckant and exhibits thereto, the

8  pleadings and papers on file herein, and upon such matters as may be presented to the Court at the

9  time of the hearing.

10

11  Dated: September 2, 2022           **BURSOR & FISHER, P.A.**

12                           By: ___*/s/ Neal J. Deckant*___

13                              Neal J. Deckant

14                 L. Timothy Fisher (State Bar No. 191626)

15                 Neal J. Deckant (State Bar No. 322946)
               1990 North California Blvd., Suite 940

16                 Walnut Creek, CA  94596

17                 Telephone: (925) 300-4455
               Facsimile: (925) 407-2700

18                 Email: ltfisher@bursor.com
                    ndeckant@bursor.com

19                 **BURSOR & FISHER, P.A.**

20                 Joshua D. Arisohn (*pro hac vice*)
               Alec M. Leslie (*pro hac vice*)

21                 888 Seventh Avenue
               New York, NY  10019

22                 Telephone: 646-837-7150
               Facsimile:  (212) 989-9163

23                 E-Mail: jarisohn@bursor.com

24                      aleslie@bursor.com

25                 *Class Counsel*

26

27

28

## <u>TABLE OF CONTENTS</u>

PAGE(S)

I. INTRODUCTION ..................................................................................................... 1

II. PROCEDURAL AND FACTUAL BACKGROUND ............................................. 3

III. THE SETTLEMENT................................................................................................. 6

    A. The Settlement Terms.................................................................................... 6

        1. Cessation of the Data Scraping Relevant to this Class Action ...................... 6

        2. Deletion of the Data Scraping Relevant to this Class Action......................... 7

        3. The Release ..................................................................................................... 9

        4. Service Awards to Named Plaintiffs and Attorneys' Fees and Expenses ................................................................................................... 10

IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE .......................................................................................................... 11

    A. Standard for Final Approval of the Settlement........................................... 11

    B. The Settlement Class Meets the *Hanlon* Factors...................................... 12

        1. The Strength of Plaintiffs' Case Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation ............................................................................................ 12

        2. The Risk of Maintaining Class Action Status Throughout Trial................. 14

        3. The Benefits Offered in Settlement ............................................................. 14

        4. Extent of Discovery and Stage of Proceedings ........................................... 16

        5. The Experience and View of Counsel .......................................................... 17

        6. The Reaction of Class Members to the Settlement ...................................... 17

V. THE SETTLEMENT CLASS MEETS ALL OF THE RULE 23(E)(2) FACTORS ............................................................................................................... 17

    A. Rule 23(e)(2)(A) – The Class Representatives and Class Counsel Have Adequately Represented the Class................................................... 17

    B. Rule 23(e)(2)(B) – The Proposal was Negotiated at Arm's Length......................... 18

    C. Rule 23(e)(2)(C) – The Relief Provided for the Class is Adequate ......................... 18

        1. The Costs, Risks, and Delay of Trial and Appeal ....................................... 19

|  |  | 2. | The Effectiveness of any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims ........................................................................... 19 |
|  |  | 3. | The Terms of Any Proposed Award of Attorney's Fees ............................. 19 |
|  |  | 4. | Any Agreement Required to be Identified by Rule 23(e)(3) ....................... 20 |
|  | D. | | Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other ............................................................................ 20 |
| VI. | | | FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ................................................................................................ 20 |
|  | A. | | Fed. R. Civ. P. 23(a)(1) – Numerosity ................................................................. 21 |
|  | B. | | Fed. R. Civ. P. 23(a)(2) – Commonality .............................................................. 21 |
|  | C. | | Fed. R. Civ. P. 23(a)(3) – Typicality ................................................................... 21 |
|  | D. | | Fed. R. Civ. P. 23(a)(4) – Adequacy of Representation ..................................... 22 |
| VII. | | | CONCLUSION ............................................................................................................ 23 |

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................. 12

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ......................................................................... 11, 18

*Cunningham v. County of Los Angeles*,
   879 F.2d 481 (9th Cir. 1988) ................................................................................ 20

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ................................................. 13, 14

*G. F. v. Contra Costa County*,
   2015 WL 4606078 (N.D. Cal. July 30, 2015) ...................................................... 18

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)................................................. 13, 18

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) .............................................................................................. 22

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
   100 F.3d 691 (9th Cir. 1996) ................................................................................ 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................... 12, 22

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) .................................................................................... 20

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................. 18, 20

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .............................................................................................. 20

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ......................................................... 18

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................. 20

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................... 16, 18

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................................... 14

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. 2015) ................................................................... 21

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 17

*In re Syncor ERISA Litigation*,
  516 F.3d 1095 (9th Cir. 2008) ......................................................................... 11, 12

*In re Toys R Us FACTA Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................... 20

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................................................ 21

*Kim v. Space Pencil, Inc.*,
  2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ....................................................... 19

*Kramer v. XPO Logistics, Inc.*,
  2020 WL 1643712 (N.D. Cal. Apr. 2, 2020) ......................................................... 18

*Lee v. Glob. Tel*Link Corp.*,
  2017 WL 1338085 (C.D. Cal. Apr. 7, 2017) .......................................................... 14

*Lilly v. Jamba Juice Co.*,
  2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ....................................................... 19

*Littlejohn v. Copland*,
  819 F. App'x 491 (9th Cir. 2020) ......................................................................... 12

*Martinelli v. Johnson & Johnson*,
  2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ....................................................... 21

*Millan v. Cascade Water Servs., Inc.*,
  310 F.R.D. 593 (E.D. Cal. 2015) ........................................................................... 21

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................ 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ................................................................................ 20

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  402 F. Supp. 3d 615 (N.D. Cal. 2019) ................................................................... 15

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .............................................................. 13, 17, 18, 20

*Satchell v. Fed. Express Corp.*,
   No. C03-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .............................................. 19

