**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: 646-837-7150
Facsimile:  (212) 989-9163
E-Mail: jarisohn@bursor.com
        aleslie@bursor.com

*Class Counsel*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE OLIN, HAROLD NYANJOM, SHERON SMITH-JACKSON, JANICE VEGA-LATKER, MARC BOEHM, and RAVEN WINHAM, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>                  Defendant. | Case No.  3:18-cv-01881-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date:        October 20, 2022<br>Time:       1:30 p.m.<br>Court:     Courtroom 3, 17th Floor<br><br>Hon. Richard Seeborg |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 20, 2022, at 1:30 p.m., or as soon thereafter as the parties may be heard, Plaintiffs will move this Court at the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Richard Seeborg, for an Order granting attorneys' fees and costs and service awards for the Class Representatives. This Motion is based on this Notice of Motion and Motion, the supporting memorandum of law, the Declaration of Neal J. Deckant and exhibits thereto, the pleadings and papers on file herein, and upon such matters as may be presented to the Court at the time of the hearing.

Dated: September 2, 2022

**BURSOR & FISHER, P.A.**

By:  ___/s/ Neal J. Deckant_____
        Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: 646-837-7150
Facsimile:  (212) 989-9163
E-Mail: jarisohn@bursor.com
          aleslie@bursor.com

*Class Counsel*

## TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ....................................................................................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND .............................................1

III.  THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR,
      REASONABLE, AND APPROPRIATE UNDER THE CIRCUMSTANCES ...................5

     A.   Class Counsel Obtained an Excellent Result............................................5

     B.   The Practice Changes Agreed to in the Settlement Were the Result of
      Counsel's Efforts in this Litigation ......................................................6

          1.   Cessation of the Data Scraping Relevant to this Class Action ......................6

          2.   Deletion of the Data Scraping Relevant to this Class Action ......................6

     C.   The Fee Amount Was Negotiated at Arms' Length by Skilled,
      Experienced Counsel ............................................................................9

     D.   Application of the Lodestar Method Demonstrates the Reasonableness
      of the Requested Fee ..........................................................................10

          1.   Class Counsel's Hourly Rates are Reasonable ...............................10

          2.   The Time Class Counsel Devoted to this Case Was
      Appropriate ........................................................................12

     E.   The Requested Fee Represents a Negative Multiplier ............................12

     F.   Class Counsel's Litigation Expenses Were Reasonably Incurred in
      Furtherance of the Prosecution of the Claims, and Should be Awarded................14

     G.   The Requested Service Awards are Reasonable and Should be
      Approved ............................................................................................14

IV.   CONCLUSION ....................................................................................................15

1

2

# TABLE OF AUTHORITIES

**PAGE(S)**

3

**CASES**

4

*Aguilar v. Wawona Frozen Foods*,
   2017 WL 2214936 (E.D. Cal. May 19, 2017) ............................................................. 12

*Chun-Hoon v. Mckee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................................................................... 14

*Cunningham v. County of Los Angeles*,
   879 F.2d 481 (9th Cir. 1988) ................................................................................... 11

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................. 16

*Faigman v. AT & T Mobility LLC*,
   2011 WL 672648 (N.D. Cal. Feb. 16, 2011) ............................................................. 16

*Gong-Chun v. Aetna*,
   2012 WL 2872788 (E.D. Cal. Jul. 12, 2012) ............................................................ 14

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
   100 F.3d 691 (9th Cir. 1996) ................................................................................... 11

*Guttman v. Ole Mexican Foods, Inc.*,
   2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) ............................................................ 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................. 13

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ....................................................................................... 11

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. Jan. 20, 2011) ................................................................. 12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................... 10, 11

*In re Anthem, Inc. Data Breach Litig.*,
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .......................................................... 12

*In re Apple Computer, Inc. Derivative Litig.*,
   2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ............................................................ 10

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   1992 WL 226321 (C.D. Cal. June 10, 1992) ............................................................. 10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re High-Tech Employee Antitrust Litig.*,
    2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ............................................................. 12

*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................. 16

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) ............................................................................ 15

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. 2007) ............................................................................ 14

*In re Toys R Us FACTA Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ................................................................................. 15

*In re Yahoo Email Litig.*,
    2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ............................................................. 14

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ......................................................................................... 14

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) ............................................................................................... 14

*Nitsch v. DreamWorks Animation SKG Inc.*,
    2017 WL 2423161 (N.D. Cal. June 5, 2017) ............................................................... 12