*Stathakos v. Columbia Sportswear Co., et al.*,
   2018 WL 582564 (N.D. Cal. Jan. 25, 2018).......................................................................... 19

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................................ 22

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................................................ 11

*Vega v. Weatherford U.S., Limited Partnership*,
   2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ..................................................................... 17

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................................................................... 23

*Wal–Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................................... 21

*Wong v. Arlo Techs., Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)................................................................... 12

**STATUTES**

Cal. Bus. and Prof. Code § 17200 ................................................................................................ 3

Cal. Civ. Code § 1750 ................................................................................................................... 3

Cal. Pen. Code § 502 ..................................................................................................................... 3

Cal. Pen. Code § 631 ..................................................................................................................... 4

Cal. Pen. Code § 632 ..................................................................................................................... 4

Cal. Pen. Code § 635 ..................................................................................................................... 4

N.Y. Gen. Bus. Law § 349 ........................................................................................................ 3, 4

**RULES**

Fed. R. Civ. P. 23(a) ............................................................................................................... 21, 22

Fed. R. Civ. P. 23(a)(1) ............................................................................................................... 21

Fed. R. Civ. P. 23(a)(2) ............................................................................................................... 21

Fed. R. Civ. P. 23(a)(3) ............................................................................................................... 21

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 22, 23

Fed. R. Civ. P. 23(e)(2) ............................................................................................ passim

Fed. R. Civ. P. 23(e)(3) ...................................................................................... 12, 19 ,20

Fed. R. Civ. P. 23(f) ...................................................................................................... 14

Fed. R. Civ. P. 41(a) ........................................................................................................ 4

**OTHER AUTHORITIES**

NEWBERG ON CLASS ACTIONS §11.28, at 11–59 ............................................................ 22

## I.      INTRODUCTION

After five years of litigation, the parties have finally settled Plaintiffs' claims regarding Facebook's alleged "exploit[ation of] a vulnerability in the permission settings for the Facebook Messenger smartphone application … in prior versions of the Android operating system," which allowed Facebook to "scrape[] years' worth of call and text data" (*i.e.*, whether each call was "Incoming," "Outgoing," or "Missed," the date and time of each call, the number dialed, the individual called, and the duration of each call).  Third Amended Class Action Compl. ("TAC") ¶ 1.  Plaintiffs claim that Facebook then "incorporate[d] these data into its profile on each user, which it monetize[d] for advertising purposes." *Id.*

Through the course of litigation, the parties engaged in extensive written and ESI discovery, including inspection by Settlement Class Representatives' software expert of the source code relating to uploading of call and text logs through the Facebook Messenger for Android application, including full revision history of the code.  The parties also engaged in significant motion practice on the pleadings and during discovery, and have had multiple hearings concerning the inspection of the source code at issue.  As a result of those efforts, Plaintiffs obtained evidence that they believe supports their allegations.  Wong Decl. (ECF No. 192) ¶¶ 12-15; Ma Decl. ¶¶ 26-27.

The present settlement was the result of a full-day mediation on June 15, 2021, with the Honorable Wayne Andersen (Ret.) of JAMS, which was unsuccessful.  The parties then continued negotiations facilitated by Judge Andersen over eight additional months, which culminated in a mediator's proposal in February 2022 that both sides accepted.  These negotiations were challenging.  Class Counsel is confident that they obtained the best terms possible for the Class.

The relief to the Class is twofold.  First, Facebook confirms that "after the filing of this lawsuit, [it] ceased uploading Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android," and that "it has not uploaded Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android since March 2019."  Settlement ¶ 49.  Second, Facebook agreed to "delete all Call and Text History Data uploaded from persons in the United States though the

Facebook Messenger or Facebook Lite apps for Android devices that Meta is not otherwise legally obligated to preserve by jurisdictions outside of the United States within 45 days of the effective date." *Id.*

This injunctive relief is exactly what Plaintiffs sought in their operative Complaint – Facebook's counsel agrees as well. *See* Deckant Decl., Ex. 15 at 4:3-7 ("Ms. Valco: I agree with Mr. Deckant that the injunctive relief that has been agreed to is precisely what Plaintiffs have sought in the complaint, which is an agreement to delete the data that had been collected …."). Plaintiffs sued to stop the collection practices and deletion of the data. That is exactly what they achieved, on behalf of themselves and the class. Plaintiffs estimate the value of this data at well over $100 million, though, as noted below, monetary relief was not a realistic possibility in this lawsuit. Deckant Decl. ‖ 20; Exhibit 14 to Deckant Decl.

And the injunctive relief is a direct result of this lawsuit. In the months following the initiation of this lawsuit, and the ensuing spotlight on Defendant's access to the metadata at issue, Google began to restrict app access to call and text logs. Frankovitz Decl. ‖ 19. While Meta could have continued its data scraping thereafter by giving users the option to choose the Messenger app as a replacement for the default Android SMS and/or phone client, it chose not to do so. *Id.* Any contention that Meta would have made a business decision to stop the practice anyway is purely speculative and contrary to what the chronology of this case and common sense dictate: it stopped the scraping as a direct result of this litigation and the resulting press attention. Likewise, there is no reason to believe that Meta would agree to delete the call and text metadata at issue absent this settlement. Keeping the data is inexpensive and could be used to further Meta's key functions of connecting users and targeting advertisements. And its privacy policy section on the deletion of data is so open-ended and vague that the settlement provides finality and certainty that would not otherwise exist. There is also no known history of Meta ever voluntarily deleting user data absent a class action settlement or other similar legal requirement.