*Parkinson v. Hyundai Motor America*,
    796 F. Supp. 2d 1160 (C.D. Cal. 2010) ....................................................................... 12

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ....................................................................................... 11

*Perez v. Rash Curtis & Associates*,
    2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ............................................................. 12

*POM Wonderful, LLC v. Purely Juice, Inc.*,
    2008 WL 4351842 (CD. Cal. Sept. 22, 2008) ............................................................. 12

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ....................................................................................... 15

*Rosado v. Ebay Inc.*,
    2016 WL 3401987 (N.D. Cal. June 21, 2016) ............................................................. 14

*Schiller v. David's Bridal, Inc.*,
    2012 WL 2117001 (E.D. Cal. June 11, 2012) ............................................................. 15

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ....................................................................................... 14

*Staton v. Boeing Co.*,
     327 F.3d 938 (9th Cir. 2003) ................................................................................. 15

*Stetson v. Grissom*,
     821 F.3d 1157 (9th Cir. 2016) ................................................................................ 14

*Taylor v. FedEx Freight, Inc.*,
     2016 WL 6038949 (E.D. Cal. Oct. 13, 2016) ......................................................... 12

*Van Vranken v. Atl. Richfield Co.*,
     901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................... 15

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
     556 F.3d 815 (9th Cir. 2009) .................................................................................. 11

*Zakskorn v. American Honda Motor Co.*,
     2015 WL 3622990 (E.D. Cal. June 9, 2015) ........................................................... 13

**STATUTES**

Cal. Bus. and Prof. Code § 17200 .................................................................................... 1

Cal. Civ. Code § 1750 ....................................................................................................... 1

Cal. Pen. Code § 502 ......................................................................................................... 1

Cal. Pen. Code § 631 ......................................................................................................... 3

Cal. Pen. Code § 632 ......................................................................................................... 3

Cal. Pen. Code § 635 ......................................................................................................... 3

N.Y. Gen. Bus. Law § 349 ............................................................................................. 1, 2

**RULES**

Federal Rule of Civil Procedure 41(a) ............................................................................... 3

1

## I.      INTRODUCTION

2       Plaintiffs and Class Counsel have achieved a significant result in this case.  The declarative

3   and injunctive relief achieved in this Class Action Settlement obtains the precise redress Plaintiffs

4   sought in their complaint: (1) the cessation of Facebook's alleged practice of scraping call and text

5   metadata from Android users of the Facebook Messenger application, and (2) the deletion of all

6   data collected as a result of said scraping.  Importantly, Class Members are not releasing their

7   claims for monetary damages.

8       Class Counsel now request that the Court approve an award of attorneys' fees and litigation

9   costs in the amount of $1,080,000.  Cross-checking this amount against Class Counsel's lodestar

10   validates the reasonableness of Class Counsel's fee request.  As of August 31, 2022, Class Counsel

11   had worked 1800.5 hours on this case for a total fee, at current billing rates, of $1,321,267.50.

12   Deckant Decl., Ex. 2 (detailed billing records and expenses for this case).  Class Counsel's blended

13   hourly rate of $561.76 is well within the bounds of reasonable hourly rates in this District.  *Id.* ¶ 31,

14   36-37.  A fee award of $1,080,000 would result in a negative multiplier, which further

15   demonstrates its reasonableness.

16       Finally, Plaintiffs request that the Court award service payments in the amount of $1,500

17   each to account for the significant time and effort they invested in this case on behalf of the Class.

18   ## II.     PROCEDURAL AND FACTUAL BACKGROUND

19        On March 27, 2017, Plaintiffs Anthony Williams, Tyoka Brumfield, and Wendy Burnett

20   filed a class action complaint in the United States District Court for the Northern District of

21   California asserting claims against Meta on behalf of themselves and a proposed class of "all

22   persons in the United States who installed the Facebook Messenger and Facebook Lite apps for

23   Android, and granted Facebook permission to access their 'Contact List'" under the California

24   Consumers Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750, *et seq.*), California Unfair

25   Competition Law ("UCL," Cal. Bus. and Prof. Code § 17200, *et seq.*), California Computer Data

26   Access and Fraud Act ("CDAFA," Cal. Pen. Code § 502), California Constitutional Right to

27   Privacy, Intrusion Upon Seclusion, Trespass to Personal Property, New York's Deceptive Acts or

28   Practices Law ("GBL § 349," N.Y. Gen. Bus. Law § 349), and unjust enrichment.  The Complaint

alleged that, *inter alia*, when users installed the Facebook Messenger and Facebook Lite applications on their Android devices, they were prompted to grant Facebook access to their "Contact Lists," and that upon doing so, these apps uploaded users' call and text logs.  *See*, *e.g.*, ECF No. 1.