In sum, this lawsuit and resulting Settlement ended a hotly-disputed data collection practice. As part of the Settlement relief, Facebook confirmed that it has stopped the data

collection, and it will delete all extent user data obtained from the disputed scraping practices once final approval is granted.  Though any victory on the merits of the case is highly uncertain, this settlement achieves exactly what Plaintiffs sought when they filed the Complaint.  It is what they have achieved here, for themselves and the Class.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

On March 27, 2017, Plaintiffs Anthony Williams, Tyoka Brumfield, and Wendy Burnett filed a class action complaint in the United States District Court for the Northern District of California asserting claims against Meta on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger and Facebook Lite apps for Android, and granted Facebook permission to access their 'Contact List'" under the California Consumers Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750, *et seq.*), California Unfair Competition Law ("UCL," Cal. Bus. and Prof. Code § 17200, *et seq.*), California Computer Data Access and Fraud Act ("CDAFA," Cal. Pen. Code § 502), California Constitutional Right to Privacy, Intrusion Upon Seclusion, Trespass to Personal Property, New York's Deceptive Acts or Practices Law ("GBL § 349," N.Y. Gen. Bus. Law § 349), and unjust enrichment.  The Complaint alleged that, *inter alia*, when users installed the Facebook Messenger and Facebook Lite applications on their Android devices, they were prompted to grant Facebook access to their "Contact Lists," and that upon doing so, these apps uploaded users' call and text logs.  *See, e.g.*, ECF No. 1.

Shortly thereafter, four other complaints were filed in the United States District Court for the Northern District of California alleging similar facts and asserting similar classwide claims against Meta, including *Renken, et al. v. Facebook, Inc.*, Case No. 5:18-cv-01896 (filed Mar. 27, 2018), *Tracy v. Facebook, Inc.*, Case No. 3:18-cv-02128 (filed Apr. 9, 2018), *Sternemann, et al. v. Facebook, Inc.*, Case No. 3:18-cv-02677 (filed May 7, 2018), and *Condelles v. Facebook, Inc.*, Case No. 3:18-cv-02727 (filed May 9, 2018).  The Court then related the *Renken*, *Tracy*, *Sternemann*, and *Condelles* complaints to the instant case.  *See* ECF Nos. 18, 27, 42, and 44.  On June 26, 2018, the Court consolidated all of the aforementioned actions and appointed Bursor &

Fisher, P.A. as interim lead counsel.  *See* ECF No. 51.

On July 13, 2018, Plaintiffs filed a First Amended Consolidated Class Action Complaint asserting CLRA, UCL, CDAFA, California Constitutional Right to Privacy, Intrusion Upon Seclusion, Trespass to Personal Property, GBL § 349, and unjust enrichment claims on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger and Facebook Lite apps for Android, and granted Facebook permission to access their 'Contact List.'"  *See* ECF No. 52.

On September 25, 2018, Meta moved to dismiss the First Amended Consolidated Class Action Complaint, and Plaintiffs opposed Meta's motion on October 30, 2018.  On December 6, 2018, the Court held oral argument on Meta's motion, and on December 18, 2018 (*see* ECF No. 79), the Court issued an order granting Meta's motion to dismiss the First Amended Consolidated Class Action Complaint, dismissing the claims under Trespass to Personal Property, UCL, CLRA, and GBL § 349 without leave to amend, and dismissing all other claims with leave to amend.  *See* ECF No. 85.

On January 22, 2019, Settlement Class Representatives Lawrence Olin, Harold Nyanjom, Sheron Smith-Jackson, and Janice Vega-Latker filed a Second Amended Consolidated Class Action Complaint asserting claims under the CDAFA, California Constitutional Right to Privacy, Intrusion Upon Seclusion, unjust enrichment, and fraud on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger and Facebook Lite apps for Android, and granted Facebook permission to access their 'Contacts.'"  *See* ECF No. 88.

On February 26, 2019, Meta moved to dismiss the Second Amended Consolidated Class Action Complaint, and Plaintiffs filed their opposition on March 19, 2019.  On May 23, 2019, the Court held oral argument on Meta's motion (*see* ECF No. 113).  On August 29, 2019, the Court issued an order granting in part and denying in part Meta's motion to dismiss the Second Amended Consolidated Class Action Complaint, dismissing the allegations relating to the Facebook Lite application without prejudice and otherwise denying the motion.  *See* ECF No. 128.  On September 13, 2019, Plaintiffs Williams, Brumfield, and Burnett voluntarily dismissed their claims pursuant to

Federal Rule of Civil Procedure 41(a), which action was unopposed by Meta.  *See* ECF No. 137.

On December 18, 2020, Settlement Class Representatives Lawrence Olin, Harold Nyanjom, Sheron Smith-Jackson, Janice Vega-Latker, Blake Carlyle, Marc Boehm, and Raven Winham filed a Third Amended Consolidated Class Action Complaint ("TACC") asserting claims under the CDAFA, California Constitutional Right to Privacy, Intrusion Upon Seclusion, unjust enrichment, fraud, and the California Invasion of Privacy Act ("CIPA") (Cal. Pen. Code §§ 631, 632, 635).  *See* ECF No. 184.  Meta moved to dismiss the TACC on January 28, 2021, and Plaintiffs filed their opposition on February 18, 2021.  On May 14, 2021, the Court issued an order granting Meta's motion to dismiss the TACC, dismissing the newly-added CIPA claims.

Throughout this litigation, the Parties engaged in extensive written and ESI discovery, including inspection by Settlement Class Representatives' software expert of the source code relating to uploading of call and text logs through the Facebook Messenger for Android application, including full revision history of the code; the production of documents reflecting Settlement Class Representatives' call and text history uploading and settings; and other internal documents regarding the in-app consent screen and functionality of the feature at issue.