Shortly thereafter, four other complaints were filed in the United States District Court for the Northern District of California alleging similar facts and asserting similar classwide claims against Meta, including *Renken, et al. v. Facebook, Inc.*, Case No. 5:18-cv-01896 (filed Mar. 27, 2018), *Tracy v. Facebook, Inc.*, Case No. 3:18-cv-02128 (filed Apr. 9, 2018), *Sternemann, et al. v. Facebook, Inc.*, Case No. 3:18-cv-02677 (filed May 7, 2018), and *Condelles v. Facebook, Inc.*, Case No. 3:18-cv-02727 (filed May 9, 2018).  The Court then related the *Renken*, *Tracy*, *Sternemann*, and *Condelles* complaints to the instant case.  *See* ECF Nos. 18, 27, 42, and 44.  On June 26, 2018, the Court consolidated all of the aforementioned actions and appointed Bursor & Fisher, P.A. as interim lead counsel.  *See* ECF No. 51.

On July 13, 2018, Plaintiffs filed a First Amended Consolidated Class Action Complaint asserting CLRA, UCL, CDAFA, California Constitutional Right to Privacy, Intrusion Upon Seclusion, Trespass to Personal Property, GBL § 349, and unjust enrichment claims on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger and Facebook Lite apps for Android, and granted Facebook permission to access their 'Contact List.'"  *See* ECF No. 52.

On September 25, 2018, Meta moved to dismiss the First Amended Consolidated Class Action Complaint, and Plaintiffs opposed Meta's motion on October 30, 2018.  On December 6, 2018, the Court held oral argument on Meta's motion, and on December 18, 2018 (*see* ECF No. 79), the Court issued an order granting Meta's motion to dismiss the First Amended Consolidated Class Action Complaint, dismissing the claims under Trespass to Personal Property, UCL, CLRA, and GBL § 349 without leave to amend, and dismissing all other claims with leave to amend.  *See* ECF No. 85.

On January 22, 2019, Settlement Class Representatives Lawrence Olin, Harold Nyanjom, Sheron Smith-Jackson, and Janice Vega-Latker filed a Second Amended Consolidated Class Action Complaint asserting claims under the CDAFA, California Constitutional Right to Privacy, Intrusion Upon Seclusion, unjust enrichment, and fraud on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger and Facebook Lite apps for Android, and granted Facebook permission to access their 'Contacts.'" *See* ECF No. 88.

On February 26, 2019, Meta moved to dismiss the Second Amended Consolidated Class Action Complaint, and Plaintiffs filed their opposition on March 19, 2019.  On May 23, 2019, the Court held oral argument on Meta's motion (*see* ECF No. 113).  On August 29, 2019, the Court issued an order granting in part and denying in part Meta's motion to dismiss the Second Amended Consolidated Class Action Complaint, dismissing the allegations relating to the Facebook Lite application without prejudice and otherwise denying the motion.  *See* ECF No. 128.  On September 13, 2019, Plaintiffs Williams, Brumfield, and Burnett voluntarily dismissed their claims pursuant to Federal Rule of Civil Procedure 41(a), which action was unopposed by Meta.  *See* ECF No. 137.

On December 18, 2020, Settlement Class Representatives Lawrence Olin, Harold Nyanjom, Sheron Smith-Jackson, Janice Vega-Latker, Blake Carlyle, Marc Boehm, and Raven Winham filed a Third Amended Consolidated Class Action Complaint ("TACC") asserting claims under the CDAFA, California Constitutional Right to Privacy, Intrusion Upon Seclusion, unjust enrichment, fraud, and the California Invasion of Privacy Act ("CIPA") (Cal. Pen. Code §§ 631, 632, 635) on behalf of themselves and a proposed class of "all persons in the United States who installed the Facebook Messenger app for Android, and granted Facebook permission to access their 'Contacts.'" *See* ECF No. 184.  Meta moved to dismiss the TACC on January 28, 2021, and Plaintiffs filed their opposition on February 18, 2021.  On May 14, 2021, the Court issued an order granting Meta's motion to dismiss the TACC, dismissing the newly-added CIPA claims.