The parties also engaged in extensive discovery motion practice.  In particular, the production of and inspection of Facebook's source code was a hotly contested issue.  For example, Class Counsel engaged in significant motion to compel briefing, exchanged numerous rounds of discovery dispute statements, and argued multiple discovery dispute hearings before Magistrate Judge Hixon.  Nearly all of the discovery disputes involved highly technical input from both sides' experts.  *See*, *e.g.*, ECF No. 100 (Plaintiffs' Motion to Compel ESI Protocol and Production of Documents); ECF No. 110 (Joint Discovery Letter Brief); ECF No. 139 (Discovery Dispute Hearing); ECF No. 144 (Joint Discovery Dispute Status Report); ECF No. 148 (Discovery Dispute Hearing); ECF No. 153 (Joint Discovery Dispute Statement); ECF No. 155 (Plaintiffs' Expert Declaration in Support of Discovery Letter Brief); ECF No. 156 (Joint Supplemental Statement on Discovery Dispute); ECF No. 157 (Defendant's Expert Declaration in Support of Discovery Dispute); ECF No. 159 (Discovery Dispute Hearing); ECF No. 166 (Plaintiffs' Discovery Letter

Brief); ECF No. 176 (Discovery Dispute Hearing); ECF No. 199 (Status Report Re: Source Code Discovery Dispute).  As a result of this hard-fought discovery, Plaintiffs obtained evidence that they believe supports their allegations.  Wong Decl. (ECF No. 192) ¶¶ 12-15; Ma Decl. ¶¶ 26-27.

Following these revelations, the Parties agreed to mediate the case on June 15, 2021, with the Honorable Wayne Andersen (Ret.) of JAMS, who served for nearly 20 years on the U.S. District Court for the Northern District of Illinois.  The mediation lasted a full day but was unsuccessful.  Thereafter, however, the parties continued to engage in arm's length negotiations facilitated by Judge Andersen over the next eight months, which culminated in a mediator's proposal in February 2022 that both sides accepted.  The Parties have since negotiated, finalized, and executed the Class Action Settlement Agreement, submitted herewith.

Plaintiffs filed their motion for preliminary approval on May 18, 2022, and the Court granted the motion on August 3, 2022.  ECF No. 250.

## III.   THE SETTLEMENT

### A.   The Settlement Terms

The Settlement achieves and memorializes significant changes to Facebook's practices related to scraping call and text history data from users of Facebook Messenger and Facebook Lite mobile applications for Android.  Key aspects of the proposed Settlement are outlined below:

#### 1.   Cessation of the Data Scraping Relevant to this Class Action

"After the filing of this lawsuit, Meta ceased uploading Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android. Meta confirms that it has not uploaded Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android since March 2019." Settlement ¶ 49.

Plaintiffs' position, as explained by Plaintiffs' expert Jason Frankovitz, is that it is highly unlikely that Meta would have stopped these practices "but for" the filing of the present matter. While Defendant contends that it stopped the scraping due to new restrictions that Google implemented for the Android OS, those changes are inextricably linked to this case as well.

Indeed, just one month after the filing of this action, and the resulting press attention on the data scraping practices at issue, Google announced that it would start restricting how and when apps could access call and text metadata.  Frankovitz Decl. ¶ 20.  Even with these new restrictions, Google permitted apps to continue accessing such data if users selected that app to replace their default SMS and/or phone app.  *Id.* ¶ 19.  Messenger already had SMS capabilities built in, and so could have fit into this exception.  *Id.*  Likewise, Defendant easily could have updated the app to continue accessing call logs.  *Id.*  The fact that it did not do so during the pendency of this litigation is hardly coincidental and any contention that it would have made a business decision to do so is purely speculative.

## 2. <u>Deletion of the Data Scraping Relevant to this Class Action</u>

In addition, "Meta shall delete all Call and Text History Data uploaded from persons in the United States though the Facebook Messenger or Facebook Lite apps for Android devices that Meta is not otherwise legally obligated to preserve by jurisdictions outside of the United States within 45 days of the effective date (which shall be seven (7) days after the final settlement approval order and final judgment have been entered and become Final).  Any data retained because of continuing legal obligations will be quarantined in access-controlled data warehouse tables that are segregated from any systems used or accessed in the ordinary course of Meta's business, and access to this data is limited to Meta's Legal team.  Any such data will be preserved and used solely in connection with any legal obligations and not for any business use, and Meta will delete all such data within 45 days of the expiration of any legal obligation to preserve it."  *Id.*

This provision for Facebook to delete its collected data is a core component of the settlement consideration, and it is wholly attributable to the settlement.  <u>First</u>, as noted by Plaintiffs' expert Mr. Frankovitz, the cost for Facebook to store the previously-collected data is *de minimis*.  Using a reasonable and conservative set of assumptions, Mr. Frankovitz estimates that the call and text logs at issue "would be 5.436 terabytes" in total, which is a "fairly modest amount of data by today's standards."  Frankovitz Decl. ¶ 32.  This is, partly, because "logs of phone calls" are compact in terms of data storage, potentially being "smaller than a kilobyte" each.  *Id.* ¶ 28.  So

while the scraping affected millions of Americans, the data requirements for storage are low.  *Id.* ¶¶ 38-39.  By comparison, "there are various sources on the Internet claiming that Facebook's main 'Hive' storage system has about 300 petabytes of data," which "is about 300 million gigabytes, roughly equivalent to 63,829,787 [full-length] DVDs."  *Id.* ¶ 26.  Indeed, "Facebook has one of the largest and most sophisticated distributed applications in the world, it is highly proficient with data storage and retrieval."  *Id.* ¶ 24.  Retaining another 5.436 terabytes of data (i.e., the estimated storage of the call and text metadata at issue) is a near-zero cost to Facebook.  Mr. Frankovitz estimates that such data could be stored in offline "cold" storage for less than $200, and could be stored in a distributed "cloud" environment for $1,736 per year at the high end.  *Id.* ¶¶ 33, 36.  If anything, these estimations are extremely conservative, as Mr. Frankovitz used retail pricing for cloud storage providers.  For a company that enjoyed $117.9 billion in 2021 revenue, "erasing [the data] makes no meaningful difference to reducing costs or conserving storage space."  *Id.* ¶ 39.