Throughout this litigation, the Parties engaged in extensive written and ESI discovery, including inspection by Settlement Class Representatives' software expert of the source code relating to uploading of call and text logs through the Facebook Messenger for Android

application, including full revision history of the code; the production of documents reflecting Settlement Class Representatives' call and text history uploading and settings; and other internal documents regarding the in-app consent screen and functionality of the feature at issue.

The parties also engaged in extensive discovery motion practice and exchanged voluminous written discovery requests and responses.  In particular, the production of and inspection of Facebook's source code was a hotly contested issue.  For example, Class Counsel engaged in significant motion to compel briefing, exchanged numerous rounds of discovery dispute statements, and argued multiple discovery dispute hearings before Magistrate Judge Hixon.  Nearly all of the discovery disputes involved highly technical input from both sides' experts.  *See*, *e.g.*, ECF No. 100 (Plaintiffs' Motion to Compel ESI Protocol and Production of Documents); ECF No. 110 (Joint Discovery Letter Brief); ECF No. 139 (Discovery Dispute Hearing); ECF No. 144 (Joint Discovery Dispute Status Report); ECF No. 148 (Discovery Dispute Hearing); ECF No. 153 (Joint Discovery Dispute Statement); ECF No. 155 (Plaintiffs' Expert Declaration in Support of Discovery Letter Brief); ECF No. 156 (Joint Supplemental Statement on Discovery Dispute); ECF No. 157 (Defendant's Expert Declaration in Support of Discovery Dispute); ECF No. 159 (Discovery Dispute Hearing); ECF No. 166 (Plaintiffs' Discovery Letter Brief); ECF No. 176 (Discovery Dispute Hearing); ECF No. 199 (Status Report Re: Source Code Discovery Dispute). As a result of this hard-fought discovery, Plaintiffs obtained evidence that they believe supports their allegations.  Wong Decl. (ECF No. 192) ¶¶ 12-15; Ma Decl. ¶¶ 26-27.

Following these revelations, the Parties agreed to mediate the case on June 15, 2021, with the Honorable Wayne Andersen (Ret.) of JAMS, who served for nearly 20 years on the U.S. District Court for the Northern District of Illinois.  The mediation lasted a full day but was unsuccessful.  Thereafter, however, the parties continued to engage in arm's length negotiations facilitated by Judge Andersen over the next eight months, which culminated in a mediator's proposal in February 2022 that both sides accepted.  The Parties have since negotiated, finalized, and executed the Class Action Settlement Agreement, submitted herewith.

Plaintiffs filed their motion for preliminary approval on May 18, 2022, and the Court granted the motion on August 3, 2022.  ECF No. 250.

## III.  THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR, REASONABLE, AND APPROPRIATE UNDER THE CIRCUMSTANCES

### A.  Class Counsel Obtained an Excellent Result

As detailed in the concurrently filed Motion for Final Approval of Class Action Settlement, the Settlement before the Court provides significant relief for the Class that is specifically tailored to the harm alleged.  Meta has agreed to substantial changes that achieve the precise relief Plaintiffs sought to accomplish with this litigation.  In particular, "[a]fter the filing of this lawsuit, Meta ceased uploading Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android.  Meta confirms that it has not uploaded Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android since March 2019."  Settlement ¶ 49.  In addition, "Meta shall delete all Call and Text History Data uploaded from persons in the United States though the Facebook Messenger or Facebook Lite apps for Android devices that Meta is not otherwise legally obligated to preserve by jurisdictions outside of the United States within 45 days of the effective date (which shall be seven (7) days after the final settlement approval order and final judgment have been entered and become Final). Any data retained because of continuing legal obligations will be quarantined in access-controlled data warehouse tables that are segregated from any systems used or accessed in the ordinary course of Meta's business, and access to this data is limited to Meta's Legal team. Any such data will be preserved and used solely in connection with any legal obligations and not for any business use, and Meta will delete all such data within 45 days of the expiration of any legal obligation to preserve it."  *Id.*

In sum, the Settlement achieves significant business practice changes, and benefits the Settlement Class now, without the inherent risks of continued litigation and without requiring Settlement Class Members to release any claims they may have for monetary relief.

**B.      The Practice Changes Agreed to in the Settlement Were the Result of Counsel's Efforts in this Litigation**

**1.      Cessation of the Data Scraping Relevant to this Class Action**

"After the filing of this lawsuit, Meta ceased uploading Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android. Meta confirms that it has not uploaded Call and Text History Data from persons in the United States through the Facebook Messenger or Facebook Lite apps for Android since March 2019." Settlement ¶ 49.