Second, Mr. Frankovitz found that "there is little reason for Facebook to ever delete users' call log data," and representations that it would have done so anyway are "not credible" based on its prior conduct.  *Id.* ¶¶ 40-84.  Based on a review, Mr. Frankovitz found that "[t]o [his] knowledge, based on publicly-available information, Facebook has not ever willingly purged user data that could help them target ads or increase platform engagement," and that he "know[s] of no instance where Facebook erased user data on its own initiative."  *Id.* ¶¶ 40-42.  The only such incident noted by Mr. Frankovitz is where user data was deleted as "[a]fter Facebook was ordered to pay a fine of $650 million [in a case concerning alleged violations of the Illinois Biometric Information Privacy Act]," where Facebook "announced they were shutting down the facial recognition system which had spurred the lawsuit and claimed they would 'delete more than a billion people's individual facial recognition templates.'"  *Id.* ¶ 41.  Yet, there, the "data deletion only happened after a protracted lawsuit, widespread negative publicity, and a settlement order."  *Id.*  That is the same scenario here.

Third, Mr. Frankovitz explains that the entire business structure and revenues of Facebook are dependent upon the monetization of user data.  Of note, "advertising accounts for over 98% of

the company's revenue," all of which "is predicated on how effectively the company can target ads." *Id.* ¶ 51. Facebook is essentially an advertising company, and it gains its competitive edge by "ha[ving] access to personal data about each user of their platforms" for the purpose of targeting ads. *Id.* ¶¶ 56-57. Most relevant here, "[o]ne of the most powerful ways that Facebook can understand individuals is by knowing their relationships to one another," through a so-called "'social graph:' the set of connections between a person, their friends, friends of their friends, and so on." *Id.* In Plaintiffs' view, by collecting "a person's address book and call log[s]," Facebook can "enhance its understanding of a person's real-world relationships." *Id.* ¶ 59. "The fuel for [Facebook's revenue] is personal data about Facebook's users, which "is a key factor in understanding why Facebook is so dedicated to harvesting personal data." *Id.* ¶ 66.

Nor is there any reason to believe that Meta would voluntarily delete the data at issue pursuant to its privacy policy. The language in that document could not be more open-ended or subject to Meta's whims to handle data on a "case-by-case basis."[1] This settlement, on the other hand, provides the class with certainty that would not otherwise exist. Instead of speculating that Meta could delete the data at issue without a settlement, court order, government investigation or bad press—something for which there is no known precedent—the settlement provides class member with certainty. The data <u>will</u> be deleted, on a set timetable and subject to Court supervision, not just based on Meta's capricious and private interpretation of its own policies. In other words, without this settlement, there is no telling if or when Meta would ever delete the data at issue.

### 3.    <u>The Release</u>

There is symmetry between the agreed-upon injunctive relief, which provides the exact relief sought in the complaint, and the classwide release of only those injunctive claims. "Upon the Effective Date, Settlement Class Representatives' Releasing Parties will be deemed to have, and by operation of the Final Approval Order and Final Judgment will have fully, finally, and forever released, relinquished, and discharged any and all past, present, and future claims, actions,

---

[1] *See* https://www.facebook.com/privacy/policy/?entry_point=data_policy_redirect&entry=0

demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, recognized now or hereafter, existing or preexisting, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation), against the Released Parties, from the Settlement Class Representatives' first interaction with Meta up until and including the Effective Date, that result from, arise out of, are based on, or relate in any way to the practices and claims that were alleged in the Action, for any type of relief that can be released as a matter of law, including, without limitation, claims for monetary relief, damages (whether compensatory, consequential, punitive, exemplary, liquidated, and/or statutory), costs, penalties, interest, attorneys' fees, litigation costs, restitution, or equitable relief ("Settlement Class Representatives' Released Claims").  Settlement Class Representatives' Releasing Parties are forever enjoined from taking any action seeking any relief against the Released Parties based on any of Settlement Class Representatives' Released Claims."  Settlement ¶ 53.

However, "the Releasing Parties do not release claims for monetary relief or damages."  *Id.* ¶ 54.

### 4.   Service Awards to Named Plaintiffs and Attorneys' Fees and Expenses

Subject to the Court's approval, Facebook has agreed to pay incentive awards to each Plaintiff in an amount not to exceed $1,500.  Settlement ¶ 64.  The named Plaintiffs have spent substantial time on this action, have assisted with the investigation of this action and the drafting of the multiple Complaints, have participated in significant written and ESI discovery, have been in frequent contact with counsel, and have stayed informed of the status of the action, through settlement.

Interim Class Counsel will make an application to the Court for an award of attorneys' fees, costs, and expenses not to exceed $1,080,000.  All terms regarding fees and costs were negotiated and agreed to by the parties only after full agreement was reached as to all other material terms. Deckant Decl. ¶ 17; Settlement ¶ 61.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

The Ninth Circuit recognizes the "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992). The strong preference for class action settlements is precipitated by the overwhelming uncertainties of the outcome, expense, management, and difficulties in proof inherent in class action lawsuits. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").

### A.    Standard for Final Approval of the Settlement

Approval of class action settlements involves a two-step process.

> (1) Preliminary approval of the proposed settlement and direction of notice to the class; and

> (2) A final approval hearing, at which argument concerning the fairness, adequacy, and reasonableness of the settlement is present.

In granting preliminary approval of the Settlement the Court took the first step in the process.  ECF No. 250.  By this motion, Plaintiffs respectfully request that the Court take the final step by granting final approval of the Settlement.

The overarching standard for class settlement approval is whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  As part of that determination, Rule 23(e)(2) directs courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

In the Ninth Circuit, courts traditionally also use a multi-factor balancing test to analyze whether a given settlement is fair, adequate and reasonable. That test includes the following factors:(1) the strength of Plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout the trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; and (6) the reaction of the class members to the proposed settlement.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)(the "*Hanlon* Factors").