Plaintiffs' position, as explained by Plaintiffs' expert Jason Frankovitz, is that it is highly unlikely that Meta would have stopped these practices "but for" the filing of the present matter. While Defendant contends that it stopped the scraping due to new restrictions that Google implemented for the Android OS, those changes are inextricably linked to this case as well. Indeed, just one month after the filing of this action, and the resulting press attention on the data scraping practices at issue, Google announced that it would start restricting how and when apps could access call and text metadata.  Frankovitz Decl. ¶ 20.  Even with these new restrictions, Google permitted apps to continue accessing such data if users selected that app to replace their default SMS and/or phone app.  *Id.* ¶ 19.  Messenger already had SMS capabilities built in, and so could have fit into this exception.  *Id.*  Likewise, Defendant easily could have updated the app to continue accessing call logs.  *Id.*  The fact that it did not do so during the pendency of this litigation is hardly coincidental and any contention that it would have made a business decision to do so is purely speculative.

**2.      Deletion of the Data Scraping Relevant to this Class Action**

In addition, "Meta shall delete all Call and Text History Data uploaded from persons in the United States though the Facebook Messenger or Facebook Lite apps for Android devices that Meta is not otherwise legally obligated to preserve by jurisdictions outside of the United States within 45 days of the effective date (which shall be seven (7) days after the final settlement approval order and final judgment have been entered and become Final).  Any data retained

because of continuing legal obligations will be quarantined in access-controlled data warehouse tables that are segregated from any systems used or accessed in the ordinary course of Meta's business, and access to this data is limited to Meta's Legal team.  Any such data will be preserved and used solely in connection with any legal obligations and not for any business use, and Meta will delete all such data within 45 days of the expiration of any legal obligation to preserve it." *Id.*

This provision for Facebook to delete its collected data is a core component of the settlement consideration, and it is wholly attributable to the settlement.  First, as noted by Plaintiffs' expert Mr. Frankovitz, the cost for Facebook to store the previously-collected data is *de minimis*.  Using a reasonable and conservative set of assumptions, Mr. Frankovitz estimates that the call and text logs at issue "would be 5.436 terabytes" in total, which is a "fairly modest amount of data by today's standards."  Frankovitz Decl. ¶ 32.  This is, partly, because "logs of phone calls" are compact in terms of data storage, potentially being "smaller than a kilobyte" each.  *Id.* 28.  So while the scraping affected millions of Americans, the data requirements for storage are low.  *Id.* ¶¶ 38-39.  By comparison, "there are various sources on the Internet claiming that Facebook's main 'Hive' storage system has about 300 petabytes of data," which "is about 300 million gigabytes, roughly equivalent to 63,829,787 [full-length] DVDs."  *Id.* ¶ 26.  Indeed, "Facebook has one of the largest and most sophisticated distributed applications in the world, it is highly proficient with data storage and retrieval."  *Id.* ¶ 24.  Retaining another 5.436 terabytes of data (i.e., the estimated storage of the call and text metadata at issue) is a near-zero cost to Facebook.  Mr. Frankovitz estimates that such data could be stored in offline "cold" storage for less than $200, and could be stored in a distributed "cloud" environment for $1,736 per year at the high end.  *Id.* ¶¶ 33, 36.  If anything, these estimations are extremely conservative, as Mr. Frankovitz used retail pricing for cloud storage providers.  For a company that enjoyed $117.9 billion in 2021 revenue, "erasing [the data] makes no meaningful difference to reducing costs or conserving storage space."  *Id.* ¶ 39.

Second, Mr. Frankovitz found that "there is little reason for Facebook to ever delete users' call log data," and representations that it would have done so anyway are "not credible" based on its prior conduct.  *Id.* ¶¶ 40-84.  Based on a review, Mr. Frankovitz found that "[t]o [his]

knowledge, based on publicly-available information, Facebook has not ever willingly purged user data that could help them target ads or increase platform engagement," and that he "know[s] of no instance where Facebook erased user data on its own initiative." *Id.* ¶¶ 40-42.  The only such incident noted by Mr. Frankovitz is where user data was deleted as "[a]fter Facebook was ordered to pay a fine of $650 million [in a case concerning alleged violations of the Illinois Biometric Information Privacy Act]," where Facebook "announced they were shutting down the facial recognition system which had spurred the lawsuit and claimed they would 'delete more than a billion people's individual facial recognition templates.'" *Id.* 41.  Yet, there, the "data deletion only happened after a protracted lawsuit, widespread negative publicity, and a settlement order." *Id.*  That is the same scenario here.