The Rule 23(e)(2) factors and the traditional Ninth Circuit factors overlap somewhat, and courts look to both when deciding whether to grant final approval to class action settlement, while remaining ultimately focused on the underlying question of whether the settlement is fair, reasonable, and adequate.  *See Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *5-*10 (N.D. Cal. Apr. 19,2021) (discussing interplay between factors and considering both to grant final approval to class action settlement); *see also Littlejohn v. Copland*, 819 F. App'x 491, 493 (9th Cir. 2020). In evaluating settlement approval, the Court should consider the strong public policy favoring "settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).  The Settlement here meets all standards for final settlement approval.

**B.      The Settlement Class Meets the *Hanlon* Factors**

      **1.      <u>The Strength of Plaintiffs' Case Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>**

In determining the likelihood of a plaintiff's success on the merits of a class action, "the

district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, as set forth in the Deckant Declaration, Class Counsel engaged in arms-length negotiations with Defendant's counsel and with the assistance of a neutral mediator, and Class Counsel was thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.  Deckant Decl. ¶¶ 16-17, 23.  Although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome was not assured.  *Id*. ¶¶ 25-26.  They also recognize that they would face risks at class certification, summary judgment, and trial.  *Id*. ¶¶ 27-28.  For instance, Meta has argued that it obtained consent for the data scraping at issue through an in-app permissions screen. Defendant vigorously denies Plaintiffs' allegations and asserts that neither Plaintiffs nor the Settlement Class suffered any wrongdoing.  In addition, Defendant would no doubt present a vigorous defense at trial, and there is no assurance that the Settlement Class would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks.  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Settlement Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.  *Id*. ¶¶ 24, 27-28.  The Settlement also abrogates the risks that might prevent them from obtaining any relief.  *Id*.; *see also Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Accordingly, this factor is met.

Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial.  Such

considerations have been found to weigh heavily in favor of settlement. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even assuming Plaintiffs were to survive summary judgment, they would face the risk of establishing liability at trial in light of conflicting expert testimony between their own expert witnesses and Defendant's expert witnesses. The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

### 2. The Risk of Maintaining Class Action Status Throughout Trial

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in certifying a class and maintaining class status through trial. For example, Defendant raises serious questions as to whether there would be individual questions for each user as to whether they consented to the uploading of call and text logs, both through the Android device permissions (depending on what operating system they were running and when they had updated it) and through the Meta in-app consent screen (depending on, for example, whether they first uploaded their call and text logs in 2014 or later). Even if the Court were to grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Class Counsel anticipates that Defendant would likely appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date.

### 3. The Benefits Offered in Settlement

As set forth above, the Settlement provides meaningful, non-monetary policy changes that will benefit Facebook users going forward and, in Plaintiffs' and Class Counsel's views, provides the exact relief Plaintiffs sought in filing this action. *See* TAC ¶ 5. Importantly, the release granted to Facebook in this Action is adequately tailored so that no Settlement Class Member will

release his or her claim to monetary damages or relief.  As such, the release "adequately balances fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending th[e] litigation with finality." *Lee v. Glob. Tel\*Link Corp.*, 2017 WL 1338085, at \*7 (C.D. Cal. Apr. 7, 2017) (internal citation omitted).

This negotiated relief has to be considered in comparison to what Plaintiffs and Class Counsel could have potentially obtained for the class in a best-case scenario.  Here, monetary relief was not a realistic possibility.  Plaintiffs sought statutory damages under the California Invasion of Privacy Act ("CIPA"), but the Court dismissed those claims.  *See* ECF No. 208.  And as Plaintiffs acknowledged in the pleadings, based on discussions with experts, restitutionary damages in this case would be limited to a paltry $0.05 per individual.  Second Am. Consol. Class Action Compl. (ECF No. 88) at ▯ 6.  Accordingly, while Plaintiffs are not releasing any claims for monetary damages, injunctive relief was the only meaningful consideration that Plaintiffs could obtain in this case.

And the injunctive relief obtained here is significant and directly tied to this litigation. First, it is Plaintiffs' position that Defendant stopped the data scraping at issue as a result of this case.  The filing of this action, and the resulting press attention, led Google to restrict access to the type of call and text metadata at issue in this case.  Frankovitz Decl. ▯ 19-20.  And while Meta could have continued its data scraping despite those changes, it did not do so because of the pressure exerted through this lawsuit.  *Id.*  And while the Court has questioned why the settlement does not prevent Defendant from engaging in this same practice again in the future, Meta already has a legal obligation not to scrape user data without consent, and so an injunction of that nature would not provide any additional value.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 657 (N.D. Cal. 2019) (a promise not to break the law in the future is not valid consideration).

Second, Defendant has agreed to delete all of the user data at issue in consideration for the release.  The value of this data deletion to class members is substantial.  Indeed, based on a survey of Android Messenger users, consumers value the data at issue at an average $31.41.  Deckant

Decl. ¶ 20; Deckant Decl. Ex. 14.  Even with an extremely conservative estimate of just 10 million class members (the Messenger app on the Google Play store has been downloaded 5 billion times), the deletion of the data at issue will provide the class with a value of at least $314,100,000.  *Id.* And there is no reason to believe that Meta would voluntarily delete this data if it were not for this case.  The data at issue could be extremely valuable to Defendant and used to further its central aims of connecting users and targeting advertisements.  Frankovitz Decl. ¶ 67.  Keeping the data is also extremely inexpensive.  *Id.* at ¶¶ 36-37 (estimating costs between $200 and $1,736 per year). Finally, based on publicly available data and Meta's privacy policy, there is no reason to believe that it would have voluntarily deleted the data at issue.  This settlement, on the other hand, provides the class with certainty that would not otherwise exist.