Third, Mr. Frankovitz explains that the entire business structure and revenues of Facebook are dependent upon the monetization of user data.  Of note, "advertising accounts for over 98% of the company's revenue," all of which "is predicated on how effectively the company can target ads." *Id.* ¶ 51.  Facebook is essentially an advertising company, and it gains its competitive edge by "ha[ving] access to personal data about each user of their platforms" for the purpose of targeting ads. *Id.* ¶¶ 56-57.  Most relevant here, "[o]ne of the most powerful ways that Facebook can understand individuals is by knowing their relationships to one another," through a so-called "'social graph:' the set of connections between a person, their friends, friends of their friends, and so on." *Id.*  In Plaintiffs' view, by collecting "a person's address book and call log[s]," Facebook can "enhance its understanding of a person's real-world relationships." *Id.* ¶ 59.  "The fuel for [Facebook's revenue] is personal data about Facebook's users, which "is a key factor in understanding why Facebook is so dedicated to harvesting personal data." *Id.* ¶ 66.

Nor is there any reason to believe that Meta would voluntarily delete the data at issue pursuant to its privacy policy.  The language in that document could not be more open-ended or subject to Meta's whims to handle data on a "case-by-case basis."[1]  This settlement, on the other hand, provides the class with certainty that would not otherwise exist.  Instead of speculating that

---

[1] *See* https://www.facebook.com/privacy/policy/?entry_point=data_policy_redirect&entry=0

Meta could delete the data at issue without a settlement, court order, government investigation or bad press—something for which there is no known precedent—the settlement provides class member with certainty.  The data will be deleted, on a set timetable and subject to Court supervision, not just based on Meta's capricious and private interpretation of its own policies.  In other words, without this settlement, there is no telling if or when Meta would ever delete the data at issue.

### C.   The Fee Amount Was Negotiated at Arms' Length by Skilled, Experienced Counsel

"Ideally, litigants will settle the amount of a fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Thus, a court "should refrain from substituting its own value for a properly bargained-for agreement."  *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *4 (N.D. Cal. Nov. 5, 2008) (awarding attorneys' fees based on "the terms of the settlement").  Courts therefore apply lessened scrutiny to fee agreements "negotiated at arm's length with sophisticated defendants by the attorneys . . . intimately familiar with the case."  *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992).

These circumstances characterize the situation here.  The parties here did not reach an agreement on settlement until after (i) extensive discovery had been conducted, (ii) Facebook's motion to dismiss was briefed, litigated and decided, (iii) factual discovery into the relevant source code and architecture of the Facebook Messenger application was substantially completed, and (iv) the parties participated in a mediation facilitated by a respected mediator.  These circumstances demonstrate that both parties were fully apprised of the strengths and weaknesses of their respective positions.  Further, it was only after reaching an agreement on the Settlement's substantive terms that the parties turned to negotiating the fee.  Further demonstrating that the fee is fair and the product of good-faith negotiations, Facebook reviewed monthly summaries of Class Counsel's time records prior to agreeing to take no position in opposition to the fee requested in this motion.  *See* Settlement ¶ 61 (Ex. 1 to Deckant Decl.).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.    Application of the Lodestar Method Demonstrates the Reasonableness of the Requested Fee

The Ninth Circuit has reconfirmed that "[t]here is a strong presumption that the lodestar figure represents a reasonable fee." *Rodriguez v. West Publ. Corp.*, 602 Fed. Appx. at 387. "Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (emphasis omitted).  Lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  As this figure approximates the market value of the legal services, it "'presumptively provides an accurate measure of reasonable attorney's fees.'"  *In re Toys R Us FACTA Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014), (quoting *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994)); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996).

The accompanying Declaration of Neal J. Deckant sets forth the hours worked and the billing rates used to calculate Class Counsel's lodestar in this Action, including a summary of the work performed, *see* Deckant Decl., Ex. 2, and an attorney-by-attorney breakdown of hours spent related to the Action.  *Id.*  Notably, the Ninth Circuit has held that  "[t]estimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."  *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009).  Here, nonetheless, detailed, individualized billing entries have also been provided.  *See* Deckant Decl., Ex. 2.  In sum, Class Counsel and their staff spent 1800.5 hours working on this case for a lodestar of $1,321,267.50.  Deckant Decl., Ex. 2.

### 1.    Class Counsel's Hourly Rates are Reasonable

Class Counsel worked efficiently.  Class Counsel have submitted their detailed daily billing records showing what work was done and by whom as exhibits to their declarations.  Those records confirm Class Counsel's efficient billing.