### 4.  Extent of Discovery and Stage of Proceedings

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Plaintiffs, through their counsel, have conducted an extensive pre-suit investigation into the factual underpinnings of the practices challenged in the Action, as well as the applicable law.  In addition to their pre-filing efforts, Interim Class Counsel engaged in extensive motion practice and the exchange of written discovery requests and responses, including discovery motion practice.  Interim Class Counsel also engaged in the review of several rounds of production of electronic documents, as well as expert discovery into Meta's source code regarding the complained-of conduct.  The source code review spanned many months and encompassed highly technical documentation relevant to the alleged data upload functions and the inner working of Meta's mobile applications.

These efforts led to the production of critical documents concerning the case, which Class Counsel reviewed and used to ascertain the strengths and weaknesses of the case.  Deckant Decl. ¶ 23.  The parties also conducted numerous telephonic and written discussions regarding Plaintiffs' allegations, discovery, and settlement, as well as a mediation with Hon. Wayne Andersen (Ret.) of JAMS Chicago.  *Id.* ¶ 16.  The Settlement is the result of fully-informed negotiations.  *Vega v.*

*Weatherford U.S., Limited Partnership*, 2016 WL 7116731, at \*9 (E.D. Cal. Dec. 7, 2016) (factor weighed in favor of settlement where "[g]iven the discovery completed by the parties, it appears that the parties made informed decisions, which lead to resolution of the matter with a mediator").

### 5.   The Experience and View of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Deckant Decl. ¶¶ 41-43 and *id.*, Ex. 16 (describing firm's qualifications and resume of Bursor & Fisher, P.A.). Based on their experience, Class Counsel concluded that the Settlement provides significant, immediate results for the Settlement Class while sparing the Settlement Class from the uncertainties of continued and protracted litigation.

### 6.   The Reaction of Class Members to the Settlement

Immediately after the Court granted preliminary approval of the Settlement, notice of the Settlement (including the Court's Order and the motion papers and supporting documents submitted therewith) was published on Class Counsel's public website. The deadline to submit an objection was September 22, 2022. As of today's date, to Class Counsel's knowledge, no class members have objected to the Settlement.

In sum, the *Hanlon* factors weigh in favor of granting final approval of the Settlement.

## V.   THE SETTLEMENT CLASS MEETS ALL OF THE RULE 23(e)(2) FACTORS

### A.   Rule 23(e)(2)(A) – The Class Representatives and Class Counsel Have Adequately Represented the Class

"The Ninth Circuit has explained that 'adequacy of representation ... requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*6 (N.D.

Cal. Dec. 18, 2018) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d at 462).  This prong is met for the same reasons detailed *infra*, and as outlined in Plaintiffs' motion for preliminary approval, and the Court's Order Granting Preliminary Approval.  *See* ECF No. 250, ¶ 4 ("The Court finds that the Settlement Class Representatives and Interim Class Counsel have adequately represented, and will continue to adequately represent, the Settlement Class."); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

## B.     Rule 23(e)(2)(B) – The Proposal was Negotiated at Arm's Length

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992); *see also* Fed. R. Civ. P. 23(e)(2)(B).  A court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner*, 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).

Here, both Class Counsel and counsel for Defendant are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides."  *Hilsley*, 2020 WL 520616, at *5.  Further, "the Settlement was reached as a result of informed and non-collusive arms-length negotiations [over a number of months] facilitated by a neutral mediator."  *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted); *Satchell v. Fed. Express Corp.*, No. C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (same).  Thus, this prong is met.

## C.     Rule 23(e)(2)(C) – The Relief Provided for the Class is Adequate

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including

timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." As

detailed herein, each prong is met.

### 1.   The Costs, Risks, and Delay of Trial and Appeal

Plaintiffs respectfully submit this factor is met above.  *See supra* § IV.A.

### 2.   The Effectiveness of any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims

As the Court noted in its Order Granting Preliminary Approval, "[n]otice of the settlement

is not required here."  ECF No. 250, ¶ 10 ("The Court finds that notice also is not required because

the Settlement Agreement only releases claims for injunctive and/or declaratory relief and does not

release the monetary or damages claims of the Class, and thus the settlement expressly preserves

the individual rights of class members to pursue monetary claims against the Defendant.") (citing

*Stathakos v. Columbia Sportswear Co., et al.*, 2018 WL 582564, at \*3-\*4 (N.D. Cal. Jan. 25,

2018); *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at \*8-9 (N.D. Cal. Mar. 18, 2015); *Kim v.

Space Pencil, Inc.*, 2012 WL 5948951, at \*4, \*17 (N.D. Cal. Nov. 28, 2012)).

Notwithstanding, in accordance with the Settlement Agreement, all documents pertaining to

the Settlement, preliminary approval, and final approval has been and will continue to be posted on

Class Counsel's public website, www.bursor.com.

### 3.   The Terms of Any Proposed Award of Attorney's Fees

Pursuant to the Settlement Agreement, Class Counsel is permitted to seek litigation costs

and attorneys' fees in an amount not to exceed $1,080,000.  Settlement ¶ 61.  As the Ninth Circuit

has held, "[t]here is a strong presumption that the lodestar figure represents a reasonable fee."

*Rodriguez v. West Publ. Corp.*, 563 F.3d 948.  "Only in rare or exceptional cases will an attorney's

reasonable expenditure of time on a case not be commensurate with the fees to which he is

entitled."  *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (emphasis

omitted).  Lodestar is calculated by multiplying the number of hours reasonably expended on the

litigation by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  As this figure approximates the market value of the legal services, it "'presumptively provides an accurate measure of reasonable attorney's fees.'"  *In re Toys R Us FACTA Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994)); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996).

Here, Class Counsel's lodestar to date is $1,321,267.50.  Thus, should the Court award the requested attorneys' fees, Class Counsel would receive a negative multiplier based on their current lodestar.