The blended hourly rate for Class Counsel's work of $561.76 is quite reasonable.  Deckant Decl. ¶ 36.  And the hourly rates for each of the lawyers who staffed the case, which are set forth in

Exhibit 2 to the Deckant Declaration, are also reasonable and amply supported by the evidentiary material submitted with the Deckant Declaration.  *See id.* ¶¶ 36-37; *id.* at Exs. 4-12.  Rates are "reasonable where they [are] similar to those charged in the community and approved by other courts." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. Jan. 20, 2011).  California courts have repeatedly held rates commensurate with Class Counsel's rates to be fair and reasonable.  *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving billing rates for partners between $400 and $970, and associates between $185 to $850); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rates for senior attorneys of between $870 to $1200 per hour to be reasonable); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675 for class counsel in a consumer class action); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (approving billing rates of $490 to $975 for partners, $310 to $800 for non-partner attorneys, and $190 to $430 for paralegals, law clerks, and litigation support staff); *POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842, at *4 (CD. Cal. Sept. 22, 2008) (finding rates of $475 to $750 for partners and $275 to $425 for associates reasonable in a consumer class action); *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *6 (E.D. Cal. May 19, 2017) ("This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners."); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (finding class counsel rates of $525/hour for senior associates and $700/hour for the senior partner in this district reasonable).

Class Counsel here are experienced, highly regarded members of the bar.  They have brought to this case extensive experience in privacy litigation, consumer class actions and complex litigation.  Deckant Decl. ¶ 41.  For this reason, courts within California have previously found the rates of Class Counsel fair and reasonable.  *See Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (finding Bursor & Fisher's blended hourly rate of $634.48 to be reasonable); *Zakskorn v. American Honda Motor Co.*, 2015 WL 3622990, at *13–15

1
2
3

(E.D. Cal. June 9, 2015) (approving a fee request where Bursor & Fisher submitted hourly rates of up to $850 per hour for partners and $450 per hour for associates).  Thus, in performing its cross-check analysis, the Court should find Class Counsel's hours and rates reasonable.

4
5

### 2.   The Time Class Counsel Devoted to this Case Was Appropriate

6
7
8
9
10
11
12

Class Counsel's efforts were necessary to achieving the Settlement.  As detailed in the Declaration of Neal J. Deckant and Section II.B *supra*, Class Counsel expended 1800.5 hours performing the following tasks, among others: (1) engaged in extensive pre-suit investigation, (2) prepared and filed multiple complaints, (3) successfully opposed Facebook's motion to dismiss, (5) undertook extensive discovery, document review, source code review, and pursued discovery-related motions, (4) prepared for and participated in a mediation, and (5) negotiated the terms of the Settlement and the documents related thereto. *See* Deckant Decl. at ¶ 30.

13
14
15
16
17
18
19
20
21

Moreover, in taking this matter on a contingent basis, Class Counsel assumed considerable risk.  Indeed, this Action involves novel issues predicated on claims involving the scraping of call and text metadata. The caselaw in this context is not fully developed, which resulted in the parties advancing conflicting interpretations of certain elements of Plaintiffs' claims during the litigation. These novel legal issues were disputed in a highly technical context that required Class Counsel, and their retained experts, to review extensive source code and technical documents.  Deckant Decl. at ¶¶ 14-16. Despite facing such risks, Class Counsel effectively prosecuted this case, foregoing other work in the process.  Thus, the time devoted by Class Counsel to this Action on a purely contingent basis supports the requested fee.

22

### E.   The Requested Fee Represents a Negative Multiplier

23
24
25
26
27
28

For the purpose of awarding class counsel a reasonable fee, the lodestar may be adjusted in light of the (1) results obtained, (2) novelty and complexity of the questions presented, (3) skill exhibited by counsel, (4) preclusion of other legal work because of counsel's acceptance and prosecution of the case, and (5) risk of nonpayment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132, 17 P.3d 735, 741 (Cal. 2001).  The Ninth Circuit has held

that a district court "*must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'  Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stetson v. Grissom*, 821 F.3d 1157 (9th Cir. 2016) (italics in original); *see also Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734 (9th Cir. 2016).  Each of these three factors is present here – Class Counsel anticipated a risk multiplier upon commencement of this action; the hourly rates utilized in the lodestar calculation include no risk multiplier; and this case posed heightened risks due to the application of novel legal issues in a highly technical context.  Deckant Decl. at ¶¶ 31-32.