### 4.  Any Agreement Required to be Identified by Rule 23(e)(3)

This prong asks whether there was "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 696 (S.D.N.Y. 2019).  Here, other than the Settlement, no such agreement exists.

In light of the foregoing, the Settlement provides adequate relief to the Settlement Class under Rule 23(e)(2)(C).

### D.  Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other

Under this factor, courts consider whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class."  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018).  Here, each Settlement Class Member is treated equitably to each other because the injunctive and declaratory relief achieved through the Settlement applies equally to all Settlement Class Members.  Moreover, apart from the Class Representatives, no Settlement Class Member is releasing their claims for damages.  Thus, this Rule 23(e)(2) factor is also met.

## VI.  FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Court previously provisionally certified the Settlement Class as part of the Preliminary Approval Order.  ECF No. 250, ¶¶ 5-7.  The Court should reaffirm certification of the Settlement Class for settlement purposes because the standards of Rule 23(a) are satisfied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.      Fed. R. Civ. P. 23(a)(1) – Numerosity

A class must be so numerous that joinder of all members individually is impractical.  Fed.
R. Civ. P. 23(a)(1).  "[G]enerally, forty or more members will satisfy the numerosity requirement."
*Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015).  Here, the Settlement
Class is estimated to be in the millions.  Accordingly, numerosity is easily met.

### B.      Fed. R. Civ. P. 23(a)(2) – Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered
the same injury."  *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).  "This
requirement has been construed permissively, and all questions of fact and law need not be
common to satisfy the rule."  *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL
4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (internal quotations omitted).  "Indeed,
for purposes of Rule 23(a)(2), even a single common question will do."  *Id.*

Here, Plaintiffs allege that Defendant scraped call and text metadata from Android users of
Facebook Messenger and Facebook Lite mobile applications.  Resolution of this common claim
depends on a critical, common question of fact: whether Defendant's collection of this data is
violative of California's constitutional right to privacy, intrusion upon seclusion, unjust
enrichment, and common law fraud.  Thus, commonality is satisfied.  *See, e.g.*, *Martinelli v.
Johnson & Johnson*, 2019 WL 1429653, at *6 (E.D. Cal. Mar. 29, 2019); *In re NJOY, Inc.
Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1096-97 (C.D. Cal. 2015).

### C.      Fed. R. Civ. P. 23(a)(3) – Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the
claims … of the class."  *See* Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards,
representative claims are 'typical' if they are reasonably co-extensive with those of absent class
members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
1020 (9th Cir. 1998).  In short, to meet the typicality requirement, the representative plaintiffs
simply must demonstrate that the members of the settlement class have the same or similar
grievances.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Here, the Plaintiffs' claims stem from the same common course of conduct as the claims of

1    the Settlement Class Members.  Namely, Plaintiffs contend that they did not consent to Meta's

2    collection of their call and text metadata—the conduct that forms the basis of this lawsuit.  Just as

3    with Settlement Class Representatives themselves, Facebook's conduct is common to all

4    Settlement Class Members and represents a common thread of conduct resulting in injury to all

5    Settlement Class Members.  The injunctive and declaratory relief achieved by the Settlement would

6    apply to Plaintiffs and Settlement Class Members equally.  Accordingly, the typicality requirement

7    is met.

8        **D.      Fed. R. Civ. P. 23(a)(4) – Adequacy of Representation**

9            The final requirement of Rule 23(a) is that "the representative parties will fairly and

10   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether the

11   representation meets this standard, we ask two questions: (1) do the representative plaintiffs and

12   their counsel have any conflicts of interest with other class members, and (2) will the representative

13   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v.*

14   *Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).  Adequacy is presumed where a fair settlement was

15   negotiated at arm's-length.  NEWBERG ON CLASS ACTIONS §11.28, at 11–59.

16           As to the first inquiry, Plaintiffs and Class Counsel have no conflicts of interests with the

17   Settlement Class.  *See* Plaintiffs' Decls. ¶ 7 (filed as Exhibits 17-22 to the Deckant Decl.).  Rather,

18   the named Plaintiffs, like each absent Settlement Class Member, has a strong interest in proving

19   Defendant's common course of conduct, and obtaining redress.  Plaintiffs' Decls. ¶ 6.

20           As to the second inquiry, Plaintiffs and Class Counsel have vigorously and competently

21   pursued the Settlement Class Members' claims.  Class Counsel has engaged in significant, arm's-

22   length negotiations over the course of many months, including with the assistance of a certified

23   mediator, Hon. Wayne Andersen (Ret.).  Deckant Decl. ¶ 16; *see also Villegas v. J.P. Morgan*

24   *Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (use of mediator "tends to

25   support the conclusion that the settlement process was not collusive").  The Settlement provides the

26   exact relief that Plaintiffs sought on behalf of themselves and the Settlement Class Members

27   through Defendant's cessation of data scraping Android users' metadata via Facebook Messenger

28

and Facebook Lite, and through the deletion of said data.  Further, Class Counsel have extensive experience and expertise in prosecuting complex class actions.  Class Counsel are active practitioners who are highly experienced in class action litigation.  *See* Deckant Decl. ¶¶ 41-43 and *id.*, Ex. 16 (describing firm's qualifications and resume of Bursor & Fisher, P.A.).  And Plaintiffs have remained engaged in the litigation, including frequent communication with Class Counsel, and overseeing the drafting of certain documents.  Plaintiffs' Decls. ¶¶ 8-9.

Thus, in pursing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Settlement Class.  Accordingly, Rule 23(a)(4) is satisfied.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement.


Dated: September 2, 2022                          **BURSOR & FISHER, P.A.**

By: ___*/s/ Neal J. Deckant*_____
                  Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
            ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: 646-837-7150
Facsimile:  (212) 989-9163
E-Mail: jarisohn@bursor.com
            aleslie@bursor.com

*Class Counsel*