However, to avoid protracted litigation on the fee issue and facilitate settlement, Class Counsel agreed to seek an award that reflects a *negative* adjustment the documented lodestar. Courts within this Circuit have held that a negative multiplier "strongly suggests the reasonableness of the negotiated fee." *Rosado v. Ebay Inc.*, No. 2016 WL 3401987, at *6 (N.D. Cal. June 21, 2016); *see also Gong-Chun v. Aetna*, 2012 WL 2872788, at *23 (E.D. Cal. Jul. 12, 2012) (holding that a negative multiplier of .79 suggests that the negotiated fee award is reasonable); *Chun-Hoon v. Mckee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (reasoning that a negative multiplier suggests a reasonable and fair valuation of the services provided by class counsel); *Chun-Hoon v. Mckee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (reasoning that a negative multiplier suggests a reasonable and fair valuation of the services provided by class counsel); *In re Yahoo Email Litig.*, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) (finding that the lodestar multiplier of .97 "is within the range of reasonableness"); *Guttman v. Ole Mexican Foods, Inc.*, 2016 WL 9107426, at *6 (N.D. Cal. Aug. 1, 2016) (finding that a fee request was "especially" reasonable where counsel sought a negative multiplier); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel."); *Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *23 (E.D. Cal. June 11, 2012) ("An implied negative multiplier supports the

reasonableness of the percentage fee request"). In sum, the negative multiplier applied to the presumptively reasonable lodestar confirms the fairness of the requested fee award.

### F. Class Counsel's Litigation Expenses Were Reasonably Incurred in Furtherance of the Prosecution of the Claims, and Should be Awarded

The Settlement terms and well-settled precedent support Class Counsel's entitlement to recovery of out-of-pocket costs reasonably incurred in investigating, prosecuting, and settling these claims. *See, e.g.*, *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Class Counsel incurred $98,042.01 in unreimbursed out-of-pocket costs over the course of this litigation. Deckant Decl., Ex. 3. Over sixty-eight percent of those costs were associated with expert and consultant work, including extensive expert analysis of the relevant source code and related technical documents necessary to fully understand the architecture related to Facebook's messenger application functioning and privacy permissions. Deckant Decl. at ¶ 35 and Ex. 3 attached thereto. Other significant costs include mediation fees and other customary litigation expenses. *Id*. Moreover, as detailed in the Deckant Declaration, these costs were reasonably incurred in furtherance of the investigation, prosecution, and Settlement of the action and should be reimbursed. *Id*; s*ee In re Toys R Us FACTA Litig.*, 295 F.R.D. at 469.

### G. The Requested Service Awards are Reasonable and Should be Approved

As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d at 958 (service awards "are fairly typical in class action cases"). Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Id*.; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995). In this District, service awards in the amount of $5,000 per class representative are "presumptively reasonable," rendering the service awards sought here eminently reasonable.

*E.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014); *Faigman v. AT & T Mobility LLC*, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011).

Here, Class Counsel seeks, and Facebook does not oppose, service awards in the amount $1,500 for each of the Plaintiffs serving as Class Representatives.  See *Settlement* ¶ 64.  The requested service awards are well justified under the circumstances.  The Class Representatives assisted with the preparation of and reviewed multiple rounds of drafts complaints, responded to requests for production and interrogatories, invested substantial time over the past four years in collaborating and communicating with class counsel, and monitoring the litigation and reviewing case filings and other pertinent documents.  *See* Plaintiff Declarations, attached as Exhibits 17-22 to Deckant Declaration.  Thus, the requested service awards of $1,500 to each Class Representative are reasonable and justified.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (a) award Class Counsel's attorneys' fees and costs in the amount of $1,080,000, with such amount to be paid by Facebook as set forth in the Settlement; and (b) grant service awards in the amount of $1,500 for each of the Class Representatives.


Dated: September 2, 2022                    **BURSOR & FISHER, P.A.**

                                            By:   */s/ Neal J. Deckant*
                                                   Neal J. Deckant

                                            L. Timothy Fisher (State Bar No. 191626)
                                            Neal J. Deckant (State Bar No. 322946)
                                            1990 North California Blvd., Suite 940
                                            Walnut Creek, CA  94596
                                            Telephone: (925) 300-4455
                                            Facsimile: (925) 407-2700
                                            Email: ltfisher@bursor.com
                                                      ndeckant@bursor.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: 646-837-7150
Facsimile:  (212) 989-9163
E-Mail: jarisohn@bursor.com
            aleslie@bursor.com

*Class Counsel*